IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD WILCOXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-00524 - KAJ |
| v. | ) | |
| | ) | TRIAL BY JURY |
| RED CLAY CONSOLIDATED SCHOOL DISTRICT | ) | DEMANDED |
| BOARD OF EDUCATION and JANAY FREEBERY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (No. 1016)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666, 6553
Facsimile: (302) 576-3345, 3470
Email: bwilloughby@ycst.com;
         mstafford@ycst.com

Dated: December 9, 2005

## TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................................ i

TABLE OF CASES ........................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

SUMMARY OF THE ARGUMENT .............................................................................. 2

STATEMENT OF FACTS .............................................................................................. 4

STANDARD OF REVIEW ............................................................................................. 7

ARGUMENT.................................................................................................................... 8

  I.   COUNT III OF THE COMPLAINT FAILS TO STATE A FIRST AMENDMENT
      RETALIATION CLAIM BECAUSE WILCOXON'S SPEECH DID NOT INVOLVE A
      MATTER OF PUBLIC CONCERN............................................................................ 8

  II.  COUNT IV OF THE COMPLAINT MUST BE DISMISSED BECAUSE WILCOXON
      CANNOT BRING A DIRECT CAUSE OF ACTION AGAINST THE DISTRICT
      UNDER DELAWARE LAW. ................................................................................... 10

  III. COUNT V OF THE COMPLAINT MUST BE DISMISSED BECAUSE COMMON
      LAW ACTIONS FOR DISCRIMINATORY EMPLOYMENT PRACTICES ARE NO
      LONGER VIABLE IN DELAWARE. ........................................................................ 12

  IV. COUNT VI OF THE COMPLAINT MUST BE DISMISSED BECAUSE SEXUAL
      HARASSMENT COMPLAINTS ARE PROTECTED BY A CONFIDENTIAL
      PRIVILEGE, AND THE PRIVILEGE WAS NOT ABUSED. ....................................... 14

      A.  Sexual harassment complaints against co-workers are conditionally privileged.......... 14

      B.  Freebery did not abuse the conditional privilege. ............................................... 16

CONCLUSION............................................................................................................... 19

# TABLE OF CASES

**Cases**

Azzaro v. County of Allegheny,
  110 F.3d 968 (3d Cir. 1997) ................................................................................ 8

Battista v. Chrysler Corp.,
  454 A.2d 286 (Del. Super. Ct. 1982) ................................................................. 18

Bickling v. Kent Gen. Hosp.,
  872 F. Supp. 1299 (D. Del. 1994) ..................................................................... 14

Bloss v. Kershner,
  2000 Del. Super. LEXIS 90 (Del. Super. Ct. Mar. 9, 2000) ............................. 14

Board of Regents v. Roth,
  408 U.S. 564 (1972) ........................................................................................... 11

Brown-Scott v. Hartford Bd. of Educ.,
  51 Fed. Appx. 70 (2d Cir. 2002) .................................................................... 9, 10

Caouette v. OfficeMax, Inc.,
  352 F. Supp. 2d 134 (D.N.H. 2005) .................................................................. 15

Conley v. Gibson,
  355 U.S. 41 (1957) ............................................................................................... 7

Connick v. Myers,
  461 U.S. 138 (1983) .......................................................................................... 8, 9

Cruey v. Gannett Co.,
  76 Cal. Rptr. 2d 670 (Cal. Ct. App. 1998) ................................................... 15, 16

D.P. Enter. Inc. v. Bucks County Cmty. Coll.,
  725 F.2d 943 (3d Cir. 1984) ................................................................................ 7

E.I. DuPont de Nemours and Co. v. Pressman,
  679 A.2d 436 (Del. 1996) ................................................................................... 13

EEOC v. Avecia, Inc.,
  2005 U.S. App. LEXIS 22157 (3d Cir. Oct. 13, 2005) ..................................... 13

Faragher v. City of Boca Raton,
  524 U.S. 775 (1998) ........................................................................................... 16

Fogarty v. Boles ,
  121 F.3d 886 (3d Cir. 1997) ................................................................................ 8

Garziano v. E.I. Du Pont De Nemours & Co.,
  818 F.2d 380 (5th Cir. 1987) ............................................................................. 15

Henry v. the Delaware Law School of Widener Univ.,
  1998 Del. Ch. LEXIS 7 (Del. Chan. Jan. 8, 1998) ........................................... 14

Hides v. Certainteed Corp.,
  1995 U.S. Dist. LEXIS 10849 (E.D. Pa. July 26, 1995) ................................... 17

Howard v. Deklinski,
   2002 U.S. App. LEXIS 25269 (3d Cir. Nov. 12, 2002) ............................................. 16

