LEXSEE 2002 U.S. DIST. LEXIS 3365

Daniel L. Jones, Plaintiff, v. Brian M. Keith and Margaret R. Keith, Defendants.

Civil No. 00-2741 ADM/SRN

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2002 U.S. Dist. LEXIS 3365

February 25, 2002, Decided

**DISPOSITION:** [*1] Defendant Margaret Keith's Motion for Summary Judgment GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant, his former co-worker, alleging that the co-worker's report to their employer concerning the employee's misconduct, including his discharge from a prior employer, constituted defamation, tortious interference with contract, and intentional infliction of emotional distress. The co-worker moved for summary judgment.

**OVERVIEW:** While both parties were employed by a former employer, the co-worker reported that the employee attempted to rape her, and the employee was subsequently terminated. The parties were subsequently employed by a different common employer and, after the co-worker received a sexually harassing telephone message, the co-worker reported the message and the former misconduct and discharge to the employer who terminated the employee based on his misrepresentation concerning the prior discharge. The court first held that no defamation was shown since the representation concerning the employee's discharge was true and any damage to the employee was caused by the employer's independent investigation of the employee. In any event, the co-worker's statements were protected by qualified privilege since they were made in accordance with the employer's sexual harassment policy. Further, the co-worker did not interfere with the employment contract, since she had no authority to cause the employee's termination. Finally, the co-worker's actions did not rise to the level of extreme and outrageous conduct, and the employee presented no evidence of emotional distress.

**OUTCOME:** The co-worker's motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Disability & Unemployment Insurance > Unemployment Compensation > Eligibility*
[HN1] Pursuant to Oregon law, employees who voluntarily resign are disqualified from receiving unemployment compensation. Or Rev Stat § 657.176(2)(c) (1987).

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Fed. R. Civ. P. 56(c) provides that summary judgment shall issue if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN3] While the facts must be viewed in the light most favorable to a plaintiff on a summary judgment motion by a defendant, this does not mean the court must ignore facts in the record that may be unfavorable to the plaintiff.

*Torts > Defamation & Invasion of Privacy > Defamation Actions*
[HN4] To be considered defamatory, a statement of fact about a plaintiff must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him or her in the estimation of the community.

*Torts > Defamation & Invasion of Privacy > Defamation Actions*

[HN5] Truth is a complete defense to defamation.

*Torts > Defamation & Invasion of Privacy > Defamation Actions*
[HN6] Along with charges of a crime, imputations of a loathsome disease, and unchastity, statements affecting a person's conduct of business, trade, or profession may be actionable without proof of damages. However, the words must be peculiarly harmful to the person in his business. Stating that a person has been fired does not constitute defamation per se because the fact does not necessarily injure or discredit the discharged employee. Defamation per se is limited to certain types of statements which are so harmful that damages will be presumed.

*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN7] Qualified privileges attach to a broad range of circumstances where the interest in shielding the defendant from defamation liability is considered worthy of protection. A qualified privilege applies when a court determines that statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory. A statement enjoys a qualified privileged if made upon proper occasion, from a proper motive, and based upon reasonable or probable cause.

*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN8] Communications involving investigations into employee misconduct are shielded by a qualified privilege. This privilege is based upon the employer's important interest in protecting itself and the public against dishonest or otherwise harmful employees.

*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN9] Employees may not abuse the qualified privilege from defamation liability to report harassment. A showing of common law malice, ill will, or improper motive may nullify the qualified privilege. Malice is defined as actual ill-will or a design causelessly and wantonly to injure plaintiff.

*Torts > Business & Employment Torts > Interference With a Contract*
[HN10] To state a claim for tortious interference with contractual relations, a plaintiff must show that (1) a contract existed; (2) the alleged wrongdoer had knowledge of the contract; (3) the alleged wrongdoer intentionally interfered with the contract; (4) the alleged wrongdoer's actions were not justified; and (5) damages were sustained as a result.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN11] To establish a claim for intentional infliction of emotional distress, a plaintiff must show that defendant intentionally or recklessly engaged in extreme and outrageous conduct, causing him emotional distress, and the distress was severe. The Minnesota Supreme Court underscores the limited scope of such claims and warns that they are sharply limited to cases involving particularly egregious facts. Indeed, plaintiff must identify conduct so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.

**COUNSEL:** David Shoup, Esq., Tindall Bennett & Shoup, P.C., Anchorage, Alaska, for Plaintiff.

Timothy Thornton, Esq., and Steven LaPierre, Esq., Briggs & Morgan, P.A., Minneapolis, Minnesota, appeared for Margaret Keith, Defendant.

**JUDGES:** ANN D. MONTGOMERY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ANN D. MONTGOMERY

**OPINION:**

### MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On December 13, 2001, the undersigned United States District Judge heard Defendant Margaret R. Keith's ("Keith") Motion for Summary Judgment [Doc. No. 13]. Defendant seeks summary judgment on Plaintiff Daniel L. Jones' ("Jones") claims of defamation, tortious interference with contract and intentional infliction of emotional distress. For the reasons articulated below, Defendant's Motion is granted.

### II. BACKGROUND

In 1987, Keith and Jones were both employed at Marys Peak Aviation ("Marys Peak") in Corvallis, Oregon. In late 1986 or early 1987, Keith and Jones had a sexual relationship. *See* Keith Dep., at 62-66, 69; Jones Dep., at 12, 15. After their consensual relationship had ended, Jones attempted to rape Keith in her Marys Peak [*2] office in late April, 1987. *See* Keith Aff. P 2. Keith reported Jones' sexual attack to Mark Brown, an owner of Marys Peak. *See* Keith Aff. P 3; Brown Aff. P 4.

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 3 of 19

Page 3
2002 U.S. Dist. LEXIS 3365, *

Keith also reported the incident to the local police. See Keith Aff. Ex. A. On or about May 1, 1987, Marys Peak terminated Jones. See Brown Aff. P 6; Bowers Aff. P 6; Walti Aff. PP 3-4.

Jones contends that he was not fired from his job at Marys Peak, but alleges that he resigned in August, 1987. See Jones Dep., at 44. He cannot recall receiving compensation from Marys Peak from May, 1987, through August, 1987. Id. Jones asserts that he worked at Marys Peak as an unpaid apprentice aircraft mechanic under the tutelage of his friend, David Yeakel. Id. at 8-9. Yeakel conceded that while Jones assisted him as an apprentice repairing aircraft after May, 1987, Jones was not "formally employed by Marys Peak." Yeakel Dep., at 55.

Marys Peak's time sheets for Jones indicate he worked through April, 1987, and do not document Jones' working beyond that date. See LaPierre Aff. Ex. D. The time sheets demonstrate that Jones earned $ 4,177.77 at Marys Peak from January 1, 1987 through April 30, 1987. Id. [*3] Social Security Administration records show that Jones earned $ 4,365.30 at Marys Peak for the entire year of 1987. See LaPierre Aff. Ex. H. The difference in these amounts is the equivalent of approximately one week of pay for Jones. See id. Ex. D; Def. Mem. in Supp., at 3-4.

In 1987, Jones filed a claim against Marys Peak for unemployment compensation. Jones Dep., at 96-97; LaPierre Aff. Ex. I. [HN1] Pursuant to Oregon law, employees who voluntarily resign are disqualified from receiving unemployment compensation. See Or. Rev. Stat. § 657.176(2)(c) (1987); Ponder v. Employment Dep't, 171 Ore. App. 435, 15 P.3d 602, 604 (Or. Ct. App. 2000). At his deposition, Jones was without explanation how he could have been eligible for unemployment benefits if he voluntarily resigned, as he contends he did. See Jones Dep., at 96-97.

