IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD WILCOXON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) C.A. No. 05-00524 - SLR |
| v. | ) |
| | ) TRIAL BY JURY |
| RED CLAY CONSOLIDATED SCHOOL DISTRICT | ) DEMANDED |
| and JANAY FREEBERY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
### MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (No. 1016)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666, 6553
Facsimile: (302) 576-3345, 3470
Email: bwilloughby@ycst.com;
           mstafford@ycst.com

Dated: March 6, 2006

## Table of Contents

|  | Page |
|---|---|
| ARGUMENT | 1 |
| I. Count III of the Complaint fails to state a First Amendment retaliation claim because Wilcoxon's "speech" did not involve a matter of public concern | 1 |
| II. Count IV of Plaintiff's Complaint must be dismissed because Wilcoxon cannot bring a direct cause of action against the district under Delaware law. | 4 |
| III. Count V of the Complaint must be dismissed because common law actions for discriminatory employment practices are no longer viable in Delaware. | 9 |
| IV. Count VI of the Complaint must be dismissed because sexual harassment complaints are protected by a confidential privilege, and the privilege was not abused. | 11 |
| CONCLUSION | 13 |

TABLE OF AUTHORITIES

Cases ............................................................................................................................. Page

A.G. Karnak Education Trust v. Bowen,
    821 F.2d 1517 (11th Cir. 1987) ................................................................................ 5

Apperson v. Fleet Carrier Corp.,
    866 F.2d 431 (6th Cir. 1989) .................................................................................... 7

Azzaro v. County of Alleghany,
    110 F.3d 968 (3d Cir. 1997) .................................................................................. 1, 4

Brown-Scott v. Hartford Bd. of Educ.,
    51 Fed. Appx. 70 (2d Cir. 2002) ............................................................................. 1

Conneen v. MBNA Am. Bank, N.A.,
    334 F.3d 318 (3d Cir. 2003) .................................................................................. 10

Connick v. Meyers,
    461 U.S. 138 (1983) .............................................................................................. 1, 3

Finch v. Hercules, Inc.,
    809 F. Supp. 309 (D. Del. 1992) ............................................................................ 10

Henry v. The Delaware Law School of Widener University,
    1998 Del. Ch. LEXIS 7 (Del. Ch., Jan. 8, 1998) .................................................... 12

Lord v. Souder
    748 A.2d 393, 401 (Del. 2000) .............................................................................. 10

McCoy v. Sussex County Vocational Technical School District,
    1998 Del. Ch. LEXIS 171 (Del. Ch. Aug. 27, 1998 ............................................ 5, 6, 7

McHugh v. Milford School District, et al,
    100 F. Supp. 2d 231 (D. Del. 2000) ................................................................ 1, 2, 3, 4

Morgan v. Ford
    6 F.3d 750 (11th Cir. 1993) .................................................................................... 1, 3

Roe v. Antle,
    964 F. Supp. 1522 (D.N.M. 1997) .......................................................................... 1

Schuster v. Derocili,
    775 A.2d 1029 ([Del.] 2001 ............................................................................ 9, 11, 12, 13

Zelinski v. Pa. State Police,
    282 F. Supp. 2d 251 (M.D. Pa. 2002), aff'd in rel. part, 108 Fed. Appx. 700 (3d Cir. 2004. 1, 3

**Other Authorities**

14 Del. C. § 1401(c) .................................................................................................. 4

14 Del. C. § 1410 .................................................................................................... 7

14 Del. C. § 1410(b) ........................................................................................ 5, 7, 8

28 U.S.C. § 1367 ..................................................................................................... 9

29 U.S.C. § 1367 ..................................................................................................... 8

29 U.S.C. § 207(a) ................................................................................................... 8

42 U.S.C. § 2000(e) ................................................................................................. 8

42 U.S.C. §1983 ................................................................................................ 8, 10

## ARGUMENT

**I.    Count III of the Complaint fails to state a First Amendment retaliation claim because Wilcoxon's "speech" did not involve a matter of public concern.**

