*Oest* [handwritten]

*B-7* [handwritten]

**LESSON ANALYSIS\***

Teacher __Rich Wilcoxon_____ Date of Observation __November 19, 2003_____

Subject Area _Health_ Grade ____6th Grade____ Time _8:20 – 9:00_____

Number of Students___ Announced __✓__ Unannounced ____ Status _Tenured___

Below is a summary of information form the lesson observation. The comments are designed to provide
feedback to the teacher regarding strengths and areas for growth. The appraiser shall write a concise
narrative which focuses on the categories described in the Policy for Appraising Teachers and Specialists

**DESCRIPTION OF LESSON:**
This lesson was the first of a unit on drugs. Two PIs were specifically addressed:
- 1.4 Possible risks of taking medicines, and
- 2.1 Benefits of not using alcohol and other drugs.

Students took individual time to think about the good and bad uses of drugs, discussed
their thoughts as a whole group, and then were given a related homework assignment to
complete.

**NARRATIVE:**
This class of 40 students met in the multipurpose room for a Health lesson. Two
teachers, Mr. Wilcoxon and Ms. Freebery, team-taught the heterogeneous group. As
students entered the room, they sat in assigned seats, and prepared materials for the day.
They were quiet and did not play with the squeaky desks (which is an annoying problem
in that room). The teachers handed back a quiz and homework. Students quickly and
quietly came to the front to get their papers and returned to their seats. Ms. Freebery
directed the students to organize all of the alcohol papers together to study for the mid-
term.

Mr. Wilcoxon went over the answers to the quiz by reading the questions and calling on
students to answer. Since many answers were acceptable, lots of students were given the
opportunity to contribute. Mr. Wilcoxon praised answers and complimented the class for
doing an excellent job on the quiz. Ms. Freebery asked the class why they thought they
did so well. They answered they "paid attention, studied, and had notes for the open
book test." Ms. Freebery told them that being organized helped them, and they should
continue to keep their work in the folder and organized.

At 8:31, Mr. Wilcoxon told the class that today they would begin studying drugs. He
handed out a worksheet and instructed the students to write why people use drugs and
why they don't. "What does 'not using' drugs mean?" "You attain," a student answered.
"Almost." "Abstain," another offered. He asked them to write at least three reasons on
each side. Ms. Freebery reminded them that drugs could be Tylenol, prescriptions, and
crack. She wrote two titles on the board and made columns. Mr. Wilcoxon walked
around checking workers, praising, and assisting as necessary. 100% of the students
were working on the paper.

C00152

A95

Mr. Wilcoxon called on students to tell why people use drugs and Ms. Freebery listed them on the board. Answers included, "Like the effects, doctor tells them to use them, peer pressure, feel better, and rebel against parents." Reasons not to use drugs included, "Side effects, jail, someone in the family did it, causes illness, makes you delusional, allergic reactions, religious beliefs, want to be a good role model." Mr. Wilcoxon rephrased their ideas and praised them for good thinking. He reminded them that they should add any answers to their papers they did not think of on their own.

Next Mr. Wilcoxon said they would talk about three different kinds of drugs and define them. Rx means prescription – Doctor prescribes, or writes a note for it. A student asked if a doctor could prescribe marijuana. Mr Wilcoxon explained that 5 states used to allow that but the federal law changed and now they can't. He said the law stated that there were other medicines that worked safely to do what marijuana was being used for. Ms. Freebery wrote the definition on the board. Secondly, OTC, over the counter, drugs were defined, discussed, and differentiated from prescription drugs.

The discussion turned to safe use of medicines versus abuse. Abuse was defined and students shared examples of abuse, or using drugs in the wrong way or overusing them. One student shared that she knew a girl who bought sleeping pills, took them and never woke up. Ms. Freebery acknowledged that she knew her too, and it was very, very sad. Mr. Wilcoxon shared that his roommate took Nyquil to fall asleep each night. While Nyquil is a good medicine, his roommate abused it by using in improperly.

"What's the difference between medicine and illegal drugs?" Mr. Wilcoxon asked. Discussions centered on helping versus hurting you. He asked for more. A student defined drugs as anything you put in your body that causes it to change. "Good. So what's a medicine?" Eventually, students concluded that all medicines are drugs but not all drugs are medicines.

At 8:55, Mr. Wilcoxon handed out the days' homework. As he did, he reviewed the definitions and distinctions made in the lesson. Students volunteered answers as he assessed their understanding. When all students had the homework paper, he explained it had two sides and gave brief directions. The bell rang and he dismissed the students.

## COMMENDATIONS/RECOMMENDED AREAS FOR GROWTH/COMMENTS:

Mr. Wilcoxon should be commended for planning a lesson that fit the standard. The materials addressed the specific performance indicator he intended to teach.

I recommend Mr. Wilcoxon write the performance indicator on the board for each day's lesson to help the student focus on the main idea.

*For use with Group 3 as described in the Addendum to the Policy for Appraising Teachers and Specialists.
S4-33

Mr. Wilcoxon should be commended for working as a team with Ms. Freebery. Their natural flow was easy to follow. Although they have worked together for less than a year, proper planning was evident as the lesson was smooth.

Mr. Wilcoxon should be commended for setting up good classroom procedures. The routines established were simple and consistent with good organization. Students understood the expectations and their behavior was excellent.

Mr. Wilcoxon mixed individual thinking time and whole class discussion strategies for an effective class. Students thought about answers and then contributed good answers that stayed on the topic. With this topic, it would have been easy to be mislead from the objective, but that did not happen.

Mr. Wilcoxon should be commended for quickly assessing student's understanding at the end of the class to be sure his performance indicators were met. I would recommend extending that to properly close the lesson. Restate the objectives and tell what the next lesson will be. The purpose of closure is to remind the students where they started, what they learned, and what they will be learning in the future. It provides an important mindset for the material covered.

Mr. Wilcoxon should be commended for maintaining students' on-task behavior. Students were involved, participated, and reflective during the entire class.

As this was an introductory lesson, there were no higher-level questions. I would expect that in future lessons in this unit, those type questions would be included.

*Nice lesson, Rich. You were clear and guided the students to understand the terms you would be using in this unit. The students were respectful and responsive. Keep up the good work.*

The teacher and appraiser shall sign the Lesson Analysis to indicate that it has been reviewed and discussed, not that the teacher agrees with the Lesson Analysis. Further, the teacher/specialist may submit additional information on a TEACHER/SPECIALIST APPRAISAL RESPONSE FORM, within fifteen (15) working days of the date of the teacher's signature on the Lesson Analysis. Place an (X) in the box below to indicate your desire to submit additional information and to receive a Teacher/Specialist Appraisal Response Form. The Teacher/Specialist Appraisal Response Form shall be appended to this Lesson Analysis and shall become part of the appraisal record.

Teacher's Signature/Date                    Appraiser's Signature/Date

☐ Additional information will be submitted by the teacher within fifteen (15) working days on a Teacher/Specialist Appraisal Response Form.

S4-34

C00154

A97

Log about Janay: (advised to keep it after Ja
meda comments saying I was "difficult to work

School year 2003-04

General
Bruce in
class stuck
daily

- In September, ~ the 8th Janay was so late to
school she missed her 1st 2 classes, 1st plan
and half of the 3rd class. She never called

- Leaves often
that signing
out daily

out so I was alone the 1st 2 classes, the

- Late daily

office called a sub in for her. When sh

- Did not pick
student early Nov.
until 1 here
saying "I have
too much to do
to worry about
that."

arrived, she threw the sub out and complai
to the office that she should not be charg
a day since she did not call out

- Left Jobcards
to pick up daughter
and then return.
paid for whole time!

- mid-September - Janay was late and
missed her 1st class. Her girls stay
in the locker room unsupervised. Janay
arrived at the start of her 2nd class

Nov. 13 - Verbally attacked Jadit Abit for inappropriate question

Nov. 14 - Left a Health class 20 minutes early saying she "needs
to work on her Master's Thesis." leaving me
with all the kids.

Nov. 17 - Came into the In-service 15 minutes
Late. (15) told

Nov. 19 - Left before our last class started to
go to the bathroom. Did not return until
2:15. Said she was talking to Becky Perss
in the hall

Nov. 24 - Late - arrived at 9:05 missing stude
Leaders and Volleyball signups (50)
- Bruce Hennah came in during 1st class, at breakt
in front of kids. Yelled at kids while tv
was being hooked up. She was demeaning them (witnessed by M

DEPOSITION
EXHIBIT
Wilcox R
CLP 5/4/06
C00759

A98

Nov 24th cont

- Left building to go to the bank during planning
  (did certainly feet) & did not return until 10:05
  (22 minutes after class started)
- Left class at 1:15pm to call in after-school base
  did not return until 1:32 pm
- Arrived at 6:45pm for choice Open House (teach
  were suppose to arrive a 6:00pm) leaving me to se
  up everything
- spent 30 + minutes of choice Open House talking
  to a former student - ignoring parents and others
  in the gym
11/25 - arrived at 7:45 - 15 minutes late (1:05)
  - said she couldn't talk today so I had to
    teach all classes - she was going to keep scor
  - Bruce brought Breakfast in for her at 9:08 s
    ignored the class completely - I was disciplining
    teaching, keeping score, etc. for both classes w
    she talked to Bruce
  - returned from first planning at 10:30 - 4 minutes
    late
11/26 - arrived at 7:50 - missed Student Leaders and
    1st period had started (half-day schedule) (1:25)
  - left during 1st planning - returned 9:23 - 5 minut
    late for class
12/1 - arrived at 7:40 (1:35)
  - very short and a little demeaning in shouting
    at kids for not having a pencil

Hour
Delof
Sched
Dol.
12/1

C00760

A99

12/2 - arrived at 7:38    (1:43)
 - left at 9:05 to move an overhead from the cafeteria to the class she borrowed it from. Was gone till 9:29 (end of the 1st class)
 - left school during 1st plan to go watch daug swim - missed an entire class and did not return till after lunch

12/5 - Bruce arrived at 10:05 and stayed the rest of the day

12/8 - arrived at 7:46 - had girls waiting for a picture to be taken   (1:59)
 - left class at 9:00 without talking to me about it - leaving her kids with me and a guest & returned at 9:16 and immediately left talk on her cell phone for 5 minutes
 - left during next class at 9:50 did not return till the dismissal of the class at 10:0
 - Bruce was here with here when I returned aft planning period (10:47) He stayed through class
 - left 11:05 during class (was telling me) and returned at 11:26
 - after 2nd planning, Janay arrived at 1:23 class & st 1:11
 - Janay informed me (she did not ask) that tomor she would leave during 1st plan and not ret until lunch is over (missing her 1st 8th grade class) She was going to go swimming with her daughter

12/9 - called out sick

C00761

A100

12/10 - arrived at 7:40 (2:09)
- told me was today was the day she was going
swimming w/daughter. left at 9:45 (did not sign
missed 8-1 class that started at 10:26 till 11:05
returned at 11:46 (late for 8-2 class)

12/11 - arrived at 7:48 (2:27)
- Bruce came in at 9:05. during 2nd exp, they at
breakfast in front of the students

C00762

A101

Pat

**Janay F. Jack**

| From: | The Wilcoxons [wilcoxons@yahoo.com] | Sent:Mon 12/15/2003 10:27 AM |
|---|---|---|
| To: | Janay F. Jack | |
| Cc: | | |
| Subject: | I'm sorry | |
| Attachments: | | |

Dear Janay,

I hope I have the right e-mail address. Frank just
called me and told me that you saw the legal pad that
I kept. All I can say is I'm sorry you saw it. I
can't imagine how surprised, shocked, and hurt you
are. The one thing I can promise you that I never
showed it to anyone.

