## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD WILCOXON,        )
                             )
        Plaintiff,       )
                             )     C.A. No.05-524 (SLR)
        v.             )
                             )     **JURY TRIAL DEMANDED**
RED CLAY CONSOLIDATED  )
SCHOOL DISTRICT BOARD OF  )
EDUCATION, and JANAY FREEBERY,  )
                             )
        Defendants.     )
                             )

## PLAINTIFF'S OPENINING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Jeffrey K. Martin, Esquire (DE #2407)
Timothy J. Wilson, Esquire (DE #4323)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
Attorneys for Plaintiff

Dated: July 13, 2006

# **TABLE OF CONTENTS**

**Page No.**

TABLE OF CITATIONS ………………………………………………………..iv

NATURE AND STAGE OF THE PROCEEDINGS ……………………………………1

SUMMARY OF ARGUMENT ……………………………………..……………2

      1.    RED CLAY VIOLATED THE TERMS OF
          14 DEL. C. § 1410, "THE TEACHER TERMINATION
          STATUTE," IN THAT MR. WILCOXON WAS
          TERMINATED FOR BASED UPON DOCUMENTED
          MATERIALS NOT PROPERLY PLACED IN HIS
          PERSONNEL FILE AND FOR REASONS
          CONTAINED IN A PERFORMANCE APPRAISAL
          FOR WHICH HE WAS NOT PROVIDED TIME TO
          CORRECT SUCH ALLEGED DEFICIENCIES THROUGH
          AN INDIVIDUALIZED IMPROVEMENT PLAN………………………....2

          *a.*  *Red Clay Terminated Mr. Wilcoxon in Violation of §*
              *1410 Based Upon Documented Materials Not "Properly*
              *Placed" in His Personnel File Prior to His Notice of*
              *Termination. Such Materials Were Not Properly Placed*
              *Because They Were the Issued at Disciplinary Meetings*
              *Held in Violation of the Collective Bargaining*
              *Agreement. Specifically Such Disciplinary Meetings Held:*
              *(1) Without Forty-Eight (48) Hours Aadvance Notice*
              *to Mr. Wilcoxon; (2) Without Providing Mr. Wilcoxon*
              *Prior Written Notice for the Specific Reasons of Such*
              *Meetings; (3) Without Notice of Additional Persons*
              *Who Would be Present at Such Meetings; and*
              *(4) Without an Association Representative of His*
              *Choice Present to Advise and to Represent Him*
              *During Such Meetings*…………………………………………………2

          *b.*  *Mr. Wilcoxon was Terminated For Performance*
              *Reasons Without the Benefit of His Statutory Right*
              *to Correct Those Deficiencies Through an*
              *Individualized Improvement Plan*…………………………………..2

STATEMENT OF MATERIAL FACTS …………………………………………...3

ARGUMENT ………………………………………………………………....12

  I.    STANDARD OF REVIEW………………………….………….…..............12

Page No.

II.   RED CLAY VIOLATED THE TERMS 14 DEL. C. § 1410,
      "THE TEACHER TERMINATION STATUTE."………….....…………..13

      a.    Red Clay Terminated Mr. Wilcoxon Based Upon
            DocumentedMaterials Not "Properly Placed" in
            His Personnel File Prior to His Notice of Termination
            in that When the Documented Materials Were the Result
            of Disciplinary Meetings Held: (1) without forty-eight (48)
            hours advance notice; (2) without providing prior written
            notice for the specific reasons of such meetings; (3) without
            notice of additional persons who would be present at such
            meetings; and (4) without an Association representative of
            his choice present to advise and to represent him during such
            meetings…………………………………………………………….13

      b.    Mr. Wilcoxon was Terminated For Performance Reasons
            Without the Benefit of His Statutory Right to Correct
            Those Deficiencies Through and Individualized
            Improvement Plan………………………………………….............17


CONCLUSION ………………………………………………………………….19

# TABLE OF CITATIONS

**Cases**                                                                **Page No.**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986)……………………………………………………………...…12

Horowitz v. Fed. Kemper Life Assurance Co.,
57 F.3d 300, 302 n.1 (3d Cir. 1995)…………………………………………………….…12

