Wilcoxon
Janet Basara

v.

C.A. # 05-524-SLR

Red Clay Consolidated School District
May 25, 2006

Page 126

1  able to investigate. This student jimmied open the
2  door, pulled it open while the locked bar was on it,
3  damaged the bar and the door and managed to slide his
4  hand underneath and get it out. But it was kept safe.
5  It was not that she hadn't locked it.
6  Q.  Okay. Anybody else?
7  A.  I don't remember.
8  Q.  And Miss Root didn't receive any type of
9  discipline, correct?
10  A.  No, she had it in a locked case, as locked as
11  you can get with medicines.
12  Q.  All right. One final thing. Earlier on you
13  stated that each teacher has a locked cabinet or
14  something that they can put things in?
15  A.  They're supposed to have a locked file cabinet
16  or a closet.
17  Q.  In Mr. Wilcoxon's room is there a locked cabinet
18  or a closet?
19  A.  If he doesn't have one he was supposed to let us
20  know that he doesn't have one. He's supposed to have a
21  locked cabinet.
22  Q.  Was there an announcement made that anyone who
23  doesn't have a locked cabinet please to let us know?
24  A.  As a matter of fact we did make that

Page 127

1  announcement at some point.
2  Q.  Do you remember when?
3  A.  I don't remember exactly when, but I remember
4  saying everyone needs to have a locked cabinet, a locked
5  file cabinet with a lock or a locked closet with a lock
6  on it. If you don't have one, let us know.
7        MR. WILSON: All right. Miss Basara, I
8  appreciate you coming in at this time.
9        MR. WILLOUGHBY: Mark this as 17, please.
10       (Basara Deposition Exhibit Basara-17 was
11  marked for identification.)
12  BY MR. WILLOUGHBY:
13  Q.  Do you recognize exhibit 17 to your deposition?
14  A.  You're asking me?
15  Q.  Yes.
16  A.  I'm sorry. Yes, this is what Mr. Wilcoxon wrote
17  in response to the observation.
18  Q.  So this is his --
19  A.  This was his explanation.
20  Q.  -- rebuttal?
21  A.  Rebuttal. Yes.
22  Q.  To the observation in April of 2004 which I have
23  as exhibit 14. I could be wrong about that. But it's
24  the April 21, 2004 observation. This is what he wrote

Page 128

1  back to you to give his explanation?
2  A.  Yes.
3  Q.  I am just going to ask you, I am not going to
4  have you respond to all of the things, but on the first
5  page he in the third paragraph in the narrative section
6  talks about C.J. laying across two desks in the
7  multi-purpose room. I don't think you covered that when
8  you were being asked questions about that earlier?
9  A.  No.
10  Q.  What was going on with that?
11  A.  C.J. was a big boy. The desks were -- you sat
12  at a chair and then you could flip the desk up and over
13  and C.J. had himself stretched out over the desk and the
14  other desk next to him. He wasn't putting his feet up.
15  He wasn't laying down that way but he had himself
16  stretched out across two desks.
17  Q.  And you observed that in the observation?
18  A.  Yes.
19  Q.  And then he said makes comments about you
20  allegedly exaggerating the noise level, and the
21  whistling issue?
22  A.  Uh-huh.
23  Q.  Now, during the course of this whistling that
24  was going on, did you ever hear him say a student name,

Page 129

1  Johnny, stop whistling?
2  A.  No, he did not.
3  Q.  He didn't identify anybody?
4  A.  No. No. And I didn't even see him look
5  directly at a person. He was looking at a whole
6  section.
7  Q.  Okay. And then let's go over to the second
8  page. On the second full paragraph he's responding to
9  your comments that the students were playing cat and
10  mouse game?
11  A.  Uh-huh.
12  Q.  In here he now identifies two students by name
13  apparently?
14  A.  Uh-huh.
15  Q.  Did he ever do that in the --
16  A.  No, he did not.
17  Q.  -- in the classroom?
18  A.  No.
19  Q.  He makes a response to your comments about the
20  students picking their own groups?
21  A.  Uh-huh.
22  Q.  What did he say about that?
23  A.  He said this was the first time that he ever did
24  that. And that normally he does put them in groups.

Wilcoxon                                    v.                Red Clay Consolidated School District
Janet Basara                          C.A. # 05-524-SLR                        May 25, 2006

Page 130

1    Q.  So he was saying --
2    A.  That would have been heterogenously grouped a
3    high and a low, but this happened to be the first time
4    because a student wanted to do it, so he let him do it.
5    Q.  So this just happened to be a coincidence?
6    A.  Yes, first time, just happened to be that I was
7    observing.
8    Q.  He makes a comment about he says finally. Can
9    you read that?
10   A.  Finally, Mrs. Basara states that the class was
11   not brought to closure. I did not bring the activity to
12   closure because we were not finished. Closure was done
13   the following day after all groups presented their
14   information and was tied back into the State standard.
15   Q.  Now, is it appropriate for a teacher not to
16   bring closure to a lesson because they're going to
17   continue on the following days with lessons on the same
18   subject?
19   A.  No. Each day you bring closure to what you have
20   done each day, and if several students have presented,
21   then at that point you would draw some conclusions and
22   then say what we would be doing tomorrow. So closure is
23   finish what we did today, wrap it up, bring it back to
24   the standard, bring it back to the performance

Page 131

1    indicator, and then say and tomorrow we will and you
2    talk about what you'll do tomorrow to give them a little
3    taste of the lesson for the next day.
4    Q.  Don't some of these units like tobacco and
5    alcohol --
6    A.  Yes, they would take weeks.
7    Q.  -- let me finish. Don't some of these lessons
8    take a long time to present to the students?
9    A.  Yes.
10   Q.  All right.
11   A.  Could be a week, could be two weeks in some
12   cases.
13   Q.  So you wouldn't just wait until you were done
14   the unit to all of a sudden bring closure to the whole
15   unit?
16   A.  Correct.
17        MR. WILLOUGHBY:  Okay. That's all I have.
18        MR. WILSON:  Okay.
19        MR. WILLOUGHBY:  All right. We will read
20   and sign.
21        (Discussion held off the record.)
22        (Whereupon the Deposition concluded at
23   approximately 12:15 p.m.)
24

Page 132

1                  I N D E X
2    DEPONENT: JANET BASARA              PAGE
3    Examination by Mr. Wilson          2
     Examination by Mr. Willoughby      127
4
5              E X H I B I T S
6    JANET BASARA DEPOSITION EXHIBITS        MARKED
7    1  Handwritten note to Rich           50
8    2  Performance Appraisal              53
9    3  Log about Janay                    61
10   4  1/22 note from Mrs. Basara         81
11   5  1/20/04 - 1/22/04 letter to Richard
        Wilcoxon from Janet Basara        82
12
     6  Agreement between Red Clay Consolidated
13      School District Board of Education and
        the Red Clay Education Association    85
14
     7  1/22/04 letter to Rich Wilcoxon from
15      Janet Basara                       92
16   8  1/20/04 - 1/22/04 letter to Rich Wilcoxon
        from Janet Basara                  94
17
     9  2/2/04 letter from Richard Wilcoxon to
18      Janet Basara                       97
19   10 2/26/04 letter to all staff from Janet
        Basara, Frank Rumford and Janay Freebery  98
20
     11 11/19/03 Lesson Analysis of Rich Wilcoxon  99
21
     12 2/12/04 Skyline lesson analysis of Rich
22      Wilcoxon                          101
23   13 4/21/04 Lesson analysis of Mr. Wilcoxon    103
24   14 4/21/04 Lesson analysis of Mr. Wilcoxon    104

Page 133

1    15 Performance appraisal of Richard Wilcoxon
        on 11/19/03, 2/12/04 and 4/21/04        114
2
     16 6/1/04 letter to Richard Wilcoxon from
3       Diane L. Dunmon                    115
4    17 5/20/04 letter from Richard Wilcoxon     127
5
     ERRATA SHEET/DEPONENT'S SIGNATURE        PAGE 134
6
     CERTIFICATE OF REPORTER              PAGE 135
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

A-0300

Wilcox & Fetzer, Ltd.          Professional Court Reporters          (302)655-0477

Wilcoxon                          v.              Red Clay Consolidated School District
Janet Basara                  C.A. # 05-524-SLR                  May 25, 2006

Page 134

```
 1
 2              REPLACE THIS PAGE
                WITH THE ERRATA SHEET
 3              AFTER IT HAS BEEN
                COMPLETED AND SIGNED
 4              BY THE DEPONENT.
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 135

