IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD WILCOXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-524 (SLR) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| RED CLAY CONSOLIDATED | ) | |
| SCHOOL DISTRICT BOARD OF | ) | |
| EDUCATION, and JANAY FREEBERY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT RED CLAY'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (ID # 1016)
Michael P. Stafford, Esquire (ID #4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6666
Attorneys for Defendant

Dated: August 2, 2006

**TABLE OF CONTENTS**

PAGE

TABLE OF CASES ............................................................................................................ ii

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT .....................................................................................................................4

I.    THE DISCIPLINE WILCOXON RECEIVED WAS "PROPERLY
PLACED" IN HIS PERSONNEL FILE. ............................................................... 4

    A.   The Collective Bargaining Agreement Was Not Violated........................................ 4

    B.   Aside From The January 22, 2004 Reprimands, There Is Ample
Other Documentation Of Poor Performance And Disciplinary
Problems That Were Properly Placed In Wilcoxon's Personnel File. ........................ 8

II.   COUNT IV OF PLAINTIFF'S COMPLAINT IS BARRED BECAUSE OF
HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND
BECAUSE THE EXCLUSIVE REMEDY FOR AN ALLEGED
CONTRACTUAL VIOLATION IS TO FILE AN UNFAIR LABOR
PRACTICE CHARGE BEFORE THE DELAWARE PUBLIC EMPLOYMENT
RELATIONS BOARD. ....................................................................................... 9

    A.   The Failure To Seek Arbitration Is Fatal To Plaintiff's Claim That The
Collective Bargaining Agreement Was Violated....................................................... 9

    B.   Under Well-Settled Delaware Law, Absent The Union's Exhaustion Of
Contractual Remedies, Wilcoxon's Exclusive Remedy For An Alleged
Failure To Abide By The Collective Bargaining Agreement Is To File An
Unfair Labor Practice With The Public Employment Relations Board...................... 9

III.  AN ALLEGED VIOLATION OF A COLLECTIVE BARGAINING
AGREEMENT DOES NOT MEAN THAT DOCUMENTATION OF A
TEACHER'S POOR PERFORMANCE AND DISCIPLINARY PROBLEMS
MAY NOT BE "PROPERLY PLACED" IN A TEACHER'S PERSONNEL
FILE UNDER 14 DEL. C. §1410(b). ............................................................... 11

IV.  THE COURT HAS DISCRETIONARY AUTHORITY TO DISMISS COUNT
IV OF PLAINTIFF'S COMPLAINT BECAUSE IT RAISES NOVEL AND
COMPLEX ISSUES OF STATE LAW. .......................................................... 13

CONCLUSION................................................................................................................16

i

# TABLE OF CASES

PAGE

**Cases**

Board of Public Education v. Delaney,
  Del. Supr., 155 A.2d 51 (1969)................................................................... 7

Brazinski, et al. v. Amoco Petroleum Additives Co., et al.,
  6 F.3d 1176 (7th Cir. 1993) ...................................................................... 6

Caesar Rodney Educ. Assoc., DSEA/NEA and Caesar Rodney
School Dist., Bd. Of Educ.,
  ULP No. 96-01-165, Nov. 6, 1998............................................................. 10

Conrail v. Railway Labor Exec. Ass'n,
  491 U.S. 299 (1989)................................................................................. 5

De Asencio v. Tyson Foods, Inc.,
  342 F.3d 302 (3d Cir. 2003)..................................................................... 14

Flowers v. Herbert,
  ULP No. 08-02-468 (September 7, 2005).................................................... 10

Frombach v. Gilbert Assocs.,
  236 A.2d 363 (Del. 1967) ........................................................................ 15

Glozman v. Retail Wholesale & Chain Store Food Employees
Union, Local 338, et al.,
  204 F. Supp. 2d 615 ( S.D.N.Y. 2002)........................................................ 6

McCoy v. Sussex County Vo-Tech Sch. Dist.,
  1998 Del. Ch. LEXIS 171 (Del. Ch. 1998)......................................... 9, 12, 13

McQuestion v. New Jersey Transit,
  30 F.3d 388 (3d Cir. 1994)........................................................................ 5

Meehan v. U.S. Postal Service, et al.,
  792 F. Supp. 18 (E.D.N.Y. 1992) .............................................................. 6