Jones v. Keith,
   2002 U.S. Dist. LEXIS 3365 (D. Minn. Feb. 25, 2002) ....................................... 15, 16

Karnak Educational Trust v. Bowen,
   821 F.2d 1517 (11th Cir. 1987) ...................................................................................... 11

Meades v. Wilmington Hous. Auth.,
   2005 Del. LEXIS 194 (Del. May 12, 2005) ................................................................... 17

Merrill v. Crothall-American, Inc.,
   606 A.2d 96 (Del. 1992) ................................................................................................ 13

Miller v. Servicemaster by Reese,
   851 P.2d 143 (Ariz. Ct. App. 1992)............................................................................... 15

Morgan v. Ford,
   6 F.3d 750 (11th Cir. 1993) ............................................................................................ 9

Morse v. Lower Merion Sch. Dist.,
   132 F.3d 902 (3d Cir. 1997) ...................................................................................... 7, 18

Mosley v. Bay Ship Management, Inc.,
   2000 U.S. Dist. LEXIS 20251 (D.N.J. Dec. 27, 2000) ................................................... 7

Murray v. Gencorp, Inc.,
   979 F. Supp. 1045 (E.D. Pa. 1997)............................................................................... 18

New Castle-Gunning Bedford Educ. Assoc. v. Bd. of Educ.,
   421 F. Supp. 960 (D. Del. 1976).................................................................................... 10

Pen. Ben. Guar. Corp. v. White Consol. Indus.,
   998 F.2d 1192 (3rd Cir. 1993), cert. denied, 510 U.S. 1042, 114 S. Ct. 687 (1984).................. 7

Perry v. Sindermann,
   408 U.S. 593 (1972)...................................................................................................... 11

Pickering v. Bd. of Educ.,
   391 U.S. 563 (1968)........................................................................................................ 8

Pierce v. Burns,
   185 A.2d 477 (Del. 1962) ............................................................................................. 14

Roe v. Antle,
   964 F. Supp. 1522 (D.N.M. 1997)................................................................................. 10

Schuster v. Derocili,
   775 A.2d 1029 (2001) .................................................................................................... 13

Stiner v. Univ. of Del.,
   243 F. Supp. 2d 106 (D. Del. 2003)............................................................................... 16

Turbe v. Government of Virgin Islands,
   938 F.2d 427 (3d Cir. 1991) ............................................................................................ 7

Vickers v. Abbott Lab.,
   719 N.E.2d 1101 (Ill. App. Ct. 1999) ....................................................................... 15, 16

     061778 1003

Watters v. Philadelphia,
  55 F.3d 886 (3d Cir. 1995) ................................................................................................ 9

Wright v. Pepsi Cola Co.,
  243 F. Supp. 2d 117 (D. Del. 2003) ................................................................................ 14

**Other Authorities**

14 <u>Del. C.</u> § 1401 ........................................................................................................ 2, 10, 11

14 <u>Del. C.</u> § 1410 ................................................................................................................ 1

14 <u>Del. C.</u> § 1410(b) ..................................................................................................... 2, 10

14 <u>Del. C.</u> § 1414 ........................................................................................................ 2, 11

19 <u>Del. C.</u> § 710 ......................................................................................................... 3, 13

19 <u>Del. C.</u> § 712(b) ........................................................................................................ 13

42 U.S.C. § 2000e(2)(a) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4, 7, 16

Fed. R. Civ. P. 12(c) ..................................................................................................... 4, 7

Fed. R. Civ. P. 12(e) ........................................................................................................ 17

Fed. R. Civ. P. 8(a) .......................................................................................................... 17

Title VII of the Civil Rights Act of 1964 ........................................................................ 1

DB02:5117009 1                                                         061778.1003

## NATURE AND STAGE OF THE PROCEEDINGS

This action arises under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(2)(a), the First Amendment of the United States Constitution, 14 Del. C. § 1410, Delaware common law relating to the implied covenant of good faith and fair dealing, and Delaware common law relating to defamation.  Plaintiff is seeking general and special compensatory damages, including back pay, front pay, and benefits.  Plaintiff is also seeking punitive damages, interest, costs, and attorneys' fees.

Plaintiff filed his complaint on July 22, 2005 in the United States District Court for the District of Delaware.  Defendants Red Clay Consolidated School District Board of Education (hereinafter "Red Clay" or "the District") and Janay Freebery ("Freebery"), filed their Answer to the Complaint on September 15, 2005.  This is Defendants' Opening Brief in Support of its Motion to Dismiss Counts III, IV, V, and VI of the Complaint, alleging that Defendant Red Clay violated Plaintiff's First Amendment rights, wrongfully terminated him under Delaware state law, breached the covenant of good faith and fair dealing, and alleging the Defendant Freebery defamed the Plaintiff.