The life paths of Keith and Jones did not cross again until the mid-1990s. In December, 1995, Keith was hired as a pilot by Northwest Airlines ("Northwest"). Keith Dep., at 85. Coincidentally, n1 Northwest hired Jones as a pilot in September, 1996. Jones Dep., at 101. While both were working for Northwest, Jones and Keith saw each other [*4] in the mail room of the Minneapolis-St. Paul Airport. See Keith Dep., at 130-32; Jones Dep., at 101-04. Although their versions of the encounter differ, they both agree that Keith gave Jones her phone number. See Keith Dep., at 133-34; Jones Dep., at 102. Jones called and left a message, and Keith returned the call the same day. Keith Dep., at 135-37; Jones Dep., at 102.

n1 Further testament to the reality: "it's a small world after all."

Later, Keith received a sexually harassing voice mail message. Keith testified that she heard Jones' voice on the message say: "Hi. This is -- [short pause] -- John. If you want to get fucked, you know where I am." Keith Dep., at 137; see Keith Aff. P 5.

After receiving the voice mail, Keith was uncertain about how to handle the situation. Keith Aff. P 6. She sought the advice of a few colleagues, but did not identify Jones by name. Id.; Keith Dep., at 112-13. Out of concern for her safety, Keith decided to report the matter to Northwest pursuant to its sexual [*5] harassment policy. See Keith Aff. P 6; Keith Dep., at 83; Tice Aff. Ex. D, at 3-4.

Northwest maintains a "Zero Tolerance" sexual harassment policy. The policy specifically provides that: "Northwest Airlines will not tolerate any individual engaging in verbal, physical, or other conduct which has the purpose or effect of unreasonably interfering with a person's work performance, or which creates an intimidating, hostile or offensive work environment." Tice Aff. Ex. D, at 2. Employees who believe they have been victims of harassment are instructed to tell the offending individual to stop and "immediately report the situation to [their] supervisor or manager." Id. at 3-4. Moreover, Northwest's Rules of Conduct for its employees state that it "expressly prohibits all forms of sexual harassment." Tice Aff. Ex. F, at 13. Accordingly, "employees are obligated to [report] incidents of sexual harassment at the time they occur." Id.

Consistent with Northwest's sexual harassment policy, Keith reported her history with Jones to Marie Emeott, a human resources executive with responsibility for such matters. See Keith Dep., at 112; Keith Aff. P 6. Northwest investigated Keith's [*6] allegations. Robert Tice, a senior attorney in Northwest's Labor Relations Department, conducted the inquiry. Tice Dep., at 15-16; Tice Aff. P 2-3. During his investigation, Tice learned that Jones had been involuntarily discharged from Marys Peak. Tice Aff. P 3. Because Jones' application with Northwest stated that he had never been discharged from any position, Tice further inquired into the circumstances of Jones' employment with Marys Peak. See Tice Dep., at 27, 50; Tice Aff. Ex. E, at 6. Mark Brown, an owner of Marys Peak during the relevant time period, informed Tice that Jones was dismissed from his job shortly after Keith reported the attempted rape in late April, 1987. See Tice Dep., at 25-31. Tice found that Keith's 1987 police report of the incident corroborated this information. Id. at 20-21.

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 4 of 19

Page 4
2002 U.S. Dist. LEXIS 3365, *

Based on the information collected during Tice's investigation, Northwest concluded that Jones had been involuntarily discharged from Marys Peak, and that his termination date was the first week of May, 1987. Id. at 50. Northwest thus determined that Jones' employment application was false. Id. Jones' employment application with Northwest included a certification [*7] of veracity and that "any misrepresentation or concealment of information, regardless of when it is discovered, will be sufficient grounds for dismissal from or refusal of employment." Tice Aff. Ex. E, at 8. Northwest discharged Jones.

Jones then sued Keith, alleging defamation, tortious interference with contract and intentional infliction of emotional distress. Jones bases his allegations on Keith's reporting to Northwest the harassing voice mail, and her providing information to Northwest about Jones' attempted rape and his discharge from employment by Marys Peak.

## III. DISCUSSION

[HN2] Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). [*8] [HN3] While the facts must be viewed in the light most favorable to Jones on this summary judgment motion by Keith, this does not mean the court must ignore facts in the record that may be unfavorable to Jones. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1315 (8th Cir. 1996); Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 857 n.1 (7th Cir. 1997); Patel v. Allstate Ins. Co., 105 F.3d 365, 367 (7th Cir. 1997) ("[The court] will not ignore facts in the record merely because they are unfavorable to [the non-movant].").

### A. Defamation

Jones alleges that Keith defamed him by telling Northwest that Jones had been fired from Marys Peak, by accusing him of attempted rape, and by accusing him of leaving a harassing message on her voice mail. See Pl. Mem. in Opp'n, at 13-14. [HN4] To be considered defamatory, a statement of fact about a plaintiff must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him or her in the estimation of the community. See Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 886 (Minn. 1986); [*9] Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). There is no dispute that Keith communicated statements of fact about Jones to Northwest. The other two elements of the prima facie case, falsity and causation of damages, are at issue here.

[HN5] Truth is a complete defense to defamation. Lewis, 389 N.W.2d at 889; Stuempges, 297 N.W.2d at 255. Keith told Northwest that Jones was fired from his job at Marys Peak. The record indicates that Marys Peak discharged Jones the first week of May, 1987. Jones' assertions about his continued employment at Marys Peak as an unpaid apprentice aircraft mechanic beyond May, 1987, and voluntary resignation in August, 1987, do not create a *genuine* issue of fact regarding his discharge from the position he held prior to May, 1987. The record shows that Jones' compensation as an employee at Marys Peak ended the first week of May, 1987. The owners and managers at Marys Peak testified that Jones was terminated at that time. See Brown Aff. P 6; Bowers Aff. P 6; Walti Aff. PP 3-4. Jones' testimony about his unpaid aircraft mechanic apprenticeship does not contradict this evidence. Significantly, [*10] Jones applied for unemployment benefits in 1987, although a voluntary resignation would disqualify an employee from receiving unemployment compensation. See Or. Rev. Stat. § 657.176(2)(c) (1987); Ponder v. Employment Dept., 171 Ore. App. 435, 15 P.3d 602, 604 (Or. Ct. App. 2000). No reasonable juror could believe Jones voluntarily resigned from Marys Peak. See Anderson, 477 U.S. at 249 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

The next question is whether Jones has presented prima facie evidence that Keith's statements caused damage to his reputation. This is not a case of defamation *per se*, where damages are recoverable without proof of actual damages. See Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977). [HN6] Along with charges of a crime, imputations of a loathsome disease, and unchastity, statements affecting a person's conduct of business, trade, or profession may be actionable without proof of damages. Id. However, the words must be peculiarly harmful to the person in his business. Id. Stating that a person [*11] has been fired does not constitute defamation *per se* because the fact does not necessarily injure or discredit the discharged employee. See Fairbanks Pub. Co. v. Pitka, 445 P.2d 685, 689 (Alaska 1968) ("assertion that one had been fired from his employment is not defamatory *per se*"); see also Estate of Martineau v. ARCO Chemical Co., 203 F.3d 904, 913-14 (5th Cir. 2000); Sangston v. Ridge Country Club, 1992 U.S. Dist. LEXIS 16473, No. 92-1981, 1992 WL 317138, at *4

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 5 of 19

Page 5
2002 U.S. Dist. LEXIS 3365, *

(N.D. Ill. 1992), aff'd, 35 F.3d 568 (7th Cir. 1994). Defamation *per se* is limited to certain types of statements which are so harmful that damages will be presumed.

Jones fails to demonstrate that Keith's statement to Northwest caused him damage. Northwest's decision to discharge Jones was a result of its own investigation. Keith's report merely prompted Northwest's investigation of Jones. Northwest's policies mandate an investigation into allegations of sexual harassment. After assessing the evidence collected during the inquiry, Northwest reached its own conclusions regarding Jones' honesty on his employment application.