Defendant's Opening Brief pointed out that under Connick v. Meyers, 461 U.S. 138, 147-48 (1983), a public employee's speech is only protected by the First Amendment if it involves a matter of public concern. The question of whether speech is protected is one of law for the Court. Azzaro v. County of Alleghany, 110 F.3d 968, 975 (3d Cir. 1997); McHugh v. Milford School District, et al, 100 F. Supp. 2d 231, 239 (D. Del. 2000). In deciding the issue, the Court looks to the "content, form, and context" of the speech as revealed by the record as a whole. Id. at 240; see also, Connick, 461 U.S. at 147-48. It is also well established that mere personal grievances or disputes do not rise to this level of protected speech. Zelinski v. Pa. State Police, 282 F. Supp. 2d 251, 273 n.22 (M.D. Pa. 2002), aff'd in rel. part, 108 Fed. Appx. 700, 708 (3d Cir. 2004); Brown-Scott v. Hartford Bd. of Educ., 51 Fed. Appx. 70, 71 (2d Cir. 2002) (discrimination complaint did not involve a matter of public concern where it "was focused entirely on her personnel situation and had not been filed to implicate any system-wide problem with" the district); Morgan v. Ford, 6 F.3d 750, 754-55 (11th Cir. 1993) (holding that female employee's complaints of sex harassment were designed to improve her own working conditions, rather than to raise issues of public concern); Roe v. Antle, 964 F. Supp. 1522, 1529 (D.N.M. 1997) ("opposition to discrimination against oneself, because almost exclusively relating to a personal dispute, does not touch on matters of public concern").

Defendant Red Clay's Opening Brief established that given the form, content and context of Plaintiff's alleged speech, Wilcoxon cannot show that he engaged in protected activity. Plaintiff's only argument in support of his First Amendment claim is that the "journal" he kept on his co-worker, Defendant Janay Freebery, constituted protected activity. He argues that his

journal raised matters of public safety and cites this Court's decision in McHugh, 100 F. Supp. 231, claiming that the facts there are "very similar" to this claim. Wilcoxon's argument is without merit.

First, Plaintiff's journal did not constitute "speech" at all under the First Amendment. Indeed, he affirmatively alleges that he kept the journal locked in his office and had no intention of raising complaints. His Complaint specifically states that he began keeping the journal in order to create a record of Ms. Freebery's alleged "absences and actions in a journal *which he kept locked in his office.*" D.I. 1 ¶ 18 (emphasis added). Indeed, Plaintiff's Complaint states that his journal was unknown to the School District until discovered by an Assistant Principal when the Plaintiff was absent from school. D.I. 1 ¶ 19.

It is axiomatic that there must be actual "speech" for the First Amendment's protection to apply. Wilcoxon's private journal cannot and does not constitute "speech" under the First Amendment.

In addition, even if Plaintiff's private journal could somehow be considered speech, under Connick, the form, content, and context of the alleged speech shows that Wilcoxon did not raise a matter of public concern. His Complaint affirmatively alleges that he kept the journal for his own use. There is no allegation that he ever brought it to the School District's attention to raise alleged "public safety" issues. As his Complaint affirmatively alleges, he kept the journal because of his personal grievances against Freebery. D.I. 1 ¶ 17-18.

The form of his alleged speech therefore is of no assistance to him – his alleged statements were in a private journal that he claims he kept locked away from public view. The content of the journal is nothing more than a listing of his personal gripes with a co-worker. See D.I. ¶ 18 (stating that journal contained the "times and dates of Freebery's absences and other

pertinent information about Ms. Freebery's actions and inactions"). His attempt to spin the "book" he kept on Freebery for personal reasons as raising matters of public concern rings hollow.[1] The context of his alleged speech also shows that it did not raise a matter of public concern. His journal came to light because he was absent from work. An Assistant Principal discovered it by accident when he was looking for lesson plans to give a substitute teacher, because of Plaintiff's absence. The context therefore hardly shows that Plaintiff was attempting to act as a so-called "whistle blower." The complaint itself shows that he was affirmatively attempting to keep the journal private.

Accordingly, the form, content, and context of Plaintiff's alleged "speech," assuming that the private journal constitutes speech at all, shows as a matter of law that he did not engage in protected activity under Connick. See e.g. Zelinski, 282 F. Supp. 2d at 273; Brown-Scott, 51 Fed. Appx. at 71; Morgan, 6 F.3d at 754-55; Roe, 964 F. Supp. at 1529.