You are probably wondering why I started to keep it in
the first place. If you read it, you know I didn't
come in this year planning to keep tabs on you. I
just came back to do my job. I always liked working
and talking with you. In the middle of November,
another teacher came to me and said, "Be careful
around Janay she was talking about you and said you
are difficult to work with." I was a little surprised
and hurt but thought maybe I did something to piss you
off and you were just venting. A week later this same
teacher came back to me and said you were in a meeting
with several other teachers and Frank and that you
made the comment "Frank will just have to deal with
Rich. He is too hard to get along with " Or
something along those lines. They also advised me to
start keeping a log to CMA (cover my ass). I was
really hurt, angry, concerned, and wondered if I could
really trust you. I was also worried that if you were
telling this to everyone, how long would it take
before it got to Janet or to the administration and I
would have problems with them?

I also felt a little betrayed. I felt like I had
covered for you a number of times. I may give you a
hard time about it sometimes but I always did it and I
never told anyone about it. I had always thought that
if I ever needed you to cover for me you would do the
same. But when I heard you were talking about me
behind my back, I wondered if that was true. I never
talk about people behind their backs unless I am
comfortable saying the same things to their face. I
can honestly say I have never talked about you behind
you back (unless you count joking about you being
late...which I have also joked with you to your face)
so I was hurt. Those are the reasons I kept the log.
I never told anyone about it or showed anyone anything
in it. It was truly to protect myself. I am sorry
for any hurt, anger, or shock I caused you. I will be
back tomorrow and we can sit down and talk about it
then.

Rich

C00758

A102

# January 2004

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 Called out for 3 Personal days 1/14, 1/15, 1/16 at 6:20 p.m. | 14 Personal Day | 15 Personal Day | 16 Personal Day | 17 |
| 18 (School Closed) Called out sick for 1/20 at 8:25 pm | 19 | 20 Out Sick Called out sick for 1/21 at 8:59 pm | 21 Out Sick | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

DEPOSITION
EXHIBIT
Wilcher
6/0 5/4/06
PENGAD 800-631-6989

A103

| Date | Employee | School/Location | Reason | Qty | Substitute | Date/Time |
|---|---|---|---|---|---|---|
| Friday, September 12, 2003 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | SICK | 1 | TAYLOR, MYRON R. | 9/11/03 4:46 PM |
| Monday, December 15, 2003 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | MEDICAL | 1 | QUARTO, MAXIMILIAN A | 12/14/03 5:06 PM |
| Friday, January 16, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | PERSONAL | 1 | NSR, NO SUB REQUIRED | 1/13/04 6:20 PM |
| Wednesday, January 14, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | PERSONAL | 1 | ERNST, ANDREW | 1/13/04 6:20 PM |
| Thursday, January 15, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | PERSONAL | 1 | ERNST, ANDREW | 1/19/04 6:20 PM |
| Tuesday, January 20, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | SICK | 1 | ERNST, ANDREW | 1/19/04 8:25 PM |
| Wednesday, January 21, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | SICK | 1 | ERNST, ANDREW | 1/20/04 8:59 PM |
| Tuesday, February 24, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | MEDICAL | 1 | TAYLOR, MYRON R. | 2/23/04 9:01 PM |
| Friday, February 20, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | BEREAVEMENT | 0.5 | QUARTO, MAXIMILIAN A | 2/19/04 6:06 PM |
| Thursday, March 25, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | MEDICAL | 1 | ZILCOSKY, JOSEPH | 3/25/04 5:51 AM |
| Wednesday, June 9, 2004 | WILCOXON, RICHARD | SKYLINE MIDDLE SCHOOL #280 | MEDICAL | 1 | BUZGON, HAROLD M | 6/9/04 5:44 AM |

# RECEIPT

Date Printed: 01/22/2004

**Drs Mark And Deborah Wingel**
724 Yorklyn Road Suite 125
Hockessin, DE 19707
(302) 239-6200
Tax ID# 510333962

| Responsible Party: | Richard Wilcoxon (15751) 723 Colgate Lane Newark, DE 19711 | Patient Name: | Richard Wilcoxon | Receipt for Services Rendered on: – 01/22/2004 – - For All Cases - |
|---|---|---|---|---|

## Charges

| Date | Patient | CPT4 Code | Description | Provider | Amount |
|---|---|---|---|---|---|
| 01/22/2004 | Richard Wilcoxon | 99213 | Office Visit Est Pt Lvl 3 [ 461.9 ] Sinusitis | Mark W. Wingel | 68.00 |
| | | | | Total | $68.00 |

## Payment Summary

| Date | Description | Check # | Payment | WriteOff | Total |
|---|---|---|---|---|---|
| 01/22/2004 | [01]Cash | | $15.00 | $0.00 | $15.00 |
| | | | $15.00 | $0.00 | $15.00 |

## Next Appointment

| Patient | Date | Time | Provider |
|---|---|---|---|

Margolis Edelstein
Wilcoxon v. Red Clay
0608

A105

**HAPPY HARRY'S**
210 SUBURBAN DRIVE
NEWARK, DE 19711
**(302)456-6760**
Rx: 6424981          RPH-DY1          Orig: 01/22/04
WILCOXON, RICHARD
723 COLGATE LANE  NEWARK, DE 19711
TAKE ONE CAPSULE 3 TIMES DAILY UNTIL
GONE

TRIMOX 500MG          CAP SAND          QTY:30
GENERIC FOR AMOXIL 500MG     CAP GLAX
WINGEL, DO
0 REFILLS REMAIN
State DEAR/NO010371              #30  P.RYDEL MDR

**HAPPY HARRY'S**
210 SUBURBAN DRIVE
NEWARK, DE 19711
**(302)456-6760**
Rx: 6424982          RPH-DY1          Orig: 01/22/04
WILCOXON, RICHARD
723 COLGATE LANE  NEWARK, DE 19711
TAKE 1/2 TO 1 TABLET BY MOUTH TWICE
A DAY

AMITEX PSE          TAB AMID          QTY:20
GENERIC FOR ENTEX PSE 120-600  TAB ANDR
WINGEL, DO
0 REFILLS REMAIN
State DEAR/SI010371              #20  P.RYDEL MDR

Margolis Edelstein
Wilcoxon v. Red Clay
0575

A106



*HR*

**RED CLAY CONSOLIDATED**
**SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

SKYLINE
MIDDLE SCHOOL
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T Manolakos, Ed D.
*Principal*

Janet Basara
*Assistant Principal*

To: Rich Wilcoxon
From: Janet Basara
Date: January 22, 2004
RE: Substitute Plans

You took three personal days on January 14, 15, and, 16. The plans you left for your substitute were completely inadequate (see attached). In addition, you did not leave a class list or bell schedule for your substitute to follow. This caused hardship for Mr. Rumford and me as we tried to assist your substitute. This is unacceptable, especially since you knew you would be absent.

This is not the first time this has happened. In December, you were out sick and did not leave class lists or a bell schedule. That day, your lack of responsibility caused Mr. Rumford and Ms. Freebery to disrupt their schedules to assist your substitute. At that time, I informed you of the problem and told you that it was unacceptable.

In addition, you were absent requesting sick time January 20 and 21 following three personal days. You had no emergency plans available because those plans were used in December when you were absent without substitute plans. Your emergency plans were not replaced.

Not having emergency plans is unacceptable. In September, you were directed to prepare three days of emergency plans. You are to update your file by Monday, January 26, 2004 with three days of lesson plans for an unexpected absence. Furthermore, it is your responsibility to continually updated them once they are used or become outdated and an current class list and bell schedule must be included.

Signature acknowledges receipt, not necessarily agreement    Date

C00170

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development RCCSD 1916 Duncan Road Wilmington, DE 19808 (302) 683-6662.

A107

Wed 4th  Basketball shoot around
         Balls are to cage to supply closet
Thurs 5th: Repeat wed.
Fri 6th  Scooter team handball
         - 3 on 3 - 1st team that scores stays on
         - make goals out of large cones
         - students must pass the ball across half court
           otherwise turnover
         - can't score from own side
         - a goal is when the ball hits bottom between the
           cones

         If this is to hard or not going well, you
         can shoot around instead

C00171

I almost forget. Each morning you have 2 duties from 7:30 to 7:45 you need to be in the gym with student leaders. 2 of these students put up the flag. From 7:50-8:35 you have a reading group in the Multi. The students books are under the tv in this room.

Dear Sub,

Thank you for your assistance. If any of the kids give you any problems, please leave a note about them. I am leaving you both TOR slips (to get a student out of the room if they are a problem) and SRR forms (if behavior is so bad you feel an administrator needs to see the student ie fighted). Also I have left a note on the locker room door the telling students to report directly to the gym. Students are to put their books on the bleachers next to the doors. The student have been told to wear sneakers in order to participate. If you have any questions, please see Mr. Rexford in the main office or Ms. Freebery, the female PE Teacher. The lesson plans are on the bottom of this and the next page. To take attendance, have the students sign in on the pages of this pad. Thank you again.

Richard Wilcoxon

All equipment needed is in storage closet on the left under the table.

C00172

A109

*HR*



**RED CLAY CONSOLIDATED
SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington DE 19808

SKYLINE
MIDDLE SCHOOL
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T Manolakos, Ed D
*Principal*

Janet Basara
*Assistant Principal*

To: Rich Wilcoxon
From: Janet Basara
Date: January 20, 2004    1/22/04
RE: Bus sign up

In order to have enough busses to accommodate all of the after school
students, it is critical that you sign up each day you keep students after
school for activities. You have forgotten several times. I am requesting
that you to make signing up for busses a regular part of your daily routine
for the safety of the students who need to ride the busses home.

_____
Signature acknowledges receipt, not necessarily agreement

1/22/04
Date

C00169

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development. RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 683-6662.

A110



**RED CLAY CONSOLIDATED
SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

SKYLINE
MIDDLE SCHOOL
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Monolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To: Rich Wilcoxon
From: Janet Basara
Date: January 20, 2004
RE: Meeting on December 17, 2003

On December 17, 2003, we met to discuss a series of events that occurred between you and a female staff member. In our conversation, we discussed the inappropriate remarks, some of a sexual nature, you made to her. I told you at that time, such comments were unacceptable and were to stop immediately.

In addition, I want to inform you that if any further inappropriate comments are made, the District will take disciplinary action. You should also be aware that the staff member has indicated she will file sexual harassment charges, if this continues.

Please be advised that you need to maintain a professional relationship and cease all sexual remarks.

Margolis Edelstein
Wilcoxon v. Red Clay
0294

_____    _____
Signature indicates receipt, not necessarily agreement    Date

*Refused to sign* (Basara) 1/22/04

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD. 2916 Duncan Road, Wilmington, DE 19808 (302) 683-6661.

A111

Yahoo! Mail - wilcoxons@yahoo.com                    Page 1 of 3

**YAHOO! Mail**    Welcome, wilcoxons
[Sign Out, My Account]                    Mail Home - Help

Search
the web

**I GRADUATED
IN:**    1994
1984
1974
1964

Mail | Addresses | Calendar | Notepad    wilcoxons@yahoo.com [Sign Out]

Check Mail    Compose    Mail Upgrades - Search Mail - Mail Options

**Folders [Add]**    Previous | Next | Back to Messages    Printable View - Full Headers

Inbox (3)    Delete | Reply | Forward | Spam    Move to folder...