Logan v. Commerical Un. Ins. Co.,
96 F.3d 971, 978 (7th Cir. 1996)……………………………………………………...…12

MacDonald v. Delta Air Lines, Inc.,
94 F.3d 1437, 1440 (10th Cir. 1996)……………………………………………………….…12

McCoy v. Sussex Co. Vo-Tech Sch. Dist.,
1998 Del. Ch. LEXIS 171, *14 (Del. Ch. 1998)…………………………………….…….…...14

Rodgers v. Monumental Life Ins. Co.,
289 F.3d 442, 448 (6th Cir. 2002)…………………………………………………………….…12

Troy Chemical Corp. v. Teamsters Union Local No. 408,
37 F.3d 123, 126 (3d Cir. 1994)……………………………………………………………...…12


**Unreported Cases**                                                     **Tab No.**

McCoy v. Sussex Co. Vo-Tech Sch. Dist.,
1998 Del. Ch. LEXIS 171, *14 (Del. Ch. 1998)………………………………………...…..A

## Statutes, Acts & Rules

14 Del. C. § 1410

## CERTIFICATE OF SERVICE

I, Timothy J. Wilson, Esq., hereby certify that on July 13, 2006, I electronically

filed a true and correct copy of the foregoing *Plaintiff's Opening Brief in Support of*

*Plaintiff's Motion for Partial Summary Judgment* with the Clerk of the Court using

CM/ECF, which will send notification of such to the following counsel of record, and

further that I caused a copy of same to be delivered to the following counsel of record:

Barry M. Willoughby, Esq.
Michael P. Stafford, Esq.
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

MARGOLIS EDELSTEIN

Timothy J. Wilson, Esq. (No. 4323)
1509 Gilpin Ave.
Wilmington, DE 19806
(302) 777-4680 – Telephone
(302) 777-4682 – Facsimile
twilson@margolisedelstein.com – Email
*Attorney for Plaintiff*

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Richard Wilcoxon is a former health and physical education teacher at Skyline Middle School in the Red Clay Consolidated School District. He was terminated by Defendant, Board of Education of the Red Clay Consolidated School District ("Red Clay") on May 18, 2004 following discipline imposed upon him in violation of 14 <u>Del</u>. <u>C.</u> § 1410. Mr. Wilcoxon filed a lawsuit against Red Clay on July 22, 2005 claiming wrongful termination and discrimination and retaliation based upon his gender.

Red Clay filed a Motion to Dismiss to Complaint. That Motion was denied on June 30, 2006. <u>Wilcoxon v. Red Clay Consolidated School District Board of Edu.</u>

This is Mr. Wilcoxon's Opening Brief in support of his Motion for Partial Summary Judgment on his claim for wrongful termination.

## SUMMARY OF ARGUMENT

1.  RED CLAY VIOLATED THE TERMS OF 14 <u>DEL</u>. <u>C</u>. § 1410, "THE TEACHER TERMINATION STATUTE," IN THAT MR. WILCOXON WAS TERMINATED FOR BASED UPON DOCUMENTED MATERIALS NOT PROPERLY PLACED IN HIS PERSONNEL FILE AND FOR REASONS CONTAINED IN A PERFORMANCE APPRAISAL FOR WHICH HE WAS NOT PROVIDED TIME TO CORRECT SUCH ALLEGED DEFICIENCIES THROUGH AN INDIVIDUALIZED IMPROVEMENT PLAN.

    a.  *Red Clay Terminated Mr. Wilcoxon in Violation of § 1410 Based Upon Documented Materials Not "Properly Placed" in His Personnel File Prior to His Notice of Termination. Such Materials Were Not Properly Placed Because They Were the Issued at Disciplinary Meetings Held in Violation of the Collective Bargaining Agreement. Specifically Such Disciplinary Meetings Held: (1) Without Forty-Eight (48) Hours Aadvance Notice to Mr. Wilcoxon; (2) Without Providing Mr. Wilcoxon Prior Written Notice for the Specific Reasons of Such Meetings; (3) Without Notice of Additional Persons Who Would be Present at Such Meetings; and (4) Without an Association Representative of His Choice Present to Advise and to Represent Him During Such Meetings.*

    b.  *Mr. Wilcoxon was Terminated For Performance Reasons Without the Benefit of His Statutory Right to Correct Those Deficiencies Through an Individualized Improvement Plan.*