```
 1   State of Delaware)
                     )
 2   New Castle County)
 3           CERTIFICATE OF REPORTER
 4           I, Elaine G. Parrish, Registered
     Professional Reporter and Notary Public, do hereby
 5   certify that there came before me on the 25th day of
     May, 2006, the deponent herein, JANET BASARA, who was
 6   duly sworn by me and thereafter examined by counsel for
     the respective parties; that the questions asked of said
 7   deponent and the answers given were taken down by me in
     stenotype notes and thereafter transcribed into
 8   typewriting under my direction.
 9           I further certify that the foregoing is a
     true and correct transcript of the testimony given at
10   said examination of said witness.
11           I further certify that I am not counsel,
     attorney, or relative of either party, or otherwise
12   interested in the event of this suit.
13
14           Elaine G. Parrish
15           Certification No. 170-RPR
16           (Expires January 31, 2009)
17
     DATED:   June 1, 2006
18
19
20
21
22
23
24
```

A-0301

35 (Pages 134 to 135)

SKYLINE MIDDLE SCH    4548541    03/09/04 09:20am P. 004



**RED CLAY CONSOLIDATED SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

SKYLINE
MIDDLE SCHOOL
2900 Skyline Drive
Wilmington, Delaware 19608

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To:    Richard Wilcoxon
From: Janet Basara
Date:  January 13, 2004, Revised March 8, 2004
Re:    Meeting on December 17, 2003

*ok!*

On December 17, 2003, you, Frank Rumford, Assistant to the Principal, and I met to discuss a series of events that were brought to my attention by Janay Freebery. I informed you that she came to my office on December 15, 2003 and expressed her concerns that you had made inappropriate remarks to her, some of a sexual nature. Your immediate response to Mr. Rumford and me was that Janay had "opened the door" to those comments, thereby acknowledging that something improper had been said. I told you at that time, such comments were unacceptable and were to stop immediately.

In order to make you aware, I also informed you that Ms. Freebery had indicated that she would file sexual harassment charges, if inappropriate sexual comments continued.

Please be advised that you need to maintain a professional relationship and cease all inappropriate remarks.

_____    _____
Signature indicates receipt, not necessarily agreement with the contents.    Date



DEPOSITION
EXHIBIT
Wilcoxon 15
WP 5/4/06

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19800 (302) 660-6661.

A-0302

Margolis Edelstein
Wilcoxon v. Red Clay
0293



**RED CLAY CONSOLIDATED**
**SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

**Administrative Offices**
2916 Duncan Road
Wilmington, DE 19808

**SKYLINE**
**MIDDLE SCHOOL**
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To: Rich Wilcoxon
From: Janet Basara
Date: January 22, 2004
RE: Substitute Plans

You took three personal days on January 14, 15, and, 16. The plans you left for your substitute were completely inadequate (see attached). In addition, you did not leave a class list or bell schedule for your substitute to follow. This caused hardship for Mr. Rumford and me as we tried to assist your substitute. This is unacceptable, especially since you knew you would be absent.

This is not the first time this has happened. In December, you were out sick and did not leave class lists or a bell schedule. That day, your lack of responsibility caused Mr. Rumford and Ms. Freebery to disrupt their schedules to assist your substitute. At that time, I informed you of the problem and told you that it was unacceptable.

In addition, you were absent requesting sick time January 20 and 21 following three personal days. You had no emergency plans available because those plans were used in December when you were absent without substitute plans. Your emergency plans were not replaced.

Not having emergency plans is unacceptable. In September, you were directed to prepare three days of emergency plans. You are to update your file by Monday, January 26, 2004 with three days of lesson plans for an unexpected absence. Furthermore, it is your responsibility to continually updated them once they are used or become outdated and an current class list and bell schedule must be included.

**DEPOSITION EXHIBIT**
Wilcox 18
1/51/06
PENGAD 800-631-6989

_____    _____ 1/22/04
Signature acknowledges receipt, not necessarily agreement    Date

A-0303

C00170

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 683-6662.

To: Janet Basara
CC: Rudy Norton
From: Richard Wilcoxon
Date: February 2, 2004
RE: Article 4, Paragraph 4.1 of the Contract

On January 22, 2004, you left a note in my mailbox that requested that I meet you after school that day. I received this letter at approximately 11:30, only 3 hours before the meeting was scheduled. The letter contained no other information. At the meeting, you presented three disciplinary letters to be placed in my personnel file.

In Article 4, Paragraph 4.1 of the Agreement between the Red Clay Consolidated School District Board of Education and the Red Clay Education Association, it clearly states that any meeting that could adversely affect my continued employment requires 48 hour notice in writing. In addition this notice must include who will be attending the meeting and the reason for the meeting. Pursuant with this article and paragraph, I am requesting in writing the reason for the necessity of waiving the written 48 hour notice.



Margolis Edelstein
Wilcoxon v. Red Clay
0287

## MEMO

To:   Richard Wilcoxon
From: Janet Basara
Date: May 5, 2004
Re:   Lack of security

Per your student referral dated April 22, 2004 and in our discussion on April 30, 2004, you explained that $49.00 cash was taken from an envelope turned in to you on April 22, 2004. On this date, many students, including Edwin Karpov, gave you money as their fundraising efforts for *Hoops for Heart*. You acknowledged that it was stolen when you went to lunch and left the cash and checks in the unlocked multipurpose room. You also acknowledged that you did not secure the money in the available locked cabinet in the room, nor did you take it with you. Mr. Rumford investigated, but no one saw a student enter the room, and he was unable to determine who stole the money.

Twice this school year I have reminded staff of the importance of securing personal items and cash collected from students. First, we had a serious incident where a person broke into our building and I held an emergency meeting to notify staff and reminded everyone to lock their valuables at all times. Second, at our March faculty meeting, I reminded staff to lock all money associated with SSA Power Card fundraiser in their rooms until it could be brought to the office and locked in the school safe.

This failure to follow procedures is totally unacceptable and borders on insubordination. You are responsible for replacing the cash that was stolen. Any future problems of this nature will result in further disciplinary action.

_____
This signature indicates receipt and not necessarily agreement with the contents.

5/5
_____
Date

cc: Personnel file



# THE RED CLAY CONSOLIDATED SCHOOL DISTRICT
## STUDENT BEHAVIOR REFERRAL

**\* FOR INTERNAL USE ONLY** - To be completed within a reasonable amount of time.

**PART I.**   Teacher's Name _Richard Wilcox_     Date _4/22_

Student's Name: _FYI_     Grade: _____

Occurrence Date: _4/22_     Time: _11:05 - 11:35_ Location: _Multi_

Behavior: ☑ New    ☐ Ongoing  Description of Student Behavior: _In my 6th grade class I collected Hoops for Heart envelopes. After class I went to lunch and left the envelopes on the front table. When I returned Edwin Karpos's envelope was torn up. The checks were left but the cash was gone._

**PART II.**   Check off the attempts used to resolve the problem. *(Indicate date and method used in making parental contact.)*

☐ Student/Teacher Conference        ☐ Parent Contact - Date _____        ☐ Detention
   Date _____                              Phone ☐  and/or Letter ☐        ☐ Work Assignment
`☐ Disciplinary Probation                    Conference ☐                   ☐ REACH Referral
☐ Reprimand                           ☐ Behavioral Contract                 ☐ Other _____
   Teacher's Signature _R. Wilcox_

**PART III.**   Check off the administrative action used to resolve the problem after referral. *(Indicate date and method used in making parent contact.)*

☐ Student Counseled            ☐ In-School Alternative          ☐ Restitution/Restoration
☐ Work Assignment              ☐ Denial of Bus Privileges       ☐ Referral to Courts
☐ Reprimand                    ☐ Denial of Driving Privileges   ☐ Behavioral Contracts
☐ Detention                    ☐ Suspension                     ☐ Alternative School Recommendation
☐ Disciplinary Probation       ☐ Exclusion                      ☐ Recommendation for Due Process
☐ Removal from Class
☐ In-School Referral _____
☐ Outside Agency Referral _____
☐ Parent Contact - Date _____ Phone ☐  and/or Letter ☐ Conference ☐

Comments ( *if any* ) : _____
_Door was not locked where money was kept. Has available closets to lock it up in._

Administrator's Signature _____     Date _5/5/04_



# FAX

**RED CLAY CONSOLIDATED SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

**Administrative Offices**
2916 Duncan Road
Wilmington, DE 19808

**SKYLINE MIDDLE SCHOOL**
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

**DATE:** 5/6/04

**Number of pages
Including cover sheet:** 3

**TO:** Debra Davenport

**FROM SKYLINE MIDDLE SCHOOL**

**NAME:** Janelle Bassaia

**PHONE:** _____

**FAX/PHONE:** 636-8778

**CC:** _____

**PHONE:** 302-454-3410

**FAX/PHONE:** 302-454-3541

**REMARKS:**

✓ __Urgent __For your review __Reply ASAP __ Please Correct

FOR TEACHER FILE

C00246

A-0307

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808, (302) 892-3022.

7001 0360 0002 7658 6724



May 14, 2004

<u>HAND DELIVERED</u>

ED CLAY CONSOLIDATED
SCHOOL DISTRICT

Robert J. Andrzejewski, Ed.D.
*Superintendent*

**Administrative Offices**
2916 Duncan Road
Wilmington, DE 19808

**Human Resources**

(302) 683-6656
FAX (302) 636-8778

Debra Davenport
*Manager*

dbra.Davenport@redclay.k12.de.us

Mr. Richard Wilcoxon
220 Wharton Drive
Newark, DE 19711

Dear Mr. Wilcoxon:

I have been directed by the Red Clay Consolidated School District's Board of Education to notify you that the Board intends to terminate your services as a teacher, effective at the end of the 2003-04 school year pursuant to Title 14, Chapter 14 of the Delaware Code (copy enclosed).

As a non-tenured teacher, you are not entitled to a hearing before the Board under Title 14, Chapter 14 of the Delaware Code.

Your name will not be placed on the recall list for the Red Clay Consolidated School District.

A letter will be sent from the Benefits Office regarding the continuation of your benefits and disposition of your pension contributions.

On behalf of the Board, I wish to thank you for your services.

Very truly yours,

Debra Davenport
Manager

Post-it® Fax Note    7671    Date 11/9/04  # of pages ▶
To RUDY                    From DIANE
Co./Dept. DSEA             Co. RCCSD
Phone #                     Phone #
Fax # 366-0289             Fax # 636-8774

DD/DLD/z
Enclosures
Non-Tenured Non-Renew Performance.2004

C00251



DEPOSITION
EXHIBIT 34
Wilcoxn
QP 5/4/06

A-0308



**RED CLAY CONSOLIDATED
SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Superintendent*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

Diane L. Dunmon
*Assistant Superintendent
Administrative Services*

(302) 683-6612
FAX (302) 636-8774

June 1, 2004

Mr. Richard Wilcoxon
220 Wharton Drive
Newark, DE 19711

Dear Mr. Wilcoxon:

The Superintendent is in receipt of your letter of May 18, 2004, requesting reasons for your termination. The reasons include poor classroom management, inappropriate interaction with staff and lack of proper student lesson plans.

Very truly yours,

Diane L. Dunmon

Diane L. Dunmon
Assistant Superintendent
Administrative Services

DLD/z

Pc:    Rudy Norton, DSEA
       Human Resources



Margolis Edelstein
Wilcoxon v. Red Clay
0314

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is: Administrator of Human Resources Development, RCCSD, 2916 Duncan Road, Wilmington, DE 19808 (302) 683-5662.

A-0309

*file*

# PERFORMANCE APPRAISAL

Teacher  Richard Wilcoxon  Dates of Observations  11/19/03, 2/12/04, 4/21/04

Memos of Concern  1/13/04 (Inappropriate comments), 1/20/04 (Bus responsibilities), 1/22/04 (Substitute lesson plans), 5/5/04 (Lack of security), 5/11/04 (Lesson plans)

Subject Area  Health/Physical Education  Grade  6, 7, 8  Appraisal Date  June 2004

Appraiser(s)  Mrs. Basara, Dr. Manolakos, Mr. Bartoli

---

### I.    INSTRUCTIONAL PLANNING

Exemplary        Effective        Needs Improvement        Unsatisfactory

NARRATIVE:
- Plans reflect the State Standards and Performance Indicators stated as appropriate instructional objectives
- Plans include a variety of activities

As stated in memos dated January 22, 2004 and May 5, 2004, Mr. Wilcoxon needs to have appropriate substitute plans, including class lists and bell schedules, when he is absent and three days of current emergency plans on file. He also needs to use the referenced two-year old health plans of another teacher as a guide, as intended, and write current, updated plans for his classes. These problems became evident when Mr. Wilcoxon was absent without appropriate plans on two occasions, and after Mr. Wilcoxon began planning and teaching his own classes rather than team teaching.

### II.    ORGANIZATION AND MANAGEMENT OF CLASSROOM

Exemplary        <u>Effective</u>        Needs Improvement        Unsatisfactory

NARRATIVE:
- Usually arranges classroom for effective instruction

In most observations, Mr. Wilcoxon maintained appropriate classroom behavior. In some of those observations, he was working with another teacher. On one particular observation (4/21/04), five students were whistling and continued to do so after the class was repeatedly told by the teacher to stop.

### III.    INSTRUCTIONAL STRATEGIES

Exemplary        <u>Effective</u>        Needs Improvement        Unsatisfactory

DEPOSITION EXHIBIT
Wilcoxon 40
ep 5/4/06
PENGAD 800-631-6989

C00291

1



A-0311

Wilcoxon v. Red Clay
0333

Log about Janay: (advised to keep it after Janay
made comments saying I was "difficult to work with

School year 2003-04

General
Breack in
class almost
daily
- Leaves often
w/out signing
out
- Late daily
- Did not give
student leaders
until early Nov.
saying "I have
too much to do
to worry about
that."

- Left Intervurals
to pick up daughter -
and then return, ?
paid for whole time.

- In September, ~the 8th Janay was so late to
school she missed her 1st 2 classes, 1st planning,
and half of the 3rd class. She never called
out so I was alone the 1st 2 classes, the
office called a sub in for her. When she
arrived, she threw the sub out and complained
to the office that she should not be charged
a day since she did not call out.

- mid-September - Janay was late and
missed her 1st class. Her girls stayed
in the locker room unsupervised. Janay
arrived at the start of her 2nd class

Nov. 13 - Verbally attacked Ja'lil Akil for inappropriate question

Nov. 14 - Left a Health class 20 minutes early saying she "needed
to work on her Master's Thesis." leaving me
with all the kids.

Nov. 17 - Came into the In-service 15 minutes
Late (tally) (15)

Nov. 19 - Left before our last class started to
go to the bathroom. Did not return until
2:25. Said she was talking to Becky Perse
in the hall

Nov. 24 - Late - arrived at 9:05 missing student