Morozowich v. Windsor,
  Del. Super., 2001 Del. Superior LEXIS 195 (March 30, 2001) ...................... 10

DB02:5447839.1                                                                061778 1003

National Labor Relations Board v. Strong,
    393 U.S. 357 (1969)........................................................................... 5, 6

Newman v. DE Correctional Officers
    Assoc., et al.,
    ULP 02-12-374, June 24, 2003 ...................................................... 10

Smith v. General Motors Corporation,
    Del. Ch. 348 A.2d 691 (1975).......................................................... 10

United States ex rel. B & R, Inc. v. Donald Lane Constr.,
    19 F. Supp. 2d 217 (D. Del. 1998).................................................. 14

Vaca v. Sipes,
    386 U.S. 171 (1967).......................................................................... 10

Williams v. Norton, et al.,
    ULP No. 85-10-006, March 7, 1986 ............................................... 10

**Other Authorities**

10 Del. C. § 8118 ................................................................................ 15

14 Del. C. §4009 ................................................................................. 10

14 Del. C. §1410(b) ..................................................................... passim

14 Del. C. §4001 ................................................................................. 10

14 Del. C. §4004 ................................................................................. 10

14 Del. C. §4007 ................................................................................. 10

14 Del. C. §4008 ................................................................................. 10

28 U.S.C. § 1367(c)(1)................................................................. 13, 15

**STATEMENT OF FACTS**

Defendants' Opening Brief in Support of Their Motion for Summary

Judgment sets forth the applicable facts in detail at pages 4 through 15. They will not be

repeated here. With respect to Count IV of the Complaint, Plaintiff relies on an alleged

violation of 14 <u>Del. C.</u> §1410(b) to allege a state "wrongful discharge" claim.  That

statute provides that a non-tenured teacher, such as Wilcoxon, may be non-renewed if

documents setting forth the reasons for his termination are "properly placed" in his

personnel file prior to his receipt of written notice of non-renewal.

Wilcoxon's argument that the statute has been violated is based entirely on

an alleged violation of Article 4:4.1 of the collective bargaining agreement (the "CBA").

Article 4:4.1 of the collective bargaining agreement is set forth in its entirety below:

> If an employee is required to appear before the Board or an
> agent thereof concerning a matter which could adversely
> affect his/her continued employment, salary or any
> increments, he/she will be given prior written notice and
> specific reasons for such meeting or interview at least
> forty-eight (48) hours in advance.  Any topic not included
> in the letter will not be covered at said meeting unless
> agreed to by the employee; if not agreed it will be
> discussed at a later date after proper notice has been given.
> The employee will also be notified in writing of any
> additional persons who will be present.  An employee
> required to appear in this instance will be entitled to have
> an Association representative of his/her choice present to
> advise and to represent him/her during such meeting or
> interview.  Informal discussion with an employee by any
> member of the administrative staff pertaining to the
> employee's performance at his/her work location will not
> be precluded by the preceding language of this section;
> however, if as a result of such informal discussion, the
> employee perceives that the matter discussed could in the
> future adversely affect his/her continued employment,
> salary or increments, **the administrator will, upon written
> request, give the employee reasons in writing for the
> necessity of waiving the forty-eight (48) hours' written**

**notice prescribed above.** This section does not apply to terminations due to declining enrollments and/or to a reduction in education services.

A25-26[1] (emphasis added)

Wilcoxon alleges, inaccurately, that this section of the CBA applies to meetings that took place on December 17, 2003, January 22, 2004, May 5, 2004, May 11, 2004, and May 14, 2004. There is no dispute, however, that Wilcoxon sent only one "written request" for the reason for the waiver as provided in Article 4:4.1. The only written request was for the January 22, 2004 meeting. PA159-60[2]

Wilcoxon likewise does not dispute, in fact, he affirmatively alleges that, he had union representation at the May 5, May 11, and May 14, 2004 meetings. See Plaintiff's Opening Brief at page 10. Indeed, he alleges that it was his union representative who contacted him about the May 11 meeting. At each of the meetings in which he was disciplined: January 22, 2004, May 5, 2004, May 11, 2004, and May 14, 2004, he was simply informed of disciplinary action taken against him. He does not allege that he made statements at any of those meetings that formed part of the employer's discipline. Indeed, he was well aware that his actions had placed his contract renewal in jeopardy. A162; PA146; PA183; PA188. Wilcoxon, therefore, made his own secret tape recordings of the meetings. A162-63.