1

061778 1003

## SUMMARY OF THE ARGUMENT

1.      Wilcoxon's First Amendment claim (Count III) against Defendant Red Clay must be dismissed because he did not engage in any speech involving a matter of public concern.  In order to be protected by the First Amendment of the United States Constitution, a public employee's speech must involve a matter of public concern.  Here, Wilcoxon's speech involved private, personal grievances.  Moreover, his First Amendment claim is not saved by his allegations of gender discrimination, because his complaints were focused entirely on his own personal situation and did not implicate systemic gender-discrimination within Red Clay.

2.      Count IV of the Complaint must be dismissed because non-tenured teachers have only very limited rights under Delaware law.  14 Del. C. § 1401 et seq.  Significantly, those rights do *not* include a direct cause of action under 14 Del. C. § 1410(b), which instead provides that the decision of a terminating board's superintendent "is final and conclusive."  A review of Delaware's statutory scheme further demonstrates that non-tenured teachers do not have a direct cause of action for non-renewals under Section 1410(b) because such a right would effectively grant non-tenured teachers greater protection than their tenured counterparts have available under 14 Del. C. § 1414, which provides for limited judicial review following hearings before the employing board of education.

3.      Wilcoxon's claim that Defendant Red Clay breached its common law duties under the covenant of good faith and fair dealing by allegedly terminating him due to gender bias and "retaliation" (Complaint ¶ 93) must be dismissed because employment discrimination claims under the "public policy" prong of the implied covenant are no longer viable in Delaware following the amendment of Delaware's employment discrimination statute to create a private state-law cause of action.  Following this amendment, Wilcoxon's exclusive remedy under state

2

law for any alleged discrimination in his employment are those specified in 19 Del. C. § 710 et. seq.

4.    Wilcoxon's defamation claim against Defendant Freebery must be dismissed because Freebery's internal complaints of sexual harassment are conditionally privileged, and the privilege was not abused.  Indeed, Wilcoxon's meritless defamation claim highlights the reasons why many courts across the nation have protected complaints of sexual harassment with a conditional, or qualified, privilege in the defamation context.  These courts have noted the important, compelling, public policy considerations in favor of encouraging victims of workplace sexual harassment to come forward and have recognized that a fear of potential defamation liability would chill or handcuff sexual harassment complainants and deter them from voicing their complaints.  Such is manifestly the case here, where Wilcoxon, among other comments, referred to Freebery as "the closest thing he had to a wife and bitch."

## STATEMENT OF FACTS

Although Defendants strongly dispute Plaintiff's description of his employment with, and departure from, Red Clay, for purposes of this motion[1] only, the truthfulness of Plaintiff's allegations must be accepted. Accordingly, for purposes of ruling on this motion, the Court should consider the following facts.

Beginning in 2002, Plaintiff worked teaching Physical Education and Health classes at Skyline Middle School. (Complaint ¶6-7). Some of the Physical Education and Health classes were taught jointly by the Plaintiff and Defendant Freebery. (Complaint ¶8).

According to Wilcoxon, Freebery was allegedly often tardy in arriving at work and absent during class time, which led Wilcoxon to take on extra work and responsibilities. (Complaint ¶9, 12- 13). Supposedly, as Freebery's absences increased, in October 2003, Wilcoxon met with her and communicated "how unfair he thought it was for her to continually impose the responsibilities of the class on him and that he would appreciate it if she would show up on time and stay in class as she was required." (Complaint ¶15).

Ultimately, Wilcoxon began to keep a "written journal" cataloging the "times and dates of Ms. Freebery's absences and other pertinent information about Ms. Freebery's actions and inactions." (Complaint ¶18). On December 15, 2003, acting Assistant Principal Frank Rumford ("Rumford") located the journal in Wilcoxon's desk. (Complaint ¶19).

On December 16, 2003, Wilcoxon was told to see Janet Basara ("Basara"), the Principal of Skyline Middle School. (Complaint ¶22). At this meeting, Basara reprimanded Wilcoxon for

---

[1]     For purposes of this motion only, the well-pleaded allegations of Plaintiff's Complaint are assumed to be true, as required by Fed. R. Civ. P. 12(b) (6) and 12(c).

061778 1003

keeping the journal on Freebery. (Complaint ¶23). At a subsequent meeting involving Wilcoxon, Freebery, Basara and Rumford, on December 17, 2003, Freebery accused Wilcoxon of saying inappropriate things to her and threatened to file a sexual harassment complaint. (Complaint ¶26). It is not disputed that he made inappropriate comments to Freebery, such as remarks to the effect that she is "the closest thing he had to a wife and bitch," and making false accusations that her boyfriend had impregnated her. Instead, he simply claimed that his remarks were made in jest. (Answer ¶5) Moreover, it is undisputed that Wilcoxon made such comments in front of other individuals, including both Basara, the Building Principal, and Freebery's boyfriend, whom he congratulated on being a "daddy." (Answer ¶31).