Moreover, even assuming Jones were able to establish [*12] a prima facie case of defamation, a qualified privilege shields Keith from liability under the circumstances. [HN7] Qualified privileges attach to a broad range of circumstances where the interest in shielding the defendant from defamation liability is considered worthy of protection. *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 328 (Minn. 2000) (citations omitted). A qualified privilege applies when a court determines that "statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory." *Lewis*, 389 N.W.2d at 889. A statement enjoys a qualified privileged "if made upon proper occasion, from a proper motive, and based upon reasonable or probable cause." *Bauer v. State of Minnesota*, 511 N.W.2d 447, 449 (Minn. 1994) (citing *Stuempges*, 297 N.W.2d at 256-57).

Employees should not be intimidated from reporting sexual harassment by the specter of a defamation lawsuit. [HN8] Communications involving investigations into employee misconduct have long been shielded by the qualified privilege. *See McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 235 N.W.2d 371, 374 (Minn. 1975) [*13] This privilege is based upon the employer's "important interest in protecting itself and the public against dishonest or otherwise harmful employees." *Id.* Keith reported the harassing phone call and her prior encounters with Jones pursuant to Northwest's sexual harassment policy. As such, Keith's statements are protected by a qualified privilege. *See Lee v. Metro. Airport Comm'n*, 428 N.W.2d 815, 819 (Minn. Ct. App. 1988). Defamation litigation must not be allowed to undermine the public policy of eliminating sexual harassment from the workplace.

[HN9] Employees may not abuse this qualified privilege to report harassment. A showing of common law malice, ill will, or improper motive may nullify a qualified privilege. *See Moreno*, 610 N.W.2d at 328 (citations omitted). Malice is defined as "actual ill-will or a design causelessly and wantonly to injure plaintiff." *Bol v. Cole*, 561 N.W.2d 143, 150 (Minn. 1997). Jones has failed to set forth sufficient evidence creating a genuine issue as to whether any of Keith's statements to Northwest were the result of ill will and improper motives, or causelessly and wantonly with the intention of injuring [*14] him. Before reporting the incident to Northwest, Keith sought the advice of senior pilots without mentioning Jones' name. Keith understood the serious nature of her allegations. Northwest's sexual harassment policy provides that employees may be fired for filing a false harassment complaint. *See* Tice Aff. Ex. D, at 6. Keith did not abuse the qualified privilege. Summary judgment on Jones' defamation claim is granted.

### B. Tortious interference with contract

[HN10] To state a claim for tortious interference with contractual relations, Jones must show that "(1) a contract existed; (2) the alleged wrongdoer had knowledge of the contract; (3) the alleged wrongdoer intentionally interfered with the contract; (4) the alleged wrongdoer's actions were not justified; and (5) damages were sustained as a result." *Guinness Import Co. v. Mark VII Distribut., Inc.*, 153 F.3d 607, 613 (8th Cir. 1998) (citing *Sip-Top, Inc. v. Ekco Group, Inc.*, 86 F.3d 827, 832 (8th Cir. 1996) (applying Minnesota law)); *see also Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994). Minnesota has not recognized a tortious interference cause of action against a co-employee, [*15] such as Keith. The Minnesota Court of Appeals held that, as a matter of law, a tortious interference claim against a co-employee does not exist. *Nordling v. Northern States Power Co.*, 465 N.W.2d 81, 87 (Minn. Ct. App.), *rev'd on other grounds*, 478 N.W.2d 498 (Minn. 1991). On appeal in the same case, the Minnesota Supreme Court affirmed the dismissal of the tortious interference with contract claim against the co-employee. *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn. 1991). The Supreme Court stated that "whether a tortious interference claim against a co-employee--*i.e.*, an employee without any supervisory role over plaintiff--might ever lie, we need not decide." *Id.* The decision was based on the theory that a co-employee's conduct could not have caused the plaintiff's dismissal by a supervisor. *Id.*

There is no authority or factual predicate to support a cause of action for tortious interference with a contract against a co-employee in this case. Because Keith did not have any supervisory authority over Jones, she lacked the capacity to cause his discharge. Keith reported sexual harassment pursuant [*16] to Northwest's policies. Northwest decided to fire Jones based on its own investigation into the matter and its conclusion that Jones had falsified his employment application. Northwest made the decision to terminate Jones. Summary judgment is granted.

### C. Intentional infliction of emotional distress

[HN11] To establish a claim for intentional infliction of emotional distress, Jones must show that Defendant intentionally or recklessly engaged in extreme and outrageous conduct, causing him emotional distress, and the distress was severe. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). The Minnesota Supreme Court has underscored the limited scope of such claims and warned that they are "sharply limited to cases involving particularly egregious facts." *Id.* at 438-39. Indeed, Jones must identify conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.*

Jones merely presents conclusory assertions that Keith's statements to Northwest constitute intentional, extreme and outrageous conduct. Keith's actions do not rise to the level of extreme and outrageous [*17] conduct. *See Meleen v. Hazelden Found.*, 740 F. Supp. 687, 694 (D. Minn. 1990); *Pecore v. Lewis Truck Lines, Inc.*, 3 Am. Disabilities Cas. (BNA) 623, No. C9-92-14559, 1994 WL 517621, at *2 (Minn. Dist. Ct., May 9, 1994). Jones admitted that he has not been treated for any emotional, mental, or psychological problems. *See* Jones Dep., at 20. Because no genuine issue of material fact exists regarding Jones' claim of intentional infliction of emotional distress, summary judgment is granted.

### IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Margaret Keith's Motion for Summary Judgment [Doc. No. 131] is **GRANTED**.

BY THE COURT:

ANN D. MONTGOMERY

UNITED STATES DISTRICT JUDGE

Dated: February 25, 2002.

LEXSEE 2005 DEL. LEXIS 194

TIMOTHY J. MEADES, SR., Plaintiff Below, Appellant, v. WILMINGTON HOUSING AUTHORITY and FRED PURNELL, Defendants Below, Appellees.

No. 376, 2004

SUPREME COURT OF DELAWARE

2005 Del. LEXIS 194; 22 I.E.R. Cas. (BNA) 1720

February 18, 2005, Submitted
May 12, 2005, Decided

NOTICE: [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT OT REVISION OR WITHDRAWAL.

PRIOR HISTORY: Court Below--Superior Court of the State of Delaware, in and for New Castle County in C.A. No. 03C-05-013. *Meades v. Wilmington Hous Auth., 2004 Del. Super. LEXIS 250 (Del. Super. Ct., July 30, 2004)*

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff former employee sued defendant housing authority, alleging, among other things, defamation. The Superior Court of the State of Delaware, in and for New Castle County, dismissed the complaint. The former employee appealed.

OVERVIEW: The amended complaint alleged that the housing authority initiated two criminal investigations of the former employee without evidence or justification. The trial court dismissed the complaint pursuant to Del. Super. Ct. R. Civ. P. 12(b)(6) for failure to state a claim. The trial court found that the housing authority's communications, specifically those involved in the former employee's termination and those made to law enforcement personnel, were protected by a conditional privilege not waived or forfeited. With respect to the other communications the housing authority allegedly made to its staff and residents and to the former employee's friends and family, the trial court found that the amended complaint failed to make sufficient allegations to support a defamation claim. The appellate court held that, if a conditional privilege was abused, it may be waived or forfeited. Also, the affirmative defense of conditional privilege was not properly considered in the context of a Del. Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss. The allegations of the amended complaint were sufficient to state a claim that the housing authority abused its conditional privilege.

OUTCOME: The judgment was reversed, and the case was remanded.

LexisNexis(R) Headnotes

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] An appellate court reviews de novo a superior court's Del. Super. Ct. R. Civ. P. 12(b)(6) dismissal of a complaint for failure to state a claim.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] A dismissal under Del. Super. Ct. R. Civ. P. 12(b)(6) is appropriate only where it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief. The court must draw all reasonable inferences in favor of the plaintiff.