Furthermore, McHugh does not help Plaintiff's cause. If anything, the case shows a stark contrast between the actions of the employee plaintiff there and those of Wilcoxon here. The plaintiff in McHugh was the Supervisor of Transportation of a school district. He was responsible for administering the school district's bus transportation program and investigating complaints involving safety. He investigated several alleged incidents of alleged misconduct by bus drivers and other issues such as overcrowding of school buses. He reported them to the Superintendent and the Board of Education. After his contract was not renewed, McHugh brought a multiple count complaint in this court alleging, among other things, a First Amendment claim. This Court noted that the question of whether a public employee's

---

[1] Plaintiff's Answering Brief even concedes that he had a personal motive for keeping the private journal. AB at P. 19.

statements address a matter of public concern under Connick is a question of law. Id. at 23 (citing Azzaro 110 F.3d at 975).

In contrast to the events here, McHugh affirmatively raised issue of public safety with his superiors and Board of Education that came within his job responsibility as Supervisor of Transportation.

Wilcoxon's attempt to raise McHugh, is indeed ironic. As his Complaint alleges, he was criticized for failing to advise School District administrators that students he was responsible for needed after-school transportation. He was reprimanded after several warnings about his failure to take appropriate steps. His Complaint simply argues that he was disparately disciplined for admitted misconduct. Nowhere does it allege that he raised school transportation, or for that matter, any other "safety" issues with the School District at any time. McHugh, is therefore inapposite.

## II.   Count IV of Plaintiff's Complaint must be dismissed because Wilcoxon cannot bring a direct cause of action against the district under Delaware law.

Count IV of the Complaint must be dismissed because a non-tenured teacher such as Plaintiff cannot bring a direct cause of action against a school district under Delaware law. Defendants' Opening Brief pointed out that under the Delaware Fair Dismissal Statute, 14 Del. C. § 1401(c), non-tenured teachers have very limited rights. Under the statute, review of the decision not to renew a non-tenured teacher's employment is limited to a hearing before the superintendent of the employing school district. The superintendent's decision is final and conclusive.

Plaintiff's Answering Brief does not deny that his rights are so limited. Further, he does not deny that the decision of the superintendent is "final and conclusive." A private cause

4

seeking judicial review is therefore not permitted. A.G. Karnak Education Trust v. Bowen, 821 F.2d 1517, 1519 (11th Cir. 1987).

Instead, Plaintiff argues that documentation of his misconduct was not "properly placed" in his personnel file thereby rendering it a nullity. His claims are not only legally without merit, but also are based on his disingenuous reliance on only part of the applicable collective bargaining agreement. His reliance on McCoy v. Sussex County Vocational Technical School District, 1998 Del. Ch. LEXIS 171 (Del. Ch. Aug. 27, 1998, is likewise misplaced.

Plaintiff argues that the written warnings he received for various kinds of misconduct were not "properly placed" in his personnel file as that term is used in 14 Del. C. § 1410(b). The statute itself, of course, does not define the meaning of the term "properly placed". Plaintiff cites a portion of the applicable collective bargaining agreement arguing that teachers are entitled to 48 hours prior written notice of the reasons for a meeting with administrative personnel. Count IV of Plaintiff's Complaint, and his Answering Brief, however selectively quote the applicable section of the collective bargaining agreement. Plaintiff referred to Article 4:4.1 of the collective bargaining agreement, but left out the rest of the section. Article 4:4.1 is set forth below:

> If an employee is required to appear before the Board or an agent thereof concerning a matter which could adversely affect his/her continued employment, salary or any increments, he/she will be given prior written notice and specific reasons for such meeting or interview at least forty-eight (48) hours in advance. Any topic not included in the letter will not be covered at said meeting unless agreed to by the employee; if not agreed, it will be discussed at a later date after proper notice has been given. The employee will also be notified in writing of any additional persons who will be present. An employee required to appear in this instance will be entitled to have an Association representative of his/her choice present to advise and to represent him/her during such meeting or interview. Informal discussion with an employee by any member of the administrative staff pertaining to the employee's performance at his/her work location will not be precluded by the preceding language of this section; however, if as a result of such

> informal discussion, the employee perceives that the matter discussed could in the future adversely affect his/her continued employment, salary or increments, the administrator will, upon written request, give the employee reasons in writing for the necessity of waiving the forty-eight (48) hours' written notice prescribed above. This section does not apply to terminations due to declining enrollments and/or to a reduction in education services.