Draft

Sent    This message is not flagged. [ Flag Message - Mark as Unread ]

Bulk [Empty]    **Subject:** RE: My meeting with Ms. Basara
    **Date:** Fri, 23 Jan 2004 14:42:51 -0500
Trash [Empty]    **From:** "Norton, Rudy [DE]" <Rudy Norton@DSEA.ORG>    Add to Address Book
    **To:** "The Wilcoxons" <wilcoxons@yahoo.com>
**My Folders [Hide]**

personal    Richard,
    Thanks for this email.  I would like for you to write a rebuttal to
receipts    each of the letters you received from Janet.  Please write them based on
    exactly what she said in each letter.  You need to be careful here to
schoolstuff    respond to her accusations and do not stray from the issues.  I need
    these as soon as possible.  The next step is to request a meeting to
    discuss these with her or just to proceed by filing a level one grievance
It's Free.    saying these were without just cause under 4:6 of the agreement.
Check your Credit.    I will talk to you soon.
    Rudy
No fees No minimum balance
FREE CHECKING from    -----Original Message-----
Wachovia    From: The Wilcoxons [mailto:wilcoxons@yahoo.com]
    Sent: Friday, January 23, 2004 12:57 PM
Get taxes done fast    To: Norton, Rudy [DE]
TurboTax for the Web    Subject: My meeting with Ms  Basara

Bad Credit-
Great Card    Hello Mr. Norton,

    I don't know if you got my message last night.  I
    tried to call you again this morning but you were out
    so I thought this might be a better way to reach you.

    She ended up giving me 3 letters packed full of lies.
    The first letter was about the sexual harassment
    charge.  It reads at one part as "we discussed the
    inappropriate remarks, some of a sexual nature, you
    made to her."  Well, I never made the remarks.  Janet
    also writes she told me to stop making the remarks at
    that time.  That is a blatant lie.  She is putting
    wild accusations into my file with no proof or
    investigation.  I know she didn't investigate because
    it is a lie but also Janet said "that Janay says she
    has witnesses."  If Janet interviewed these witnesses,
    she would know if Janay had witnesses.

    The 2nd letter states that I have kept students after
    school several times and forgot to sign up for busses.
    Well this is a stretching of the truth.  I have
    forgotten to sign up before Janay calls the busses in
    at 10:00 am but I have always remembered in time to
    call in my extra numbers before my activities have



DEPOSITION
EXHIBIT
Wilcox 11
9/5 57/06

Margolis Edelstein
Wilcoxon v. Red Clay
0005

A112

started.

The 3rd letter covers several topics rolled into one. First it is a complaint that the lesson plans I left on my 3 personal days was inadequate. It goes onto say that this is not the first time because when I was absent in December (the day Frank stoled my log and gave it to Janay) this happened and Janet informed then that this was unacceptable. That is a complete lie. We never discussed my plans, all the discussion was about me keeping a log on Janay. The letter goes on and says that I never updated my emergency lesson plans and used them all during December. It request me to make 3 new lesson plans and turn them in by 1/26/04.

Now that is a brief update (well not so brief) on the letters. Now I have numerous questions.

1) Is it legal to put a letter in my file relating to sexual hacassment solely on the accusation? I would think an investigation would need to take place to see if it is true. Otherwise you can say anything about anyone and they would have to be documented.

2) I read my contract last night. In Article 4, paragraph 4.1, I think would apply because obviously it impacts my future employment. Therefor, Janet had to give me written notification 48 hours prior to the meeting. Because of the short notice neither union rep was available to go with me to the meeting. According to that paragraph, do I need to write a letter and request the written reasons for the necessity of waiving the 48 hours?

3) And if she can't come up with reasons to wiave the 48 hours, what is the next step?

4) And finally, is everything I say to you strictly confidential? Because there is something I want to talk to you about but I don't want anyone else at all to know about yet.

Well, I am sorry for writting a book to you but I bet you can imagine that I have been going out of my head since I got these letters. Thank you for your help.

Sincerely,
Richard Wilcoxon

*****
***************************************************
Richard Wilcoxon
wilcoxons@yahoo.com
(302)731-4457

Do you Yahoo!?
Yahoo! SiteBuilder - Free web site building tool. Try it!
http://webhosting.yahoo.com/ps/sb/

Delete | Reply | Forward | Spam          Move to folder... [ ] OK

Margolis Edelstein
Wilcoxon v. Red Clay
0008

A113

Yahoo! Mail - wilcoxons@yahoo.com

Copyright © 1994-2004 Yahoo! Inc. All rights reserved. Terms of Service - Copyright Policy - Guidelines - Ad Feedback
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

Margolis Edelstein
Wilcoxon v. Red Clay
0007

# Skyline Middle School
## Red Clay Consolidated School District
### Lesson Analysis

Teacher:     Rich Wilcoxon          Date of Observation:   February 12, 2004

Subject Area:     Physical Education     Grade:     6th     Time:     10:26 – 11:05 am

No. of Students:     34     Announced:          Unannounced:   X   Status:     Non-Tenured

## DESCRIPTION OF LESSON:

Students reported directly to the locker room to prepare their wearing apparel for the physical education activity. From the locker room, the entered the gymnasium and immediately got into one of the four squad formations. Students lined up on the painted lines on the gymnasium floor. Upon Mr. Wilcoxon's arrival, he selected a student to lead a series of warm-up and stretching exercises. Mr. Wilcoxon took attendance by visually checking each squad and also made verbal checks with students pertaining to the attendance of students not in class.

Next, Mr. Wilcoxon had his students take a seat on the bleachers. He reminded the of the health schedule for the following week. He stated that the scooter game that they started yesterday would be continued today and gave a review of the rules. Mr. Wilcoxon made reference to the state standards that were posted in the locker room area. He promoted student dialogue by asking students what part of the body were they working on. Students mentioned a "burn" in their legs. Two teams were selected to start the "round-robin". Three players from each team started the first game. A student from each of the two teams was selected to get three scooters for their team members. Mr. Wilcoxon refereed the games and kept a verbal score for each team. The winner of each game remained on the floor to compete against the next team. Teams rotated their players in groups of three. One student did not participate and sat on the bleachers. In some instances, students were not sure of the rule pertaining to "slipping-off the scooter" during possession of the ball, when carrying the ball across the centerline and defensive strategies.

After a few rounds of games, Mr. Wilcoxon provided some feedback. He conducted a short discussion regarding the merits of playing defensively.

At the end of the class period, Mr. Wilcoxon had his students return to their squad positions. His closure involved a review of the standards addressed. Students mentioned teamwork, communicate and sportsmanship. Mr. Wilcoxon helped students to understand that what was mentioned were standards but not the specific one for this class. He asked how many students felt the burn in their legs. Student voiced a mixture of yes and no responses. Also a conclusion was made that if teams play defense, they have a better chance to win. Students were then dismissed to the locker room.

## CATEGORY I. INSTRUCTIONAL PLANNING:

The lesson was focused on the State Standards for Physical Education. The practice of placing the written

1

Margolis Edelstein
Wilcoxon v. Red Clay
0107

2

standards in the locker room was an established routine. Reference to the standards was included in the teacher's presentation of the planned activity. The scooters were incorporated within game to engage students in the strengthening of the large leg muscles. The scope and sequence of the lesson was established by making the connections from the previous day's activity in which students learned the rules of the game and were provided practice. The activity for the day observed focused on students engaged in the activity throughout the class period.

## CATEGORY II. ORGANIZATION AND MANAGEMENT OF CLASSROOM:

Students reported directly to the locker room, changed their clothing and immediately reported to the gymnasium. Dividing the class into squads helped with the transition between the two separate areas  Squads helped in the organization of the students to enable an efficient and effective visual check for attendance, focusing students' attention, make-up of teams and preparing for the closure of the lesson and dismissal. Provisions for the storage and distribution of the scooters provided easy accessibly. Cones and the bleachers were used as the goals for each team. During the play activity, Mr. Wilcoxon refereed the students and positioned himself so that he was able to "keep an eye" on all of the students. The rotation of teams enable the large number of students to participate even with the consideration of only six students at any given time were actively engaged on the court.

## CATEGORY III.  INSTRUCTIONAL STRATEGIES:

Reviews of the rules of the game and the standards for the lesson were verbally explained. Students had the opportunity to actively participate and demonstrate their skills in playing the game. Inclusions of more demonstrations, guided practice or modeling would have increased the level of understanding of the rules and effective defensive plays. Feedback did occur towards the last quarter of the class period when Mr. Wilcoxon explained the merits of defensive plays.

## CATEGORY IV. TEACHER/STUDENT INTERACTION:

Interactions were positive, encouraging and supportive between the teacher and students and among students to students. Methods to organize students in a fashion that provided opportunities for all students to actively participate were used. All students were treated fairly as far as when there were rule infractions and feedback on their abilities. Student dialogue was encouraged and incorporated during discussions.

## CATEGORY V. EVALUATION OF STUDENT PERFORMANCE:

Mr. Wilcoxon was actively engaged in observing his students throughout the class period. Feedback was referenced to how teams played and not necessarily on individuals. He did help students to understand that when teams used defensive strategies, there was a stronger likelihood that they would win the game.

## COMMENDATIONS/RECOMMENDATIONS/AREAS FOR GROWTH/COMMENTS:

Mr. Wilcoxon is to be commended for his organizational planning such as in his preparation for the lesson, setting up the gymnasium, use of squads, posting of the standards, rotation of players and taking attendance. References to the standards were used in the presentation of the lesson and also included in the closure of the lesson.    Reviews of the rules of the game were covered prior to having the students starting the activity.

Margolis Edelstein
Wilcoxon v. Red Clay
0108

A116

3

Incorporating more concrete examples would increase student understanding. In the example when students started to play defensively, it would have been a good idea to have students do a demonstration for all students to see. Also, during the explanation of the rules of the game, students could be used to model the skills or correctness of the plays.

Connections were evident from the beginning of the lesson with the previous day's lesson and also incorporated in the closure of the lesson. To get a more reliable response to the question posed to the students at the end of the class period, he may want to consider having a show of hands as to how many felt the burn.

Having the student who did not participate be the scorekeeper would make him more inclusive in the lesson rather than sitting out for the entire period. Additionally, it would help Mr. Wilcoxon with the management of a scoring device that could be seen by all players throughout the entire game.

---

The teacher and appraiser shall sign the lesson Analysis to indicate that it has been reviewed and discussed, not that the teacher necessarily agrees with the Lesson Analysis. Further, the teacher may submit additional information on a teacher/specialist appraisal response form, within fifteen (15) working days of the date of the teacher's signature on this Lesson Analysis. Place an (x) in the box below to indicate your desire to submit additional information and receive a Teacher/Specialist Appraisal Response Form. The Teacher/Specialist Appraisal Response Form shall be appended to this Lesson Analysis and shall become part of the appraisal record.

Teacher's Signature/Date                     Appraiser's Signature/February 19, 2004

☐ Additional information will be submitted by the teacher within fifteen (15) working days on a Teacher/Specialist Appraisal Response Form.

Margolis Edelstein
Wilcoxon v. Red Clay
0109

A117

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

**ENTER CHARGE NUMBER**

☐ FEPA 04020899
☐ EEOC nicauno293

Delaware Department of Labor                and EEOC

(State, or local Agency, if any)

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Richard Wilcoxon | (302) 731-4457 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 220 Wharton Drive  Wilmington DE 19711  NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one, list below.)

| NAME | NO. OF EMPLOYEES OR MEMBERS 50+ | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| State of DE/Red Clay School District | | (302) 454-3410 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 2916 Duncan Road, Wilmington, DE 19808 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☐ RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST 1/22/2004
LATEST 2/5/2004
☒ CONTINUING ACTION

THE PARTICULARS ARE (if additional space is needed, attached extra sheet(s):

I am a male individual who began working with Respondent on 10/15/02 as a Health & PE Teacher. During the winter months, my responsibilities entail team teaching with Ms Janay Freebery, Health & PE Teacher. We both have responsibilities to monitor all students assigned to us, however on ocassion Mr. Freebery has left her students unattended, skipped classes and socialized inappropriately during class time. I attempted to work around these challenges by documenting her behavior and continuing to provide the best service I could to the students needs. My documentation was discovered by Mr. Frank Rumford, Assistant Principal, who then gave my documentation to Ms. Freebery for review. This discovery led to a meeting on 12/17/03, where Ms. Freebery accused me of sexual harassment in the presence of Mr. Rumford and Janet Basara, Principal. I received 3 derogatory letters as a result of Ms. Freebery's accusations.