2

## STATEMENT OF MATERIAL FACTS

Mr. Wilcoxon began working for Defendant Red Clay Consolidated School District at Skyline Middle School in Pike Creek, Delaware in October of 2002. During the fall and into the winter of 2002, Mr. Wilcoxon team-taught[1] with a long-term substitute who was filling in for a female physical education teacher, Janay Freebery. (A-0036, A-0107, A-0231). In early 2003, Ms. Freebery returned to work at Skyline. Ms. Freebery had been out of work the previous fall on maternity leave. After her return, she and Mr. Wilcoxon team-taught some of their Physical Education classes together.

Following her return to work, Ms. Freebery was frequently tardy in getting to work and often absent during class time. (A-0038 – A-0040, A-0044 – A-0045, A-0258 pg 33, A-0312 – A-0316 pgs 38-40, 44-45). Concerned about this issue, Mr. Wilcoxon sought advice from two senior members of the teaching staff, Linda Filer ("Ms. Filer") and Tom Karpinski ("Mr. Karpinski"), regarding a course of action for him to take with respect to Ms. Freebery's absences from class. (A-0025 – A-0026).

Ms. Filer and Mr. Karpinski counseled Mr. Wilcoxon to keep a written journal of times and dates of Ms. Freebery's absences and other pertinent information about Ms. Freebery's actions and inactions.(A-0025 – A-0026, A-0033). Mr. Wilcoxon took his mentors' advice and began to record Ms. Freebery's absences and actions in a journal which he kept locked in his office.(A-0025 – A-0026, A-0033).

On December 15, 2003, Mr. Wilcoxon was ill and reported off from work.(A-0256 pg 22). During his absence, Frank Rumford ("Mr. Rumford"), acting Assistant Principal, entered Mr. Wilcoxon's locked office, went into his desk and removed the

journal containing the documentation of Ms. Freebery's actions and absences. (A-0069, A-0256 pgs 22-23, 25, A-0257 pg 26, A-0277 pgs 40-41, A-0278 pg 44). Mr. Rumford then turned the journal over to a substitute teacher who gave it to Ms. Freebery, who in turn gave it to the Acting Principal of Skyline Middle School, Janet Basara ("Ms. Basara"). (A-0235 pgs 22-24). Ms. Basara acted on behalf of Red Clay in disciplinary matters pertaining to Skyline teachers and therefore acted as an agent of Red Clay. (A-0269 pg 8).

Up until this point in his career, Mr. Wilcoxon had never had a bad performance review and had never been subject to any discipline. Mr. Wilcoxon returned to work the next day, December 16, 2003. During his scheduled planning period, he left school to run an errand. When he returned, he found a Post-it note in the teachers' sign-out book stating, "Rich, Janet [Basara] needs to see you." (A-0311)

The topic of this meeting with Ms. Basara was the journal that had come into Ms. Basara's possession via, Frank Rumford and Janay Freebery (A-0054 – A-0055). Mr. Wilcoxon explained to Ms. Basara his reasons for keeping the journal. (A-0014, A-0281 pg 56-57). However, instead of indicating that she would investigate Ms. Freebery's tardiness and absences from class, Ms. Basara verbally reprimanded *Mr. Wilcoxon*. (A-0282 pg 59, A-0284 pg 69)

On December 17, 2003, Ms. Basara called Mr. Wilcoxon into her office for a meeting (A-0285 pgs 71-72). The purpose of the meeting was to attempt to coerce Mr. Wilcoxon to reveal who had advised him to record Ms. Freebery's absences. (A-0281 pgs 56-57) During the meeting, Ms. Basara made a comment that Mr. Wilcoxon and Ms.