Leaders and Volley ball sign ups (50)
- Bruce Hannah came in during 1st class, at breakfast
in front of kids. Yelled at kids while tv
was being hooked up. She was demeaning them (witnessed by Mike

A-0312

Nov. 24th cont

- Left building to go to the bank during planning
  (did not sign out) did not return until 10:45
  (22 minutes after class started)

- Left class at 1:15pm to call in after-school buses
  did not return until 1:32pm

- Arrived at 6:24pm for choice Open House (teachers
  were suppose to arrive a 6:00pm) leaving me to set
  up everything

- spent 30+ minutes of choice Open House talking
  to a former student - ignoring parents and others
  in the gym

11/25 - arrived at 7:45 - 15 minutes late  (1:05)

- said she couldn't talk today so I had to
  teach all classes - she was going to keep score

- Bruce brought Breakfast in for her at 9:08. She
  ignored the class completely - I was disciplining,
  teaching, keeping score, etc. for both classes while
  she talked to Bruce

- returned from first planning at 10:30 - 4 minutes
  late

11/26 - arrived at 7:50 - missed Student Leaders and
  1st period had started (half-day schedule)  (1:25)

- left during 1st planning - returned 9:23 - 5 minutes
  late for class

12/1 - arrived at 7:40  (1:35)

- very short and a little demeaning in shouting
  at kids for not having a pencil

Hour
delay
School
12/1
12/9

A-0313

Wilcoxon v. Red Clay
0003

12/2  - arrived at 7:38   (1:43)
      - left at 9:05 to move an overhead from the
        cafeteria to the class she borrowed it from.
        Was gone till 9:29  (end of the 1st class)
      - left school during 1st plan to go watch daughter
        swim - missed an entire class and did not
        return till after lunch
12/5  - Bruce arrived at 10:05 and stayed the remainder
        of the day
12/8  - arrived at 7:46 - had girls waiting for a
        picture to be taken   (1:59)
      - left class at 9:00 without talking to me about
        it - leaving her kids with me and a guest speaker
        returned at 9:16, and immediately left to
        talk on her cell phone for 5 minutes
      - left during next class at 9:50 did not
        return till the dismissal of the class at 10:02
      - Bruce was here with here when I returned after
        planning period (10:47), He stayed through class
      - left 12:05 during class (w/o telling me) and
        returned at 12:26
      - after 2nd planning, Janay arrived at 1:23, class began
        at 1:11
      - Janay informed me (she did not ask) that tomorrow
        she would leave during 1st plan and not return
        until lunch is over (missing her 1st 8th grade
        class) She was going to go swimming with
        her daughter
12/9  - called out sick

Wilcoxon v. Red Clay
0004

A-0314

12/10 - arrived at 7:40 (2:09)
- told me was today was the day she was going
swimming w/daughter. Left at 9:45 (did not sign out)
missed 8-1 class that started at 10:26 till 11:05, and
returned at 11:46 (late for 8-2 class)
12/11 - arrived at 7:48 (2:27)
- Bruce came in at 9:05, during 2nd exp, they ate
breakfast in front of the students

12/19 - At 10:38 Patty Root came into the gym looking for Ms. Freebary. Mrs. Root said she had been calling the locker room for 8 minutes w/ no answer. Mrs. Root came back up and said Mrs. Freebery was in the hall talking to Ms. Perse and those kids were running wild.

Half day schedule

12/22 - Our class begins at 10:26. Ms. Freebery did not bring her kids up until 10:46. Class ends at 11:05 and the have to change so they need to go down at 11:00. That is 14 minutes of instruction.
- at 1:58 the girl's were peaking through the door in the extendable wall. Another girl smacked the door & it flew open (disrupting my class). I went next door and the girl's were running around but Mrs. Freebery was not there. She came through my class at 2:02 (no student was w/her). Class began at 1:47.

366 - 8440
- 10:05 Left message
- 12:27 Left message

Rudy. Norton @ DSEA.
Org

I almost forgot. Each morning you have 2 duties. From 7:30 to 7:45 you need to be in the gym with student leaders. 2 of these students put up the flag. From 7:50 - 8:15 you have a reading group in the Multi. The students books are under the tv in this room.

Dear Sub,

Thank you for your assistance. If any of the kids give you any problems, please leave a note about them. I am leaving you both TCR slips (to get a student out of the room if they are a problem) and SBR forms (IF behavior is so bad you feel an administrator needs to see the student i.e. fights etc). Also I have left a note on the locker room door ~~the~~ telling students to report directly to the gym. Students are to put their books on the bleachers next to the doors. The students have been told to wear sneakers in order to participate. If you have any questions, please see Mr. Renford in the main office or Ms. Freebery, the female PE Teacher. The lesson plans are on the ~~back~~ bottom of this and the next page. To take attendance, have the students sign in on the pages of this pad. Thank you again.

Richard Wilcoxon

All equipment needed is in storage closet on the left under the table.

Margolis Edelstein
Wilcoxon v. Red Clay
0279

We ? Did Basketball intramural

— While are is easy to supply ?

Then is Repeat ???

For the Soccer Rec. leather

- 3 on 3 — 1st teams that scores stays on
- ? ??? all of large cones
- Students must pass the ball across without ... otherwise turnover
- can't score from own side
- a goal is when the ball ??? passes between the cones

If this is to hard or not going well you can shot around ???

A-0318

Margolis Edelstein
Wilcoxon v. Red Clay
0278



**RED CLAY CONSOLIDATED
SCHOOL DISTRICT**

Robert J. Andrzejewski, Ed.D.
*Chief Executive Officer*

Administrative Offices
2916 Duncan Road
Wilmington, DE 19808

**SKYLINE
MIDDLE SCHOOL**
2900 Skyline Drive
Wilmington, Delaware 19808

(302) 454-3410
Fax (302) 454-3541

Nick T. Manolakos, Ed.D.
*Principal*

Janet Basara
*Assistant Principal*

To: Rich Wilcoxon
From: Janet Basara   1/29/04
Date: January 20, 2004
RE: Meeting on December 17, 2003

On December 17, 2003, we met to discuss a series of events that occurred between you and a female staff member. In our conversation, we discussed the inappropriate remarks, some of a sexual nature, you made to her. I told you at that time, such comments were unacceptable and were to stop immediately.

In addition, I want to inform you that if any further inappropriate comments are made, the District will take disciplinary action. You should also be aware that the staff member has indicated she will file sexual harassment charges, if this continues.

Please be advised that you need to maintain a professional relationship and cease all sexual remarks.



DEPOSITION
EXHIBIT
Rumford -1
5/25/06

Margolis Edelstein
Wilcoxon v. Red Clay
0212

Signature indicates receipt, not necessarily agreement          Date

Refused to sign   Basara   1/22/04

A-0319

The Red Clay Consolidated School District does not discriminate on the basis of race, color, national origin, religion, sex, age, or disability in its programs, activities or employment practices as required by Title VI, Title IX and Section 504. The district coordinator of compliance is

1/22

A note from
Mrs. Basara

Please come
in to see
me after
school

Janet

A-0320



Margolis Edelstein
Wilcoxon v. Red Clay
0299

# A G R E E M E N T

## BETWEEN THE

## RED CLAY CONSOLIDATED SCHOOL DISTRICT BOARD OF EDUCATION

## AND THE

## RED CLAY EDUCATION ASSOCIATION AFFILIATE OF NCCEA-DSEA-NEA, INCORPORATED

**September 1, 2002 through August 31, 2005**



DEPOSITION
EXHIBIT

Margolis Edelstein
Wilcoxon v. Red Clay
0343

# TABLE OF CONTENTS

Preamble and Witnesseth ............................................................................................. 1

ARTICLE

| | | | |
|---|---|---|---|
| 1 | - | Recognition ..................................................................................... | 1 |
| 2 | - | Negotiation of Agreement ................................................................ | 2 |
| 3 | - | Grievance Procedure ....................................................................... | 2 |
| 4 | - | Employee Rights ............................................................................. | 6 |
| 5 | - | Employee - Administration Liaison ................................................ | 8 |
| 6 | - | No Strike - Lockout Provision ........................................................ | 8 |
| 7 | - | Classroom Control and Discipline .................................................. | 9 |
| 8 | - | Personal and Academic Freedom .................................................... | 10 |
| 9 | - | Protection of Employees, Pupils, and Property .............................. | 10 |
| 10 | - | Rights of the Parties ........................................................................ | 11 |
| 11 | - | Employment .................................................................................... | 13 |
| 12 | - | Employee Work Year ...................................................................... | 15 |
| 13 | - | Transfers ......................................................................................... | 15 |
| 14 | - | Fair Dismissal ................................................................................. | 21 |
| 15 | - | Layoff and Recall ............................................................................ | 22 |
| 16 | - | Employee Evaluation ...................................................................... | 25 |
| 17 | - | Personnel Records ........................................................................... | 26 |
| 18 | - | Time Requirements ......................................................................... | 27 |
| 19 | - | Leaves of Absence .......................................................................... | 30 |
| 20 | - | Facilities and Supplies .................................................................... | 32 |
| 21 | - | Deduction from Salary ..................................................................... | 33 |
| 22 | - | Professional Development and Educational Improvement .............. | 34 |
| 23 | - | Student Recordkeeping System ....................................................... | 35 |
| 24 | - | Miscellaneous ................................................................................. | 35 |
| 25 | - | Committees ...................................................................................... | 37 |
| 26 | - | Special Education ............................................................................ | 38 |
| 27 | - | Class Size ........................................................................................ | 39 |
| 28 | - | Salaries and Employee Benefits ..................................................... | 40 |
| 29 | - | Duration of Agreement ................................................................... | 41 |
| 30 | - | Agency Fee ...................................................................................... | 42 |

Memorandum of Agreement - Evaluation Pilot ..................................................... 43

| | | | |
|---|---|---|---|
| Appendix A | - | Local Salary Schedule—Effective September 2002 ...................... | 44 |
| Appendix B | - | Local Salary Schedule—Effective September 2003 ...................... | 45 |
| Appendix C | - | Local Salary Schedule—Effective September 2004 ...................... | 46 |
| Appendix D | - | EPER Schedule—Effective September 2000 .................................. | 47 |
| Appendix E | - | 2002-03 State of Delaware Salary Schedule - Teachers/Nurses .... | 50 |
| Appendix F | - | Evaluation Pilot Instrument .......................................................... | 51 |
| Appendix G | - | Leaves of Absence (Delaware Code) .............................................. | 60 |

Margolis Edelstein
Wilcoxon v. Red Clay

## PREAMBLE

This Agreement is entered into this 1st day of September, 2002 by and between the Board of Education of the Red Clay Consolidated School District, hereinafter called the "Board" and the Red Clay Education Association, Affiliate of NCCEA-DSEA-NEA, Incorporated, hereinafter called the "Association".

## WITNESSETH

WHEREAS, the Board has an obligation, pursuant to and consistent with Chapter 40, Title 14, Delaware Code, to negotiate with the Association as the representative of employees hereinafter designated, and

WHEREAS, the parties have reached certain understandings which they desire to confirm in this Agreement, be it

RESOLVED, in consideration of the following mutual covenants, it is hereby agreed as follows:

## ARTICLE 1
## RECOGNITION

1:1     The Board hereby recognizes the Association as the exclusive negotiating representative of the certificated nonadministrative employees, not including supervisory or staff personnel of the District, in all matters specified in Chapter 40, Title 14, Delaware Code, unless another provision of the Delaware Code supersedes this section.

1:2     Definitions

1:2.1   The "Board" as used in this Agreement will mean the Red Clay Consolidated School District Board of Education.

1:2.2   An "employee" as used in the Agreement will mean any certificated non-administrative individual employed under a contract to the school district, not including supervisory or staff personnel or substitute teachers; and reference to employees will be deemed to include both the male and the female.

1:2.3   The "Association" as used in this Agreement will mean the Red Clay Education Association, Affiliate of NCCEA-DSEA-NEA, Incorporated.

1:2.4   The "District" as used in this Agreement will mean the Red Clay Consolidated School District.

1:2.5   "Workdays" as used in this Agreement will mean those days on which employees are scheduled to report for work according to the official District calendar except as otherwise defined in this Agreement.

1:2.6   "Emergency" as used in this agreement shall mean a sudden unexpected happening; an unforeseen occurrence or condition.

A-0323

Margolis Edelstein
Wilcoxon v. Red Clay
0345

## ARTICLE 2
### NEGOTIATION OF AGREEMENT

2:1     This Agreement will be for a period as specified in the Duration of Agreement Article; and negotiations concerned with the terms of this Agreement will not be reopened during that time except by mutual written agreement of the parties.

2:2     Neither party in any negotiations will have any control over the selection of the negotiating representatives of the other party.

2:3     The parties mutually pledge that their representatives will be clothed with all necessary power and authority to make proposals, consider proposals, and make counter-proposals in the course of negotiations. However, the Board negotiating team will not have the authority to bind the Board, and all agreements will be subject to final approval of the Board of Education.

2:4     This Agreement incorporates the entire understanding of the parties on all matters which were or could have been the subject of negotiation. During the term of the Agreement, neither party will be required to negotiate with respect to any such matter whether or not covered by this Agreement and whether or not within the knowledge or contemplation of either or both of the parties at the time they negotiated or executed this Agreement.

2:5     This Agreement will not be modified in whole or in part by the parties except by an instrument in writing duly executed by both parties.

2:6     The parties agree to enter into negotiations over a successor Agreement pursuant to and consistent with Chapter 40, Title 14, Delaware Code. Such negotiations will begin no later than six (6) months prior to the expiration of this Agreement.