---

[1] References to the Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment is cited as A____.

[2] References to the Appendix to Plaintiff's Opening Brief in Support of Plaintiff's Motion for Summary Judgment are cited as PA___.

2

Notably, Wilcoxon makes no argument that the observations of his classroom performance were placed in his personnel file in contravention of the CBA nor that they were not "properly placed" there under 14 <u>Del. C.</u> §1410(b).

Plaintiff's argument that he is entitled to summary judgment on Count IV of his Complaint is therefore without merit. Indeed, for the reasons set forth below and in Defendants' Opening Brief in Support of Their Motion for Summary Judgment, the Court should dismiss Count IV of his Complaint.

DB02:5447839.1

061778.1003

## ARGUMENT

**I.    THE DISCIPLINE WILCOXON RECEIVED WAS "PROPERLY PLACED" IN HIS PERSONNEL FILE.**

As noted in Defendants' Opening Brief in Support of Their Motion for Summary Judgment at pages 31-37[3], Wilcoxon bases his wrongful termination claim in Count IV of the Complaint on an alleged technical violation of Article 4:4.1 of the collective bargaining agreement between his employer, Red Clay, and his Union, the Red Clay Education Association. His argument is that he was entitled to notice under Article 4:4.1 of a number of meetings between him and the Principal, Janet Basara, and that the alleged failure to give notice under the CBA necessarily means that the documentation of the discipline and observations he received were therefore not "properly placed" in his personnel file under 14 <u>Del. C.</u> §1410(b). His claim lacks merit not only because he has failed to show a violation of the CBA, but also because it does not follow that an alleged violation of the CBA means that his discipline and record of performance problems were not "properly placed" in his file under 14 <u>Del. C.</u> §1410(b).

**A.    The Collective Bargaining Agreement Was Not Violated.**

Wilcoxon's claim is a non-starter because he has not established a violation of the CBA. A review of each of the meetings Wilcoxon contends were held in violation of Article 4:4.1 shows that no violation occurred, let alone evidence of resulting harm from the alleged contract breach.

---

[3] The arguments in Defendants' Opening Brief in Support of Their Motion for Summary Judgment set forth at pages 31 through 37 address many of the issues raised in Plaintiff's Motion for Summary Judgment. Rather than repeat them, Defendant Red Clay incorporates them by reference herein.

061778.1003

First, with respect to the December 17, 2003 meeting among Freebery, Wilcoxon, Basara, and Rumford, Article 4:4.1 of the CBA by its terms, does not apply to "informal" discussions between faculty and staff. The undisputed testimony shows that the meeting was held as a "conflict resolution" device to see if the working relationship between Wilcoxon and Freebery could be salvaged after the damage Wilcoxon caused. Both Basara, the building Principal, and Diane Dunmon, the Deputy Superintendent, testified that Article 4:4.1 has never been applied to such meetings. There is no contrary testimony. The actual practice under a CBA constitutes the "law of the shop." See Conrail v. Railway Labor Exec. Ass'n, 491 U.S. 299, 311-312 (1989) (noting importance of post-practice and union acquiescence in interpreting collective bargaining agreement); National Labor Relations Board v. Strong, 393 U.S. 357, 365 (1969); McQuestion v. New Jersey Transit, 30 F.3d 388, 392 (3d Cir. 1994). The parties' practice is therefore controlling as to the meaning of the language.

Second, Article 4:4.1 by its terms requires that Wilcoxon had the duty to provide the District with "written notification" requesting reasons for waiver of the 48 hour notice. It is undisputed that Wilcoxon did not make a written request in connection with the December 17, 2003 meeting even though he was already sufficiently concerned that he decided to secretly tape the meeting. On its face then, Article 4:4.1 is therefore not implicated.