On January 22, 2004, Basara again met with Wilcoxon and gave him a disciplinary letter concluding that he had made inappropriate comments to Freebery. (Complaint ¶35). In addition, Basara gave Wilcoxon two additional disciplinary letters, one for defective emergency lesson plans and the other for his failure to sign up for after school buses for students he kept after school for activities. (Complaint ¶35-37).

Wilcoxon filed a Charge of Discrimination with the Department of Labor on February 22, 2004. This was the first instance in which he claimed that he had been subjected to gender discrimination. (Complaint ¶ 46). Subsequently, on April 21, 2004, Basara conducted an unannounced classroom observation of Wilcoxon. (Complaint ¶48). The observation was "overwhelmingly negative." (Complaint ¶52).

After his observation, Wilcoxon received additional disciplinary letters for his failure to secure a sum of money he received from students for an American Heart Association event- - "Hoops for Heart" which was stolen after Wilcoxon left it in plain site, (Complaint ¶55-56;

061778 1003

Answer ¶56), and for inadequate lesson plans. (Complaint ¶61). On May 14, 2004, Wilcoxon, an untenured teacher, was informed by Basara that his contract would not be renewed. Wilcoxon verbally requested the reasons for this decision, and was told it was for poor lesson planning, poor classroom management, and his inappropriate comments to Freebery. (Complaint ¶70).

061778 1003

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that the legal sufficiency of a complaint may be challenged by demonstrating the plaintiff's failure to state a claim upon which relief can be granted. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them "in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Although a court will accept the plaintiff's factual allegations as true, a motion to dismiss should be granted when "it appears to a certainty that no relief could be granted under any set of facts which could be proved." Morse (quoting D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943 (3d Cir. 1984)). In particular, a court should not consider or regard as true "conclusory allegations of law, unsubstantiated conclusions, and/or unwarranted factual inferences." Morse, 132 F.3d at 906.[2] Moreover, in deciding a motion to dismiss, the Court may consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. Mosley v. Bay Ship Management, Inc., 2000 U.S. Dist. LEXIS 20251, *10 (D.N.J. Dec. 27, 2000) (citing Pen. Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993), cert. denied, 510 U.S. 1042, 114 S. Ct. 687 (1984)).

---

[2]      The standard for deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) for failure to state a claim upon which relief can be granted is the same as the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

061778.1003

**ARGUMENT**

I.    **COUNT III OF THE COMPLAINT FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM BECAUSE WILCOXON'S SPEECH DID NOT INVOLVE A MATTER OF PUBLIC CONCERN**

In Count III of his Complaint, Wilcoxon alleges that the District violated the free speech clause of the First Amendment[3] by retaliating against him for "documenting Ms. Freebery's actions, for voicing his concerns over events that occurred at Skyline Middle School and for objecting to wrongful accusations and discipline lodged against him." (Complaint ¶ 87).

It is well-established that a public employee's speech is only protected by the First Amendment if two conditions are met. First, the speech must involve "matters of public concern." Connick v. Myers, 461 U.S. 138, 147-48 (1983). This is to be determined by examining the content, form, and context of the speech. Id. Second, the value of the employee's speech must "outweigh" the government's interest in the effective and efficient fulfillment of its responsibilities to the public. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997) (quoting Connick, 461 U.S. at 147-48). "[I]n the absence of protected speech, a public employee may be discharged even if the action is unfair, or the reasons 'are alleged to be mistaken or unreasonable.'" Fogarty v. Boles , 121 F.3d 886, 889 (3d Cir. 1997) (quoting Connick 461 U.S. at 146).

The Supreme Court in Pickering stated that balancing is required because the government has an interest in "promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568; Watters v. Philadelphia, 55 F.3d 886, 892 (3d Cir.

---

[3]    The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, . . . ." U.S. Const. Amend. I.

061778 1003

1995). The determination as to whether the plaintiff can establish these two conditions exist is a legal issue for the Court to resolve. Connick, 461 U.S. at 148 n.7.

Here, a review of the Complaint demonstrates the inherently private and personal nature of Wilcoxon's complaints. For example, as the Complaint specifically alleges, Wilcoxon claims that he received various disciplinary letters on January 22, 2004, "in retaliation for exercising his First Amendment right to free speech in keeping the journal and for making a valid workplace complaint to Ms. Basara that Ms. Freebery had lodged a false complaint of sexual harassment against him." (Complaint ¶ 41). Significantly, Wilcoxon did not raise his allegations of "gender discrimination" until he filed his initial Charge of Discrimination with the Delaware Department of Labor on February 22, 2004. (Complaint ¶ 46).