*Torts > Defamation & Invasion of Privacy > Defamation Actions*

*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN3] In Delaware, a communication is defamatory if it tends to harm the reputation of another as to lower the person in the estimation of the community or to deter others from associating or dealing with the person. For statements made in certain contexts, however, conditional privilege is an affirmative defense to a prima facie case of defamation.

*Torts > Defamation & Invasion of Privacy > Defamation Actions*
[HN4] The four categories of presumed actionable defamatory statements are statements that (a) malign one in a trade, business, or profession, (b) impute a crime, (c) imply that one has a loathesome disease, and (d) impute the unchastity of a woman.

*Evidence > Procedural Considerations > Burdens of Proof*
*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN5] A conditional privilege must be exercised with good faith, without malice and absent any knowledge of falsity or desire to cause harm. If the conditional privilege is abused, the benefit of the privilege may be waived or forfeited. Upon a finding of conditional privilege, the burden shifts to the plaintiff to show abuse of the privilege. Whether a conditional privilege has been abused is ordinarily a question of fact.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Torts > Defamation & Invasion of Privacy > Qualified Privileges*
[HN6] The affirmative defense of conditional privilege may not be considered in the context of a motion to dismiss pursuant to Del. Super. Ct. R. Civ. P. 12(b)(6).

**JUDGES:** Before HOLLAND, BERGER and RIDGELY, Justices.

**OPINIONBY:** Carolyn Berger

**OPINION: ORDER**

This 12th day of May 2005, upon consideration of the briefs of the parties, it appears to the Court that:

(1) The pro se appellant, Timothy J. Meades, Sr., was employed as a district supervisor with appellee, Wilmington Housing Authority (WHA). n1 On May 3, 2001, WHA fired Meades. An arbitrator later determined that WHA had just cause to terminate Meades' employment. n2

> n1 Appellee, Fred Purnell, is the Executive Director of the Wilmington Housing Authority. This Order refers to the appellees collectively as "WHA."
>
> n2 *AFSCME Local Union 563 v. Wilmington Housing Auth.*, Am. Arbitration Ass'n, No. 143900083601 (June 6, 2002) (Terner, Arb.) (finding that Meades was guilty of neglect of duties, gross incompetency, carelessness and poor job performance).

[\*2]

(2) In July 2002, Meades filed an action to vacate the arbitration award. By opinion issued on March 6, 2003, the Court of Chancery granted WHA's motion for judgment on the pleadings and upheld the award. n3

> n3 *Meades v. Wilmington Hous. Auth.*, 2003 Del. Ch. LEXIS 20, 2003 WL 939863 (Del. Ch.).

(3) On May 2, 2003, Meades filed a complaint in the Superior Court. Meades alleged that WHA had wrongfully terminated him and had falsely accused him of mishandling WHA funds and misappropriating WHA property. Meades sought a judgment against WHA for "wrongful termination, loss of wages, loss of benefits, defamation of character, emotional distress and punitive damages." WHA filed a motion to dismiss.

(4) At a hearing on WHA's motion to dismiss on November 24, 2003, the Superior Court ruled that Meades' wrongful termination claim was barred under the doctrine of res judicata. n4 The Superior Court granted Meades 30 days to file an amended complaint setting forth the details of his defamation claim.

> n4 *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001). "It is well-settled that a plaintiff who receives a decision on the merits of a controversy from a court of competent jurisdiction is precluded thereafter by the doctrine of *res judicata* from bringing a subsequent action in another court based upon the same matter." *Town-*

*send v. Chasanov, 1995 Del. LEXIS 367, 1995 WL 622452 (Del. Supr.).*

[*3]

(5) In an amended complaint filed on December 23, 2003, Meades again alleged that WHA had falsely accused him of having mishandled WHA funds and misappropriated WHA property. Specifically, Meades claimed that WHA defamed him in (a) a written communication that was distributed to persons involved in the termination process; (b) statements that were directed to the Wilmington Police Department and the Federal Bureau of Investigation; and (c) statements that were directed to WHA staff and residents and to Meades' family and friends.

(6) WHA filed a motion to dismiss the amended complaint pursuant to Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Meades filed an answer in opposition to the motion, and the Superior Court held a hearing.

(7) By memorandum opinion dated July 30, 2004, the Superior Court granted WHA's motion and dismissed Meades' complaint pursuant to Rule 12(b)(6) for failure to state a claim. The Superior Court determined that WHA's communications, specifically to those involved in Meades' termination and to law enforcement personnel, were protected by conditional privilege that WHA had not waived or forfeited. With [*4] respect to the other communications that WHA allegedly made to its staff and residents and to Meades' friends and family, the Superior Court determined that the amended complaint failed to make sufficient allegations of fact to support a claim of defamation.

(8) [HN1] The Court reviews de novo the Superior Court's Rule 12(b)(6) dismissal of a complaint for failure to state a claim. n5 [HN2] A dismissal under Rule 12(b)(6) is appropriate only where it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief. n6 The Court must draw all reasonable inferences in favor of the plaintiff. n7

n5 *Ramunno v. Cawley, 705 A.2d 1029, 1034 (Del. 1998).*

n6 *Id.*

n7 *Id.*

(9) [HN3] In Delaware, a communication is defamatory if it tends to harm the reputation of another as to lower the person in the estimation of the community or to deter others from associating or dealing with the person. n8 For statements made in certain contexts, however, conditional [*5] privilege is an affirmative defense to a prima facie case of defamation. n9

n8 *Spence v. Funk, 396 A.2d 967, 969 (Del. 1978).*

n9 *Pierce v. Burns, 55 Del. 166, 185 A.2d 477, 479, 5 Storey 166 (Del. 1962)*

(10) The defamation alleged in this case, *i.e.*, that WHA communicated false information that imputed crimes to Meades, falls into one of four categories of defamation that are presumed actionable. n10 Nonetheless, the Superior Court dismissed Meades' claim on the basis that WHA was shielded from liability by conditional privilege.

n10 *Spence v. Funk, 396 A.2d 967, 970 (Del. 1978)* (discussing [HN4] the four categories of presumed actionable defamatory statements, *i.e.*, statements that (a) "malign one in a trade, business or profession," (b) "impute a crime," (c) "imply that one has a loathsome disease," and (d) "impute the unchastity of a woman").

[*6]

(11) [HN5] A conditional privilege must be exercised "with good faith, without malice and absent any knowledge of falsity or desire to cause harm." n11 If the conditional privilege is abused, the benefit of the privilege may be waived or forfeited. n12 Upon a finding of conditional privilege, the burden shifts to the plaintiff to show abuse of the privilege. n13 Whether a conditional privilege has been abused is ordinarily a question of fact. n14

n11 *Burr v. Atlantic Aviation Corp., 348 A.2d 179, 181 (Del. 1975).*

n12 *See Id.* (discussing abuse of conditional privilege (a) by excessive or improper publication, (b) by use of the privilege for an improper purpose, or (c) when a statement is made which the speaker knows is false).

n13 *Henry v. Delaware Law School of Widener, 1998 Del. Ch. LEXIS 7, 1998 WL 15897 (Del. Ch.), aff'd, 718 A.2d 527, 1998 WL 609682 (Del. Supr.).*

n14 *Burr v. Atlantic Aviation Corp., 348 A.2d 179, 181 (Del. 1975).*

(12) This Court has held that [HN6] the affirmative [*7] defense of conditional privilege may not be considered in the context of a motion to dismiss pursuant to Rule 12(b)(6). n15 Here, the Amended Complaint alleges that WHA initiated two criminal investigations without any evidence or justification to do so. This allegation is sufficient to state a claim that WHA abused its conditional privilege.

n15 *Klein v. Sunbeam*, 47 Del. 526, 8 Terry 526, 94 A.2d 385, 392 (1952).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED, and the case is remanded for further proceedings consistent with this Order.