Therefore, it is simply incorrect to claim, as Plaintiff maintains, that the various reprimand letters he received were not "properly placed" in his personnel file, because he did not receive forty-eight (48) hours' notice of the meetings. Moreover, Wilcoxon does not allege that he *ever* requested, in writing, the reasons for waiving the forty-eight (48) hours' notice as set forth in the contract. Of course, he chose not to do so. Further, had his union believed that the contract had been violated, it could have filed a grievance.

The union's failure to file a grievance not only supports the School District's interpretation of the collective bargaining agreement, but also precludes judicial review. His claim in Count IV is not properly before this Court. As such, Count IV of the Complaint must be dismissed.

McCoy v. Sussex County Vocational Technical School District, 1998 Del. Ch. LEXIS 171 (Del. Ch. Aug. 27, 1998), does not aid Plaintiff's case. That case, of course, not only involved a different collective bargaining agreement but also entirely different circumstances. Unlike the present case, the employee's union grieved the question of whether the employee had been appropriately reprimanded. The grievance went to binding arbitration. The arbitrator had found that the defendant school district had failed to give plaintiff notice of meeting as required by the collective bargaining agreement applicable in that case. The arbitrator issued a decision finding that the reprimand letter on which the school district relied was not based on just cause and ordered the defendant to rescind it.

6

Here of course, this union did not grieve the issuance of any of the letters of reprimand to him[2]. Unlike McCoy, Wilcoxon received several reprimands and evaluations of his classroom performance that led the School District not to renew his employment. See Answer, Exhibits B (failure to provide adequate emergency lesson plans for use by substitute during absence), D (failure to secure cash collected from students), and E (inadequate lesson plans). Further, prior to the issue of suit here, there was no binding finding in arbitration that Plaintiff was improperly reprimanded.

Accordingly, there is no basis for judicial review of the Superintendent's decision upholding Wilcoxon's non-renewal. The statute itself provides that the decision of the Superintendent with regard to the non-renewal of a non-tenured teacher is final and binding. If Plaintiff or his union contended that he had not been properly reprimanded, it was up to him to raise the issue with the Superintendent, whose decision is final, or to the union to file a grievance under the collective bargaining agreement. Given the statute's directive that the Superintendent's decision is final and binding, the Court cannot review the question of whether written reprimands were properly placed in Plaintiff's file under a collective bargaining agreement that Plaintiff's union is charged with interpreting and enforcing in the event of a dispute.[3] In the absence of such a grievance, Plaintiff's only remedy is to request a conference before the superintendent of the employing school district as provided in 14 Del. C. § 1410(b).

In addition, Count IV of Plaintiff's Complaint should be dismissed because this Court lacks jurisdiction over the claim. Plaintiff bases his state law action under 14 Del. C. § 1410 on

---

[2] The union obviously understood that a fair reading of Article 4:4:1 supported the District's application of the contract.
[3] Indeed, if Plaintiff contends that the union failed to act properly, his remedy is to file a suit for breach of the duty of fair representation. See e.g. Apperson v. Fleet Carrier Corp., 866 F.2d 431 (6th Cir. 1989).

supplemental jurisdiction under 29 U.S.C. § 1367. His state statutory claim, however, does not meet the standards required for supplemental jurisdiction. Count IV is based solely on Plaintiff's view that certain reprimands, warnings, and evaluations were not "properly placed" in his personnel file under 14 Del. Code § 1410(b). As noted above, this claim is predicated on his view of the applicable collective bargaining agreement. His federal claims, however, are based on alleged gender bias under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq. and a constitutional First Amendment claim under 42 U.S.C. §1983. The operative facts of his federal claim are distinct from the facts of his state law claim under the teacher tenure law. As found by the Third Circuit in Lyon v. Whisman & Associates, P.A., 45 F.3d 758 (3d Cir. 1995), the mere fact that both claims arise from the employment relationship is insufficient.

The facts of Lyon are instructive. The Plaintiff filed a Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207(a) claim alleging that the defendant employer failed to pay her overtime as required by the FLSA. She also brought state law contract and tort claims for an alleged failure to pay a bonus. A jury trial in this Court resulted in a verdict for the plaintiff on all counts. On appeal, the Third Circuit found that the District Court lacked jurisdiction over the claims. The Court pointed out that the issue raised constitutional questions under Article III. Supplemental jurisdiction was not present because the claims did not arise out of a common nucleus of operative facts. The Court pointed out, among other things, that the general employer-employee relationship was not sufficient to establish supplemental jurisdiction. Id. at 763. The Court cited several cases in which supplemental jurisdiction was inappropriate in the employment context where, as in this case, the Plaintiff raised federal employment discrimination claims under Title VII and attempted to bootstrap federal jurisdiction for state law claims based on supplemental jurisdiction. Id. at 763-64

Here, of course, Plaintiff's state teacher tenure law claim is based solely on his view of the meaning of what constitutes proper placement of warnings in his personnel file. The interpretation of the statute is a state law question and is not sufficiently related to Plaintiff's claims here to establish jurisdiction under 28 U.S.C. § 1367. Count IV of his Complaint should therefore be dismissed.