Respondent has subjected me to to intimidating and escalating write-ups in my personnel file, without proper investigation of Ms. Freebery's allegations. I have not been given the opportunity to address the allegations and they have not been proven.

I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Delaware Discrimination In Employment Act based on my sex (male) because: 1. Respondent has treated me differently than my female co-workers by disciplining me unjustly after sexual harassment allegations; 2. Respondent has also disciplined me regarding an after school bus sign up issue and did not discipline another female for committed a similar offense; 3. Respondent has scutinized my work and subjected me to escalating write-ups without discussion after discovering my document on Ms. Freebery's poor work performance; 4. Respondent has threatened my job verbally and has not disciplined or addressed my documentation regarding Ms. Freebery's work performance and lack of team work; 5. My work performance has not been in issue until after my documentation was found and the sexual harassment allegations were made by Ms. Freebery.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | SIGNATURE OF COMPLAINANT |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

| I declare under penalty of perjury that the foregoing is true and correct. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| 2/24/04   [signature] Richard Wilcox | Subscribed and sworn to before me this date          (Day, month, and year) |
| Date          Charging Party (Signature) | |

EEOC FORM 5
REV 6/92

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

Margolis Edelstein
Wilcoxon v. Red Clay
0068

A118

Mar. 4  2005  1:54PM  RED CLAY SCH    4543541                03/09/04  09:2 No.1696   P  18



**RED CLAY CONSOLIDATED SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2910 Duncan Road
Wilmington, DE 19808

**SKYLINE MIDDLE SCHOOL**
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To:    Rudy Norton
From:  Janet Basara
Date:  March 9, 2004
Re:    Grievance on behalf of Richard Wilcoxon

I have reviewed the arguments you made at our meeting and have
redrafted the letter to Mr. Wilcoxon, which is attached and needs his
signature.

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resource Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 451-4602.

A119



**RED CLAY CONSOLIDATED
SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

**SKYLINE
MIDDLE SCHOOL**
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To:   Richard Wilcoxon
From: Janet Basara
Date: January 13, 2004, Revised March 8, 2004
Re:   Meeting on December 17, 2003

 *ok!*

On December 17, 2003, you, Frank Rumford, Assistant to the Principal,
and I met to discuss a series of events that were brought to my attention
by Janay Freebery. I informed you that she came to my office on December
15, 2003 and expressed her concerns that you had made inappropriate
remarks to her, some of a sexual nature. Your immediate response to Mr.
Rumford and me was that Janay had "opened the door" to those
comments, thereby acknowledging that something improper had been said.
I told you at that time, such comments were unacceptable and were to stop
immediately.

In order to make you aware, I also informed you that Ms. Freebery had
indicated that she would file sexual harassment charges, if inappropriate
sexual comments continued.

Please be advised that you need to maintain a professional relationship and
cease all inappropriate remarks.

_____          _____
Signature indicates receipt, not necessarily agreement with the contents.   Date

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 552-4552.

Margolis Edelstein
Wilcoxon v. Red Clay
0293

A120

Mar. 4. 2005  1:53PM                                No. 1696   P. 12

03/23/2004   16:12    RED CLAY SCHOOL DIST HUMAN RES → 93660287        NO. 222   P03
Feb 11 04 04:18a    DSEA                    3023660287              P. 2

### RED CLAY CONSOLIDATED SCHOOL DISTRICT
### WILMINGTON, DELAWARE

#### CERTIFICATED PERSONNEL GRIEVANCE FORM - LEVEL I
(To be submitted within 15 days of alleged violation)

Grievant:  Richard Wilcoxon
Building:   Skyline                    Date of alleged violation:  1/22/2004
Assignment: Teacher                    Contract article & section violated:  4:6
                                       Board policy section violated:
{ X} Check if grievant desires representation   Administrative rule or regulation violated:
     by the Association.

Description of grievance and statement of adverse effect caused by the alleged violation:
See Attached

Remedy Request:
See Attached

Grievant signature:
Date received:  3/11/04    Administrator's signature:  Date  3/10/04

Date and time of hearing, if any:  3/3/04  2:50 pm
Administrator's decision:  See attached                  See Wed. 3/10/04

Administrator's signature:                               Date

#### GRIEVANCE APPEAL - LEVEL II
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous decision has been rendered.)

Reason for appeal of Level I decision:   See Attached
Grievant's signature:
Date Received:  3/12/04    Administrator's signature:              Date:  3/15/04
Date and time of hearing, if any:  4/8/04 @ 3:00
Administrator's decision:

Administrator's signature:                               Date

#### GRIEVANCE APPEAL - LEVEL III
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous decision has been rendered.)
Reason for appeal of Level III decision:

Grievant's signature:
Date Received:                    Admin/designee's signature:              Date
Date and time of hearing, if any:
Administrator's decision:

Administrator's signature:                               Date

NOTE:    One copy of this form must be sent to Grievant, Association President, Director of Personnel Services, and
         one copy is to be retained by Administrator.

RCCSD
Human Resources
2004 MAR 22  A 10: 03

Margolis Edelstein
Wilcoxon v. Red Clay
0195

A121

Attachment to Grievance

*Reasons for Appeal to Level 2. Richard Wilcoxon*

This grievance is being appealed to Level 2 because the administrator has
not only violated the "just cause" provision of 4:6, she has also violated
the forty-eight (48) hour prior notification right and the right to
representation found in 4:4.1 of the Collective Bargaining Agreement.
The great injustice of these violations is that the principal ordered the
employee to a meeting (December 17, 2003) knowing that he was going
to be accused of wrong doing later and knowing that she would
reprimand him later. Of greater injustice is the fact that she refused to let
him have representation at the meeting where he was going to be accused
of wrong doing even though he told her that he needed representation.
Now that he has grieved the letter of reprimand citing hearsay and no
direct knowledge of wrong doing by the administrator, she has responded
to his grievance by telling him what he said at the meeting after having
stripped him of the right to representation knowing that he would not be
able to defend himself when only she, her assistant Frank Rumsford, and
the accuser were present.

**The Association is amending its original remedy and is requesting
that all memos handed to the Grievant on 12/17/2003 be withdrawn
and destroyed.**

RCCSD
Human Resources

2004 MAR 22 · A 10:03

Margolis Edelstein
Wilcoxon v. Red Clay
0198

04/30/2004    13:52    RED CLAY SCHOOL DIST HUMAN RES → 93660287    NO.382    P06

Date:  April 15, 2004

To:    Rudy Norton

From:  Debra Davenport

RE:    Level II Grievance Response

---------------------------------------------------------------------

Hearing date: April 5, 2004
Attending: Rudy Norton, Richard Wilcoxon, and Debra Davenport

**Grievant's Position**
The union alleges Article 4:6 has been violated.  An amendment to the grievance presented at the hearing alleges a violation of Article 4:4.1.
On January 22, 2004, the grievant was notified to meet with the administrator. The Grievant was not given 48 hours notice and was denied representation.

**Remedy Sought**
All memos handed to the Grievant on 1/22/2004, be withdrawn and destroyed.

**Response**
Since Article 4:4.1 was added at Level II, this response will only address Article 4:6 as this was the only article presented at Level I.

The purpose of the meeting was to hand Grievant memos that documented three (3) different incidents that had occurred in a relatively short period.  The Grievant was at no time denied representation and in fact, according to the Grievant, he had attempted on the afternoon of the meeting to find an available representative to attend the meeting with him.

The Grievant did attend the meeting even though he was unable to find an available representative.  The Grievant did not request the meeting be rescheduled.

The investigation of the incident revealed; the two administrator's present at the meeting, stated the Grievant was given the opportunity by the administrator to leave with the letters and consult with his union representative.  The grievant did not leave with the letters at the invitation of the administrator.

* The memo date 1/13/2004 and revised on 3/8/2004 after the Level I hearing will not be withdrawn.  The memo is a report by the offended party of remarks you may have made.  It is the district's obligation to document this type of information from an offended individual and make the offender aware of the allegation.

Margolis Edelstein
Wilcoxon v. Red Clay
0245

Confidential

A123

- The memo dated 1/22/2004 addressed your not signing up for after school buses. You had requested specific dates these incidents occurred. This information was subsequently shared with you.

- The memo dated 1/22/2004 addresses the inadequacy of your emergency plans. The memo points out the unacceptable portions of your emergency plans. This observation by the administrator is a legitimate observation for the administrator to make and share with the grievant.

The memos received by the Grievant will not be withdrawn.

Grievance denied

cc:    D. Dunmon

Margolis Edelstein
Wilcoxon v. Red Clay
0246

Confidential

A124

## Red Clay Consolidated School District
### Teacher Grievance
### Level III

Hearing Date:      May 24, 2004

Present:           Richard Wilcoxon
                   Rudy Norton
                   Diane L. Dunmon

Article(s) Grieved:  4:6 and 4:4.1

Administrative Response:

After reviewing all of the documentation, as well as the Union's arguments, I concur with the Level II response.

A125

RCCSD
Human Resources

## LESSON ANALYSIS*

Teacher _____ Mr. Wilcoxon _____ Date of Observation __April 21, 2004_____
2004 MAY 10 P 10: 13
Subject Area ____Health___ Grade _7th Grade____ Time __9:02-9:40__

Number of Students _38_ Announced ___ Unannounced __X__ Status _Non-Tenured_

Below is a summary of information form the lesson observation. The comments are designed to provide
feedback to the teacher regarding strengths and areas for growth. The appraiser shall write a concise narrative
which focuses on the categories described in the Policy for Appraising Teachers and Specialists.

### DESCRIPTION OF LESSON:
The objectives of the lesson were stated as "how the tobacco companies get you to buy their
products." The standards were written on the board, but the video screen was down and
covered them so the students could not refer to them. The activities (Review HW,
Advertising, HW) were listed and visible. The lesson involved students working in groups of
four to answer questions about magazine ads about tobacco products. A group member
presented findings to the class. Homework from the previous day was reviewed at the
opening of class and homework for this day was given out at the end of class.

### NARRATIVE:
Students were seated every other seat in the multipurpose room for this health lesson about
advertising of tobacco products. Mr. Wilcoxon took attendance and told the students to hand
in their homework in the front box if they had not done so.

At 9:03, Mr. Wilcoxon reviewed the homework by asking students to remember the answers
they had turned in. They figured out the price of smoking cigarettes at a pack a day for a
week, a month, a year, and 3 years. Then they discussed what they could buy with that
money. They suggested they would buy DVD player, skates, dirt bike, etc. Without a
conclusion to that discussion, Mr. Wilcoxon reminded the students that yesterday they talked
about the short and long term effects of smoking and today they would discuss how tobacco
companies get them to buy their products. He asked for ideas. One boy said they advertise on
TV. Mr. Wilcoxon asked him when he saw an ad on TV. He shrugged. Mr. Wilcoxon then
told him ads on TV became illegal in 1969. He restated the question, and students suggested
they had seen ads on billboards, magazines, posters in gas stations, sporting events, and by
word of mouth. Mr. Wilcoxon nodded with each response. He mentioned that it is odd that
tobacco companies advertise at sporting events when smoking negatively affects athletes. He
added that movies show people smoking and if the name brand is seen on the screen, the
advertisers paid for that privilege. He also noted that tobacco companies pay to have their
name on buildings, such as the Phillip Morris Lodge.

Next, Mr. Wilcoxon explained the activity they were to complete during the rest of the class
period. They would work in groups of four to read an ad and answer the questions on the
ditto. He then read the questions aloud and clarified words such as slogan and target
audience. At 9:15, he passed out the ads and the students re-grouped themselves. The
majority of students moved to one side of the room. They were not directed by the teacher to
spread out. After two minutes, they were told to begin working on Ditto 7.2 (attached).