---

[1] Team-teaching is a style of teaching whereby two teachers teach a large group of children a single subject. The idea behind team-teaching is that the two teachers combined knowledge will provide a more

4

Freebery needed to have another meeting to determine how Mr. Wilcoxon and Ms. Freebery could finish the rest of this school year working together. (A-0286 pg 75). Mr. Wilcoxon questioned why she limited her statement to "the rest of this school year."(A-0286 pg 75) Ms. Basara replied, "You're not tenured are you?" (A-0260 pg 38-39, A-0286 pg 75-76). Mr. Wilcoxon took this as a direct threat to his career and understood it to mean that he had better not pursue this matter any further or he would be terminated. (A-0286 pg 77).

Later that day, Mr. Wilcoxon was unexpectedly called into another meeting. In attendance were Ms. Freebery, Mr. Rumford, and Ms. Basara. During this meeting Ms. Freebery took control and repeatedly demanded to know the identities of the individuals who advised him to keep the journal. (A-0014, A-0286 pg 74-75). Again, Mr. Wilcoxon refused to reveal them.(A-0014). After asking Mr. Wilcoxon this question four separate times, and in apparent realization that she was not going to get an answer, Ms. Freebery falsely accused Mr. Wilcoxon of making inappropriate comments to her and threatened to file a sexual harassment complaint against him. (A-0014, A-0285 pg 73). Mr. Wilcoxon steadfastly denied any and all inappropriate statements (A-0015).

Article 4:4.1 of the collective bargaining agreement between the District and the Red Clay Education Association Affiliate of NCCEA-DSEA-NEA, Inc. ("collective bargaining agreement"), holds in pertinent part:

> If an employee is required to appear before the Board or an agent thereof concerning a matter which could adversely affect his/her continued employment, salary or any increments, he/she will be given *prior written notice and specific reasons for such meeting or interview at least forty-eight (48) hours in advance*. Any topic not included in the letter will not be covered at said meeting unless

meaningful learning experience for the students.

> agreed to by the employee; if not agreed it will be
> discussed at a later date after proper notice has been given.
> The employee will also be ***notified in writing of any
> additional persons who will be present***.   An employee
> required to appear in this instance will be ***entitled to have
> an Association representative of his/her choice present*** to
> advise and to represent him/her during such meeting or
> interview . . . . (emphasis added). (A-0328)

This December 17, 2003 meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting; not informed in writing of the specific reason for the meeting; not informed in writing of the individuals who would be in attendance at the meeting; and, not permitted to have an Association representative of his/her choice present to advise and to represent him during the meeting. (A-0285 pgs 71-72, A-0431 – A-0432). Because the meeting violated the terms of the collective bargaining agreement any subsequent disciplinary actions based upon that which occurred at the meeting should have been prohibited.

Mr. Wilcoxon was very troubled by Ms. Freebery's false statements. So much so that after school concluded that day, Mr. Wilcoxon again met with Mr. Rumford and Ms. Basara to make a complaint about her false accusations and threats against him. He related that Ms. Freebery had *never* expressed any concern over *anything* that Mr. Wilcoxon had said to her prior to her knowledge that he was keeping the journal – suggesting that this was her way of getting back at him. He then asked what it was that he allegedly said that had offended Ms. Freebery. He got no answer. In fact, both Mr. Rumford and Ms. Basara indicated that Ms. Freebery was not uncomfortable with anything that Mr. Wilcoxon had said until the journal was found (A-0285 pg 73). Ms.

6

Basara assured Mr. Wilcoxon that he was not in any sort of trouble and that Ms. Freebery's accusations were not a formal complaint. (A- 0286 pgs 76-77).

Mr. Wilcoxon informed Ms. Basara that Ms. Freebery brought up the topic of sex routinely in the course of conversation with Mr. Wilcoxon. (A-0198). He related exact stories that he could not possibly have known without Ms. Freebery telling him. Ms. Freebery received no reprimand or discipline of any sort.