2:7     Any agreement so negotiated will be reduced to writing, be submitted for ratification by the Association and approval by the Board, and be signed by the President of the Association, the Chairperson of the Professional Negotiations Committee of the Association, the President of the Board, and the Executive Secretary of the Board.

## ARTICLE 3
### GRIEVANCE PROCEDURE

3:1     <u>Definition</u>

3:1.1   A grievance will be defined as a written claim by an employee that the terms of this Agreement, official written policy of the Board of Education, or written administrative rules and regulations relating to salaries, employee benefits, and/or working conditions have been violated, misinterpreted, or misapplied resulting in the abridgement of rights granted to the employee by such documents. A grievance may also be defined as a written claim by the Association that the terms of this Agreement, official written policy of the Board of Education, or written administrative rules and regulations relating to salaries, employee benefits, and/or working conditions have been violated, misinterpreted, or misapplied resulting in the abridgement of rights granted to the Association by such documents.

3:1.2   A grievant is the employee, employees, or Association that files a grievance as provided for under this Agreement.

A-0324

Margolis Edelstein
Wilcoxon v. Red Clay
0346

2

3:1.3    A class grievance is a grievance filed by the Association which asserts an effect on a group or class of employees.

3:1.4    Days as used in this Article refer to employee work days; however, when a grievance is submitted between May 1 and September 1, days will refer to calendar days.

3:2    <u>Purpose</u> - The purpose of this procedure is to provide an alternative to existing means of resolving concerns over matters specified in this Agreement which affect employees of the District. Both parties agree that these proceedings, if utilized, will be kept confidential, except that the Board will provide the Association with copies of all grievances and written decisions at each level.

3:3    <u>Timeliness</u>

3:3.1    No grievance may be changed after its formal presentation; however, the grievance may be amended with respect to cited provision following the decision rendered at Level One of the grievance procedure and will be considered timely filed if resubmitted at Level One within ten (10) days of the initial response.

3:3.2    All grievances should be processed as rapidly as possible; the number of days indicated at each level will be considered a maximum, and every effort will be made at each level to expedite the process. The time limit specified may, however, be extended by mutual written agreement.

3:3.3    Failure at any level of this procedure to communicate the decision on a grievance within the specified time limits will constitute authority for the grievant to proceed to the next level. Failure at any level of this procedure to appeal a grievance to the next level within the specified time limits will be deemed to be acceptance of the decision rendered at that level.

3:3.4    If a grievance is a class grievance or concerns rights of the Association, the grievance will commence at a level appropriate to the occasion giving rise to the grievance.

3:4    <u>Line of Grievance</u>

3:4.1    The line of grievance which an employee will follow in processing a written grievance is:

(a)    Building principal or immediate supervisor

(b)    Director of Human Resources or designee

(c)    Superintendent or designee

(d)    Arbitration - Advisory

3:5    <u>Specific Procedure</u>

3:5.1    The grievant is encouraged to meet with the principal or his/her immediate supervisor or applicable District office personnel with the objective of resolving the matter informally.

A-0325

Margolis Edelstein
Wilcoxon v. Red Clay
0347

3:5.2    <u>Level One</u> - The grievant will set forth his/her grievance in writing as provided in Section 3:4 within fifteen (15) days from the date the employee was aggrieved. Within ten (10) days of receipt of the written grievance, the principal or other immediate supervisor will communicate in writing to the grievant his/her decision and the reason for the decision.

3:5.3    <u>Level Two</u> - The grievant, not later than five (5) days after being notified that the decision has been rendered may appeal the decision to the Director of Human Resources or designee. The basis for the employee's continued dissatisfaction will be delineated. The Director of Human Resources or designee may hold an informal grievance hearing within ten (10) days after receiving the grievance. A decision in writing will be rendered to the grievant within five (5) days of the hearing.

3:5.4    <u>Level Three</u> - If the grievant is not satisfied with the disposition of the grievance at Level Two, he/she may, within five (5) days after being notified that the decision has been rendered, appeal the decision to the Superintendent or designee.

The basis for the employee's continued dissatisfaction will be delineated. The Superintendent or designee will hold an informal grievance hearing within ten (10) days after receiving the grievance. The Superintendent or designee will communicate the decision in writing to the grievant within five (5) days after the date of the hearing.

3:6    <u>Level Four</u> - <u>Submission</u> to <u>Arbitration</u> - Advisory - The decision of the Superintendent or designee will finally determine the matter unless the Association within ten (10) days of the Superintendent's decision submits a demand for arbitration to the American Arbitration Association. The request will state in reasonable detail the nature of the dispute and the remedy requested. The parties will then be bound by the rules and procedures of the American Arbitration Association in the selection of an arbitrator. The Association will represent the grievant at the arbitration level.

3:7    <u>Redirecting Principles</u>

No claim by an employee or the Association will constitute an arbitrable matter or be processed through arbitration if it pertains to:

(a)    A matter where a specific method of remedy or appeal is prescribed by law; (e.g., the Fair Dismissal Act) and/or by this Agreement.

(b)    Any rule or regulation of the State Department of Education.

(c)    Any matter which according to law is either beyond the scope of Board authority or which is illegal for the Board to delegate.

(d)    Dismissal or discharge of an employee or nonrenewal of an employee's contract.

Items (a) through (d) above, although not arbitrable, will be appealable through the grievance procedure to the Board within fifteen (15) days of the Superintendent's decision which will at its option hold a hearing concerning the matter or determine the matter on the basis of the written records. The Board will render its decision within thirty (30) days of the date of the filing of the appeal to the Board.

A-0326

Margolis Edelstein
Wilcoxon v. Red Clay
0348

4

3:8     Arbitrability

3:8.1   If the Superintendent or designee disagrees as to the arbitrability of the dispute, the Superintendent may request a conference to discuss the issue of arbitrability and seek to resolve the differences between the parties.

3:8.2   If the disagreement over arbitrability persists, the arbitrator appointed under the procedures set forth herein will rule upon the question of arbitrability prior to hearing the merits of the dispute in question. The same arbitrator will schedule a second meeting to hear the dispute on its merits if the dispute is judged to be arbitrable.

3:9     Procedure

3:9.1   The arbitrator selected will hold hearings promptly and will issue a recommendation not later than thirty (30) workdays from the date of the close of the hearings or, if oral hearings have been waived, then from the date the final statements and proofs on the issues are submitted. The arbitrator's recommendation will be in writing and will set forth the findings of fact, reasoning, and conclusions on the issues submitted. The arbitrator will be without power or authority to make any recommendation which requires the commission of an act prohibited by law or which violates this Agreement and will confine the opinion to the particular issue submitted. The arbitrator's decision will be advisory and will be submitted to the Board and Association. The Board will accept or reject the arbitrator's decision and such decision will be the final resolution.

3:9.2   The arbitrator, in the written opinion, will not amend, modify, nullify, ignore, or add to the provisions of the Agreement. The opinion must be based solely and only upon his/her interpretation of the meaning or application of the express relevant language of the Agreement.

3:10    Cost of Arbitration

3:10.1  The cost for the services of the arbitrator, including per diem expenses, if any, and actual and necessary travel, subsistence expenses, and the cost of the hearing room will be borne equally by the Board and the Association. Any other expenses incurred will be paid by the party incurring same.

3:11    Miscellaneous

3:11.1  Commencing with Level One of the Grievance Procedure, the grievant may be represented by a representative selected or approved by the Association or his/her own choosing.

3:11.2  If the grievant does not choose to be accompanied and represented by an Association grievance representative, the Association will have the right to be present and to state its views at all levels of the grievance procedure. This will not apply when the grievance involves matters of personal, embarrassing, and confidential nature and the grievant specifically requests, in writing, that the Association not be present.

3:11.3  If the employee elects to be represented, he/she must still be present at any level of the grievance procedure where his/her grievance is to be discussed, except that he/she need not be present where it is mutually agreed that no facts are in dispute and when the sole question is the interpretation of this Agreement.

A-0327

5

Margolis Edelstein
Wilcoxon v. Red Clay
0349

3:11.4    Where grievance proceedings are mutually scheduled by the parties during school time, persons proper to be present will suffer no loss of pay. In the event that a dispute arises as to whether a person is proper to be present at the grievance, such dispute will be subject to resolution through the grievance procedure.

3:11.5    No documents, communications, and records which are developed in connection with the processing of a grievance will be filed in the District's file pertaining to the employee.

3:11.6    It is understood that employees will, during and notwithstanding the pendancy of any grievance, continue to observe all assignments and applicable rules and regulations of the District until such grievance and any effect thereof will have been fully determined.

3:11.7    A form for filing grievances will be prepared jointly by the Association and the Administration, reproduced by the Administration and distributed to the Association so as to facilitate operation of the grievance procedure. The appropriate form will be used for filing a grievance at each level of the procedure.

3:11.8    Hearings at any level of the grievance procedure may be waived by mutual agreement of the parties.

3:11.9    Level One grievance decisions accepted by individual employees which appear in conflict with this Agreement may be grieved by the Association beginning with Level Two.


ARTICLE 4
EMPLOYEE RIGHTS

4:1    Employees have the right to join any organization for their professional or economic improvement; but membership in or an obligation to pay any dues, fees, assessments or other charges to any specific organization will not be required as a condition of employment.

4:2    The parties will not discriminate against, interfere with, restrain or coerce employees in the right to organize or to join or to participate in lawful Association activities or to refrain from so doing.

4:3    Nothing contained herein will be construed to deny or restrict to any employee such rights as may be held under Delaware School Laws or other applicable laws.

4:4    Employee Appearance with Administration/Agent of Board

4:4.1    If an employee is required to appear before the Board or an agent thereof concerning a matter which could adversely affect his/her continued employment, salary or any increments, he/she will be given prior written notice and specific reasons for such meeting or interview at least forty-eight (48) hours in advance. Any topic not included in the letter will not be covered at said meeting unless agreed to by the employee; if not agreed, it will be discussed at a later date after proper notice has been given. The employee will also be notified in writing of any additional persons who will be present. An employee required to appear in this instance will be entitled to have an Association representative of his/her choice present to advise and to represent him/her during such meeting or interview (informal discussion with an employee by any member of the district administration pertaining to the employee's performance at his/her work location)

6    A-0328

Margolis Edelstein
Wilcoxon v. Red Clay
0350

will not be precluded by the preceding language of this section; however, if as a result of such informal discussion, the employee perceives that the matter discussed could in the future adversely affect his/her continued employment, salary, or increments, the administrator will, upon written request, give the employee reasons in writing for the necessity of waiving the forty-eight (48) hours' written notice prescribed above. This section does not apply to terminations due to declining enrollments and/or to a reduction in education services.

4:4.2    Where an administrator asserts an immediate need to interview an employee regarding the facts of a school related situation, the 48-hour notice for such a meeting required in 4:4.1 shall not apply if the following conditions are observed.

   (a)    The topic of the interview is limited to determining the pertinent facts of the situation.

   (b)    That, if possible, prior to the interview, or where not, immediately thereafter, the administrator notifies the Superintendent or designee of the intent to conduct such an interview. The Superintendent or designee will notify the Association president as soon as possible, but within one (1) working day, of the administrator's intent.

   (c)    The employee is extended the opportunity to bring an Association representative of his/her choosing if time permits. If that is not possible, the employee may be accompanied by an available bargaining unit member of his/her choosing.

4:5    Any suspension of an employee by the Board of Education pending the disposition of charges will be with full pay and benefits. Where an employee is suspended for disciplinary reasons and that suspension is not revoked through the grievance procedure, said employee upon exhausting the grievance procedure will have deducted from his/her paycheck an amount of pay equal to the number of days of said suspension.

4:6    No employee will be disciplined, reprimanded or reduced in pay except for just cause. Any such action will be conducted with due regard for privacy.

4:7    The teacher will have the responsibility for determining grades within the grading policy of the District. Only the principal or his/her superiors will have the right to change a grade and will (1) if an employee is available within a reasonable amount of time, consult with the teacher before making the change, (2) as soon as possible, inform the teacher in writing of his/her right to file a disclaimer of responsibility for the grade; and, (3) provide in writing a reason if requested for the grade change, one copy to be given to the teacher. Whenever any grade change appears, it will be initialed by the person making the change.