There was no violation of Article 4:4.1 in connection with the January 22, 2004 meeting. That meeting involved the delivery of three reprimands to Wilcoxon. He received warnings for his inappropriate comments to Freebery, poor lesson plans (basketball shoot-around for three days while he was on a pre-planned vacation to

061778.1003

Hawaii), and his ongoing inability to remember to advise the office when he needed after-school buses for students staying late for extra-curricular activities. Basara testified that she delivered the reprimands and gave him an opportunity to take them to his union representative. A270. Basara's testimony and Dunmon's affidavit show that Article 4:4.1 has never been applied in such circumstances. A270; 332. As with the December 17, 2003, meeting, there is no contradictory testimony. This practice is again the law of the shop and controlling. Conrail, supra; National Labor Relations Board, supra.

Wilcoxon also admitted that there was "some truth" to reprimands on his lesson plans and his failure to request late buses for students that he received on January 22, 2004. A218-19; 222. The form itself says that his signature did not mean that he agreed with the reprimands but that he was simply acknowledging receipt. He therefore signed for their receipt. He cannot claim that he was prejudiced. Wilcoxon says that he was most disturbed by the written reprimand for making "inappropriate remarks, some of a sexual nature" to Freebery.

A grievance on all three reprimands was filed but the focus was on the reprimand for inappropriate comments. A121-25; PA157. Notably, as discussed below, the grievance was not based on Article 4:4.1, but instead on Article 4:6. As a result, any alleged violation of 4:4.1 has been waived. Brazinski, et al. v. Amoco Petroleum Additives Co., 6 F.3d 1176 (7th Cir. 1993); Glozman v. Retail, Wholesale & Chain Store Food Emples. Union, Local 338, 204 F. Supp. 2d 615 (S.D.N.Y. 2002); Meehan v. U.S. Postal Serv., et al., 792 F. Supp. 18 (E.D.N.Y. 1992).

Equally important, as a result of the grievance process itself during which the union represented Wilcoxon, the January 22, 2004 reprimand for inappropriate

6

comments was amended and reissued on March 8, 2004. A120. There is no dispute that it was given to Wilcoxon, his Union representative, and placed in his personnel file as a result of the grievance process. As a result, any alleged technical failure of notice was cured.

Wilcoxon in fact had union representation at the meetings of May 5, 11, and 15. He now claims that he did not have the representative of his choice. He concedes, however, that at no time did he ever raise an issue with respect to the identity of the union representative with Red Clay. PA225-26. Wilcoxon also never told his union representative, Mr. Meade, that he wanted other representation. PA225-26. He cannot now belatedly claim that he had a problem with the representative. See Board of Public Education v. Delaney, Del. Supr., 155 A.2d 51 (1969). He had the obligation to raise the issue at the time. In addition, it was his union's obligation to provide another representative, if appropriate, not the School District's responsibility.

Further, like the December 17, 2003 meeting, Wilcoxon, never sent a written notification as provided in Article 4:4.1 for the May 5, 11, or 15 meetings. His claim therefore is without merit based on the plain language of Article 4:4.1.

In addition, there is no dispute that in each of the May meetings Wilcoxon was informed of discipline that had been decided upon. He was not asked to make a statement. The discipline was simply delivered to him. A270. The May 5 incident dealt with his failure to secure funds the students collected for the American Heart Association. A133-34. Incredibly, Wilcoxon left an envelope with the money in plain view in a classroom without locking it up or taking any steps to secure it. A133-34. No grievance was filed.

7

The May 11, 2004 meeting involved Wilcoxon's ongoing failure to adequately prepare lesson plans. Following Basara's April 21 observation, she asked Wilcoxon to show her his lesson plans because he had done such a poor job. Notably, Wilcoxon's lack of preparation had been repeatedly criticized. He delayed giving Basara the plans. A224. When he finally did so, he gave her Rumford's plan book with a piece of tape on the cover of the plan book on which he had written "Wilcoxon's Plan Book." A28. Understandably, Basara did not consider this adequate. She expected him to prepare and update his own plans. See Defendants' Opening Brief at page 13-14.

A union representative was also present at the May 14, 2004 meeting. It is undisputed that nothing Wilcoxon said or did at that meeting in any way impacted his non-renewal. He was simply told that he would not be renewed.

Wilcoxon's claim that the collective bargaining agreement was violated is therefore without merit.