Of course, the journal, and its contents, do not discuss matters of public concern. The information contained in the journal, such as the alleged "times and dates of Ms. Freebery's absences and other pertinent information about Ms. Freebery's actions and inactions," (Complaint ¶18), are a quintessential private concern particular to Wilcoxon. Wilcoxon's First Amendment claim is not saved by his subsequent filing of a Charge of Discrimination. Filing an administrative charge or Title VII lawsuit seeking remedies only for personal harm, such as Wilcoxon has done, simply does not satisfy the constitutional "matter of public concern" standard. See Brown-Scott v. Hartford Bd. of Educ., 51 Fed. Appx. 70, 71 (2d Cir. 2002) "discrimination complaint did not involve a matter of public concern where it "was focused entirely on her personnel situation and had not been filed to implicate any system-wide problem with" the district); Morgan v. Ford, 6 F.3d 750, 754-55 (11th Cir. 1993) (holding that female employee's complaints of sex harassment were designed to improve her own working conditions, rather than to raise issues of public concern); Roe v. Antle, 964 F. Supp. 1522, 1529 (D.N.M.

9

061778.1003

1997) ("opposition to discrimination against oneself, because almost exclusively relating to a personal dispute, does not touch on matters of public concern").

Here, as with the plaintiff in <u>Brown-Scott</u>, Wilcoxon's claims do not allege any systemic gender-discrimination problems at Red Clay, but rather are devoted merely to his personal dispute with Freebery and the District. As such, Wilcoxon has not engaged in speech on any matter of public concern, and Count III of the Complaint should be dismissed.

## II.    COUNT IV OF THE COMPLAINT MUST BE DISMISSED BECAUSE WILCOXON CANNOT BRING A DIRECT CAUSE OF ACTION AGAINST THE DISTRICT UNDER DELAWARE LAW.

Under Delaware law, Plaintiff, a non-tenured teacher, has very limited rights. 14 <u>Del</u>. <u>C</u>. § 1401 <u>et seq</u>. For example, this Court has found that non-tenured teachers do not have a property interest in continued employment. <u>New Castle-Gunning Bedford Educ. Assoc. v. Bd. of Educ.</u>, 421 F. Supp. 960 (D. Del. 1976). They are not statutorily or constitutionally entitled to a termination hearing. <u>Id</u>. By statute, a non-tenured teacher is entitled to written notice of the employing school board's intention to terminate his/her services. 14 <u>Del</u>. <u>C</u>. § 1410(b). If the teacher makes a written request, the board must provide the reasons for the teacher's non-renewal. <u>Id</u>. The reasons "must have either been contained in the teacher's performance appraisal, and the teacher was provided time to correct any deficiency through an individualized improvement plan, or other documented materials properly placed in the teacher's personnel file prior to said notice." <u>Id</u>.

The Delaware General Assembly determined that the only review of a decision to terminate a non-tenured teacher shall be through a review with the Superintendent of the employing school district. Section 1410(b) provides for a review process of the non-renewal

10

061778.1003

decision through a meeting with the board's superintendent. Significantly, "the conference with the superintendent is *final and conclusive*." 14 Del. C. § 1410(b) (emphasis added). The superintendent's determination is not, therefore, subject to judicial review. See e.g., Karnak Educational Trust v. Bowen, 821 F.2d 1517, 1519 (11th Cir. 1987) (noting that a "statutory scheme" involving a hearing which is "final and binding upon all the parties" does not "provide for judicial review."). Such a statutory scheme is consistent with the idea that non-tenured teachers should have more limited rights than their tenured counterparts given that non-tenured teachers do not have a property interest in continued employment protected by the Due Process Clause. Perry v. Sindermann, 408 U.S. 593, 599-601 (1972) (reasoning that a non-tenured teacher's contract does not create a protectable property interest); Board of Regents v. Roth, 408 U.S. 564 (1972) (non-tenured teacher has no right to procedural due process).