BY THE COURT:

/s/ Carolyn Berger

Justice

LEXSEE 2000 U.S. DIST. LEXIS 20251

CHRISTOPHER MOSLEY, PLAINTIFF, v. BAY SHIP MANAGEMENT, INC., ROBERT C. WATTAM and THE UNITED STATES OF AMERICA, DEFENDANTS.

CIVIL ACTION NO: 00-2306 (JCL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*174 F. Supp. 2d 192; 2000 U.S. Dist. LEXIS 20251; 85 Fair Empl. Prac. Cas. (BNA) 101*

December 27, 2000, Decided
December 27, 2000, Filed

**DISPOSITION:** [**1] Defendants' motion for summary judgment against the plaintiff on Counts One through Six, which subject to the plaintiff's release, granted; and Defendants' motion to dismiss the Seventh Count of plaintiff's complaint, alleging violations of Maryland law, granted; and Defendants' motion to dismiss the Eighth Count of plaintiff's complaint, alleging breach of contract of which he a third-party beneficiary, denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, who was chief steward on a ship operated by defendant corporation, and of which defendant captain was plaintiff's supervisor, sued defendants for federal and state civil rights violations, on account of plaintiff's race, including wrongful termination of his employment. Defendants moved for summary judgment.

**OVERVIEW:** The court granted summary judgment on all claims except for breach of the corporation's contract with the United States (as shipowner) to observe civil rights laws, of which plaintiff alleged he was a beneficiary. The court dismissed the following claims: (1) wrongful discharge and hostile work environment under Title VII of the Civil Rights Act of 1964 (Title VII), *42 U.S.C.S. § 1981,* and state law, as plaintiff had freely and knowingly signed a valid release of those claims, in consideration of the corporation's dropping charges against plaintiff and giving the reason for discharge as "mutual consent;" (2) Title VII claim against the captain, as employees could not be liable under Title VII; and (3) tortious interference with contract, as the corporation could not be liable for interference with its own contract, nor could the captain be liable as a supervisor acting within the scope of his employment.

**OUTCOME:** The court granted defendants' motion for summary judgment, except for denying the motion on plaintiff's third party beneficiary claim. Plaintiff validly released his federal and state civil rights claims. Defendants could not be liable, as contracting party and supervisor, for tortious interference with contract.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] A court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] For purposes of summary judgment, the burden of showing that no genuine issue of material fact exists rests initially on the moving party. A litigant may discharge this burden by exposing the absence of evidence to support the nonmoving party's case. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

[HN3] Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The substantive law determines which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN4] A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint. In considering such a motion, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. While a court must assume the alleged facts are true, it is not proper to assume that a plaintiff can prove facts not alleged. A court may, however, consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
[HN5] The standard for determining the validity of a release is the "totality of circumstances," but the United States Court of Appeals for the Third Circuit has established the factors which a court may consider. Relevant factors in reviewing the totality of circumstances include, but are not limited to, the following considerations: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether the plaintiff knew or should have known his rights upon execution of the release; (5) whether the plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
[HN6] The United States Court of Appeals for the Third Circuit has emphasized that clarity of the language is not as relevant as the comprehension of the terms by the person waiving their civil rights.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
[HN7] The Appellate Division of the New Jersey Superior Court has adopted the totality of the circumstances test for analysis of releases established by the United States Court of Appeals for the Third Circuit in prior case law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN8] An opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief, without more, to create the existence of a genuine issue of material fact.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
[HN9] Economic pressure alone is not enough to constitute duress rendering an otherwise valid release void.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964*
[HN10] Individual employees may not be held liable under Title VII of the Civil Rights Act of 1964.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement*
[HN11] The issuance of an Equal Employment Opportunity Commission (EEOC) right-to-sue letter is not a jurisdictional prerequisite to a Title VII of the Civil Rights Act of 1964 claim. Indeed, the Court of Appeals for the Third Circuit has held that the failure to obtain a right-to-sue letter is curable at any point during the pendency of the action, because the court will not penalize a party for the EEOC's failure to follow up on discharge charges or an attorney's failure to obtain right-to-sue letters.

*Governments > Legislation > Statutory Remedies & Rights*
[HN12] The New Jersey state courts and the United States District Court for the District of New Jersey have frequently held that the New Jersey Law Against Dis-

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

crimination (LAD) bars common law discrimination claims that are duplicative of the LAD.

*Governments > Legislation > Statutory Remedies & Rights*
[HN13] The New Jersey Law Against Discrimination (LAD) does not necessarily bar all common law causes of action that might be implicated in a LAD action. A plaintiff in appropriate circumstances can pursue an independent action to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action.

*Governments > Legislation > Statutory Remedies & Rights*
[HN14] See N.J. Stat. Ann. § 10:5-27.

*Public Contracts Law > Contract Interpretation > Specifications*
[HN15] Parties contracting with the United States and its agencies are required to observe civil rights laws applicable to performance of the contract.

*Torts > Business & Employment Torts > Interference With a Contract*
[HN16] Under New Jersey law, it is "fundamental" to a cause of action for tortious interference that the claim be directed against defendants who are not parties to the relationship.

*Torts > Business & Employment Torts > Interference With a Contract*
[HN17] Under New Jersey law, a party cannot be guilty of inducing the breach of its own contract.

*Torts > Business & Employment Torts > Interference With a Contract*
[HN18] Claims for tortious interference with a contract brought by an employee against a supervisor acting in the course of his employment must be dismissed. Only when an employee asserts that an officer or agent of a corporation acted outside the scope of his employment and/or for his own personal gain may the employee go forward with his claim for tortious interference. Under New Jersey common law, to be within the scope of employment, the employee's behavior must be actuated, at least in part, by a purpose to serve the master.

COUNSEL: For CHRISTOPHER MOSLEY, plaintiff: HENRY ALAN GLUCKSTERN, MAPLEWOOD, NJ.

For BAY SHIP MANAGEMENT, INC., ROBERT C. WATTAM, defendants: KEVIN P. KOPP, KAUFMAN, BORGEEST & RYAN, NEW YORK, NY.

JUDGES: John C. Lifland, United States District Judge

OPINIONBY: John C. Lifland

OPINION:
[*193] MEMORANDUM AND ORDER

LIFLAND, District Judge

INTRODUCTION

Defendants Bay Ship Management, Inc. ("BSM") and Robert C. Wattam ("Wattam") move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). In their moving papers, the defendants base an argument for dismissal on a release signed by plaintiff [*194] on November 30, 1999. Pursuant to the Court's Order dated October 25, 2000, the defendants' motion for dismissal based on the release will be treated as a motion for [**2] summary judgment. On November 20, 2000, pursuant to the parties' stipulation, the Court ordered dismissal of this action only as to the defendant United States.

For the following reasons, defendants' motion for summary judgment will be granted.