### III. Count V of the Complaint must be dismissed because common law actions for discriminatory employment practices are no longer viable in Delaware.

Count V of Plaintiff's Complaint raises a state common law cause of action alleging a breach of the implied covenant of good faith and fair dealing. Defendants have pointed out in their Opening Brief that this cause of action is no longer viable in Delaware because of the comprehensive amendments to the Delaware Employment Discrimination Statute. One of the specific purposes of the amendments was to eliminate a public policy cause of action based on a characteristic protected by the employment discrimination statute. The synopsis to the bill amending the state discrimination law specifically stated:

> This bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of Labor for review and action. This bill effectively reestablishes the exclusive remedy put in question by decision in Schuster v. Derocili, 775 A.2d 1029 ([Del.] 2001.

See EEOC v. Avecia, Inc., 151 Fed. Appx. 162, 165 (3d Cir. 2005).

Plaintiff's Answering Brief does not deny that his common law claims based on alleged gender bias must be dismissed based on the Amendments to the state discrimination law as set forth above. Accordingly, any implied covenant claim based on alleged gender bias must be dismissed.

Plaintiff now claims, however, that Count V of his Complaint also raises First Amendment concerns. He argues that his First Amendment claims should be recognized as a

9

state common law implied covenant claim under the public policy prong of Delaware state law. Of course, one searches Count V of Plaintiff's Complaint in vain for any allegation (see Paragraphs 93 and 94 of Complaint) that his alleged First Amendment claim is part of Count V. Plaintiff's effort to amend his Complaint, sub silentio, in his Answering Brief is without merit in any event.

As noted in Argument I, above, Plaintiff has not raised cognizable First Amendment claims. Since he has no First Amendment cause of action under federal law, he cannot state a "public policy" claim under Delaware common law, either.

In addition, even if Plaintiff has a Section 1983 claim based on an alleged First Amendment violation, he does not thereby have a state common law action based on the implied covenant of good faith and fair dealing. Even before the statutory amendments to the state discrimination law, the Delaware Supreme Court made clear that it was not expanding exceptions to the employment at will doctrine. See Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 334 (3d Cir. 2003) (explaining that Delaware courts have been reluctant to recognize a broad application of the implied covenant of good faith and fair dealing out of concern that the covenant "could swallow the doctrine of employment at will"); Lord v. Souder 748 A.2d 393, 401-03 (Del. 2000) (discussing exceptions to at-will employment doctrine as "narrow and discrete" and interpreting them to "prevent further erosion" of the doctrine). The policy behind the pre-Schuster rulings in this Court, see Finch v. Hercules, Inc., 809 F. Supp. 309 (D. Del. 1992), and in state court decisions was that an implied covenant or other exception to employment at will should not be judicially created where there is an existing statutory remedy. Here, of course, Congress long ago provided a remedy for alleged violations of the First Amendment or other constitutional violations through the enactment of 42 U.S.C. § 1983. Since

there is no state law case creating such a cause of action, this Court must determine whether it believes that such a claim would be recognized. Given the Delaware Supreme Court's decisions limiting the expansion of common law exceptions to employment at will, and the policy behind the legislative amendments, recognition of such a claim is inappropriate.

IV.   **Count VI of the Complaint must be dismissed because sexual harassment complaints are protected by a confidential privilege, and the privilege was not abused.**

Defendants' Opening Brief pointed out that there is a strong public policy under Title VII of the Civil Rights Act of 1964 of protecting victims of sexual harassment from retaliatory lawsuits for alleged defamation. See Opening Brief, pages 15–16. The Delaware Supreme Court's decision in Schuster makes it abundantly clear that state public policy condemns sexual harassment in the work place.[4]  775 A.2d at 1039 (holding that "[s]exual harassment in the workplace is a systemic social problem... combating it promotes the public policy of this State" and noting "Delaware's avowed policy to assure civilized conduct in the workplace."). As the Schuster court noted, "Delaware's public policy should be interpreted to encourage every employee to resist sexual harassment and to combat it vigorously." 775 A.2d at 1039 n.56. Of course, allowing Wilcoxon's defamation claim against Freebery to proceed seriously threatens to undermine the very vigorous resistance to workplace sexual harassment that the Delaware Supreme Court sought to encourage in Schuster.