C00231

A126

Students were talking softly at first, working on the questions. Very quickly it got loud. Some of the noise came from students stating answers to group members who were seated four desks away and some came from students laughing inappropriately. At 9:25, CJ was laying across two desks. He had not been working in a group. Some groups finished before others and there was no direction for what to do when done. Eventually, Mr. Wilcoxon told the class, "I know some of you are done, just wait for the others." He repeatedly asked the class to be quiet and finally warned them they would have to move back to their original seats if they did not quiet down. They did.

Then Mr. Wilcoxon asked the groups to share their answers. He had not previously mentioned this expectation to the class. The groups decided who was going to report and the first presenter was called on. He read answers from the paper. He did not project his voice from his seat, and I was unable to hear his responses. He held up the article, but I could not see what it was from my seat. A boy whistled. Mr. Wilcoxon looked around and said, "Gentlemen." From the other side of the room, another student whistled. "Stop that," the teacher said. A third person whistled, and he ignored it. He asked the presenter questions about his report. There was a fourth whistle and then a fifth. Mr. Wilcoxon said, "If you whistle again, you'll be sent out. I've asked you to stop." The students were smirking, but not laughing out loud.

Mr. Wilcoxon moved on and asked students to put the ads up front when they finished. CJ reported and held up his article. Again, I could not hear or see the ad. He was about three rows in front of me. As he presented, I counted seven students off-task talking and one more person whistled softly.

Patrick gave his report at 9:34 and 11 students were talking, three were tapping on the desk and floor. At 9:35, another student presented. 12 students were talking, two were turned around, and 2 were stretching. Mr. Wilcoxon told them to "stop talking and turn around." The distractions seemed to be taking attention away from the presenter and the lesson.

The class got into a short discussion on the target group of a *Sports Illustrated* ad. The reporter thought the target was 20 – 30 year olds. Mr. Wilcoxon and others said younger people also read that magazine, and the target group would be a wider audience.

At 9:36, the students were generally off-task, not paying respectful attention to the presenters. At 9:38 a student made a popping sound. The teacher moved to the area. The same sound came from the other side. He moved over there. At 9:39, a clicking sound started on one side and moved to the other.

Mr. Wilcoxon told the class to hand in all of the ads and they would finish hearing reports tomorrow. He explained the homework and said it would be easy if they paid attention today. They were to look in any magazine and find three ads for tobacco products. Then they were to copy the Surgeon General's warning from the article to hand in. He told them there were six different warning they could find. Then they were to make up one warning of their own. He handed out the homework ditto (attached). Students were talking during the directions. One boy had a question and Mr. Wilcoxon said, "Stop talking. He is three feet away from me, and I can't even hear him." There was one last whistle. The student received their homework and left.

C00232

A127

## COMMENDATIONS/RECOMMENDED AREAS FOR GROWTH/COMMENTS:

Clearly writing and stating the standard is a critical element of effective teaching. It was attempted in this lesson, but not completely successful. Behind the video screen, the standard was written as "Influences on tobacco use." Mr. Wilcoxon stated the standard was "How tobacco companies get you to buy their products." While there was a whole class discussion on various ad locations and then an analysis of magazine advertisements, the lesson did not connect how the ads were an influence on a person's tobacco use. I recommend Mr. Wilcoxon enlist such connections from the students to ensure they have understood the standard. Having the standard out from behind the screen may have emphasized it as the point of discussion.

*students need to know* [handwritten annotation in left margin]

Mr. Wilcoxon should be commended for planning a group assignment, but more careful thought needs to go into the procedures of such activities. For example, when students move to their groups, areas in the room should be assigned. Most of the students ended up on one side of the room. They talked loudly so their teammates could hear them. If some groups were directed to the other areas of the multipurpose room, they could have completed the task using lower voices and been less distracting to others. In addition, making activity expectations known in the beginning would have resulted in a more effective presentation by the students. The students did not know they were going to have to present their information and did not prepare to speak on behalf of the group. Complete, clear directions would have corrected this. Finally, pacing of the lesson may have contributed to some of the behavior problems that surfaced. It appeared that many students were finished early and no direction was provided for what to do when they were done. This needs to be considered whenever there is a group or independent activity. Therefore, I recommend Mr. Wilcoxon plan more thoroughly for group activities.

Off-task behavior was inappropriate. Mr. Wilcoxon made attempts to stop the whistling, popping, clicking, and talking, but it was not successful. It appeared that the students were "playing a cat-and-mouse game" at the teacher's expense. This disrespectful behavior needs prompt remediation. This is the first time I have observed Mr. Wilcoxon without a team teacher present. I recommend he find ways to encourage appropriate and respectful behavior.

When attempting to control misbehavior, I recommend Mr. Wilcoxon follow through on consequences. When Mr. Wilcoxon said he would move students back to their original seats if the group did not quiet down, he did not follow through when the talking started up again. In addition, he should not threaten to do what cannot be done. For example, he stated that he would send out the offending whistler, but he did not know who was whistling. That makes the consequence impossible to follow through on. Employing both of these strategies would most likely result in students knowing that he means what he says. They would then be more likely to respond appropriately.

When Mr. Wilcoxon asks students to report information to the class, I recommend they stand in the front and face the class. The multipurpose room is large and voices need to be projected to be heard. Standing in front would most likely have resulted in speaker being heard, the article being seen, and the class being attentive. Several of the ELA standards involve speaking. I recommend Mr. Wilcoxon support those grade specific standards and

C00233

A128

performance indicator. To do so, I recommend he read the performance indicators for skills students need to develop to become competent speakers.

In a heterogeneous class, assigning students to groups based on their abilities and needs is advantageous. For example, a student who reads poorly could have been assigned to work with a strong reader. Differentiation based on individual needs should be considered in planning activities. I recommend Mr. Wilcoxon group students to support differentiated instruction.

A variety of activities and strategies were used in this lesson. There was a review of homework, whole class discussion, a group activity, and a presentation to the class. Mr. Wilcoxon should be commended for mixing strategies in this lesson.

The lesson was not brought to closure. Closure involves going back to the standard and/or performance indicator at the end of lesson to check for understanding. I recommend Mr. Wilcoxon close lessons properly.

Mr. Wilcoxon should be commended for encouraging student-student interactions. The groups of four did work together on the activity during part of the allotted time.

No technology was used during this lesson.

Students were asked recall and higher order questions. Question 5 and 6 on the ditto were higher thinking questions. Some discussion was held pertaining to these. I would recommend more attention be given to such higher order thinking skills.

The teacher and appraiser shall sign the Lesson Analysis to indicate that it has been reviewed and discussed, not that the teacher agrees with the Lesson Analysis. Further, the teacher/specialist may submit additional information on a TEACHER/SPECIALIST APPRAISAL RESPONSE FORM, within fifteen (15) working days of the date of the teacher's signature on the Lesson Analysis. Place an (X) in the box below to indicate your desire to submit additional information and to receive a Teacher/Specialist Appraisal Response Form. The Teacher/Specialist Appraisal Response Form shall be appended to this Lesson Analysis and shall become part of the appraisal record.

Teacher's Signature/Date

Appraiser's Signature/Date         4-26-04

☑ Additional information will be submitted by the teacher within fifteen (15) working days on a Teacher/Specialist Appraisal Response Form.

S4-34

C00234

A129

3                                          75          7

# TOBACCO FOR SALE



Name _____    Date _____  Period _____

**DIRECTIONS** → With your group, answer the following questions about an
advertisement for a tobacco product.

1. What's the name of the product?

2. What type of tobacco is being sold?

3. Is there a slogan? If so, what is it?

4. What are the selling strategies used in this ad?

5. Your advertisement may have a "warning." Why do you think the
   tobacco company put the warning on the advertisement?

6. Who do you think is the audience for your advertisement?
   How can you tell?

© ETRA Associates

C00235

*Comprehensive Health for the Middle Grades*

☐ I read and followed directions.
☐ My ideas are clear and complete.
☐ My handwriting is readable.
☐ I did my share of group work.

A130

# THE SURGEON GENERAL SAYS... (SA-29)

Name _____   Date _____

**DIRECTIONS:**   Look in magazines that advertise cigarettes and list the various Surgeon General's warnings on the cigarette packs below. Make up your own warning in the space provided.

SURGEON GENERAL'S WARNING

YOUR WARNING:

©1993 by The Center for Applied Research in Education

C00236

A131

To: Mrs. Janet Basara
From: Richard Wilcoxon
Date: April 26, 2004
RE: Post-Observation Meeting

I received your memo today in my mailbox at the end of my first planning period. The memo asked me to meet with you today to discuss the observation you conducted last week either during my first planning period or at 12:30. I am requesting that this meeting be postponed for 48 hours until Wednesday, April 28th, to allow me time to speak with my union representatives. Thank you.

4/26/04    5:30 pm
This is a post-observation conference. I have meetings scheduled all day Tuesday and Wednesday. I can meet Thursday morning or Friday afternoon. Please let me know when it will be convenient for you.

Janet

Friday at 12:30 sounds good. Thank you for your understanding.

Richard

Margolis Edelstein
Wilcoxon v. Red Clay
0302

A132

MEMO

To:     Richard Wilcoxon
From:  Janet Basara
Date:   May 5, 2004
Re:      Lack of security

Per your student referral dated April 22, 2004 and in our discussion on April 30, 2004, you explained that $49.00 cash was taken from an envelope turned in to you on April 22, 2004. On this date, many students, including Edwin Karpov, gave you money as their fundraising efforts for *Hoops for Heart*. You acknowledged that it was stolen when you went to lunch and left the cash and checks in the unlocked multipurpose room. You also acknowledged that you did not secure the money in the available locked cabinet in the room, nor did you take it with you. Mr. Rumford investigated, but no one saw a student enter the room, and he was unable to determine who stole the money.

Twice this school year I have reminded staff of the importance of securing personal items and cash collected from students. First, we had a serious incident where a person broke into our building and I held an emergency meeting to notify staff and reminded everyone to lock their valuables at all times. Second, at our March faculty meeting, I reminded staff to lock all money associated with SSA Power Card fundraiser in their rooms until it could be brought to the office and locked in the school safe.

This failure to follow procedures is totally unacceptable and borders on insubordination. You are responsible for replacing the cash that was stolen. Any future problems of this nature will result in further disciplinary action.

_Richd Wilcl_

This signature indicates receipt and not necessarily agreement with the contents.