On January 22, 2004, Mr. Wilcoxon received a letter in his school mailbox at 11:30 a.m. stating that he needed to report to Ms. Basara's office after school for a meeting – essentially giving Mr. Wilcoxon three hours notice of the meeting  (A-0304, A-0320). There was no mention of the topic of the meeting or any other persons who would be present at the meeting. (A-0304).    After receiving this notice, Mr. Wilcoxon asked Ms. Basara if the topic of the meeting warranted union representation.   She responded that "it might." Mr. Wilcoxon contacted both of the union representatives who worked in his building and requested that they attend the meeting with him, but because of the short notice they were unable to attend the meeting. (A-0304).

Mr. Wilcoxon notified Ms. Basara of his inability to secure union representation. She responded that he was to attend the meeting without representation because she had already arranged for other individuals to be present at the meeting.  This was the first time that Mr. Wilcoxon was notified that other individuals would be present.  The other individuals who were in attendance were Frank Rumford and Bob Bartoli. (A-0287 pg 81).

At this January 22, 2004 meeting, contrary to Ms. Basara's prior assurances during the meeting of December 17 2003 that Mr. Wilcoxon was not in trouble, she

7

presented Mr. Wilcoxon with a disciplinary letter that concluded that he had made inappropriate comments about Ms. Freebery. (A-0302).   Because Mr. Wilcoxon disagreed with the conclusions in the letter, Mr. Wilcoxon refused to sign it. (A-0319). He then informed Ms. Basara that before the meeting proceeded any further, he wanted to have a union representative present. (A-0290).   Ms. Basara refused his request and instructed him not to leave until he received two other disciplinary letters.( A-0149).

The second letter imposed on Mr. Wilcoxon during the January 22, 2004 meeting alleged that his emergency lesson plans[2] did not include a class list or bell schedule. (A-0303).  However, when he requested to see the emergency lesson plan so that they could specifically show him its shortcomings, he was told that they did not have them.  The third letter given to Mr. Wilcoxon during the January 22, 2004 meeting concluded that he did not sign up for after school bus duties and, as a result, other teachers and administrators had to make up for his absences. (A-0429).

This meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting (A-0431 – A0432); not informed in writing or otherwise of the specific reason for the meeting (A-0431 – A0432); not informed in writing or otherwise of the individuals who would be in attendance at the meeting (A-0431 – A0432); and, not permitted to have an Association representative of his choice present to advise and to represent him during the meeting.  (A-0288 pg 82, A-0320, A-0431 – A-0432).   Because the January 22, 2004 meeting violated the terms of the collective bargaining agreement, the disciplinary letters were not "properly placed" in Mr. Wilcoxon's personnel file and therefore could not be

used as a basis for any termination of Mr. Wilcoxon's employment according to 14 *Del. C.* § 1410.

On May 5, 2004, Ms. Basara called Mr. Wilcoxon into another surprise meeting. This time, in an effort to give an illusion of fairness, Ms. Basara had taken the liberty of securing union representation for Mr. Wilcoxon. She had retained the services of Tom Meade, a union representative who also happened to be a friendly associate of Ms. Basara. This individual was present to act ostensibly on Mr. Wilcoxon's behalf. He was not chosen by Mr. Wilcoxon. (A-0431 – A0432).

The disciplinary letter that Mr. Wilcoxon received at this meeting addressed a situation where Mr. Wilcoxon had allegedly failed to secure a small sum of money properly and the money was stolen out of his desk. (A-0305 – A-0306). This meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting (A-0431 – A0432); informed in writing or otherwise of the specific reason for the meeting (A-0431 – A0432); informed in writing or otherwise of the individuals who would be in attendance at the meeting (A-0431 – A0432); and, was not permitted to have an Association representative *of his choice* present to advise and to represent him during the meeting. (A-0431 – A0432). Because the meeting violated the terms of the collective bargaining agreement, the disciplinary letters were not "properly placed" in Mr. Wilcoxon's personnel file and therefore could not be used as a basis for any termination of Mr. Wilcoxon's employment according to 14 *Del. C.* § 1410.

---

[2] These are plans the teacher creates but stores in the main office in case the teacher is unable to come to school for some emergency reason. They include instructions on everything a substitute would need to know to run the teacher's class in his or her absence.