4:8    Students will not be transferred to or from an employee's classroom without appropriate notice. Information concerning a student transfer will be provided to the classroom teacher on a need-to-know basis.

4:9    When a parent desires a conference with an employee, the employee will schedule the conference at a mutually agreeable time. When the parent indicates a desire to attend such a conference with a community representative or with a legal representative, then

A-0329

Margolis Edelstein
Wilcoxon v. Red Clay
0351

the employee will so advise the building administrator who will then be responsible for scheduling and attending such a conference. With respect to such conferences, the employee will have the right to bring an Association representative or a representative of the employee's choice to the meeting.

When a parent brings a community representative or legal representative to a conference without prior notice to the employee, and in the event the building administrator feels a meeting is required at that time, the employee will be given at least a thirty (30) minute delay before the start of the conference if the employee requests an Association representative to be present.

If the Association representative is not present and the conduct or language of the parent and/or community representative becomes foul and/or abusive, the building administrator will terminate the conference at the employee's request.

## ARTICLE 5
## EMPLOYEE - ADMINISTRATION LIAISON

5:1     Building Liaison Committee

5:1.1     Association representatives will meet normally on a monthly basis with the building principal to review and to discuss school problems and practices, including the building budget. The Association representatives and the Administration will exchange agendas at least twenty-four (24) hours in advance of the normal monthly meeting.

5:1.2     This committee will consist of one (1) member for every twenty (20) (or major fraction thereof) employees in the building, but will have no fewer than two (2) members. The building administrator may invite other administrators and/or other staff members of his/her choice, depending upon the topic(s) to be discussed. Where the building principal is bringing a member of the district administrative staff to speak to the committee, the employees will have the right to have an Association representative present at such meeting.

5:2     District Liaison Committee

5:2.1     The Association President and an individual or individuals of his/her choice will meet with the Superintendent and an individual or individuals of his/her choice on a monthly basis in order to discuss the administration of this Agreement and other concerns which affect employees.

## ARTICLE 6
## NO STRIKE - LOCKOUT PROVISION

6:1     Both parties recognize the desirability of continuous and uninterrupted operation of the instructional program during the normal school year and the avoidance of disputes which threaten to interfere with such operation. Since the parties have established a comprehensive procedure under which unresolved disputes may be settled, the parties have removed the basic cause of work interruptions during the period of this Agreement.

A-0330

Margolis Edelstein
Wilcoxon v. Red Clay
0352

8

6:1.1    The Association agrees that during the period of this Agreement, it will not, nor will any person acting on its behalf, overtly cause, authorize, or support a strike or any other concerted disruption of normal school district activities as a result of disputes over interpretations of this Agreement or any other matter over which the Board has jurisdiction.

6:1.2    The District agrees that during the term of this Agreement, it will not nor will any person acting on its behalf, overtly cause, authorize, or support an offensive lockout of any employee covered by this Agreement as a result of a labor dispute between the District and the employees covered by this Agreement.

## ARTICLE 7
## CLASSROOM CONTROL AND DISCIPLINE

7:1    Special Assistance

7:1.1    When in the judgement of an employee, a student requires the attention of the principal, assistant principal, counselor, psychologist, or other specialist, the employee will inform the principal or the principal's designee. The principal or the principal's representative who will be a certificated employee will assess the information relayed and confer with the teacher or other appropriate staff as necessary. When the employee advises the principal or representative in writing of the matter, the principal or representative will respond to the employee in writing of the disposition of the matter. If in the judgment of the principal or representative a conference is desirable, the principal or representative will arrange (within five (5) workdays) a meeting among the appropriate parties to discuss the problem and to decide upon appropriate action for its resolution.

7:2    Disruptive Students

7:2.1    As reflected in the prevailing Student Code of Conduct, an employee may remove from class or wherever disruptive behavior occurs, a student whose misbehavior or disruptive behavior makes the continued presence of the student in the classroom intolerable or detrimental to the other students. This student will be directed to an area designated by the building administrator. Unless specifically created for that purpose or in case of extreme emergencies where no other supervised area is available, no employee's class will be used as a place to send disruptive students for disciplinary reasons or as a holding area for unsupervised students. This will include libraries and study halls. A student so excluded will be returned to class only after the building administrator or designee confers with the student and takes appropriate action in accordance with the Student Code of Conduct. Normally, when the student is returned to class, the employee will be informed as to what action has been taken. Additionally, when a written referral has been submitted, employees will be informed in writing within five (5) working days as to what action the administrator has taken.

7:2.2    When disciplining students, the building administrator or designee will take appropriate action as specified by the Board's Student Code of Conduct.

7:2.3    A copy of all written discipline reports along with the resolution will normally be placed in the student's file and will be cumulative for the current school year. Employees will have access to all discipline records of students they teach or students referred

A-0331

Margolis Edelstein
Wilcoxon v. Red Clay
0353

by the teacher to the Administration for discipline reasons. It is not the intent of this section to deny information to a teacher concerning prior disciplinary matters, intervention strategies, etc. regarding students who are chronically disruptive in that teacher's classroom.

7:3      Assault

7:3.1    Principals will report all cases of assault suffered by an employee in connection with the employee's employment to the appropriate administrative and police authorities. The District and Association will share information relating to reported cases.

7:3.2    As provided in the Red Clay Consolidated School District Student Code of Conduct, students who offensively touch an employee with intent and means to do harm or in a lewd or lascivious manner will be suspended.

7:4.1    When students enter or re-enter the District and the District has information concerning behavior or learning issues that impact the employee's ability to instruct the student or to regulate his/her behavior, the employee(s) shall be so advised unless prohibited by law. Upon being so advised, the employee may then request a meeting which would be scheduled with the appropriate individuals normally within three (3) to five (5) working days.

## ARTICLE 8
## PERSONAL AND ACADEMIC FREEDOM

8:1      The personal life of an employee, other than that which is covered by Delaware Code, Chapter 14, Title 14, will not concern the Board.

8:2      The District and Association agree that academic freedom is essential to the fulfillment of the purposes of the District; and they acknowledge the fundamental need to protect employees from censorship or restraint which interferes with the performance of their teaching responsibilities.

## ARTICLE 9
## PROTECTION OF EMPLOYEES, PUPILS, AND PROPERTY

9:1.1    The Board and the Association agree that effective means for the protection of employees, pupils, and property are essential to the smooth functioning of the District; therefore, employees will not be required to work under conditions determined herein to be unsafe or hazardous or to perform tasks determined in the procedure herein to be detrimental to their health, safety, or well being. An employee who has a complaint about an unclean, unsanitary or hazardous condition shall report the condition to their building administrator who will take prompt and appropriate action to remedy the conditions which may include the notification of state and local public health officials. The building administration will provide in writing a report to the employee [within three (3) working days] of the steps being taken to remedy the condition. If the employee or Association is not satisfied with the remedy, the issue may be taken up directly with the Assistant Superintendent of Administrative Services.

A-0332

Margolis Edelstein
Wilcoxon v. Red Clay
0354

9:1.2   An employee may, within the scope of employment, use and apply such amount of force as is reasonable and necessary to quell a disturbance threatening physical injury to oneself, others, or damage to property; to obtain possession of weapons or other dangerous objects upon the person or within the control of the pupil.

9:2     Employees will immediately report cases of injury suffered by them in connection with their employment to their principal or other immediate supervisor.

9:3     No employee will be required to transport a pupil in a personal automobile.

9:4     The District will take reasonable precaution to provide protection for an employee's vehicle while parked on school property but will not assume liability for loss or damage.

9:5     Where feasible and where acceptable alternative facilities exist and upon request of the employee, instruction will not continue in a classroom when there are unreasonable temperature conditions.

9:6     Employees other than school nurses will not be required to perform nursing duties except in an emergency. In such a case, a qualified medical person will be brought on the scene as soon as possible, and the teacher will be held harmless from liability by the Board unless the employee's acts of omission amount to gross negligence or willful and wanton misconduct.

9:7     An employee who is on Workers' Compensation caused by a job related injury will have continued by the District the Delaflex Program, the Blue Cross/Blue Shield/HMO local supplement, and the local employee benefit stipend for the remainder of the school year in which the injury occurred and for the next school year or until the employee is able to return to work, whichever is less.

## ARTICLE 10
## RIGHTS OF THE PARTIES

10:1    The Board agrees to make available to the Association upon reasonable written request all information, reports, and budgets which are available to the public and will upon reasonable written request make available to the Association other statistics, information and records necessary for negotiations. Utility and building rosters of the bargaining unit will be available to the Association upon written request. Such rosters will include names, addresses, phone numbers (unless unlisted), social security number, and building assignments.

10:2    The Association will have the right to use school buildings for Association business on the same basis as other school affiliated organizations in accordance with District policy.

10:3    The Association may use the school office and District inter-office mail system and bulletin board space for posting notices in areas readily available to employees and assigned for the dissemination of information by means of notices, circulars, or other similar materials pertaining to Association business under the following provisions:

        (a)   the material must identify clearly the individuals(s) and/or organization responsible for the information contained therein;

A-0333

Margolis Edelstein
Wilcoxon v. Red Clay
0355

(b)   a copy of the material for general distribution or an opportunity to copy material being distributed must be given to the building principal or designee prior to or at the time of posting or dissemination in that building. If the material is to be distributed or posted system-wide, a copy also must be furnished to the Superintendent or designee prior to or at the time of posting or dissemination; and,

(c)   the use of the mail system and bulletin boards may not interfere with the normal business of the school.

10:4     A copy of current Board Policy and Board minutes (agendas) will be mailed to the President of the Association as soon as they are made available to the public. The Association may also, if it desires, pick up at the appropriate district office copies of materials cited above, as soon as they are made available. The Association will provide the Board copies of its Constitution and By-Laws, and a current roster of its elected and appointed officials. The Board will provide upon request of the Association, a table of administrative organization with names.

10:4.1   A copy of in-service plans will be provided to the Association, as soon as it is available.

10:5     The building representative will have the right to speak to employees during regularly scheduled faculty meetings if the representative notifies the building principal at least one (1) day in advance of the scheduled meetings. The requirement for one (1) days' advance notice may be waived by mutual agreement. Placement on the meeting agenda will be at the discretion of the building principal.

10:6     The Association will have the right to use on school premises office and A-V equipment as designated by the principal when not otherwise being used. The Association will pay for the cost of materials and supplies. The Association also agrees that it will pay for the repair or replacement of equipment damaged during such use.

10:7     Accredited representatives of the Local, County, State, and the National Association will be permitted to transact official Association business on school property at all reasonable times, provided that this will not interfere with or interrupt the program of the school district. The Association representative will obtain approval of the principal of the building or other person in charge of the building which the representative is visiting by reporting to the office. Such approval will not be unreasonably withheld.

10:8     Whenever by mutual agreement of the parties any employees participate during working hours in negotiations, they will suffer no loss in pay, nor will they be required to make up the time lost.

10:9     The Association will have input into the preparation of the District calendar and the District budget. Final determination of the calendar and budget will reside with the Board.