**B.    Aside From The January 22, 2004 Reprimands, There Is Ample Other Documentation Of Poor Performance And Disciplinary Problems That Were Properly Placed In Wilcoxon's Personnel File.**

Defendants' Opening Brief in Support of Their Motion for Summary Judgment sets forth at pages 33 through 35 the reasons why, independent of the January 22, 2004 reprimands, Wilcoxon's poor performance and discipline were documented as required by 14 Del. C. §1410(b). Defendant relies on the argument set forth therein and will not restate it here. This discipline and record of poor performance distinguish the instant matter from McCoy, where no additional evidence, beyond the disciplinary letters that had been ordered rescinded in binding arbitration, supported the district's decision

8

not to renew the teacher's contract. McCoy v. Sussex County Vo-Tech Sch. Dist., 1998

Del. Ch. LEXIS 171 at (Del. Ch. 1998)

II.    **COUNT IV OF PLAINTIFF'S COMPLAINT IS BARRED BECAUSE OF HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND BECAUSE THE EXCLUSIVE REMEDY FOR AN ALLEGED CONTRACTUAL VIOLATION IS TO FILE AN UNFAIR LABOR PRACTICE CHARGE BEFORE THE DELAWARE PUBLIC EMPLOYMENT RELATIONS BOARD.**

   A.    **The Failure To Seek Arbitration Is Fatal To Plaintiff's Claim That The Collective Bargaining Agreement Was Violated.**

   As noted above, it is undisputed that no request for arbitration was made

under the applicable collective bargaining agreement.  It is fundamental that before a suit

may be filed alleging a violation of a collective bargaining agreement, the employee and

his union must file a grievance concerning the alleged violation and exhaust the

contractual remedies before filing suit.  Brazinski, supra., Golzman, supra., Meehan,

supra.  The failure to have filed and pursued his contractual remedies therefore dooms

Wilcoxon's claim that the CBA was violated and that, as a result, 14 Del. C. §1410 (b)

was violated.

   B.    **Under Well-Settled Delaware Law, Absent The Union's Exhaustion Of Contractual Remedies, Wilcoxon's Exclusive Remedy For An Alleged Failure To Abide By The Collective Bargaining Agreement Is To File An Unfair Labor Practice With The Public Employment Relations Board.**

   In addition to the failure to pursue arbitration of his contractual claims,

Count IV of the Complaint fails for another reason.  It is a fundamental principle of labor

law that a duly certified union is the exclusive representative of the employees in the

bargaining unit it represents.  A certified union is responsible for monitoring the CBA

and enforcing employee rights, if any, that arise through a labor agreement.  Smith v.

9

General Motors Corporation, Del. Ch. 348 A.2d 691, 695 (1975). Accordingly, since

Wilcoxon contends that the CBA was violated, and his union failed to vindicate his

rights, his remedy is to file a breach of the duty of fair representation claim against his

union for failing to adequately protect his interests. Id.

This principle is well-developed in federal private sector labor law. See

Vaca v. Sipes, 386 U.S. 171 (1967). It is equally well established in public sector labor

law in Delaware. Williams v. Norton, et al., ULP No. 85-10-006, (March 7, 1986)

(attached). In Delaware, the organizational rights of teachers are governed by the Public

School Employment Relations Act, 14 Del. C. §4001 et seq. A certified union, in this

case the Red Clay Affiliate of the Delaware State Education Association ("DSEA"), is

the "exclusive representative" of teachers pursuant to 14 Del. C. §4004. The statute

enumerates various unfair labor practices that could be committed by employers, public

employees, and unions. 14 Del. C. §4007. It invests the PERB with the exclusive

jurisdiction and authority to remedy them. 14 Del. C. §§ 4006; 4008; Caesar Rodney

Educ. Assoc., DSEA/NEA and Caesar Rodney School Dist., Bd. Of Educ., ULP No. 96-

01-165, (Nov. 6, 1998) attached;

As early as 1986, PERB ruled that an alleged union failure to fairly

represent an employee constitutes an Unfair Labor Practice under 14 Del. C. §

4007(b)(1). Williams, supra.; Newman v. DE Correctional Officers Assoc., ULP 02-12-

374 (June 24, 2003) (attached); Flowers v. Herbert, ULP No. 08-02-468 (September 7,

2005). Further, the exclusive remedy for an alleged unfair labor practice violation lies

with PERB. 14 Del. C. §4008; Morozowich v. Windsor, Del. Super., 2001 Del. Superior

LEXIS 195 (March 30, 2001); Caesar Rodney Educ. Assn., supra. The statute also

061778.1003

provides that an aggrieved party has a statutory right of appeal from PERB to the Court of Chancery. See 14 Del. C. §4009.