Count IV of Plaintiff's Complaint would effectively turn the statutory scheme set up by the Delaware General Assembly upside down. It is beyond question that the General Assembly has the right to determine the rights provided to various classes of public employees. If it chose to, it could have given non-tenured teachers no rights at all. Instead, it reasonably chose to create a statutory scheme that provided non-tenured teachers with a set of limited procedural protections as provided in 14 Del. C. §1401 et seq. It gave tenured teachers greater rights, including the right to a hearing before the Board of Education of the employing school district in the event of a termination, instead of review by the Superintendent as provided to non-tenured teachers. In the case of tenured teachers, judicial review of the Board's decision is limited to the typical standard applicable to review of administrative proceedings, i.e., the Board decision is reviewed on the record, without a jury trial, based on the substantial evidence standard. 14 Del. C. § 1414 ("[T]he case shall be determined by the Court from the record which shall include a

11

certified copy of the evidence, findings and the decision of the board, without the aid of a jury. The Court shall decide all relevant questions of law and all other matters involved, and shall sustain any board action, findings, and conclusions supported by substantial evidence.").

Adopting Plaintiff's approach would allow non-tenured teachers greater rights than their tenured counterparts. If accepted, non-tenured teachers would now be entitled to a full blown jury trial in federal court for alleged violations of the statute, while their tenured counterparts remain subject to a hearing before the terminating board with only limited judicial review. The General Assembly simply could not have intended such a result.

Plaintiff's state law "wrongful discharge" claim set forth in Count IV should be dismissed.

## III.    COUNT V OF THE COMPLAINT MUST BE DISMISSED BECAUSE COMMON LAW ACTIONS FOR DISCRIMINATORY EMPLOYMENT PRACTICES ARE NO LONGER VIABLE IN DELAWARE.

In Count V of the Complaint, Wilcoxon alleges that the District breached its common law duties under the covenant of good faith and fair dealing,[4] by "terminating Plaintiff based upon retaliatory motives and by discriminating against him on the basis of his gender." (Complaint ¶ 93). Plaintiff's claim is therefore based on the previously recognized "public policy" prong of implied covenant claims.

This type of common law cause of action, however, is no longer viable in Delaware following the comprehensive amendment of Delaware's employment discrimination statute to create a private state-law cause of action. EEOC v. Avecia, Inc., 2005 U.S. App. LEXIS 22157,

*6 (3d Cir. Oct. 13, 2005) (citing <u>Lord v. Souder</u>, 748 A.2d 393, 400 (Del. 2000) and <u>E.I. DuPont de Nemours and Co. v. Pressman</u>, 679 A.2d 436, 442-44 (Del. 1996)).

In <u>Avecia</u>, the Third Circuit found that "in 2004 the Delaware legislature amended 19 <u>Del. C.</u> § 710 et seq., which prohibits discrimination in employment practices, in order to clarify that this statute was the 'sole remedy' for an aggrieved employee 'to the exclusion of all other remedies.'" <u>Avecia</u>, 2005 U.S. App. LEXIS 22157 at *7-8 (quoting 19 <u>Del. C.</u> § 712(b)). The Third Circuit pointed out that "the synopsis of the Senate Bill [amending Section 712] expressly states disagreement with the Delaware Supreme Court's decision in <u>Schuster</u>, the decision that recognized a public policy claim for alleged gender bias:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively re-establishes the exclusive remedy put in question by the decision in <u>Schuster v. Derocili</u>, 775 A.2d 1029 (2001)."

<u>Id.</u> (quoting Delaware Bill Summary, 2004 Reg. Sess. S.B. 154).

Count V of the Complaint therefore must be dismissed because Wilcoxon is limited to the remedies available under Delaware state law, 19 <u>Del. C.</u> § 710 <u>et seq.</u>, to redress any alleged discrimination.

---

[4] <u>Merrill v. Crothall-American, Inc.</u>, 606 A.2d 96, 101 (Del. 1992) (holding that "every employment contract made under laws of this State, consonant with general principles of contract law, includes an implied covenant of good faith and fair dealing").

13

IV.    **COUNT VI OF THE COMPLAINT MUST BE DISMISSED BECAUSE SEXUAL
HARASSMENT COMPLAINTS ARE PROTECTED BY A CONFIDENTIAL
PRIVILEGE, AND THE PRIVILEGE WAS NOT ABUSED.**

The elements required for a defamation cause of action are well-settled under Delaware

law. Five elements are required: "(1) a defamatory communication; (2) publication; (3) the

communication refers to the plaintiff; (4) a third party's understanding of the communications

defamatory character; and (5) injury." Bloss v. Kershner, 2000 Del. Super. LEXIS 90, *21 (Del.

Super. Ct. Mar. 9, 2000). A statement is defamatory if it is harmful and untrue when made.

Wright v. Pepsi Cola Co., 243 F. Supp. 2d 117, 124 (D. Del. 2003).

For statements made in certain contexts, however, conditional privilege is an affirmative

defense to a prima facie case of defamation. Pierce v. Burns, 185 A.2d 477, 479 (Del. 1962);

Henry v. the Delaware Law School of Widener Univ., 1998 Del. Ch. LEXIS 7 (Del. Chan. Jan.