BACKGROUND

BSM is a Delaware corporation which does business in New Jersey. The Antares is a ship owned by the United States of America. BSM operates sea vessels, including the Antares, on behalf of the United States for the Department of Navy's Military Sealift Command. (Complaint P 8) The Antares was based in Baltimore, Maryland. (Complaint P 15)

On May 27, 1997, the plaintiff was employed by BSM in the capacity of Chief Steward on the Antares. Plaintiff and his department were responsible for cleaning the ship and operating the laundry services. As Chief Steward, plaintiff reported to the Master of the ship. Wattam was hired as Master of the Antares in mid-January, 1999. The plaintiff alleges that Wattam did not act in a professional or harmonious manner towards the plaintiff based on plaintiff's skin color. Plaintiff alleges that Wattam only engaged in "the barest minimum amount [of conversation] necessary [**3] to communicate his orders." (Complaint P 27) According to plaintiff, this lead to "an un-natural, counter-productive, and hostile work environment." (Complaint P 27)

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

On September 13, 1999, Wattam terminated plaintiff's employment because, according to the defendants, the plaintiff did not carry out the duties that Wattam had ordered the previous weekend. (Complaint P 31) Plaintiff claims that he was wrongfully discharged by Wattam due to racial discrimination. (Complaint P 52)

The record indicates that on September 13, 1999, the plaintiff filed a grievance report which is formally labeled the "Beef Report." In the Beef Report, plaintiff wrote that his "Beef Question" was: "being discharged under racial conditions, being discharged by unfair practice." (Defendant's Motion for Summary Judgment, Exhibit A) Dennis Metz was the official port agent who received the report. He made the following notes: "member filed beef 'report' on the above date, but had no statement or rebutle [sic] to refute the discharge. Could, at this time give me nothing to work with. Member will prepare a statement so that I may properly handle this grievance." (Defendant's Motion for Summary Judgment, Exhibit [**4] A) On September 14, 1999, the plaintiff made a subsequent statement in which he discussed the abusive attitude of Wattam and explained that "my department always seems to get jumped on about overtime and job performance. Maybe this is the time to mention that my department is all black (African Americans)." (Mosley Affidavit, Exhibit B, p. 4) Plaintiff supplemented this statement on September 17, 1999. (Mosley Affidavit, Exhibit C). In his third statement, plaintiff states: "I feel like Capt. Wattam should be trained in how to deal with Blacks. If his problem with blacks is more deeply rooted than that which can be corrected, then he should not be in the position as Captain of a vessel. Also in this particular day and age to have such prejudice openly displayed is beyond belief." (Mosley Affidavit, Exhibit C, p. 2)

A Port Committee hearing was conducted on November 30, 1999. At the hearing, two representatives of the Seafarers International Union ("SIU"), Steve Ruiz and Dennis Metz, were present. (Mosley Affidavit [*195] P 23) Plaintiff was not represented by counsel. Plaintiff prepared and signed a hand-written agreement on November 30, 1999 which states: "I Christopher Mosley 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 have [**5] agree [sic] to drop my beef against Bayship Management--that they drop the charges and agree to have quit on mutual consent." (Mosley Affidavit, Exhibit E) Following the hearing, Mr. Mosley received a copy of Dennis Metz's letter to BSM explaining the November 30, 1999 proceedings: "The Co. agreed to at the time of this meeting, to consider Mr. Mosley's mutual consent with reguard [sic] to his discharge for cause. As a result Bay Ship Mgt. will drop any MIB and/or pending SAB charges. This agreement should conclude the incident/issue. Mr. Mosley as a result, is dropping any and all grievances relative to this matter." (Mosley Affidavit, Exhibit F)

Plaintiff then filed a complaint with the EEOC alleging racial discrimination claims against Wattam. BSM was not specifically named in the complaint to the EEOC. The plaintiff's exact words were: "I was employed as a Merchant Seaman on May 28, 1997, as the Chief Steward on board the USNS Antares. I was discharged from employment on September 13, 1999. I believe I have been discharged because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended." (Mosley Affidavit, Exhibit I) The EEOC sent plaintiff [**6] a right to sue letter dated January 27, 2000.

On May 12, 2000, plaintiff filed a complaint in this Court claiming that defendants' discriminatory practices violated Title VII, *42 U.S.C. § 1981*, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. Specifically, the plaintiff's complaint makes the following claims:

1. Plaintiff was wrongfully discriminated against as an African American in violation of Title VII, the New Jersey Law Against Discrimination ("NJLAD") and the Maryland Commission of Human Rights Law. (Complaint P 51-66)

2. Defendants violated *42 U.S.C. § 1981* by creating and maintaining a hostile work environment. (Complaint P 67-77)

3. Plaintiff was wrongfully discharged in violation of Title VII. (Complaint P 78-84)

4. Defendants violated Title VII by creating and maintaining a hostile work environment. (Complaint P 85-89)

5. Defendants violated NJLAD by wrongfully discharging the plaintiff. (Complaint P 90-97)

6. Defendants violated NJLAD by creating and maintaining a hostile work environment. (Complaint P 98-103)

7. Defendants violated Article 49B by creating and maintaining [**7] a hostile work environment. (Complaint P 104-109)

8. Defendants interfered with the contract between the United States and BSM to which plaintiff is a third-party beneficiary. (Complaint P 110-114)

9. United States negligently delegated and entrusted the operation of the Antares by BSM. (Complaint P 115-117)

**STANDARD OF REVIEW**

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 15 of 19

Page 5

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

A. Summary Judgment

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). However, [HN1] a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material [*196] fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). [HN2] The burden of showing that no genuine issue of material fact exists rests initially on the moving party. See *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. [**8] In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

[HN3] Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. See *id.* at 249.

B. Motion to Dismiss under Rule 12(b)(6)

[HN4] A motion to [**9] dismiss for failure to state a claim serves to test the sufficiency of the complaint. See *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In considering such a motion, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See *Warth v. Seldin*, 422 U.S. 490, 501, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1988); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984). A court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982). While a court must assume the alleged facts are true, it is not proper to assume that a plaintiff can prove facts not alleged. See *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 420 (D.N.J. 1994). [**10] A court may, however, consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See *Pension Ben. Guar. Corp. v. White Consol. Ind.*, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 126 L. Ed. 2d 655, 114 S. Ct. 687 (1994).

DISCUSSION

A. Summary Judgment on Claims Subject to Release

The defendants argue that plaintiff's claims of wrongful discharge in violation of Title VII, 42 U.S.C. § 1981, and NJLAD should be dismissed because plaintiff signed a waiver of his right to bring all wrongful discharge claims by preparing and signing the release at the Port Committee Hearing on November 30, 1999.

[HN5] The standard for determining the validity of a release is the "totality of circumstances," but the Court of Appeals [*197] for the Third Circuit has established the factors which a court may consider:

> relevant factors in reviewing the totality of circumstances include, but are not limited to, the following considerations: (1) the clarity and specificity of the release language; [**11] (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988), superseded by statute as stated in *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (holding that the factors established in Cirillo were no longer applicable to alleged waiver of ADEA rights because new legislation (the Older Workers Benefit Protec-

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 16 of 19

Page 6

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

tion Act (OWBPA)) requires specific formalities when executing a release of liability under the ADEA).

A recent decision from the United States District Court for the District of New Jersey applied the Cirillo factors to a situation similar to [**12] this case. See *Riddell v. Medical Inter-Ins Exch., 18 F. Supp. 2d 468 (D.N.J. 1998)*. The plaintiff in Riddle was charging her former employer with violations of the NJLAD. The Court held that "the agreement itself could have made a finding of a valid waiver more likely if the Release language: (1) was more prominent; (2) identified the rights being waived; and (3) informed Riddell that she had time to deliberate and a right to consult with an attorney." *Id. at 474.*

In this case, an application of the Cirillo factors demonstrates that the release signed by Plaintiff does satisfy the "totality of circumstances" standard. Plaintiff signed a handwritten statement that he would drop his "beef" against BSM. Although the word "beef" is not legalistic, it is clear. [HN6] The Court of Appeals for the Third Circuit has emphasized that clarity of the language is not as relevant as the comprehension of the terms by the person waiving their civil rights. See *Coventry v. United States Steel Corp., 856 F.2d 514, 522-24 (3d Cir. 1988)* (acknowledging the importance of a contract law analysis regarding the ambiguity of terms but requiring a more [**13] thorough analysis of the totality of circumstances involved in signing a waiver).