In addition to the strong federal and state policy favoring protection of victims of sexual harassment, Delaware state law has long provided a conditional privilege in defamation actions. "A qualified privilege extends to communications between persons who have a common interest

---

[4] Although state common law implied covenant claims for violation of the state employment discrimination statute have been legislatively abolished, see Argument III above, Schuster still stands for the proposition that the public policy of the State of Delaware condemns sexual harassment.

for protection of which the alleged defamatory statements are made." Henry v. The Delaware Law School of Widener University, 1998 Del. Ch. LEXIS 7 (Del. Chan. Jan. 8, 1998).

In addition, in this case, Plaintiff has not denied that he made statements to Defendant Freebery, in the presence of others, that Freebery "was the closest thing he had to a wife and a bitch." Defendant Freebery faces a retaliatory lawsuit because she reported such remarks to her superiors. The public policy favoring protection of victims of harassment and the encouragement of civilized conduct in the workplace is thus particularly strong here since there is no dispute that Plaintiff made sexually offensive remarks.

In his Answering Brief in opposition to Defendant Freebery's Motion to Dismiss and/or for Judgment on the Pleadings, Plaintiff attempts maintain his claim, and thereby punish Defendant Freebery for reporting his statements, by simply asserting that Freebery's report was malicious. Wilcoxon therefore argues that the conditional privilege does not apply. Given Plaintiff's failure to deny what were on their face inappropriate and sexually suggestive remarks, the public policy under Title VII of the Civil Rights Act of 1964, the public policy of the State of Delaware as expressed in Schuster, Plaintiff's defamation action should be dismissed based on the conditional privilege protecting Freebery's statements. As Plaintiff now concedes, Defendant Freebery simply reported to her superiors remarks that Wilcoxon does not deny he made. Reporting sexual harassment to a superior is precisely what Title VII and state public policy call for. Notably, there is no contention that Freebery did anything other than advise her superiors of Wilcoxon's misconduct. In Schuster, the Delaware Supreme Court found that reporting employment performance issues to a superior is insufficient to state a defamation claim because there has been no publication of an alleged defamatory statement:

> [W]e find that Schuster's claim necessarily fails because it lacks publication, a necessary element to support a claim of slander. The

12

statements were made solely in the presence of Schuster and her supervisors. There is no evidence in the record that these statements were published to any third party.

Schuster, 775 A.2d at 1040.

Accordingly, an early-stage dismissal of Plaintiff's defamation action against Defendant Freebery should be granted consistent with Title VII policy, state law public policy, and applicable state law jurisprudence.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss and/or grant judgment on the pleadings on Counts III, IV, V, and VI of Plaintiff's Complaint.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Barry M. Willoughby, Esquire (No. 1016)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6666, 6553
Facsimile: (302) 576-3345, 3470
Email: bwilloughby@ycst.com; mstafford@ycst.com
Attorneys for Defendants

Dated: March 6, 2006

13

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2006, I electronically filed a true and correct copy of the foregoing Defendant's Reply Brief in Support of their Motion to Dismiss and/or for Judgment on the Pleadings with the Clerk of the Court using CM/ECF, which will send notification of such to the following counsel of record, and further that I caused a copy of same to be delivered to the following counsel of record:

>Jeffrey K. Martin, Esquire
>Timothy James Wilson, Esquire
>Margolis Edelstein
>1509 Gilpin Avenue
>Wilmington, DE 19806

>YOUNG CONAWAY STARGATT & TAYLOR, LLP

>_____
>Barry M. Willoughby, Esquire (No. 1016)
>Michael P. Stafford, Esquire (No. 4461)
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, Delaware 19899-0391
>Telephone: (302) 571-6666, 6553
>Facsimile: (302) 576-3345, 3470
>Email: bwilloughby@ycst.com; mstafford@ycst.com
>Attorneys for Defendants

Dated: March 6, 2006