_5/5_

Date

cc: Personnel file

C00244

A133

# THE RED CLAY CONSOLIDATED SCHOOL DISTRICT
## STUDENT BEHAVIOR REFERRAL
**\* FOR INTERNAL USE ONLY - To be completed within a reasonable amount of time.**

**PART I.**    Teacher's Name _Richard Wilcoxen_    Date _4/22_

Student's Name: _FYI_    Grade: _____

Occurrence Date: _4/22_    Time: _11:05 - 11:35_ Location: _Multi_

Behavior: ☑ New    ☐ Ongoing   Description of Student Behavior: _In my 6th grade class I collected Hoops for Heart envelopes. After class I went to lunch and left the envelopes on the front table. When I returned Edwin Kappus envelope was torn open. The checks were left but the cash was gone._

**PART II.**    Check off the attempts used to resolve the problem. *(Indicate date and method used in making parental contact.)*

☐ Student/Teacher Conference    ☐ Parent Contact - Date _____    ☐ Detention
  Date _____        Phone ☐ and/or Letter ☐    ☐ Work Assignment
` Disciplinary Probation        Conference ☐    ☐ REACH Referral
☐ Reprimand            ☐ Behavioral Contract    ☐ Other _____
    Teacher's Signature _R. Qule_

**PART III.**    Check off the administrative action used to resolve the problem after referral. *(Indicate date and method used in making parent contact.)*

☐ Student Counseled        ☐ In-School Alternative    ☐ Restitution/Restoration
☐ Work Assignment        ☐ Denial of Bus Privileges    ☐ Referral to Courts
☐ Reprimand            ☐ Denial of Driving Privileges    ☐ Behavioral Contracts
☐ Detention            ☐ Suspension    ☐ Alternative School Recommendation
☐ Disciplinary Probation        ☐ Exclusion    ☐ Recommendation for Due Process
☐ Removal from Class
☐ In-School Referral _____
☐ Outside Agency Referral _____
☐ Parent Contact - Date _____ Phone ☐ and/or Letter ☐ Conference ☐

Comments ( *if any* ) : _____

_Door was not locked where money was kept. Has available closets to lock it up in._

Administrator's Signature _____    Date _5/5/04_

Form 240 (Rev 6/02)    **White - Principal    Yellow - Return to Teacher    Pink - Discipline File    Gold - Remains with Teacher**

C00245

A134

**MEMO**

To:    Richard Wilcoxon
From:  Janet Basara
Date:  May 11, 2004
RE:    Lesson Plans

At our post-observation conference on April 26, 2004, I asked to see your plan book. At
that time you indicated that you did not have it because you had left it at home. On May
5, 2004, I asked to see it for a second time. You copied four pages and put it in my
mailbox on May 6, 2004. To this date, I have not seen your lesson plan book.

My concern is that the pages that you gave me were lessons that Frank Rumford wrote
more than two years ago. He shared these with you to guide and assist you as a new
teacher. You have only inserted the standards on some of his lessons. It is unacceptable
that after two years of teaching health and physical education at Skyline, you have not
developed, adapted, adjusted, or improved upon lessons handed to you as a guide.

_____          _____
Signature indicates receipt of memo, not necessarily agreement with the contents.    Date

Margolis Edelstein
Wilcoxon v. Red Clay
0290

A135

May 25  2004  9:43AM                                    No 0418   P. 2

## RED CLAY CONSOLIDATED SCHOOL DISTRICT
### WILMINGTON, DELAWARE

### CERTIFICATED PERSONNEL GRIEVANCE FORM - LEVEL I
(To be submitted within 15 days of alleged violation)

Grievant:  Richard Wilcoxon
Building:  Skyline Middle
Assignment:  Teacher

Date of alleged violation:  5/11/2004
Contract article & section violated:  4:6
Board policy section violated:
Administrative rule or regulation violated:

( x ) Check if grievant desires representation
by the Association

Description of grievance and statement of adverse effect caused by the alleged violation:
The grievant has received a letter of reprimand in regard to his lesson plans.  The lesson plans are the same as have been used by him
and a fellow teacher and the plans were approved by the administration.

Remedy Sought:
The letter of reprimand dated May 11, 2004 will be withdrawn and destroyed.

Grievant's signature:  _____
Date received:  5/25/04    Admin /designee's signature:  _____    Date:  5/24/2004

Date and time of hearing, if any:  _____
Administrator's decision:  _____

Administrator's signature:  _____    Date:  _____

### GRIEVANCE APPEAL - LEVEL II
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered)

Reason for appeal of Level I decision:  _____
Grievant's signature:  _____    Date:  _____
Date Received:  _____    Admin /designee's signature:  _____
Date and time of hearing, if any:  _____
Administrator's decision:  _____

Administrator's signature:  _____    Date:  _____

### GRIEVANCE APPEAL - LEVEL III
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered)
Reason for appeal of Level III decision:  _____

Grievant's signature:  _____    Date:  _____
Date Received:  _____    Admin /designee's signature:  _____
Date and time of hearing, if any:  _____
Administrator's decision:  _____

Administrator's signature:  _____    Date:  _____

NOTE:    One copy of this form must be sent to Grievant, Association President, Director of Personnel Services, and
one copy is to be retained by Administrator

C00259

A136

Mar. 4. 2005  2:04PM                                          No.1697   P. 10

06/07/2004   16:05   RED CLAY SCHOOL DIST HUMAN RES → 93660287              NU.515   D02
Jun. 7. 2004 1:36PM                                          No.0403   P. 2

       SKYLINE MIDDLE SCH      4548541          06/07/04  01:68pm  P. 002

RED CLAY CONSOLIDATED SCHOOL DISTRICT
WILMINGTON, DELAWARE

*366-0287*
*Mr Rowe*

CERTIFICATED PERSONNEL GRIEVANCE FORM - LEVEL I
(To be submitted within 15 days of alleged violation)

Grievant:   Richard Wilcoxon              Date of alleged violation:        5/11/2004
Building:   Skyline Middle                Contract article & section violated:   4.6
Assignment: Teacher                       Board policy section violated:
                                          Administrative rule or regulation violated:

(x) Check if grievant desires representation
by the Association.

Description of grievance and statement of adverse effect caused by the alleged violation:
The grievant has received a letter of reprimand in regard to his lesson plans. The lesson plans are the same as have been used by him
and a fellow teacher and the plans were approved by the administration.

Remedy Sought:
The letter of reprimand dated May 11, 2004 will be withdrawn and destroyed.

Grievant's signature: _____                  Date:        5/24/2004
Date received:        _____   Admin/designee's signature: 5/25/04

Date and time of hearing, if any:   5/27/04    2/5 pm
Administrator's decision:
Request to remove letter from file will not
be granted.
Administrator's signature:   Denis Baines        Date:   6/3/04
See Attached

GRIEVANCE APPEAL - LEVEL II
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered.)

Reason for appeal of Level I decision:       Decision at Level 1 unacceptable
Grievant's signature: _____                  Date:        6/7/04
Date Received:        6/7/04   Admin/designee's signature:
Date and time of hearing, if any:   6/15/04  @2:30
Administrator's decision:

Administrator's signature                            Date

GRIEVANCE APPEAL - LEVEL III
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered)
Reason for appeal of Level III decision:

Grievant's signature: _____                  Date:
Date Received:        _____   Admin/designee's signature:
Date and time of hearing, if any:
Administrator's decision:

Administrator's signature:                           Date:

NOTE:   One copy of this form must be sent to Grievant, Association President, Director of Personnel Services and
        one copy is to be retained by Administrator.

Margolis Edelstein
Wilcoxon v. Red Clay
0222

A137

RECEIVED

'04 JUL -2 AM 8: 49

DIANE L. DUNMON
ASSISTANT SUPERINTENDENT
ADMINISTRATIVE SERVICES

**Date:** July 1, 2004

**To:**   Rudy Norton

**From:** Debra Davenport

**RE:**   Level II Grievance Response

---------------------------------------------------------------------

**Hearing date: June 15, 2004**
**Attending:    Rudy  Norton,  Richard  Wilcoxon,  and  Debra Davenport**

**Grievant's Position**
    The union alleges Article 4:6 has been violated.
**Remedy Sought**
The letter of reprimand dated May 11, 2004 be withdrawn and destroyed.

**Response**
The building administrator had requested to see lesson plans for a class taught on April 21, 2004.   What was discovered by the administrator was the grievant was using plans given to the grievant by another teacher two years previous.

The grievant presented the lesson plans in question at the hearing. The grievant acknowledges the plans were given to him by another teacher.   Updates to the lesson plans were pointed out by the grievant.   There were no substantial or significant changes made by the grievant to the lesson plans.

The lesson plans given to the grievant should have been used as a guideline to create his lesson plans.  It is expected that educators are using their own training, knowledge and skills when teaching classes and doing lesson plans.

There is no evidence the letter of reprimand were given without just cause.
Grievance denied.

Cc:     D. Dunmon

C00305

Confidential

A138

07/01/2004    13:45    RED CLAY SCHOOL DIST HUMAN RES → 93660287    NO.665    P02

RECEIVED SKYLINE MIDDLE SCH    4548541    05/07/04  01:05pm  P. 222

04 JUL -6 PM 2:28

DIANE L. DUNMON
ASSISTANT SUPERINTENDENT
ADMINISTRATIVE SERVICES

366-0287
Ms. Reeve

**RED CLAY CONSOLIDATED SCHOOL DISTRICT**
**WILMINGTON, DELAWARE**

CERTIFICATED PERSONNEL GRIEVANCE FORM - LEVEL I
(To be submitted within 15 days of alleged violation)

Grievant:  Richard Wilcoxon
Building:  Skyline Middle
Assignment:  Teacher

Date of alleged violation:  5/11/2004
Contract article & section violated:  4:6
Board policy section violated:
Administrative rule or regulation violated:

( x ) Check if grievant desires representation
by the Association.

Description of grievance and statement of adverse effect caused by the alleged violation:
The grievant has received a letter of reprimand in regard to his lesson plans.  The lesson plans are the same as have been used by him
and a fellow teacher and the plans were approved by the administration.

Remedy Sought:
The letter of reprimand dated May 11, 2004 will be withdrawn and destroyed.

Grievant's signature:                               Date:  5/24/2004
Date received:                    Admin/designee's signature:          5/28/04
Date and time of hearing, if any:  5/27/04    2:45 pm
Administrator's decision:
Request to remove letter from file will not
be granted
Administrator's signature:  See Attached    Janis Barnes    Date:  6/3/04

GRIEVANCE APPEAL - LEVEL II
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered)

Reason for appeal of Level I decision:  Decision at Level I unacceptable
Grievant's signature:                            Date:  6/7/04
Date Received:                 Admin/designee's signature:
Date and time of hearing, if any:
Administrator's decision:  See Attached

Administrator's signature:  Debra Davenport    Date:  7/1/04

GRIEVANCE APPEAL - LEVEL III
(To be submitted not later than 5 days after the grievant or Association has been notified that the previous
decision has been rendered)
Reason for appeal of Level III  Decision at Level II is unacceptable.

Grievant's signature:                            Date:  7/2/04
Date Received:                 Admin/designee's signature:
Date and time of hearing, if any:
Administrator's decision:

Administrator's signature:                       Date:

NOTE:  One copy of this form must be sent to Grievant, Association President, Director of Personnel Services, and
one copy is to be retained by Administrator.

C00309

A139

Red Clay Consolidated School District
RCEA
Grievance
Level III

Hearing Date: July 28, 2004
Present: Richard Wilcoxon, Rudy Norton, Diane Dunmon

The Association Position: Mr. Wilcoxon was improperly reprimanded in a memo from the acting principal. The May 11, 2004 memorandum was inaccurate and not warranted. Both teachers in the physical education department were using the same lesson plans when they were team teaching. These lessons given to them from Mr. Rumford, the previous teacher in the department. Further, the other teacher was using the same lessons and she was not reprimanded. The administrator did not ask for his lesson plans at the post-observation conference and Mr. Wilcoxon never told her that they were at home.

There were some issues when Mr. Wilcoxon was working with a long term substitute and so when the other teacher returned from leave, he expressed an interest in making changes. He was told no, but admits that the lessons worked much better with the teacher back from leave because of her disciplinary style and control of the class. He did add the standards to the plans that they were using

He doesn't believe that he should have the burden of reworking these lessons since it was a team teaching situation. At the end of January he was given a note from the other teacher telling him that she had secured separate rooms for the two of them to teach independently.

The Administrative Response: At the level II hearing, Mr. Wilcoxon did not complain to the hearing officer that the information was inaccurate and that he was never asked for his lesson plans at the times indicated in the memo. His one complaint was that he had never been asked for them before. If the information in the memo was inaccurate, why wasn't this an issue at both the level I and level II hearings? The contract also requires that lesson plans will be available to administrators at all times.

Mr. Wilcoxon indicates that he did want to change the lessons at an earlier date since they didn't work well for him independent of his team teaching partner. It seems reasonable that once this teacher was left to teach his class on his own, that modifications to the plans would be a necessity in order to conduct class. Although there may be a basic structure to the lessons, each teacher has a different teaching style and each class has different learning styles.