On May 11, 2004 a union representative contacted Mr. Wilcoxon to inform him that he was to meet once again with Mrs. Basara, *that day*. At this meeting, Mr. Wilcoxon was given another disciplinary letter. The letter stated that Plaintiff's lesson plans were inappropriate. (A-0305).

Again, this meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting; not informed in writing or otherwise of the specific reason for the meeting; and, not permitted to have an Association representative *of his choice* present to advise and to represent him during the meeting. (A-0431 –A-0432). Because the May 11, 2004 meeting was held in violation of the collective bargaining agreement, the disciplinary letters were not "properly placed" in Mr. Wilcoxon's personnel file and therefore could not be used as a basis for any termination of Mr. Wilcoxon's employment according to 14 *Del. C.* § 1410.

On May 14, 2004, Mr. Wilcoxon was again called into Ms. Basara's office, where once again, Ms. Basara had taken the liberty of securing union representation for Mr. Wilcoxon. Hence this individual was not a representative of Mr. Wilcoxon's choosing. (A-0431 – A0432). Mr. Wilcoxon objected to the meeting because he had not been given forty-eight hours notice but Ms. Basara proceeded with the meeting regardless. Ms. Basara handed Mr. Wilcoxon a letter stating that the District would not renew his contract for the ensuing school year. (A-0308).

At that point, Mr. Wilcoxon requested the reasons for the non-renewal. In response, he was sent a letter dated May 18, 2004 stating that he was terminated because of poor lesson plans, poor classroom management and for making inappropriate

comments. (A-0308). Mr. Wilcoxon was never placed on an individual improvement plan. (A-0431 – A-0432).

Once again, this May 14 meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting (A-0431 – A-0432); not informed in writing or otherwise of the specific reason for the meeting (A-0431 – A-0432); not informed in writing or otherwise of the individuals who would be in attendance at the meeting (A-0431 – A-0432); and, not was not permitted to have an Association representative of his/her choice present to advise and to represent him during the meeting. (A-0431 – A-0432). Because this meeting violated the terms of the collective bargaining agreement, the termination has no effect and is therefore a nullity. 14 *Del. C.* § 1410.

Mr. Wilcoxon's termination violated 14 *Del. C.* § 1410 because the termination was based upon information not "properly placed" in Mr. Wilcoxon's personnel file prior to the notice of termination.

But for his unlawful termination at the close of the 2003 – 2004 school-year, Mr. Wilcoxon would have become a tenured school teacher in October 2004.

## ARGUMENT

### I.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it might affect the outcome under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Material facts are those that could alter the outcome of the case, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995). A fact is only material if the "establishment thereof might affect the outcome of the lawsuit under governing substantive law." Rodgers v. Monumental Life Ins. Co., 289 F.3d 442, 448 (6th Cir. 2002); see also Logan v. Commerical Un. Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) ("The nonmovant must do more . . . than demonstrate some factual disagreement between the parties; the issue must be 'material.' Irrelevant or unnecessary facts do not preclude summary judgment even when they are not in dispute.").

A material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1440 (10th Cir. 1996); see also Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3d Cir. 1994)(holding that factual issues are not

12

"genuine" unless a reasonable jury could return a verdict for nonmovant based on nonmovant's submissions). A dispute over a material fact must be "genuine", i.e., the evidence is such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

This is a case where there is no genuine issue as to any material fact relevant to Plaintiff's motion. Therefore, summary judgment must be granted in his favor.

## II.   RED CLAY VIOLATED THE TERMS 14 DEL. C. § 1410, "THE TEACHER TERMINATION STATUTE."

The "Teacher Termination Statute," 14 *Del. C.* § 1410, requires that when an untenured teacher requests the reasons for his termination, the Board must provide the reasons in writing and that such reasons "must have either been contained in the teacher's performance appraisal, and the teacher was provided time to correct any deficiency through an *individualized improvement plan* or other documented materials *properly placed* in the teacher's personnel file prior to said notice. § 1410(b)(emphasis added).