10:10    Except as limited by this Agreement, the Red Clay Consolidated School District Board, on its own behalf and on behalf of the citizens of the District hereby retains and reserves unto itself all powers, rights, authority, duties, and responsibilities conferred upon and vested in it by the laws and the Constitution of the State of Delaware and of the United States, and including the right to administer and to supervise the schools of the District and will have the authority to determine policy and adopt rules and regulations for the general administration and supervision of the schools of the District. Such

A-0334

12

Margolis Edelstein
Wilcoxon v. Red Clay

administration, supervision, and policy will be conducted and formulated in accordance with Delaware law and the policies, rules, and regulations of the State Board of Education. Additionally, nothing contained herein will be considered to deny or to restrict the Board of its rights, responsibilities, and authorities provided by applicable law(s).

10:11    The Board, subject to Delaware Code and in accordance with the policies, rules and regulations of the State Board of Education, will in addition to other duties:

   (a)    determine the educational policies of the District and prescribe rules and regulations for the conduct and management of the schools;

   (b)    enforce the provisions of Title 14 relating to school attendance;

   (c)    grade and standardize all the schools under its jurisdiction and may establish kindergartens and playgrounds and such other types of schools, as in its judgment will promote the educational interest of the District;

   (d)    adopt courses of study;

   (e)    select, purchase, and distribute free of charge such textbooks, and other materials of instruction, stationery, furniture, equipment, apparatus and supplies as are necessary to the work of the schools;

   (f)    provide forms on which regular school employees will make such reports as may be required by the Board;

   (g)    make all reports required by the Secretary of the Department of Education, at such time, upon such items, and in such form as may be prescribed by the State Secretary of the Department of Education; and,

   (h)    appoint personnel.

10:12    In a bona fide emergency affecting the health, safety or welfare of the students of the District, the Board or designee may take appropriate actions.

10:13    The District will provide a telephone in the classroom or in an area easily accessible to the Association President. Such telephone will not be utilized during normal class time except in an emergency.

10:14    The District will provide a total of twenty (20) person days per year of release time with full pay for Association-related activities to employees designated by the Association President. Use of such days must be by prior notice to the Superintendent and the employee's building administrator. In general no more than ten (10) such days will be granted to an individual employee. Such time will be in addition to sick leave and/or personal days.

## ARTICLE 11
## EMPLOYMENT

11:1    Employees will be notified of their employment status for the next fiscal year pursuant to law.

A-0335

Margolis Edelstein
Wilcoxon v. Red Clay
0357

11:2      Employees will be notified of a change in their employment placement for the ensuing year no later than the end of the school year. If a change is necessary after the end of the school year, the employee will be notified, in writing and with reasons if requested in writing by the employee, as soon as the change becomes evident.

11:3      The building principal will make every effort to give written notice to all employees of a change in their subject and room assignments for the following year no later than the close of school. If a change is necessary, the employee will be notified, in writing as soon as the change becomes evident with reasons if requested in writing by the employee.

11:4      Prior to scheduling assignments being made within the building, employees may indicate their assignment preferences to the building principal or designee. All requests will be given consideration prior to the assignments being made. Any employee whose preference request is denied will be notified as to the reasons for that denial upon request. The principal's decision is not subject to the grievance procedure.

11:5      All openings for positions in the evening school, summer school, and other similar programs will be posted in each school building at least ten (10) calendar days prior to the application deadline.

11:6      With respect to summer school, employees who are properly certificated applicants will be given preference over outside applicants in filling of such vacancies.

           Employees on the recall list will have full application rights for such summer school positions and will be considered after current employees but prior to outside applicants.

           With respect to evening school, preferences will be given to applicants who are employees of the District, provided that such employee-applicants are equally qualified for the position as nonemployee-applicants as determined by the District.

11:7      In general, employees of the District will be given first consideration to provide homebound instruction occurring beyond the normal school day for students assigned to them. The District, however, reserves the right to establish the homebound instruction program in a manner it believes to be most beneficial to students.

11:8      Classroom aides will be under the direction of the classroom teacher during the time the aide is assigned to said teacher; however, it is understood by the parties that both the teacher and the classroom aide will be under the direction of the building administrator during the employee work day.

11:9      When a regular vacancy occurs during the school year, it will be filled as soon as a qualified replacement is available who meets the qualifications established for the position.

11:10     Employee participation in Extra Pay for Extra Responsibility activities which extend beyond the regularly scheduled school day will be voluntary. Qualified employees of the building will be given first opportunity to fill vacant Extra Pay for Extra Responsibility positions. If a position is not filled from within the building, it will then be opened to all employees of the District. After every effort has been made to fill the position on a volunteer basis by Districtwide advertising, volunteers will be sought from the community.

A-0336

Margolis Edelstein
Wilcoxon v. Red Clay
0358

Athletic positions will, however, be filled in accordance with the DSSAA Rule 19. If a community volunteer acceptable to the building administrator is not available, the building administrator may then assign an employee to fill said position. This involuntary assignment will be for no longer than one (1) year and said employee will not be involuntarily assigned in the same year to any other Extra Pay for Extra Responsibility position. Employees will be paid at the rate as listed on the Extra Pay for Extra Responsibility schedule.

11:11    Employees who may be required to use their own automobiles in the performance of their duties will be reimbursed for such required travel at the rate provided by Delaware State Code.

## ARTICLE 12
## EMPLOYEE WORK YEAR

12:1    The in-school work year for employees as employed on a ten (10) month basis will be one hundred eighty-five (185) days or as prescribed by State law, whichever is greater; on an eleven (11) month basis two hundred four (204) days or as prescribed by State Law, whichever is greater; on a twelve (12) month basis two hundred twenty-two (222) days or as prescribed by State Law, whichever is greater.

12:2    The above stated maximum number of work days for each category may be extended two (2) additional days for new employees for the purpose of orientation and in-service education.

12:3.1    Positions in special schools requiring work days in excess of the ten (10) month school year [one hundred eighty-eight (188) teacher days] will be filled on a volunteer basis. In the event two or more volunteers or applicants have similar qualifications, the most senior employee will be given the position. Should these positions not be filled within the school, they will be open to all qualified employees within the District. When employees staff a full-time or year round program that is an eleven-month or twelve-month program the employee shall be compensated at the employee's daily rate of pay for work beyond the State mandated year. It is understood that this provision does not apply to employees who work during the time when students are not in session at a rate of pay established by the Board (for example, psychologist, librarian, guidance counselor, summer school or school comparable to summer school, etc.)

12:3.2    In the event there are not sufficient qualified applicants for such positions, qualified special school employees may be assigned to said positions on a rotating basis, with the employee having the least amount of continuous service in the District and the least number of rotational involuntary special school assignments being assigned first with notification of such involuntary assignment to be made by May 1.

## ARTICLE 13
## TRANSFERS

13:1    Definitions

13:1.1    Regular Vacancy

A vacancy resulting from a previously occupied position or caused by the generation of increased state units.

A-0337

Margolis Edelstein
Wilcoxon v. Red Clay
0359

13:1.2    Temporary Vacancy

A vacancy resulting from leaves of absence, special assignment, or any position that is vacant between April 1 and the close of the work year.

13:1.3    New Position

A newly created position within the District; or the authorization of additional positions in programs not recognized under state allotment.

13:1.4    Reassignment

Changing an individual's position on the staff of a building to another position in that building or to a combined position in that building and another, constitutes a reassignment. Individuals who are working in more than one building and/or field and whose placement or assignment is changed within those buildings or fields will be considered to have been reassigned. Such reassignments may take place before the identification of a regular vacancy or a new position.

13:1.5    Unassigned Employee

Employees who are hired for a temporary assignment or displaced from their previous placement as a result of declining pupil enrollment, educational program changes, feeder pattern changes, and/or adjustment in staff allocations.

13:1.6    Voluntary Transfer Period

The time frame for voluntary transfers will be June 1 to July 15 or July 1 to August 10 if the position is a result of 13:1.7.

13:1.7    Temporary Assignment

A position that is available between January 1 and April 1 of a school year or a Right of Return position as defined in 13:6 (b).

13:1.8    Use of Special Substitutes

Where the District determines the need to hire additional staff to supplement the bargaining unit, and has utilized all state allocated units in accordance with existing laws, regulations, and policies, it may hire:

(a)    Employees under temporary contract beyond those defined in Article 13:1.2, or

(b)    Special Substitutes, which are defined and limited as follows:

(1)    They are long term substitutes assigned to specific positions to augment staffing and are not used to deal in any way with employee absences.

(2)    Except as set forth herein, the total number shall not exceed sixteen (16). No more than eight (8) of those shall be employed in classroom or other direct instructional settings and these eight (8) may not be retained in that status after September 30 if the District has not used all of its Division I teaching units. Those employed in these settings must be certificated or

A-0338

Margolis Edelstein
Wilcoxon v. Red Clay
0360

certifiable, unless no acceptable certificated applicant is available. In the event that state generated money exists for discipline/school climate personnel in the elementary schools, only nine (9) additional special substitutes may be hired to fill these jobs.

(3)    No Special Substitute shall be used to assume the general responsibilities of an employee who has been involuntarily removed from a position.

(4)    Special Substitutes shall not be used to replace teacher specialists (special area teachers), such as, but not limited to, art, library, music, physical education, and/or specialists evaluated by the Specialist Performance Appraisal System.

(5)    The per diem rate for Special Substitutes shall be at least the Bachelor's Degree Level (state and local combined) at zero (0) years of experience divided by 180.

(6)    The per diem rate shall not be reduced due to absences.

The Office of Human Resources shall notify the Association President in writing within three (3) working days of the assignment of any Special Substitutes, and will promptly inform him/her of any changes in the employment status of the individuals hired.

13:2    <u>Advertisement</u>

13:2.1    When a position is advertised, it will be posted at least ten (10) calendar days in each District building and a copy will be sent to the Association President. No regular appointment will be made until after the deadline for filing applications.

13:2.2    The written notice of vacancy will contain:

(a)    type of vacancy;

(b)    position description;

(c)    location;

(d)    starting date;

(e)    certifications;

(f)    qualifications;

(g)    salary, and

(h)    other relevant information.

13:2.3    The written notice set forth for a particular position will not be substantively changed after posting. Any other changes must be made prior to application deadline or must be brought to the attention of the applicant at the time of the interview.

A-0339

Margolis Edelstein
Wilcoxon v. Red Clay
0361

13:2.4   Selection for positions will be determined by the following criteria which are listed according to priority:

    (a)   certification;

    (b)   qualifications based upon evaluations, professional experience, and additional course work;

    (c)   systemwide balance;

    (d)   seniority; and

    (e)   other relevant factors.

13:2.5   With respect to the magnet program which is implemented at Wilmington High School known as Cab Calloway School of the Arts, the positions will be posted and selection will be determined by the following criteria which are listed in priority order:

    (a)   certification;

    (b)   qualifications based upon evaluations, professional experience, and additional course work. Qualifications shall also include the determination of the principal and program supervisor based upon program needs as well as based upon information developed at the interview which is directly related to requirements listed in the job posting;

    (c)   system-wide balance;

    (d)   seniority;

    (e)   other relevant factors.

13:3   <u>Voluntary Transfers</u>

13:3.1   Employees, other than newly hired employees, may request a voluntary transfer. Newly hired employees will have to spend at least one (1) transfer period in the district before being eligible to transfer. Any employee hired to fill a temporary vacancy who is rehired into a regular vacancy during the months of July, August, and September, or to a regular vacancy created by the September 30th unit count will not be considered a newly hired employee for the purpose of this section. The District may deny voluntary transfers to non-tenured employees based upon performance concerns in the formal evaluation instrument even if the employee has not been placed on a formal improvement plan.