Wilcoxon's redress for an alleged violation of the CBA that was not taken to arbitration is to file an unfair labor practice charge against the union with PERB alleging that the union failed in its duty of fair representation. He cannot circumvent that process by coming to this Court and asking it to rule on fundamental questions of Delaware public sector labor law that are within PERB's exclusive authority. Accordingly, Count IV of his complaint should be dismissed.[4]

## III.    AN ALLEGED VIOLATION OF A COLLECTIVE BARGAINING AGREEMENT DOES NOT MEAN THAT DOCUMENTATION OF A TEACHER'S POOR PERFORMANCE AND DISCIPLINARY PROBLEMS MAY NOT BE "PROPERLY PLACED" IN A TEACHER'S PERSONNEL FILE UNDER 14 DEL. C. §1410(b).

Plaintiff assumes that an alleged violation of a notice provision in a collective bargaining agreement means that discipline and performance documentation cannot be properly placed in an employee's personnel file pursuant to 14 Del. C. §1410(b). As this Court pointed out in its Memorandum Opinion of June 30, 2006, the issue of what is "properly placed" in a personnel file is not defined in the statute. Plaintiff has cited no authority for the proposition that an alleged violation of a collective bargaining agreement without proof of prejudice or harm means the documentation is not "properly placed" in the file within the meaning of the statute. Indeed, as noted above, Plaintiff has not even established a contractual violation through arbitration or resorted to his state law remedies under the Public School Employees Relations Act.

---

[4] Defendant Red Clay's Answer raises Affirmative Defenses that Wilcoxon Complaint claims fail to state a claim, that he failed to exhaust his administrative remedies, and that he has waived or is estopped from asserting his claims. D.I. 6.

061778.1003

Plaintiff's reliance on <u>McCoy</u> is misplaced. <u>McCoy</u> is readily distinguishable from the instant matter on a number grounds. First, McCoy was a non-tenured teacher who received two disciplinary letters. Unlike the present case, the challenged letters formed the sole basis for the school's decision not to renew her contract. Second, after receiving the first disciplinary letter, the plaintiff filed a grievance under the applicable collective bargaining agreement. Unlike the present case, however, the plaintiff and her union exhausted her administrative remedies by taking the matter to arbitration. Third, the arbitrator found that there was, in fact, a contractual violation. <u>McCoy</u>, 1998 Del. Ch. LEXIS 171 at *7. Further, the arbitrator found that there was actual prejudice and harm to the plaintiff from the violation, not just technical non-compliance. As a result, the Arbitrator ruled that the March 5th disciplinary letter must be rescinded. The defendant school district did not seek to overturn the arbitration decision.

McCoy filed a civil suit in the Court of Chancery and argued that "because the arbitrator declared the March 5th reprimand invalid and ordered it rescinded, the reprimand cannot be considered 'properly placed' in her personnel file, as required by the Teacher Termination Statute, and cannot support Defendant's decision to terminate Plaintiff's employment contract." <u>McCoy</u>, 1998 Del. Ch. LEXIS 171 at *11. Similarly, McCoy argued "that the March 13th letter cannot be considered 'properly placed' in her personnel file because that letter is no more than a rehashed second reprimand based upon the same events as the March 5th reprimand letter." <u>Id</u>. at *11-12. Chancery Court granted Plaintiff's Motion for Summary Judgment based on the Arbitrator's finding. <u>Id</u>. at *14-15.

12

Of course, in the instant matter, none of the various disciplinary letters and performance observations placed in Wilcoxon's personnel file have been found in arbitration to be invalid and ordered rescinded. The present case is therefore distinguishable from <u>McCoy</u> because McCoy not only exhausted her administrative remedies, but also because she obtained an arbitration order directing that the discipline be removed. It is likewise notable that the arbitrator found that the plaintiff suffered actual prejudice and harm from the contractual violation. <u>McCoy</u>, therefore, is inapposite.

## IV. THE COURT HAS DISCRETIONARY AUTHORITY TO DISMISS COUNT IV OF PLAINTIFF'S COMPLAINT BECAUSE IT RAISES NOVEL AND COMPLEX ISSUES OF STATE LAW.