8, 1998) ("Under the law of defamation, liability does not attach to a defamatory statement if the

statement is privileged."). "A qualified privilege 'extends to communications made between

persons who have a common interest for the protection of which the allegedly defamatory

statements are made.'" Id. Assuming the conditional privilege applies, the Plaintiff bears the

burden of demonstrating that it was abused or waived. Henry, 1998 Del. Ch. LEXIS 7 at *32-33.

A.    **Sexual harassment complaints against co-workers are
conditionally privileged.**

Although this appears to be an issue of first impression in Delaware,[5] numerous courts

across the nation have held that employees' reports of sexual harassment to management are

---

[5] Although no Delaware court appears to have considered the issue of whether employee sexual
harassment complaints should be protected with a conditional privilege, Delaware courts rely on
the Restatement (Second) of Torts as an authoritative source on Delaware's law of defamation.
Bickling v. Kent Gen. Hosp., 872 F. Supp. 1299, 1307 (D. Del. 1994). Courts that have

conditionally privileged.  See e.g., Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 143

(D.N.H. 2005) (employee sexual harassment complaints protected by a qualified privilege);

Jones v. Keith, 2002 U.S. Dist. LEXIS 3365, *12-13 (D. Minn. Feb. 25, 2002); Miller v.

Servicemaster by Reese, 851 P.2d 143, 145 (Ariz. Ct. App. 1992); Cruey v. Gannett Co., 76 Cal.

Rptr. 2d 670, 677-78 (Cal. Ct. App. 1998).  Protecting employee sexual harassment complaints

against co-workers with a conditional privilege effectuates the important public policy

considerations inherent in encouraging victims of sexual harassment to come forward and in

eliminating this odious behavior from the workplace.  See e.g., Caouette, 352 F. Supp. 2d at 143

(recognizing "the complaining employees' interest in preventing further abuse and the employer's

responsibility under federal law to do the same"); Vickers v. Abbott Lab., 719 N.E.2d 1101,

1109 (Ill. App. Ct. 1999) ("there is a definite general public interest in eradicating sexual

harassment in the workplace"); Garziano v. E.I. Du Pont De Nemours & Co., 818 F.2d 380, 387-

88 (5th Cir. 1987) (recognizing that state and federal laws "condemn sexual harassment as a

matter of public policy" and that protecting sexual harassment complaints with a conditional

privilege is crucial, "because public policy dictates that employees must be protected from

workplace sexual harassment.").

       In the words of one court that has considered this issue:

              [T]here is a compelling interest in ridding workplaces of sexual
              harassment, and specifically an obligation of employers to "take all

---

protected sexual harassment complaints with a qualified or conditional privilege have found that
application to be "a straightforward application of the Restatement [(Second) of Torts] rule..."
Caouette, 352 F. Supp. 2d at 143; Vickers, 719 N.E.2d at 1108 (noting that the Illinois Supreme
Court has adopted the approach of the Restatement (Second) of Torts in determining whether a
qualified privilege exists and concluding that employee sexual harassment complaints against co-
workers are so protected).  As such, consistent with other courts that utilize the Restatement
(Second) of Torts, Delaware courts would protect employee sexual harassment complaints with a
conditional privilege in the defamation context.

061778 1003

steps necessary to prevent sexual harassment from occuring" and 'to establish a compliant procedure designed to encourage victims of harassment to come forward." The qualified privilege in the defamation context promotes this social policy and provides protection for the victims, witnesses and investigators of sexual harassment.   If no privilege existed, then victims of harassment and companies with a goal of preventing harassment would be "handcuffed" by a fear of defamation liability.

Vickers, 719 N.E.2d at 1109 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 806 (1998))

(emphasis added); Jones, 2002 U.S. Dist. LEXIS 3365 at *13 ("Employees should not be

intimidated from reporting sexual harassment by the specter of a defamation lawsuit...

Defamation litigation must not be allowed to undermine the public policy of eliminating sexual

harassment from the workplace."); Cruey, 76 Cal. Rptr. 2d at 678 (complaints of sexual

harassment are privileged because "[t]o hold otherwise would have a chilling effect on an

employee's right to be free from sexual harassment and discrimination in the workplace by

exposing the employee to the risk of litigation as a consequence to seeking enforcement of this

right.").  Here, allowing Wilcoxon's defamation claim against defendant Freebery to proceed

threatens precisely the sort of  "handcuffing" the Vickers court feared.  Indeed, Wilcoxon's claim

against Freebery is plainly designed to harass and intimate an innocent victim.