Therefore, the main issue in this case is whether plaintiff knew that his "beef" against BSM included charges of discrimination. Plaintiff initiated the Port Committee Hearing by filing a grievance with the SIU. (Mosley Affidavit. Exhibits B and C) Plaintiff's initial statement in the formal Beef Report states that he was discharged due to racial discrimination and unfair practice. In his subsequent statements to the SIU, plaintiff mentions his suspicions that Wattam was treating him disparately due to plaintiff's African American heritage. Accordingly, plaintiff lodged a grievance regarding discriminatory conduct on the Antares. For plaintiff to claim he did not know that dropping his "beef" against BSM included dropping racial discrimination charges is disingenuous. Defendants point out that plaintiff understood the significance of a Beef Report because he filed a similar report in 1980 to lodge a grievance involving a passport. (Defendants' Memorandum of Law in Further Support of Motion for Summary Judgment, [*198] Exhibit B). Accordingly, when plaintiff agreed to drop his "beef" against the defendants, [**14] he knowingly and voluntarily waived his right to bring subsequent litigation.

[HN7] The Appellate Division of the New Jersey Superior Court has adopted the totality of the circumstances test established by the Court of Appeals for the Third Circuit in Coventry and Cirillo. See *Swarts v. Sherwin-Williams Co., 244 N.J. Super. 170, 581 A.2d 1328 (App Div. 1990)*; see also *Keelan v. Bell Communications Research, 289 N.J. Super. 531, 674 A.2d 603 (App Div. 1996)*. Consequently, the Court's analysis set forth above also shows that plaintiff executed a knowing and voluntary release of his claims under the NJLAD.

The plaintiff argues that he was not given the opportunity to consult with counsel. However, the record does not indicate that plaintiff was prohibited from seeking the aid of counsel. Dennis Metz and Steven Ruiz from the SIU were present to assist plaintiff. An examination of the official "Beef Report" reveals that the SIU representatives and plaintiff understood the association of the term "beef" with formal grievances against an employer.

Plaintiff next argues that he was unaware his Title VII claims were waived. However, plaintiff's subjective belief [**15] is insufficient to sustain his complaint. In Swarts, the court affirmed the trial court's grant of summary judgment for the defendant employer because the plaintiff was unable to establish a genuine issue of material fact. The plaintiff in Swarts had submitted a letter of grievance to his employer alleging forced retirement based on age discrimination. Subsequently, the plaintiff signed a release of any claims against his employer in consideration for payment of retirement benefits. In an affidavit filed later, the plaintiff claimed that he was unaware he was waiving his right to sue his employer for age discrimination. In affirming summary judgment, the court held that

> [HN8]
> an opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief, without more, to create the existence of a genuine issue of material fact. In this instance, plaintiff seeks to establish a genuine issue of material fact by asserting in an "affidavit" he did not intend to waive his age discrimination rights when he signed the release. Yet, acceptance of that representation would allow defeat of the summary judgment motion based on a misguided subjective belief. [**16] At the time he signed the release, it is undisputed he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department. What his unexpressed intention was is irrelevant. To draw any conclusion other than that he was fully aware of his age discrimination rights would belie logic and undermine the appropriate-

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

ness of the summary judgment process as well as undermine the voluntary settlement process.

*Swarts*, 244 N.J. Super at 178 (citing *Cirillo*, 862 F.2d at 452-53). Under Swarts, the plaintiff in this case cannot defeat summary judgment based on his mistaken belief that the release did not include allegations of racial discrimination. The evidence of plaintiff's racial discrimination accusations against defendants in his initial "Beef Report" cannot be overcome by the plaintiff's alleged subjective belief that they were not what they clearly were.

The defendants next attack the plaintiff's argument that the release was signed under duress. Plaintiff contends that he was forced to execute the release [*199] because he would not be able to obtain employment if the circumstances [**17] of his termination were categorized as wrongful discharge. Both the Court of Appeals for the Third Circuit and the New Jersey Appellate Division have held that [HN9] "economic pressure alone is not enough to constitute duress rendering an otherwise valid release void." *Keelan v. Bell Communications Research*, 289 N.J. Super 531, 548, 674 A.2d 603 (App Div 1996) (citing *Three Rivers Motors Co v Ford Motor Co*, 522 F.2d 885 (3d Cir 1975); *The Adonis*, 38 F.2d 743, 744 (3d Cir 1930), *Killian v McCulloch*, 873 F. Supp. 938, 943 (E.D. Pa 1995), *Reed v. SmithKline Beckman Corp*, 569 F. Supp. 672, 674 (E.D. Pa 1983)) In Keelan, the court rejected plaintiff's claim that he was under duress due to financial distress. See also *Swarts*, 244 N.J. Super at 179 (rejecting plaintiff's assertion that he had to sign the release under the duress of "sign or starve"). Accordingly, plaintiff's argument that he was forced to sign the release lacks merit. In fact, plaintiff received negotiated consideration for signing the release because BSM altered the reason for termination from "with cause" to "mutual [**18] consent," and BSM agreed to drop any charges against the plaintiff.

B. Dismissal of Claims based on Maryland Law

The plaintiff's opposition brief admits that the mention of Maryland law in the complaint was misplaced. Therefore, the plaintiff agrees to the dismissal of Claim 7 in its entirety, as well as dismissal of Paragraph 58 of Claim 1. (Plaintiff's Brief at p. 29 P 1)

C. Dismissal of Claims under the NJLAD

The defendants argue that the plaintiff is not entitled to protection under the NJLAD because the plaintiff has no connection to New Jersey. The plaintiff responds that New Jersey has a governmental interest in protecting non-inhabitants from discriminatory conduct violating the NJLAD by a corporation which does business in New Jersey. According to the record, plaintiff is a citizen of Pennsylvania and defendant BSM is a Delaware corporation. The alleged discriminatory conduct occurred in Maryland. Therefore, it seems that the facts of this case suggest little reason to apply the NJLAD. However, the Court need not address defendants' argument regarding the applicability of the NJLAD because this Court has already decided to grant defendants' motion for [**19] summary judgment.

D. Dismissal of Title VII Claims against Wattam

Defendants next argue that plaintiff's Title VII claim should be dismissed with respect to defendant Wattam because Title VII does not contemplate liability of individual employees. Defendants properly note that the Court of Appeals for the Third Circuit, like the majority of Circuits, has held that [HN10] individual employees may not be held liable under Title VII. See *Sheridan v. E.I. DuPont Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996), cert. denied, 521 U.S. 1129, 138 L. Ed. 2d 1031, 117 S. Ct. 2532 (1997) ("Congress did not intend to hold individual employees liable under Title VII."); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) (holding that individual employees cannot be held liable under Title VII). Plaintiff's argument that individuals may be held liable under Title VII when they act as "agents" of the employer is without merit. In *Kohn v. AT&T Corp.*, 58 F. Supp. 2d 393 (D.N.J. 1999), this Court vigorously rejected that very argument, and instead, citing the holdings of Sheridan and Dici, noted that the [**20] law in the [*200] Third Circuit is "settled" and "dispositive" in foreclosing any possibility of individual liability under Title VII. Kohn at 421; see also *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997). Thus, plaintiff's Title VII claims against individual defendant Wattam must be dismissed.

E. Plaintiff's Failure to Exhaust Administrative Remedies

The defendants argue that the plaintiff did not exhaust all the administrative remedies available because the plaintiff omitted information when he filed his complaint with the EEOC. First, the defendants claim that the plaintiff failed to mention BSM in the EEOC complaint so the EEOC has only investigated Wattam's role in the case. Second, the defendants claim that the plaintiff's hostile work environment claim is barred because plaintiff did not mention the charge of hostile work environment in his filings with the EEOC.