Grievance Denied.

Diane L. Dunmon

C00310

A140

RED CLAY CONSOLIDATED SCHOOL DISTRICT



# STAFFING REPORT

SUBMITTED BY

Debra Davenport and Diane L. Dunmon

May 12, 2004

# RESOLUTION CONCERNING REDUCTION IN THE NUMBER OF TEACHERS REQUIRED AS A RESULT OF DECREASED ENROLLMENT AND/OR DECREASE IN EDUCATIONAL SERVICES

**WHEREAS,** the Red Clay Consolidated School District ("The District") projects a change in enrollment and/or a change/decrease in educational services for the 2004-2005 school year; and

**WHEREAS,** the projected change in enrollment will change the funds available to the District and cause a reduction in the number of certificated, non-administrative personnel ("teachers/nurses"); and

**WHEREAS,** the Board has reviewed and approved a report dated May 12, 2004, which sets forth the names of the teachers/nurses to be terminated in accordance with the agreement; therefore, be it

**RESOLVED:**

First, that the teachers/nurses on the report dated May 12, 2004, reviewed and approved by the Board in Executive Session shall be given written notice, on or before May 15, 2004, of the Board's intention to terminate their respective services at the end of the 2003-2004 school year.

Secondly, that the teachers/nurses on the report dated May 12, 2004, reviewed and approved by the Board in Executive Session shall also be notified that their names will be placed on the recall list pursuant to the Recall Procedures as stated in the negotiated Agreement.

A142

# REDUCTION IN FORCE



Elementary

| REDACTED | Baltz | 8-26-03 |
| | Warner | 8-26-03 |
| | Shortlidge | 9-2-03 |
| | Lewis | 10-23-03 |
| | Skyline | 11-3-03 |

Counselor

| REDACTED | Richardson Park LC | 8-28-02 |
| | Warner | 11-28-02 |

Reading

| REDACTED | Mote (½) | 6-10-92 |

English

| REDACTED | Conrad | 8-26-03 |

Music

| REDACTED | Stanton | 8-27-03 |

Physical Education

| REDACTED | Marbrook | 8-26-03 |
| | Warner | 9-22-03 |

A143

# RESOLUTION CONCERNING TERMINATION OF TENURED AND NON-TENURED TEACHERS

**WHEREAS,** the Board, based upon the recommendation of staff, has concluded that it intends to terminate the respective services of the tenured and non-tenured teachers on the report dated May 12, 2004, reviewed and approved in Executive Session; therefore, be it

**RESOLVED,** that the tenured and non-tenured teachers listed on the report shall be given written notice on or before May 15, 2004, that the Board intends to terminate their respective services as teachers at the end of the 2003-2004 school year and their names will not be placed on the recall list.

A144

Revised 5-12-04

# NON-RENEWAL
# TENURED



**English**

| | | |
|---|---|---|
| REDACTED | Conrad | 8-30-00 |

**Library**

| | | |
|---|---|---|
| REDACTED | Baltz | 9-1-70 |

# NON-RENEWAL
# NON-TENURED TEACHERS



**Mathematics**

| | | |
|---|---|---|
| REDACTED | Dickinson | 1-30-02 |

**Social Studies**

| | | |
|---|---|---|
| REDACTED | McKean | 8-27-02 |

**Special Education**

| | | |
|---|---|---|
| REDACTED | Conrad | 8-26-03 |

**Physical Education**

| | | |
|---|---|---|
| Wilcoxon, Richard | Skyline | 10-21-02 |

A145

# RESOLUTION CONCERNING TERMINATION
# DUE TO LACK OF CERTIFICATION

**WHEREAS,** the Board, based upon the recommendation of staff, has concluded that it intends to terminate the respective services of teachers due to lack of certification on the report dated May 12, 2004, reviewed and approved in Executive Session; therefore, be it

**RESOLVED,** that the teachers listed on the Lack of Certification report shall be given written notice on or before May 15, 2004, that the Board intends to terminate their respective services as teachers at the end of the 2003-2004 school year and their names will not be placed on the recall list.

A146

# NON-RENEWAL
## LACK OF CERTIFICATION

| Name | Subject | Location |
|------|---------|----------|
| REDACTED | Music | Conrad |
| | Elementary | Shortlidge |
| | Kindergarten | Lewis |
| | Drama | Cab Calloway |
| | Middle Level Mathematics | Conrad |
| | Special Education | Richardson Park LC |
| | Family Consumer | Conrad |
| | Elementary | Lewis |
| | Special Education | Meadowood |
| | Special Education | Richardson Park |
| | Counselor | Lewis |
| | English | Stanton |
| | Mathematics | Dickinson |
| | Elementary | Warner |
| | Special Education | TRLC/PACE |
| | Physical Education | AI DuPont High |
| | General Science | Stanton |
| | Special Education | Conrad |
| | Mathematics | Dickinson |
| | Elementary | Lewis |
| | Bilingual Social Studies | Conrad |
| | Bilingual | Conrad |
| | Special Education | Dickinson |

A147

# CONDITION OF EMPLOYMENT

It is recommended that the Board change the following contracts from temporary to regular effective May 13, 2004.

| Name | Subject/Area | Location |
|------|--------------|----------|
| REDACTED | Mathematics | Dickinson |
| | Bilingual Science | AI DuPont High |
| | Social Studies | AI DuPont High |
| | ESL | Marbrook |
| | Special Education | Meadowood |
| | Special Education | Meadowood |
| | Special Education | Dickinson |
| | Business | AI DuPont High |

A148

# CONDITION OF EMPLOYMENT

It is recommended that the Board extend the following temporary contracts through June 30, 2005.

| REDACTED | Subject/Area | Location |
|---|---|---|
| | Intervention Specialist | Linden Hill |
| | Mathematics | Al DuPont Middle |
| | Physical Science | McKean |
| | Business | Cab Calloway |
| | Physical Science | McKean |
| | | |

A149



**RED CLAY CONSOLIDATED SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Superintendent*

**Administrative Offices**
2916 Duncan Road
Wilmington, DE 19808

**Human Resources**

(302) 683-6656
FAX (302) 636-8778

**Debra Davenport**
*Manager*

Debra.Davenport@redclay.k12.de.us

May 14, 2004

<u>CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>

Mr. Richard Wilcoxon
220 Wharton Drive
Newark, DE 19711

Dear Mr. Wilcoxon:

I have been directed by the Red Clay Consolidated School District's Board of Education to notify you that the Board intends to terminate your services as a teacher, effective at the end of the 2003-04 school year pursuant to Title 14, Chapter 14 of the Delaware Code (copy enclosed).

As a non-tenured teacher, you are not entitled to a hearing before the Board under Title 14, Chapter 14 of the Delaware Code.

Your name will not be placed on the recall list for the Red Clay Consolidated School District.

A letter will be sent from the Benefits Office regarding the continuation of your benefits and disposition of your pension contributions.

On behalf of the Board, I wish to thank you for your services.

Very truly yours,

Debra Davenport
Manager

DD/DLD/z
Enclosures
Non-Tenured Non-Renew Performance 2004

Margolis Edelstein
Wilcoxon v. Red Clay
0321

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 683-6652.

May 20, 2004

**This document is to be attached to the observation completed by Mrs. Janet Basara on Richard Wilcoxon dated April 21, 2004. The post-observation conference was held on Friday, April 30, 2004.**

Prior to conducting this observation, Mrs. Basara was aware that I was awaiting the findings to a Level 2 Grievance Hearing about another matter involving her. In addition, Mrs. Basara was aware that I had reported her to the Department of Labor/EEOC for discrimination.

In the narrative section:
In the second paragraph, Mrs. Basara states I did not conclude reviewing the homework from the previous night. However, after the students had listed many of the items they would buy with the money they would save by not smoking, I stated that these were all good choices and that they are items that you could have in the future rather than a pile of ashes. I also stated think about how much money you would save over your lifetime, which directly ties it to long-term effects of smoking.

In the third paragraph, Mrs. Basara states that the majority of the students moved to one side of the room. There were a total of 9 groups and one student worked alone. On one side of the room there were 3 groups, in the middle section there were two groups and the individual student, and on the other side there were 4 groups. I believe that it was a fair distribution of the groups.

My final concern in the narrative section is that Mrs. Basara exaggerated the off-task behavior of the students. She states that "CJ was laying across two desks." In the multi-purpose room, the desks are attached to the chairs which makes it impossible to lay across two desks. The student had simply put his head down. She also exaggerated the noise level and the noises that she claims students were making. During the presentations, I warned the class to be quiet or they would have to return to their seats and later had to warn two students who were talking to be quiet. As I was discussing the homework for the night, one student whistled. I asked him to stop and moved over beside him. A second student whistled which I ignored and then a third student whistled. I looked right at him and said "I have already asked you to stop whistling. If you do it again, I will send you out of class." That is the extent of the off-task behavior during the class. Skyline's students would not act the way Mrs. Basara describes with an administrator sitting in the class.

In the commendation/recommendation section:
The standard was actually "Students need to know influences on tobacco use." In our discussions about advertising, it was clearly explained and discussed that advertisements do influence people. In addition, we described "word of mouth advertising" as being very similar to peer pressure.



DEPOSITION
EXHIBIT
Basara - 17

Margolis Edelstein
Wilcoxon v. Red Clay
0115

A151

Mrs. Basara again writes about the groups all being on one side of the room. The only thing I could have done to make a more even distribution of groups would be to ask one group to move from one side of the room to the middle section to make it 3 groups on both sides of the room and 3 groups and the individual in the middle section. In addition, although I did not tell students this time they would have to present their work, this was the last week of Health education. Every time the students have worked as partners or in groups they have been asked to share their work with the class. It is an expectation in the class.

The students were not "playing a cat-and-mouse game" at my expense. I warned the whole class about talking during the presentations and re-iterated to two students who not following directions. I gave verbal warnings to two out three students who whistled in class and moved next to one student who whistled. Mrs. Basara later states that I "did not know who was whistling." How does she know this? She never asked me. The first whistle was done by Kalup Knox and the third whistler, who was the one I threatened to send out, was Brian Cox.

I did allow students the opportunity to pick their own groups for this activity. This was the last week of Health and for all previous group assignments I selected their groups. I always selected their groups based on ability (high level students partnered with low level students). A student asked if they could pick their own groups this one time and I allowed them to do so.

Finally, Mrs. Basara states that the class was not brought to closure. I did not bring the activity to closure because we were not finished. Closure was done the following day after all the groups presented their information and was tied back to the state standard.

Teacher Signature/Date:

_Richard Wilcox_     5/20/04

Margolis Edelstein
Wilcoxon v. Red Clay
0116

A152

To: Janet Basara
From: Richard Wilcoxon
Date: May 21, 2004

On the above date, I submitted the additional information for the observation conducted on April 21, 2004. The post-observation conference was held on April 30, 2004. Today's date is within the allotted 15 working days time period in which additional information may be submitted. Please place the information in my personnel file at you earliest convenience. Thank you.

Teacher Signature/Date:

_Richd Wilcoxon_ 5/21/04

I received this information on the above date.
Administrator Signature/Date:

_Janet Basara_ 5/01/04



RCCSD
Human Resources

2004 JUN -1 P 3: 19

**CLAY CONSOLIDATED
SCHOOL DISTRICT**

ert J. Andrzejowski, Ed.D.
*Superintendent*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

Diane L. Dunmon
*ssistant Superintendent
ldministrative Services*

(302) 683-6612
FAX (302) 636-8774

June 1, 2004

Mr. Richard Wilcoxon
220 Wharton Drive
Newark, DE 19711

Dear Mr. Wilcoxon:

The Superintendent is in receipt of your letter of May 18, 2004, requesting reasons for your termination. The reasons include poor classroom management, inappropriate interaction with staff and lack of proper student lesson plans.