> a.   *Red Clay Terminated Mr. Wilcoxon Based Upon Documented Materials Not "Properly Placed" in His Personnel File Prior to His Notice of Termination in that the Documented Materials Were the Result of Disciplinary Meetings Held: (1) without forty-eight (48) hours advance notice; (2) without providing prior written notice for the specific reasons of such meetings; (3) without notice of additional persons who would be present at such meetings; and (4) without an Association representative of his choice present to advise and to represent him during such meetings.*

Article 4:4.1 of the collective bargaining agreement between the District and the Red Clay Education Association Affiliate of NCCEA-DSEA-NEA, Inc. ("collective bargaining agreement"), holds in pertinent part:

> If an employee is required to appear before the Board or an agent thereof concerning a matter which could adversely affect his/her continued employment, salary or any increments, he/she will be given ***prior written notice and specific reasons for such meeting or interview at least forty-eight (48) hours in advance***. Any topic not included in the letter will not be covered at said meeting unless agreed to by the employee; if not agreed it will be discussed at a later date after proper notice has been given. The employee will also be ***notified in writing of any additional persons who will be present***. An employee required to appear in this instance will be ***entitled to have an Association representative of his/her choice present*** to advise and to represent him/her during such meeting or interview . . . . (emphasis added). (A-0328).

In <u>McCoy v. Sussex Co. Vo-Tech Sch. Dist.</u>, 1998 Del. Ch. LEXIS 171, *14 (Del. Ch. 1998), the plaintiff/teacher was given a disciplinary letter at a meeting that was conducted without proper notice, without notice of the subject matter and without proper union representation present in violation of the applicable collective bargaining agreement. <u>Id.</u> at *2, *12. Plaintiff argued that such a disciplinary letter could not serve as a basis for termination in that it was not "properly placed" in her personnel file, in violation of § 1410. The Court agreed. It held, "[i]t is axiomatic that a reprimand later found to be invalidly issued and, therefore, ordered rescinded cannot be considered "properly placed" in a teacher's personnel file and relied upon to support a decision to terminate the teacher's employment contract." <u>Id.</u> at *14.

Like the teacher in <u>McCoy</u>, Mr. Wilcoxon termination was based upon disciplinary letters not properly placed in his personnel file. He was terminated for poor lesson plans, poor classroom management and for making inappropriate comments. (A-0308). This resulted in disciplinary letters given to Wilcoxon:

14

(1) for his alleged failure to make proper emergency lesson plans (January 22, 2004 and May 11, 2004 meetings)(A-303, A-428);

(2) poor classroom management (May 5, 2004 meeting)(A-305); and

(3) for making inappropriate comments (December 17, 2003 and January 22, 2004 meetings)(A-0302, A-0303, A-0304, A-0319)

All of these disciplinary letters were not "properly placed" because in one way or the other, they violated the Collective Bargaining Agreement and hence, Article 4:4.1.

In particular, although no letters were placed in his file during the December 17, 2003 meeting, that meeting did *lead* to disciplinary letters placed in his file. Those letters were improperly placed in Mr. Wilcoxon's file during the January 22, 2004 meeting. Therefore, that December 17, 2003 meeting was held in direct contravention of the collective bargaining agreement in that Mr. Wilcoxon was not given forty-eight hours notice of the meeting (A-0281, p.54); not informed in writing of the specific reason for the meeting (A-0281, p. 55); not informed in writing of the individuals who would be in attendance at the meeting (A-0431 – A-0432); not permitted to have an Association representative of his/her choice present to advise and to represent him during the meeting (A-0281, p. 55); and the subject matter of the meeting could, and did, adversely affect his/her continued employment, salary or any increments (A-0285 pg 72). Article 4:4.1. See, McCoy (a subsequent meeting where a disciplinary letter was placed in the plaintiff's file could not be the based upon information gained at a prior meeting that was held without proper union representation).

15

Because the December 17, 2003 meeting violated the terms of the collective bargaining agreement, any subsequent disciplinary actions, taken during the January 22, 2004 meeting, were prohibited and not properly placed in his personnel file.

The disciplinary letters from January 22, 2004, meeting were not properly placed due to violations of 4:4.1 and therefore, § 1410. Again, Mr. Wilcoxon was not given forty-eight hours notice of the meeting, (A-0288 pg 82, A-0320); not informed in writing or otherwise of the specific reason for the meeting, (Id.); not informed in writing or otherwise of the individuals who would be in attendance at the meeting (Id.); and, not permitted to have an Association representative of his choice present to advise and to represent him during the meeting. (A-0287 pg. 81, A-0431 – A0432).