13:3.2   Employees who desire a transfer to another building or subject field must file a Request for Transfer Form with the Human Resources Office. Such written statement must be submitted between May 1 and May 31 to remain on file and be considered for the following June 1 to July 15 period. When May 31 is a weekend or holiday the deadline shall be the next scheduled work day. An employee will only be allowed one (1) transfer per year. Employees will have forty-eight (48) hours, not including weekends or holidays, to accept the offer. Failure to accept an offer will cancel the request.

A-0340

Margolis Edelstein
Wilcoxon v. Red Clay
0362

13:3.3    Transfer requests to a different field will not be considered until all unassigned employees in that field have been placed and/or employees who have been involuntarily transferred or declared unassigned have been given the option to return as established in Section 13:6.

13:3.4    Transfer requests to a position created by a temporary assignment (Section 13:1.7) will not be considered unless there is a position that fits the certification of the employee who is unassigned. Transfers under this section will not go beyond August 10.

13:3.5    In choosing between an individual on the recall list in the field in which the regular vacancy exists and an individual requesting a transfer from another field, if two candidates have substantively equal qualifications and/or affirmative action programs are not a factor, preference will be given to the individual on the recall list.

13:3.6    Regular vacancies not filled through the voluntary transfer process will be filled by the next eligible person on the appropriate recall list.

13:3.7    If an employee is denied a transfer, the Human Resources Administrator will meet and discuss the denial upon the written request of the employee. The employee will be entitled to have an Association representative present during such meeting.

13:3.8    The Human Resources Office will post a list of all vacancies in each building for the forthcoming school year no later than May 15. Vacancy notices occurring after May 15 shall be restricted to the following reasons: retirement, medical disability, resignation, termination, death or enrollment projections. At a minimum, the vacancy notice shall contain grade level, subject field, and certification requirement.

13:4    Unassigned Employees

13:4.1    Notice of "unassignment" will be given to the employee upon knowledge of such "unassignment".

13:4.2    The least senior certificated employee in a building/program will be declared unassigned unless the sending or receiving school's program or human and physical resources utilization requires a particular employee's certification and qualifications or where it is necessary to satisfy requirements of law, court order, or affirmative action programs. Seniority is as defined in Article 15.

13:4.3    Unassigned employees will be given a list of all known vacancies in their subject field at the time they are declared unassigned. Such employees will state their preferences as to the positions and return the list to the Human Resources Office on or before the date indicated. Unassigned employees will have the right to complete a voluntary transfer request at the time they are declared unassigned.

13:5    Involuntary Transfers

13:5.1    Employees will not be involuntarily transferred to other than existing vacancies except as organizational need and legal requirements dictate.

13:5.2    Notices of proposed involuntary transfers will be given to the employee involved upon knowledge of such transfer.

A-0341

Margolis Edelstein
Wilcoxon v. Red Clay

13:5.3    An employee may request a meeting and will be granted a meeting with the Director of Human Resources or his/her designee to discuss the involuntary transfer. However, this will not include involuntary transfers caused by relocation of grades or the opening/ closing of a building.

13:5.4    An employee will not be transferred to a position outside his/her area of certification except in unusual circumstances or due to organizational need.

13:5.5    Where involuntary transfers are deemed necessary, the least senior certified employee in a building/program will be involuntarily transferred unless the sending or receiving school's program or human and physical resources    utilization requires a particular employee's certification and qualifications or where it is necessary to satisfy require-ments of law, court order, or affirmative action programs. Seniority is as defined in Article 15.

13:6    Any employee who is involuntarily transferred, involuntarily reassigned (from one seniority category to another), on special assignment, or declared unassigned will be given the option to return to his/her assignment (seniority classification and building) from which the employee was involuntarily transferred, involuntarily reassigned, or declared unassigned when a vacancy occurs if:

(a)    he/she so requests in writing within ten (10) calendar days of being declared unassigned, transferred involuntarily, or involuntarily reassigned (from one seniority category to another);

(b)    the vacancy occurs during the July 1 to August 31 period or a vacancy is generated by the September 30 unit count, or the following school year if a vacancy is available as a result of a temporary assignment; or

(c)    when a district program is eliminated or reduced, the employee(s) reassigned will be given the opportunity to return to that program upon its reinstatement.

(d)    organizational needs permit.

13:7    Administrative Vacancies

13:7.1    The District and Association agree that, except as provided herein, vacancies for the following Administrative positions shall be posted and subject to the screening committee described in 13:7.2: Principal, Assistant Principal, Human Resources Supervisor, Director of School Facilities, Manager of Technology, Supervisor of Title I, Supervisor of Bilingual Education, and Supervisor of Special Services.

It is further agreed that the District shall not be required to post a position which is filled through the reassignment, promotion or demotion of an existing administrator except for Principal and Assistant Principal positions when those positions are filled by other than demotion or lateral reassignment of an existing administrator.

13:7.2    The Superintendent will establish a procedure to provide employee input into the selection of district administrators for the vacancies posted under 13:7.1 above. A screening committee will be appointed and will include not less than two (2) employees appointed by the Association after screening. This committee shall interview candidates who apply for positions posted pursuant to 13:7.1.

A-0342

Margolis Edelstein
Wilcoxon v. Red Clay
0364

13:7.3   In filling such vacancies, if two (2) candidates have equal qualifications, preference will be given to employees of the District. Exceptions to this will be permitted to satisfy requirements of law and court order.

13:7.4   Candidates for administrative/supervisory positions will be notified of the final decision in writing within one (1) week of the ratification of the Superintendent's decision by the Board. If an employee is denied a position, written reasons will be given upon written request. The decision of the Board regarding the filling of these openings will be final.

13:8     School Closing/Opening

13:8.1   Once the Board officially designates a building to be closed/opened, the staffs of the affected building(s) will be placed on one staff list in seniority order. Any staff members exceeding the allocated units will be unassigned beginning with the least senior individual on the combined list. Any staff member in the affected building(s) will be given an opportunity to make a transfer request if permitted under Article 13.

13:8.2   If the student population of a building is to be split between two or more feeder patterns, the staff of the affected building will be asked to select either building (or buildings). If the number requesting a particular building is greater than the units available, the most senior employees will be placed based upon the number of available positions.

13:8.3   If both parties mutually agree that the above procedure should not be used in a given situation, then the parties will design/develop another system for that situation.

13:9     Grade Relocation

13:9.1   Once the Board officially designates a grade level in one building to be relocated to another building, the parties agree to the concept that "teachers follow students".

13:9.2   If the student population in the designated grade level is split between two or more buildings, the grade level teachers will be given the opportunity to select either building(s). If the number of teachers requesting a particular building exceeds the positions available, the most senior will be placed in the building of their choice based on the number of available positions.

13:9.3   If the parties mutually agree that the above procedures should not be used in a given situation, then the parties will design/develop a system for that situation.

ARTICLE 14
FAIR DISMISSAL

14.1     Professional employees who are dismissed and not covered by the Delaware Code (Title 14; Chapter 14) will be given written notice setting forth the reasons for termination if requested by the employee. Such decision will be appealable in writing to the Board within fifteen (15) days of receipt of the decision. The Board at its option will hold a hearing concerning the matter. In any event, the Board will render its decision within forty-five (45) calendar days of the date of the filing of the appeal to the Board. This article does not apply to termination due to declining enrollments and/or to a reduction in educational services.

A-0343

Margolis Edelstein
Wilcoxon v. Red Clay
0365

ARTICLE 15
LAYOFF AND RECALL

15:1    If a reduction in force is necessary beyond normal attrition, the Superintendent will determine the number of positions that will be reduced, as well as the date such reductions are needed.

15:2    Once the number of positions to be reduced has been established, the Superintendent will apprise the President of the Association of this information.

15:3    Employees who would otherwise be laid off may be reassigned to any opening in the bargaining unit for which they are fully certificated and have taught within the past three years.

15:4    To accomplish the necessary reduction in force, employees will be laid off from the field of their current major assignment on the basis of the length of most recent continuous service in the District since last employment, with those having been employed most recently being laid off first.

15:4.1  Employees who have accepted or who accept positions in programs of limited duration will be permitted to return to a regular position in their former major teaching field when the limited duration program is reduced or terminated, provided the employees have sufficient seniority. When a decline in enrollment, a decrease in program, or a reduction in funding is anticipated for the following year, any necessary reduction will be made in that field consistent with seniority to permit such reassignment. Any reduction in the staff of such programs subsequent to May 1 will be carried out as provided in 13:5.5.

15:5    Seniority will be calculated as the length of most recent continuous service as an employee in the District. For transition purposes seniority dates for employees will be established using the process that determined the seniority established in the 1980-81 Seniority Roster of the former New Castle County School District adjusted for any time spent on layoff and any other reason for adjustment as covered in this Agreement. Such service must be continuous; a resignation is considered a break in service.

15:5.1  Administrators who are assigned to bargaining unit positions will be afforded seniority as a teacher commensurate with the time of his/her previous employment as either a teacher and/or administrator by the District, the New Castle County School District and/or one of the component Districts prior to July 1, 1978. Such service must be continuous, and a resignation is considered a break in service. (Moving from a teacher to an administrative position within the same district is not considered a resignation).

15:6.1  The Human Resources Office will annually publish a list of all employees by field of major teaching assignment listed in order of length of continuous district service as determined by the criteria stated in this document. This list will be published and posted by February 15 of each year. Employees who wish to appeal their placement based upon the seniority date and/or classification on this list must do so in writing to the Human Resources Office to be delivered in person or postmarked by March 1. A final list will be published by March 31 each year. An employee's failure to question placement on the first published list will preclude the assertion of incorrect placement in challenging any subsequent actions having to do with seniority. Once an appeal has been adjusted, no further appeal for the same reason will be honored. Errors appearing on final list not present on the initial list must be appealed in writing within five (5) working days to the Human Resources Office. If not appealed, said list will become final.

A-0344

Margolis Edelstein
Wilcoxon v. Red Clay
0366

15:6.2    In the event two or more employees have the same length of service in a category of teaching assignment, the following criteria will be used in the order enumerated as tiebreakers and utilized in determining the seniority lists:

    (a)    total length of service in New Castle County;

    (b)    total length of state service;

    (c)    total teaching service;

    (d)    educational level on salary schedule; and

    (e)    lottery.

15:6.3    The final composition of the seniority list will be determined by the Superintendent or designee and will not be subject to the grievance procedure outlined in Article 3 of this document. The Association will be made aware of change of the composition of the seniority list and make suggestions for additions and deletions prior to the initial posting of the list.

15:7    Board-approved leaves of absence will not constitute a break in service but will not be counted toward seniority as applied in this article with the following exceptions:

    (a)    Sabbatical leaves

    (b)    Military leaves

    (c)    Association leaves as provided in the collective bargaining agreement.

    (d)    Workers' Compensation leaves

15:8    Employees on Board approved leaves of absence will be subject to all provisions of this article.

15:9    Persons who are eligible for recall must keep the District Human Resources Office informed in writing of any changes in their address, telephone number, and certification.

15:10    Employees who resign or have been dismissed for any reason other than reduction in staff are not subject to provisions of this article.

15:11    The following items will be placed in the personnel file of the employees who are laid off ("Laid off" refers to terminations due to declining enrollment or elimination or reduction of educational services, or any reason other than "just cause."):

    (a)    a letter from the Board stating the reason for the layoff except as limited by this document; and

    (b)    correspondence to the Board from the employee.

15:12    Nothing in this article will apply to an individual on a temporary contract or in any way serve to extend the employment of such individuals, except as provided in Section 15:15.