The Court previously ruled that it has jurisdiction over Plaintiff's state law claim in Count IV of his Complaint because it is sufficiently related to his other causes of action to allow supplemental jurisdiction. Nevertheless, the Court also retains the discretion to dismiss Plaintiff's claim in Count IV under 28 U.S.C. § 1367(c)(1), even if it otherwise has jurisdiction over the claim. A district court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law."

As noted in Argument II, Count IV of the Complaint raises novel and complex issues of Delaware law regarding the interplay, between and among, the applicable collective bargaining agreement, the exclusive jurisdiction of the PERB to remedy unfair labor practices, and the Teacher Tenure law, 14 <u>Del. C.</u> §1410(b). While Defendant Red Clay believes that Wilcoxon's claims are barred for the reasons set forth above in Argument II, no Delaware Court has ruled upon the effect of a failure to exhaust administrative remedies in a labor agreement coupled with a failure to seek the

13

061778.1003

appropriate remedy before PERB, all in the context of a dispute concerning whether discipline and performance documents were "properly placed" in Wilcoxon's personnel file pursuant to 14 Del. C. §1410(b).

Accordingly, with the record and issues now fully developed, the Court, in her discretion, may sever Count IV from the remaining allegations. Rather than resolving the state law issues, the Court may dismiss Count IV without prejudice because Wilcoxon's proposed application of Section 1410 is an issue of first impression that should be decided in Delaware's state courts. See e.g. De Asencio v. Tyson Foods, Inc., 342 F.3d 302, 311 (3d Cir. 2003) (declining to exercise supplemental jurisdiction and noting that resolution of novel issues of state law "are better left to the Pennsylvania state courts."); United States ex rel. B & R, Inc. v. Donald Lane Constr., 19 F. Supp. 2d 217, 226 (D. Del. 1998) (noting that "this case presents novel questions of state law surrounding the ability of a sub-subcontractor to recover in quantum meruit against the contractor when an express contract exists between the contractor and the subcontractor. These state law issues are best resolved by the state court, which is in a better position to answer the questions and can render a decision having binding precedential effect.").

Notably, the issues in Count IV are sufficiently distinct that severing them from the remaining allegations would not result in a substantial loss of judicial economy. In addition, Wilcoxon would suffer no prejudice if this Court were to decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) and dismiss Count IV without prejudice. The Delaware's savings statute, 10 Del. C. § 8118, specifically provides that, "[i]f in any action duly commenced within the time limited therefore in this chapter, the writ fails… for any matter of form… [then] a new action may be

14

commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action, or after the reversal of the judgment therein." Id.  The Delaware Supreme Court has held that "[t]he commencement of a suit in the federal District Court for Delaware is equivalent to one brought in the Superior Court of Delaware, within the meaning of this section." Frombach v. Gilbert Assocs., 236 A.2d 363 (Del. 1967).  Accordingly, any claim, whether before PERB or in state court, on which the statute of limitations had not run as of the date of the filing of Wilcoxon's complaint in this Court could be filed in PERB or state court for up to one year from the date of the dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Count IV of his Complaint should be denied and Defendant Red Clay's Motion for Summary Judgment on Count IV should be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Barry M. Willoughby
Barry M. Willoughby, Esquire (ID# 1016)
Michael P. Stafford, Esquire (ID# 4461)
The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 6553
Facsimile: (302) 576-3345
Email: bwilloughby@ycst.com; mstafford@ycst.com
Attorneys for Defendants

Dated: August 2, 2006

DB02:5447839.1                                                    061778.1003

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2006, I electronically filed a true and correct copy of the foregoing Defendant Red Clay's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment with the Clerk of the Court using CM/ECF, which will send notification of such to the following counsel of record, and further that I caused a copy of same to be delivered to the following counsel of record:

> Jeffrey K. Martin, Esquire
> Timothy James Wilson, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ Barry M. Willoughby
> Barry M. Willoughby, Esquire (No. 1016)
> Michael P. Stafford, Esquire (No. 4461)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware  19899-0391
> Telephone: (302) 571-6666, 6553
> Facsimile: (302) 576-3345, 3470
> Email: bwilloughby@ycst.com; mstafford@ycst.com
> Attorneys for Defendants

Dated:  August 2, 2006