### B.    Freebery did not abuse the conditional privilege.

Although "the question of whether a privilege has been abused by malice or intent to

harm ordinarily is a factual question for the jury," Stiner v. Univ. of Del., 243 F. Supp. 2d 106,

116 (D. Del. 2003), it is within the province of the court in appropriate circumstances. See e.g.,

Howard v. Deklinski, 2002 U.S. App. LEXIS 25269 (3d Cir. Nov. 12, 2002) (noting that

"Appellant's assertion that 'it is outside the province of a court to decide whether or not a

defendant' has abused a conditional privilege reflects a fundamental misunderstanding of the

law."); but see, Meades v. Wilmington Hous. Auth., 2005 Del. LEXIS 194, *6-7 (Del. May 12,

2005) ("the affirmative defense of conditional privilege may not be considered in the context of a motion to dismiss pursuant to Rule 12(b)(6)").[6] Applying a conditional privilege to employee complaints of sexual harassment and disposing of defamation suits at the earliest opportunity effectuates the important public policy interest in eradicating sexual harassment from the workplace. This case is the quintessential "appropriate circumstance" in which determining whether a conditional privilege has been abused is peculiarly within the province of the Court. To do otherwise would subject Freebery and other sexual harassment complainants to prohibitive litigation costs, and would "handcuff" sexual harassment complainants with the fear of massive legal expenses defending against defamation suits.

Moreover, Plaintiff has not pled any facts indicating or suggesting that the conditional privilege (assuming it applies), was abused in any fashion, such as by, for example, excessive or improper publication. Instead, Plaintiff relies solely upon the allegedly "false" nature of the complaints made by Freebery. (Complaint ¶96). The face of Wilcoxon's Complaint makes clear that Freebery's statements were raised in a meeting involving Freebery, Rumford (the Assistant Principal), Basara (the Principal), and himself concerning a workplace dispute. (Complaint ¶26). Significantly, the Complaint does not allege, let alone identify, any other third-party (other than District officials acting in their capacities as employees) to whom Freebery communicated her allegations.[7] Moreover, in the context of a motion to dismiss, Wilcoxon's mere characterizations of Freebery's motivations as having been malicious (Complaint ¶27) are insufficient. See e.g.,

---

[6] Meades did not arise in the context of a sexual harassment complaint.

[7] In this respect, Plaintiff's general reference to "third parties" is insufficient to meet even the liberal pleading requirement of Fed. R. Civ. P. 8(a), to the extent it denotes individuals besides Rumford and Basara. Plaintiff should be required to make a more definite statement pursuant to Fed. R. Civ. P. 12(e). Cf. Hides v. Certainteed Corp., 1995 U.S. Dist. LEXIS 10849, *8 (E.D. Pa. July 26, 1995) (noting that the plaintiff had failed to identify those who allegedly received a

17

Morse, 132 F.3d at 906 (a court should not consider or regard as true "conclusory allegations of law, unsubstantiated conclusions, and/or unwarranted factual inferences"). Indeed, although Wilcoxon attempts to spin some of his remarks as being in jest, there is no dispute that he stated in the presence of the Principal, Basara, and others, remarks to the effect that Freebery "was the closest thing he had to a wife and a bitch." Therefore, Count VI of the Complaint must be dismissed because the allegations in the Complaint, even when taken as true and viewed in the light most favorable to the Plaintiff, fail to state a claim upon which relief can be granted. Cf. Battista v. Chrysler Corp., 454 A.2d 286, 291 (Del. Super. Ct. 1982).

---

purportedly defamatory communication and granting defendant's motion for a more definite statement); Murray v. Gencorp, Inc., 979 F. Supp. 1045, 1051 (E.D. Pa. 1997) (same).

061778 1003

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss and/or grant judgment on the pleadings on Counts III, IV, V, and VI of Plaintiff's Complaint.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Barry M. Willoughby, Esquire (No. 1016)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666, 6553
Facsimile: (302) 576-3345, 3470
Email: bwilloughby@ycst.com; mstafford@ycst.com
Attorneys for Defendants

Dated: December 9, 2005

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2005, I electronically filed a true and correct copy of

the foregoing Defendants' Opening Brief in Support of Their Motion to Dismiss and/or For

Judgment on the Pleadings with the Clerk of the Court using CM/ECF, which will send

notification of such to the following counsel of record, and further that I caused a copy of same

to be delivered to the following counsel of record:

> Jeffrey K. Martin, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE 19806

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Barry M. Willoughby, Esquire (No. 1016)
> Michael P. Stafford, Esquire (No. 4461)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> Telephone: (302) 571-6666, 6553
> Facsimile: (302) 576-3345, 3470
> Email: bwilloughby@ycst.com; mstafford@ycst.com
> Attorneys for Defendants

Dated: December 9, 2005