In *Gooding v. Warner-Lambert*, 744 F.2d 354 (3d Cir. 1984), the Court of Appeals for the Third Circuit noted that [HN11] the issuance of an EEOC right-to-sue letter is not a jurisdictional prerequisite to a Title VII claim. *Gooding*, 744 F.2d at 358. [**21] Indeed, the

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

Court of Appeals for the Third Circuit has held that "the failure to obtain a right-to-sue letter... is curable at any point during the pendency of the action" because the court will not "penalize the appellants" for the EEOC's failure to follow up on discharge charges or an attorney's failure to obtain right-to-sue letters. *Anjelino v New York Times Co., 200 F.3d 73, 96 (3d Cir. 1999)*; see also *Gooding, 744 F.2d at 357-59* (eschewing "highly technical pleading rules, which only serve to trap the unwary practitioner," in favor of notice pleading, and reversing dismissal of Title VII action where an EEOC right-to-sue letter issued after complaint was filed); *Ostapowicz v Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)* (holding that "the parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charges of discrimination").

Accordingly, the holding in Anjelino runs contrary to the defendants' argument because the plaintiff could amend his EEOC complaint and cure the alleged failure to exhaust administrative remedies. [**22] However, the Court need not resolve this issue because it has dismissed plaintiff's claims of wrongful discharge and hostile work environment based on the plaintiff's release.

F. Dismissal of Contract Claims

Defendants move to dismiss the Eighth Count of plaintiff's complaint on the grounds that the common law causes of action for breach of contract and tortious interference are "subsumed" by the LAD. Defendants contend that these claims, which stem from the alleged racial discrimination, are duplicative of the LAD and should be dismissed. Upon careful consideration of the statutory language and case law, the Court disagrees.

[HN12] The New Jersey state courts and this Court have frequently held that the LAD bars common law discrimination claims that are duplicative of the LAD. See e.g., *Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 492, 638 A.2d 1341 (App Div 1994)* (holding that supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists); *DeCapua v. Bell Atlantic - New Jersey, Inc., 313 N.J. Super. 110, 128, 712 A.2d 725 (Law Div 1998)* ("Because plaintiff's common-law breach of [**23] contract claim duplicates his statutory claim under New Jersey's LAD, it is barred."); *Mardini v Viking Freight, Inc., 92 F Supp. 2d 378, 382-385 (D.N.J. [*201] 1999)* (dismissing a wrongful termination claim which involved the same elements of discrimination as the LAD claim); *DeJoy v. Comcast Communications, Inc., 941 F. Supp. 468, 476 (D.N.J. 1996)* (finding plaintiff's common law claim preempted by the LAD where plaintiff provided no information showing his common law claim was "different or broader" than his LAD claim).

However, it is clear from the case law and a review of the LAD itself that [HN13] the LAD does not necessarily bar all common law causes of action that might be implicated in an LAD action. In *Shaner v. Horizon Bancorp, 116 N.J. 433, 454, 561 A.2d 1130 (1989)*, the New Jersey Supreme Court noted that "a plaintiff in appropriate circumstances could pursue an independent action... to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action." *Shaner, 116 N.J. at 454*. see also *Dale v Boy Scouts of America, 308 N.J. Super. 516, 543, 706 A.2d 270 (App. Div 1998)* [**24] (internal citations omitted). aff'd *160 N.J. 562, 734 A.2d 1196 (1999)*, rev'd on other grounds, *530 U.S. 640, 120 S. Ct 2446, 147 L. Ed. 2d 554 (2000)*. In the policy declaration accompanying the act, the New Jersey Legislature made clear that it did not intend that the LAD would preempt other causes of action: [The LAD] shall be liberally construed in combination with other protections available under the laws of this State." *N.J STAT. ANN § 10:5-3*: see also, *N.J STAT. ANN § 10:5-13* ("All remedies available in common law tort actions shall be available to prevailing plaintiffs."). Furthermore. § 10:5-27 of the LAD states:

> [HN14]
> Nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination

*N.J STAT. ANN § 10:5-27*. Given the statutory language, this Court finds that the legislature intended that the LAD would supplement, rather than preempt, other causes of action. Therefore, plaintiff's common law claims may not be dismissed.

1. Breach of Contract

Because plaintiff's common law claims [**25] are not preempted, the Court next considers defendants' argument that the Eighth Count of plaintiff's complaint should be dismissed because plaintiff has failed to allege the existence of any third party protections under a valid contract. The complaint alleges that defendant BSM breached its contract with the United States by failing to adhere to its requirement that BSM observe the civil rights laws of the United States, New Jersey and Maryland and that plaintiff was a third-party beneficiary of that contract. Since it is well-known that [HN15] parties contracting with the United States and its agencies are

Case 1:05-cv-00524-SLR    Document 18-3    Filed 12/09/2005    Page 19 of 19

Page 9

174 F. Supp. 2d 192, *; 2000 U.S. Dist. LEXIS 20251, **;
85 Fair Empl. Prac. Cas. (BNA) 101

required to observe civil rights laws applicable to performance of the contract, defendants' motion to dismiss the Eighth Count will be denied n1

n1 It does not appear that defendants seek summary judgment on the Eighth Count based on the release.

2. Tortious Interference

The defendants also move to dismiss the Eighth Count of plaintiff's complaint for tortious interference with the contract between defendants [**26] and the United States Naval Forces. Defendants argue that plaintiff cannot sustain a tortious interference with contract claim because plaintiff has failed to identify any of the [*202] defendants as third parties to the contract. Consequently, defendants contend that plaintiff has failed to state a claim for relief for the Eighth Count in plaintiff's complaint.

New Jersey courts have held that [HN16] it is "'fundamental' to a cause of action for tortious interference . . . that the claim be directed against defendants who are not parties to the relationship." *Printing Mart-Morristown v. Sharp Electronics Corp*, 116 N.J. 739, 752, 563 A.2d 31 (1989). Here, defendant BSM, as plaintiff's employer, was clearly a party to the alleged employment contract with the United States. As a result, BSM cannot be held liable for tortious interference with its own contract. *Custom Communications Eng'g v E F Johnson Co*, 269 N.J. Super. 531, 543, 636 A.2d 80 (App. Div. 1993) (stating that a tortious interference claim must be directed against persons who were not parties to a contract); *Kopp v United Technologies, Inc.*, 223 N.J. Super. 548, 539 A.2d 309 (App. Div. 1988) [**27] [HN17] ("A party cannot be guilty of inducing the breach of its own contract").

[HN18] Claims for tortious interference with a contract brought by an employee against a supervisor (such as Wattam) acting in the course of his employment must be dismissed. *Horvath v Rimtec Corporation*, 2000 U.S. Dist. LEXIS 10128, 2000 WL 1030357, *9 (D.N.J. July 19, 2000). "Only when an employee asserts that an officer or agent of corporation (sic) acted outside the scope of his employment and/or for his own personal gain may the employee go forward with his claim for tortious interference." Id. Under New Jersey common law, "to be within the scope of employment, the employee's behavior must be 'actuated, at least in part, by a purpose to serve the master'" *Di Cosala v. Kay*, 91 N.J. 159, 169, 450 A.2d 508 (1982) (quoting *Restatement (Second) of Agency* § 228 (1957)). Accordingly, plaintiff's allegation that Wattam tortiously interfered with the contract between BSM and the United States must be dismissed. However, the Court has denied defendants' motion to dismiss the Eighth Count as to plaintiff's claim that BSM breached its contract with the United States of which he is a third-party beneficiary.

Accordingly, [**28] **IT IS** on this 27Th day of December, 2000 **ORDERED** that the defendants' motion for summary judgment against the plaintiff on Counts One through Six, which are subject to the plaintiff's release, is granted: and it is further

**ORDERED** that the defendants' motion to dismiss the Seventh Count of plaintiff's complaint, alleging violations of Maryland law, is granted: and it is further

**ORDERED** that defendants' motion to dismiss the Eighth Count of plaintiff's complaint, alleging breach of contract of which he is a third-party beneficiary, is denied.

John C. Lifland

United States District Judge