Very truly yours,

Diane L. Dunmon
Assistant Superintendent
Administrative Services

DLD/z

Pc:    Rudy Norton, DSEA
       Human Resources

Margolis Edelstein
Wilcoxon v. Red Clay
0170

A154

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

| | ENTER CHARGE NUMBER |
|---|---|
| ☐ FEPA | 040605009 |
| ☐ EEOC | 17CA400502 |

Delaware Department of Labor

(State, or local Agency, If any) and EEOC

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Richard Wilcoxon | (302) 731-4457 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 220 Wharton Drive  Newark DE 19711  NCC | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

| NAME | NO. OF EMPLOYEES OR MEMBERS | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| State of DE/Dept. of Ed./Red Clay | 50+ | (302) 683-6656 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 2916 Duncan Road, Wilmington, DE 19808 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☒ RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST 3/12/04
LATEST 6/10/2004
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I am a male individual who filed a charge of discrimination on 2/24/04. Respondent received the charge on 3/12/04. Since filing, I have been subjected to scrutiny of work, negative evaluations and threatened with termination. In addition, I have received 2 negative disciplinary write-ups that were placed in my file. Respondent has allowed me to work until 6/10/04, however has denied me possibility for work recall for next year. Particularly, Ms. Janet Basara, Acting Principal began to ignore me in 3/04. Afterwards, Ms. Basara told me that I would receive class observations and as a result issued a negative result on 4/30/04. Before 3/12/04, I received all positive class observations by Ms. Basara and other administrators.

Respondent decision to terminate my employment is based on my negative observations, alleged inappropriate comments to other co-workers and discipline about lesson plans that are also used by other teachers.

I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Delaware Discrimination in Employment Act because: 1. Respondent treated me harshly after receiving my charge of discrimination; 2. My performance was not in issue until after 3/12/04; 3. Respondent disciplined me regarding allegations in my initial charge of discrimination; 3. Respondent has terminated me and denied me opportunity for future employment despite my certification in effort to further retaliate against me.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | SIGNATURE OF COMPLAINANT

_____

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.

6/9/04          [signature]
Date          Charging Party (Signature) | NOTARY - (When necessary to meet State and Local Requirements)

_____

Subscribed and sworn to before me this date          (Day, month, and year) |

EEOC FORM 5
REV 6/92          PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

Margolis Edelstein
Wilcoxon v. Red Clay
0074

A155

HR

C.    C.

## PERFORMANCE APPRAISAL

Teacher  Richard Wilcoxon  Dates of Observations  11/19/03, 2/12/04, 4/21/04

Memos of Concern  1/13/04 (Inappropriate comments), 1/20/04 (Bus responsibilities), 1/22/04 (Substitute lesson plans), 5/5/04 (Lack of security), 5/11/04 (Lesson plans)

Subject Area  Health/Physical Education  Grade  6, 7, 8  Appraisal Date  June 2004

Appraiser(s)  Mrs. Basara, Dr. Manolakos, Mr. Bartoli

---

### I.    INSTRUCTIONAL PLANNING

Exemplary      Effective      Needs Improvement      <u>Unsatisfactory</u>

NARRATIVE:
- Plans reflect the State Standards and Performance Indicators stated as appropriate instructional objectives
- Plans include a variety of activities

As stated in memos dated January 22, 2004 and May 5, 2004, Mr. Wilcoxon needs to have appropriate substitute plans, including class lists and bell schedules, when he is absent and three days of current emergency plans on file. He also needs to use the referenced two-year old health plans of another teacher as a guide, as intended, and write current, updated plans for his classes. These problems became evident when Mr. Wilcoxon was absent without appropriate plans on two occasions, and after Mr. Wilcoxon began planning and teaching his own classes rather than team teaching.

### II.    ORGANIZATION AND MANAGEMENT OF CLASSROOM

Exemplary      <u>Effective</u>      Needs Improvement      Unsatisfactory

NARRATIVE:
- Usually arranges classroom for effective instruction

In most observations, Mr. Wilcoxon maintained appropriate classroom behavior. In some of those observations, he was working with another teacher. On one particular observation (4/21/04), five students were whistling and continued to do so after the class was repeatedly told by the teacher to stop.

### III.    INSTRUCTIONAL STRATEGIES

Exemplary      <u>Effective</u>      Needs Improvement      Unsatisfactory

DEPOSITION EXHIBIT
FRED(SD) 800-631-6989
Basara -15-
5/25/06

Margolis Edelstein
Wilcoxon v. Red Clay
A156

NARRATIVE:
- Selects appropriate learning activities
- Uses appropriate instructional materials and resources
- Varies instructional strategies

Conversely, to be more effective, Mr. Wilcoxon needs to <u>consistently</u>
- Focus the lesson on the objectives
- Inform students of the lesson objectives (should not be written behind a screen)
- Provide closure to lessons (related to the objective)
- Design effective instructional groups
- Use more higher-level questioning techniques
- Check for student understanding regularly
- Maintain on-task behavior for at least 75% of the students for at least 75% of the lesson
- Pace lesson for maximum use of instructional time

## IV.    TEACHER/STUDENT INTERACTIONS

Exemplary    <u>Effective</u>    Needs Improvement    Unsatisfactory

NARRATIVE:
- Encourages student interactions
- Provides constructive feedback to students
- Informs students of necessary timelines for success

## V.    EVALUATION OF STUDENT PERFORMANCE

Exemplary    <u>Effective</u>    Needs Improvement    Unsatisfactory

NARRATIVE:
- Maintains accurate records
- Re-teaches skills not mastered during school wide re-teaching
- Uses available data to determine student strengths and weaknesses

## VI.    RELATED RESPONSIBLITIES

Exemplary    Effective    Needs Improvement    <u>Unsatisfactory</u>

NARRATIVE:
- Performs non-instructional responsibilities as assigned
- Engages in professional development

Specifically, this year Mr. Wilcoxon
- Participated in Power Point workshop
- Was assistant/head coach for interscholastic soccer team

Margolis Edelstein
Wilcoxon v. Red Clay
0165

A157

- Organized and ran intramural 7th and 8th grade flag football, basketball, floor hockey, and 6ht grade basketball
- Organized and ran chess club
- Assisted in planning and promoting the Staff vs Student Basketball Game
- Took three graduate level courses at Wilmington College

Issues came to the administrations attention on or about December 17, 2003, as documented in memos to Mr. Wilcoxon, which resulted in a collapse of cooperative team teaching. Two additional memos given to him addressed a lack of security for fundraiser cash, some of which was subsequently stolen, and not arranging for after school activity busses in a timely fashion as requested.

Working cooperatively with staff, securing funds, and arranging for activity busses are parts of one's related responsibilities as a professional. These documented areas need to be improved.

## COMMENDATIONS/RECOMMENDED AREAS FOR GROWTH/COMMENTS:

Mr. Wilcoxon has taught at Skyline for almost two years. This year he has received several memos to correct problems with his planning and related responsibilities.
- Refrain from making inappropriate comments to staff.
- Prepare appropriate lesson plans for substitutes that include class lists and a bell schedule.
- Have three days of appropriate emergency lesson plans on file
- Sign up on time for after school busses for the students staying with you for activities.
- Lock cash collected for fundraisers in a secure place.
- Update the two-year old health plans that the former teacher gave you to use as a guide.

These issues give the administration serious concern even though several of Mr. Wilcoxon's lesson analyses have been adequate

The teacher and appraiser shall sign the Performance Appraisal to indicate that it has been reviewed and discussed, not that the teacher necessarily agrees with the Performance Appraisal. Further, the teacher may submit additional information on a TEACHER/SPECIALIST APPRAISAL RESPONSE FORM, within fifteen (15) working days of the date of the teacher's signature on this Performance Appraisal. Place an (x) in the box below to indicate your desire to submit additional information and to receive a Teacher /Specialist Appraisal Response Form. The Teacher/Specialist Appraisal Response Form shall be appended to this Performance Appraisal and shall become part of the appraisal record.

Teacher's Signature/Date

Appraiser's Signature/Date

Additional information will be submitted by the teacher within fifteen (15) working days on a Teacher/Specialist Appraisal Response Form

nick Mandelum, witness
6/10/04

Margolis Edelstein
Wilcoxon v. Red Clay

A158

AOL Email

**From:** llpurrtycatz@aol com
**Sent:** Monday, June 28, 2004 12:14 PM
**To:** Ruth Michael; cbobish@yahoo com; Filer Linda; Karpinski Thomas; SkylineMiddle@aol com; Longenecker Leigh; Vincent C; Shepherd Deborah; Wilcoxon Richard; awhorrall@avongrove org
**Subject:** Special Meeting – Farewell

Fellow Insubordinates:

The 'meeting' of the Insubordinates is being advertised as starting around 6 PM on Tuesday due to the schedule of one of the schedulers. However, Fellow Insubordinates, in keeping with our attitudes and behaviors, the meeting CAN begin without Him  We can perform such duties as 1) begin drinking, 2) terrorizing the neighborhood, 3) begin drinking, 4) writing names in snow, 5) begin drinking, 6) eating munchies, and 7) continue drinking. I should have the refrigerator cleared out of unnecessary items (such as my food) so that you can put your beer supply on ice by 4:30 or so. We will just begin the honoring without Him.

Directions to the Place for those of you who may not remember due to either age or 'previous conditions':
From Skyline parking lot: (You really don't have to start here if you know where I live)
    Exit parking lot LEFT.
    Drive to traffic light at Linden Hill Road. Turn RIGHT.
    Drive to traffic light at Limestone Road. Turn LEFT.
    Drive past traffic light at PaperMill Road. Turn RIGHT at Texaco Station/Wachovia Bank.
    Drive to T in road, turn LEFT. Drive to Stop Sign. Turn RIGHT. My house is directly to your left. # 112 Yardley Place. Phone # 235-2548
    (This is a byob -- if you care to bring something to share, I am sure people will help you share it )

See you Tuesday.

Marilyn

C00414

A159





AUG 1 0 2004

Non-Renewal Hearing
July 28, 2004

D CLAY CONSOLIDATED
SCHOOL DISTRICT

obert J. Andrzejewski, Ed.D.
Superintendent

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

(302) 683-6604
Fax (302) 636-8774

Present:    Robert J. Andrzejewski, Ed.D.
Diane L. Dunmon
Richard Wilcoxon
Rudy Norton

Mr. Wilcoxon and his representative indicated that for more than 1½ years there were no problems with regard to observations and then suddenly, there were issues. The point was made that it was not reasonable for Mr. Wilcoxon to go from effective to ineffective in such a short period of time. Although he was accused of inappropriate interactions with another staff member, there is no <u>conclusive</u> evidence that anything untoward occurred between Mr. Wilcoxon and a staff member. The concern that lesson plans for Health were not up-to-date should not be an issue since both Physical Education and Health teachers use the same plans received from Frank Rumford.

Mr. Wilcoxon indicated that he had team-taught health since he began teaching at Skyline Middle School two years ago. His observations, during this time, were done in this type of setting until approximately mid-school year of 2003-2004. At that time, he was no longer team-teaching and was required to teach health independently to his own students. It is not unreasonable to believe that classroom management skills would be different when only one teacher is present rather than two. With Mr. Wilcoxon solely responsible for managing the classroom, the dynamics during a lesson can change dramatically. Mr. Wilcoxon has responsibility to prepare lessons for his students that are appropriate and up-to-date. In this situation the evaluation is based upon Mr. Wilcoxon's performance and Mr. Wilcoxon's performance alone. Besides lesson analysis Mr. Wilcoxon was also given memoranda from the building administration indicating concerns and expectations. Based upon this information, the decision to non-renew his contract is upheld.

*(signature)*

Margolis Edelstein
Wilcoxon v. Red Clay
0572

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE  19808  (302) 683-6662.

A160