Likewise, the disciplinary letters given to Mr. Wilcoxon at the May 5, 2004 meeting were not properly placed pursuant to 4:4.1 and § 1410. He did not have representation of his choice, not given forty-eight hours notice of the meeting, not informed in writing or otherwise of the specific reason for the meeting; and not informed in writing or otherwise of the individuals who would be in attendance at the meeting. Because the meeting violated the terms of the collective bargaining agreement, the disciplinary letters were not "properly placed" in Mr. Wilcoxon's personnel file and therefore could not be used as a basis for any termination of Mr. Wilcoxon's employment according to 14 *Del. C.* § 1410.

Finally, On May 14, 2004, Mr. Wilcoxon was again called into Ms. Basara's office, where Mr. Wilcoxon was presented a letter stating that the District would not renew his contract for the ensuing school year. (A-0308). As was his right, Mr. Wilcoxon requested the reasons for the non-renewal. (A-0430) In response, he was sent

a letter dated May 18, 2004 stating that he was terminated because of poor lesson plans, poor classroom management and for making inappropriate comments. (A-0309).

Once again, this May 14 meeting was held in direct contravention of the collective bargaining agreement because it concerned a matter that adversely affected his continued employment, salary and any increments, (A-0308); Mr. Wilcoxon was not given forty-eight hours notice of the meeting, (A-0431 – A0432); not informed in writing or otherwise of the specific reason for the meeting (A-0431 – A0432); not informed in writing or otherwise of the individuals who would be in attendance at the meeting (A-0431 – A0432); and, not was not permitted to have an Association representative of his/her choice present to advise and to represent him during the meeting. (A-0431 – A0432). Because this meeting violated the terms of the collective bargaining agreement, the termination has no effect and is therefore a nullity. 14 *Del. C.* § 1410.

Mr. Wilcoxon's termination violated 14 *Del. C.* § 1410 because the termination was based upon information not "properly placed" in Mr. Wilcoxon's personnel file in violation of the Collective Bargaining Agreement prior to the notice of termination.

     *b.*    *Mr. Wilcoxon was Terminated For Performance Reasons Without the Benefit of His Statutory Right to Correct Those Deficiencies Through an Individualized Improvement Plan.*

As is stated above, according to 14 Del. C. § 1410, for a termination to be proper under the Teacher Termination Statute, disciplinary letters must be properly placed in the teacher's personnel file, *or* with respect to deficiencies in performance the teacher the teacher must be given an opportunity to correct such deficiencies through an individualized improvement plan ("IIP").    Moreover, according to the Policy for

17

Appraising Teachers and Specialists" attached to the Delaware Performance Appraisal System ("DPAS"), to which Red Clay adheres:

> An Individual Improvement Plan ***shall be developed*** when an individual's performance in any category has been appraised as Needs Improvement or Unsatisfactory on a Performance Appraisal. Specific procedures for completing an Individual Improvement Plan are in Supplement 4, Section C.

(A-0395)(emphasis added).

Mr. Wilcoxon was never placed on an IIP, (A-0431 – A0432) and therefore was not given an opportunity correct any deficiency through such an IIP as § 1410 and the DPAS require. Hence, his employment was terminated in violation of § 1410.

## CONCLUSION

For the foregoing reasons, Plaintiff Richard Wilcoxon respectfully requests that his Motion for Partial Summary Judgment be granted and an order issued reinstating Mr. Wilcoxon to his position in the Red Clay Consolidated School District, he be awarded all back pay, seniority and benefits, and that he be awarded tenure retroactive to the date that he would have received tenure if not for Red Clay's wrongful termination.

**MARGOLIS EDELSTEIN**

Timothy J. Wilson, Esq. (4323)
1509 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 777-4680
Facsimile: (302) 777-4682
twilson@margolisedelstein.com
*Attorney for Plaintiff*

DATED: July 13, 2006.