A-0345

Margolis Edelstein
Wilcoxon v. Red Clay
0367

15:13    Employees who are laid off will be automatically placed on the recall list for a period of two (2) years. If an employee chooses to be removed from any recall list, he/she must notify the District Human Resources Office in writing within ten (10) calendar days of layoff notice.

15:14.1    When regular vacancies occur and such vacancies are not filled by a reassignment, transfer or posting, persons who have been laid off under provisions of this article will be offered re-employment on the basis of seniority with the most senior being offered re-employment first in an opening in the field in which they last taught or in a field in which they are fully certified. (Fully certified will mean that the individual will hold a standard or professional certificate in that field or needs only the six (6) refresher hours required by the Department of Education to renew the standard or professional certificate.) Refusal of a person to accept the position within seventy-two (72) hours of telephone contact or five (5) calendar days of the postmarked date on a certified notice and to report to work on the first workday following a period of seventy-two (72) hours from the time of acceptance, or such time as is determined by the Human Resources Office, will relieve the Board of further obligation to offer re-employment.

15:14.2    No response from the person or failure to report to work at the time established will constitute a refusal.

15:14.3    A person who refuses a regular position in the Red Clay Consolidated School District in the field from which they were laid off will be removed from the entire recall list. A person who refuses a regular full-time position in a classification other than that in which they were laid off will be removed from the recall list in that classification, but will remain on the recall list in all other classifications for which the employee is fully certified. Once the employee has refused a regular position except as stated above, the Board will have no further obligations to the person.

15:14.4    Employees who have been involuntarily transferred or involuntarily reassigned to an assignment that places them in a different seniority classification and are scheduled to be laid off from such classification will, at the employee's option, be permitted to return to their previous seniority classification provided they have sufficient seniority.

15:15    A person on the recall list who exercises his/her seniority by accepting a temporary or regular part-time position will not surrender his/her right to a regular full-time position. The employee may be placed in a regular position before completion of the temporary or part-time employment with administrative approval. The employee will be placed at his/her appropriate position on the recall list upon completion of such temporary or part-time employment.

15:15.1    A person on the recall list who rejects a temporary or part-time position does not lose his/her right to a regular position.

15:16    Time lost by an employee laid off under the provisions of this Article will not be counted towards additional service. Such a person who is subsequently recalled under the provisions of this Article will not be considered to interrupt continuous service. Adjustment for seniority will be calculated on the same basis as the State determines credit for sick leave.

15:17    Laid off employees may continue benefits where the company/carrier permits, at the person's expense.

A-0346

Margolis Edelstein
Wilcoxon v. Red Clay
0368

ARTICLE 16
EMPLOYEE EVALUATION

16:1    Evaluation and judging of an employee's performance will be for but not limited to the following purposes:

(a)    To provide teachers with feedback and support for continuous self-improvement.

(b)    To motivate members of the staff to participate in formulating and evaluating instructional programs.

(c)    To provide an atmosphere of cooperation between administrators and teachers throughout the evaluative process.

(d)    To provide information for decisions on inservice training and staff improvement programs.

(e)    To provide information for making judgments about personnel promotions, reassignments, tenure, and dismissal.

16:2    Sound administrative practice dictates that observation of the work performance of an employee will be conducted openly. Formal observation sessions will be with the full knowledge of the employee. Records of all other observations of the employee's work performance which are to be made part of the employee's file will be made known to the employee. Every evaluation report form will be completed and signed by the evaluator before being given to or discussed with the employee.

16:3    An employee will be given a copy of any evaluation report at least one (1) day prior to the conference held to discuss it. If the employee is dissatisfied with the evaluation conference, the employee may request additional conference time prior to the evaluation being placed in the file. No evaluation report will be submitted to the central office, placed in the employee's file, or otherwise acted upon without a prior conference with the employee. The employee will sign such report. Such signature will indicate only that the report has been read by the employee, and in no way indicates agreement with the contents thereof.

16:4    Within fifteen (15) working days of receipt of an evaluation, the employee may respond in writing. The employee will submit a copy of a response to the evaluator, who will attach the employee's response to the evaluation report and forward the employee's evaluation and response to the Human Resources Office for filing.

16:5    Employees will have the opportunity to provide advance information about the instructional climate to their appropriate supervisor.

16:6    Employees may suggest alternate or additional times for formal observations because of classroom activities.

16:7    Evaluation of an employee's voluntary or involuntary participation in an Extra Pay for Extra Responsibility activity will be separate from the employee's classroom performance evaluation. Such evaluation will be used for the sole purpose of retaining or dismissing the employee from this Extra Pay for Extra Responsibility activity.

A-0347

Margolis Edelstein
Wilcoxon v. Red Clay
0369

16:8    Non-participation in Extra Pay for Extra Responsibility activities will not be a factor in the evaluation of an employee; however, commendations for participation in Extra Pay for Extra Responsibility  activities may be placed in the employee's personnel file.

16:9    Any changes to the Performance Appraisal System mandated by the State of Delaware shall be incorporated by the District except as modified by this agreement, the Evaluation Committee, or the Board of Education as per 25:4.1.  The District will normally complete all announced observations by May 31.

## ARTICLE 17
## PERSONNEL RECORDS

17:1.1    Employees' personnel files will be maintained at the Human Resources Office.

17:1.2    The Board agrees that it will maintain only one personnel file for each employee.

17:2    An employee will have the right to review his/her personnel file, with the exception of confidential materials, at a time mutually agreeable to the employee and the personnel officer or designee.  In any event, such review will take place within five (5) working days, provided there is not an inordinate number of requests.  Confidential materials will be defined as college placement papers, references, interview records, and similar materials gathered in connection with the employee's application for a position in the District.

17:3    An employee may have a representative of the Association present during such review; however, the Personnel File will not be taken from the office by the employee and will be examined in the presence of the personnel officer or designee.

17:4    Employees may receive copies without charge of up to ten (10) individual pages of non-confidential documents filed in the Personnel File.  Once the employee has received ten (10) free copies, the employee will be charged ten (10) cents per copy for each page of additional non-confidential material received except as provided in other provisions of this Agreement.

17:5    Employees will receive at no cost a copy of all evaluative material to be placed in their personnel file after the effective date of this Agreement.  Employees will also receive upon written request copies of all other non-confidential material in this file.

17:6    The employee will affix his/her signature to all evaluative material to be placed in the file to indicate that the employee has seen the material.  The Association will be informed in writing if any employee refuses to sign material placed in the file.  A meeting of the employee, the Association President or designee and the administrator will be held at a mutually agreeable time.  At this time, the administrator will once again request that the employee sign the material in question.  If the employee refuses to sign, the Association President or designee will sign a statement typed on the material for this purpose.  The statement will read:

"I have witnessed _____

                                                          Employee's Name

refusal to sign this material."

_____          _____

Association President or Designee                                  Date

A-0348

26

Margolis Edelstein
Wilcoxon v. Red Clay
0370

17:7    Any document relating to an employee's performance which an employee has not signed or been given the opportunity to sign will not be placed in the employee's file and will not be utilized in any proceeding against the employee.

17:8    The employee will have the right to answer any material filed, and the answer will be attached to the file copy.

17:9    An employee may request in writing to the personnel officer that material deemed unfavorable contained in the personnel file be removed. If the request is approved, such documents and all directly-related documents will be removed. The employee will be advised in writing of the disposition of the request.

17:10   Anyone who reviews an employee's file, other than employees of the Human Resources Office, will do so in a manner prescribed by administrative regulation. An individual authorized by such regulations to review the file will indicate such action by affixing his/her name and the date of such review.


## ARTICLE 18
## TIME REQUIREMENTS

18:1    The employees' normal in-school work day will be seven and one-half (7½) continuous hours and will normally fall between the hours of 7:30 a.m. and 4:30 p.m., except as modified by 18:1.2. Except in schools that have a six-hour student day, the time required will be governed by adding thirty (30) minutes to the student day in the specific work location and may be divided before or after the student day in a manner best suited to building operations. Should the state require an increase in the length of the employee work day, the employees' normal in-school work day will be increased by the same amount of time.

18:1.2  Starting and ending times beyond the times provided in 18:1.1 for professional staff may be adjusted to accommodate programs, address student needs or provide extended day instruction once such adjustments are developed collaboratively by administration and the employees affected. The altered times will be subject to approval by both the Superintendent or his/her designee and the Association President prior to implementation.

18:2    The employee may leave the building during duty-free lunch and planning and preparation time according to a reasonable procedure established by the building administrator.

18:3    Employees will have a daily thirty (30) minute duty-free lunch period in addition to planning and preparation time. Such lunch period will occur during the time scheduled for student lunches.

18:4    Employees will not be required to "clock in or out" but may be required to initial a roster upon arrival at their work location. Should an employee find it necessary to be absent, the employee will notify the appropriate administrator or designee in accordance with administrative regulations. In no event will an employee be required or permitted to obtain his/her substitute.

18:4.1  In addition to the in-school day set forth above, employees agree to direct their major effort toward activities which promote the educational process and which are necessary

A-0349

Margolis Edelstein
Wilcoxon v. Red Clay
0371

to clarify school business or provide professional growth. Recognizing that circumstances may vary from school to school, the Board and Association agree to the following needs:

(a)  Those meetings necessary for school evaluations, DOE Directives, State accountability requirements, curriculum work or instructional revisions or reviews which are in addition to those held during the school day.

(b)  Two professional meetings per month; e.g., building faculty, department, building committee, or grade level meetings. Such meetings will be held on the same day of the week as established by the Superintendent.

(c)  Those meetings necessary beyond paragraph (b) to resolve important school issues, but not to exceed a total of four (4) per month combining paragraphs (a), (b), and (c). A fifth meeting may be called in case of an emergency for either District or building purposes.

(d)  These meetings will take place before or after the pupil day and will not exceed sixty (60) minutes except in cases of emergency. Meetings held before school will begin no earlier than sixty (60) minutes before the beginning of the student day. After-school meetings will begin no later than twenty (20) minutes after the end of the student day.

(e)  A calendar for the District and for each building will be established by the opening of each school year which will include the normal events affecting staff. These calendars will be established in cooperation with employee representatives selected by the Association. In the event other activities are scheduled which involve employees, notice will be given as far in advance as practicable.

18:4.2   Except in an emergency, an agenda for all meetings will be given to the employees involved at least one (1) day prior to the day of the meeting. Such agenda may be modified and updated at the time of the meeting. Employees will have an opportunity to recommend items for placement on the agenda.

18:4.3   The Association and the Board agree that as a professional each employee is expected to devote to his/her assignment the time necessary within and beyond the normal in-school workday to meet his/her professional responsibility as has been traditional practice in the profession. This shall include a minimum of two (2) evening meetings which shall be used as open house(s) and/or parent conference(s).

18:4.4   Any employee who is required to work beyond the normal in-school workday, except as provided in Article 12 and for those employees filling positions listed on the Extra Pay for Extra Responsibility schedule will be compensated at the hourly rate of not less than the amount shown below.

Beginning September, 2002 - $23.00
Beginning September, 2003 - $24.00
Beginning September, 2004 - $25.00

18:4.5   An employee who is required to continue in his/her position beyond the regular school year as defined in Article 12, will be compensated at his/her regular rate of pay. Additional activities beyond the regular school year will be compensated at the State or District rate established for that program.

A-0350

Margolis Edelstein
Wilcoxon v. Red Clay
0372