IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

RICHARD WILCOXON,                      )
                                       )
              Plaintiff,               )
                                       )        C.A. No. 05-524 (SLR)
                                       )
       v.                              )        JURY TRIAL DEMANDED
                                       )
RED CLAY CONSOLIDATED                  )
SCHOOL DISTRICT BOARD OF               )
EDUCATION, and JANAY FREEBERY,         )
                                       )
              Defendants.              )


**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**


YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (ID # 1016)
Michael P. Stafford, Esquire (ID #4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6666
Attorneys for Defendants


Dated:  August 9, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.  DEFENDANT FREEBERY'S STATEMENT TO HER SUPERVISORS THAT WILCOXON MADE INAPPROPRIATE COMMENTS IS CONDITIONALLY PRIVILEGED AND NO EVIDENCE EXISTS THAT THE PRIVILEGE WAS ABUSED OR WAIVED. ............................................................................................... 1

    A.  Wilcoxon Has No Evidence Of Actual Malice ............................................................ 2

    B.  Whether The Underlying Statements And/Or Conduct Referenced In Freebery's Report Of Inappropriate Comments Actually Constitute Sexual Illegal Harassment Is Irrelevant In The Context Of A Defamation Liability Analysis .................................................................................................................. 3

    C.  Freebery's Comments Were Not Published To A Third Party ..................................... 5

II.  WILCOXON HAD NOT ESTABLISHED A VIABLE FIRST AMENDMENT CLAIM. ..................................................................................................................... 5

    A.  The Court's Ruling On A Motion To Dismiss Is Not *Res Judicata*, Nor The "Law Of The Case" ................................................................................................... 5

    B.  Wilcoxon's Private Log Does Not Address A Matter Of Public Concern .................. 6

    C.  In The Alternative, If Wilcoxon's Private Log Addresses A Matter of Public Concern, His Claim is Barred by <u>Garcetti</u> ................................................................. 7

    D.  The Disruption Caused By Wilcoxon's Journal Outweighed Any Public Benefit ........................................................................................................................ 8

III.  NO GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO WILCOXON'S DISCRIMINATION AND RETALIATION CLAIMS ............................... 10

    A.  There is No Genuine Issue of Material Fact Precluding Summary Judgment on Wilcoxon's Gender Bias Claim in Count I of His Complaint .............................. 10

    B.  There is No Genuine Issue of Material Fact Precluding Summary Judgment on Plaintiff's Title VII Retaliation Claim advanced in Count II of his Complaint .................................................................................................................. 12

IV.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S WRONGFUL DISCHARGE CLAIM BASED ON AN ALLEGED FAILURE TO COMPLY WITH 14 DEL. CODE §1410(B). ........................................................... 15

    A.  Plaintiff's "Retaliation" Claim is Without Merit. ...................................................... 15

    B.  Plaintiff's Claim that the Collective Bargaining Agreement was Violated Is Without Merit and, In Any Event, Cannot Be Pursued in this Court. ...................... 15

    C.  Plaintiff's New Argument That the District Was Required to Place Him on an IIP Is Without Merit. ........................................................................................... 17

    D.  Plaintiff's Reliance on <u>McCoy</u> is Misplaced. ............................................................. 19

CONCLUSION ........................................................................................................................ 20

i

## TABLE OF AUTHORITIES

**Cases**

Brazinski, et al. v. Amoco Petroleum Additives Co.,
  6 F.3d 1176 (7th Cir. 1993) ......................................................................... 17

Caesar Rodney Educ. Assoc., DSEA/NEA and
  Caesar Rodney School Dist., Bd. of Educ.,
  ULP No. 96-01-165, Nov. 6, 1998 ....................................................... 16, 17

Caouette v. OfficeMax, Inc.,
  352 F. Supp. 2d 134 (D.N.H. 2005).................................................................. 4

Connick v. Myers,
  461 U.S. 138 (1983)......................................................................................... 6

Cruey v. Gannett Co.,
  76 Cal. Rptr. 2d 670 (Cal. Ct. App. 1998)...................................................... 4

Cuffee v. Dover Wipes Co.,
  334 F. Supp. 2d 565 (D. Del. 2004)............................................................... 15

Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.,
  450 F.3d 134 (3d Cir. 2006) .................................................................... 13, 14

Day v. Borough of Carlisle,
  2006 U.S. Dist. LEXIS 46434 (M.D. Pa. 2006) .......................................... 8, 9

Ebert v. Office of Info. Sys.,
  1998 U.S. Dist. LEXIS 9100 (D. Del. Jun. 12, 1998) .................................. 12

Evans v. Pa. Power & Light Co.,
  98 Fed. Appx. 151 (3d Cir. 2004)................................................................. 12

Flowers v. Herbert,
  ULP No. 08-02-468 (September 7, 2005)...................................................... 17

Garcetti v. Ceballos,
  126 S. Ct. 1951 (2006)................................................................................ 7, 8

Glozman v. Retail, Wholesale & Chain Store Food Emples. Union, Local 338,
  204 F. Supp. 2d 615 (S.D.N.Y. 2002) .......................................................... 17

Henry v. Delaware Law Sch.,
  1998 Del. Ch. LEXIS 7 (Del. Ch. 1998)......................................................... 2

Howard v. Deklinski,
  2002 U.S. App. LEXIS 25269 (3d Cir. Nov. 12, 2002) ............................. 2, 3

DB02:5454998 1                                                           061778.1003

Jackson v. Dillard's Dep't. Stores, Inc.,
   92 Fed. Appx. 583 (10th Cir. 2003) ............................................................. 13

Johnson v. Diamond State Port Corp.,
   2001 U.S. Dist. LEXIS 11024 (D. Del. Aug. 2, 2001) ................................. 12

Kinney v. Weaver,
   367 F.3d 337 (5th Cir. 2004) ...................................................................... 9

Kodrea v. City of Kokomo,
   2006 U.S. Dist. LEXIS 42327 (S.D. IN. 2006) ........................................... 8

Lamb-Bowman v. Del. State Univ.,
   152 F. Supp. 2d 553 (D. Del. 2001) ...................................................... 13, 14

Laughlin v. Metro. Wash. Airports Auth.,
   149 F.3d 253 (4th Cir. 1998) ..................................................................... 13

Lowry v. Powerscreen USB, Inc.,
   72 F. Supp. 2d 1061 (E.D. Mo. 1999) ....................................................... 12

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) .................................................................................. 12

Maxwell v. Snow,
   409 F.3d 354 (D.C. Cir. 2005) ............................................................. 7, 15

McCoy v. Sussex County Vo-Tech School District,
   1998 Del. Ch. LEXIS 171 (Del.Ch 1998) ............................................. 19, 20

McHugh v. Bd. of Educ. of the Milford Sch. Dist.,
   100 F. Supp. 2d 231 (D. Del. 2000) ............................................................ 6

Meehan v. U.S. Postal Serv.
   792 F. Supp. 18 (E.D.N.Y. 1992) .............................................................. 17

Miller v. Servicemaster by Rees,
   851 P.2d 143 (Ariz. Ct. App. 1992) ......................................................... 3, 4

Morozowich v. Windsor,
   2001 Del. Superior LEXIS 195 (Del. Super., March 30, 2001) ............. 16, 17

Newman v. DE Correctional Officers Assoc.,
   ULP 02-12-374 (June 24, 2003) ............................................................... 17

Patterson v. Chicago Ass'n for Retarded Children,
   1997 U.S. Dist. LEXIS 8339, (D. Ill. Jun. 5, 1997) ...................................... 8

DB02:5454998 1

Quiroga v. Hasbro, Inc.,
    934 F.2d 497 (3d Cir. 1991) ...................................................................... 9, 12

Red Clay Education Ass'n v. Red Clay Consolidated School District,
    ULP No. 05-10-496, (July 6, 2006) ................................................................ 18

Schoch v. First Fidelity Bancorporation,
    912 F.2d 646 (3d Cir. 1990) ...................................................................... 9, 12

Schuster v. Derocili,
    775 A.2d 1029 (Del. 2001) ............................................................................ 5

Slagle v. County of Clarion,
    2006 U.S. App. LEXIS 678 (3d Cir. Jan. 12, 2006) ...................................... 14

Smith v. General Motors Corporation,
    348 A.2d 691 (Del. Ch. 1975)
    aff'd without op. at 382 A.2d 251 (Del. Supr. 1977)........................ 16, 18, 20

Tse v. Ventana Med. Sys., Inc.,
    126 F. Supp. 2d 213 (D. Del. 2000)................................................................ 5

Vaca v. Sipes,
    386 U.S. 171 (1967)...................................................................................... 17

Vickers v. Abbott Lab.,
    719 N.E.2d 1101 (Ill. App. Ct. 1999) ............................................................ 2

Vintilla v. U.S.,
    931 F.2d 1444 (11th Cir. 1991) .................................................................... 5

Williams v. Norton,
    ULP No. 85-10-006, March 7, 1986 .............................................................. 17

**Statutes and Other Authorities**

14 Del. C. § 4006 ............................................................................................ 16

14 Del. C. § 4007(b)(1).................................................................................... 17

14 Del. C. §1410(b) ........................................................................... 15, 16, 17

14 Del. C. §4008 .............................................................................................. 16

Fed. R. Civ. P. 56(e) ........................................................................................ 12

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e, et seq.......................................................................... passim

## ARGUMENT

I.  **DEFENDANT FREEBERY'S STATEMENT TO HER SUPERVISORS THAT WILCOXON MADE INAPPROPRIATE COMMENTS IS CONDITIONALLY PRIVILEGED AND NO EVIDENCE EXISTS THAT THE PRIVILEGE WAS ABUSED OR WAIVED.**

In an effort to avoid summary judgment, Plaintiff's Answering Brief attempts a play on words arguing that his inappropriate comments, including is oft-repeated "wife and bitch" comment, were not "sexual harassment." He goes so far as to attempt to parse the words "wife" and "bitch" making the almost laughable suggestion that the latter does not "necessarily" refer to women. AB at 17. Of course, Wilcoxon ignores the numerous other comments that he made to Freebery, including his questioning her about her sex life, statements that she "looked good in those pants," that "Janay is pregnant," and congratulating her boyfriend on being a "daddy." He ignores the fact that many others, including the Principal Janet Basara, teachers Sean Furilla, and Cindy Falgowski directly heard his "wife and bitch" comment.

He is also just plain wrong in his argument that there is no testimony that he directed his "wife and bitch" comment to Freebery in her presence. Freebery testified that:

> He would say other inappropriate comments such as in the faculty meeting, I was holding the staff Christmas party at my house, and he had been drawn -- his name to win a poinsettia. As he was walking out he says well, I don't need this poinsettia. He says you can take it and put it at your house for the party. I said thank you. **He turned around and said, why not, you're the closest thing I have to a wife and a bitch.**

A314-15 (emphasis added). In addition, Sean Furilla stated that Wilcoxon made the "wife and bitch" comment directly to Freebery and him. He further stated that Freebery "seemed to be in a state of shock after Mr. Wilcoxon's statement." A326-27.

Wilcoxon also ignores the context in which Freebery revealed his inappropriate actions. It is undisputed that Freebery advised Basara and Rumford that Wilcoxon had made "inappropriate comments, some of a sexual nature" when they asked her what the problems and issues were after the log had been discovered. Further, the Friday before the log was

1

discovered, Basara herself overheard Wilcoxon make his "wife and bitch" comment at a faculty party. Thus, Basara had first-hand information confirming Wilcoxon's inappropriate comments.

At the summary judgment stage, he must do more than repeat the allegations of his complaint to avoid summary judgment. He must come forward with *admissible evidence* to support his claims. He has failed to do so.

### A.    Wilcoxon Has No Evidence Of Actual Malice.

As Defendants previously noted in their Opening Brief, when the conditional privilege applies, Plaintiff bears the burden of demonstrating that the privilege was abused or waived. Henry v. Delaware Law Sch., 1998 Del. Ch. LEXIS 7, *32-33 (Del. Ch. 1998); see also Vickers v. Abbott Lab., 719 N.E.2d 1101, 1110 (Ill. App. Ct. 1999). As one court has noted, "once a defendant has established a qualified privilege, the plaintiff must come forward with actual evidence creating an issue of fact" in order to survive summary judgment. Vickers, 719 N.E.2d at 1110. Moreover, "[w]hen 'determining whether factual issues exist for purposes of a summary judgment motion,' the court of review 'must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence.'" Id. at 1112. Thus, the Plaintiff bears the burden of coming forward with "specific facts demonstrating that a genuine issue exists for trial, and may not rest upon entirely unsupported allegations Howard v. Deklinski, 2002 U.S. App. LEXIS 25269, *6 (3d Cir. Nov. 12, 2002).

Wilcoxon's Answering Brief makes plain the simple truth that Wilcoxon lacks any evidentiary support for his claim that Freebery acted with malice when she advised Basara and Rumford of his inappropriate comments. Instead, Wilcoxon attempts to rest upon the unsupported allegations contained in the Complaint along with his own personal conclusions, opinions, and self-serving statements. He has presented literally no evidence that Freebery advised anyone other than her superiors of his comments. Even then, her statements were in

2

response to their questions concerning the problems and issues in the working relationship between Freebery and Wilcoxon.

Moreover, Wilcoxon's claim that it is inappropriate for the Court to determine whether the conditional privilege has been abused in ruling on this Motion is erroneous. Instead, as Defendants previously pointed out, courts may decide based on the undisputed record whether a conditional privilege has been abused. Howard, 2002 U.S. App. LEXIS 25269 at *6 n.1 (noting that "Appellant's assertion that 'it is outside the province of a court to decide whether or not a defendant' has abused a conditional privilege reflects a fundamental misunderstanding of the law."); Miller v. Servicemaster by Rees, 851 P.2d 143, 146 (Ariz. Ct. App. 1992) ("[s]ince there is no factual evidence indicating malice or excessive publication, this court can dispose of the issue. Accordingly, we find that summary judgment was properly granted because there were no facts indicating that the conditional privilege was abused.").

In this case, Freebery advised her superiors of Wilcoxon's inappropriate comments in response to their efforts at "conflict resolution." There is no dispute that Basara, Furilla, Falgowski and others in addition to Freebery heard the remarks including his "wife and bitch" comment. In the face of such testimony, Wilcoxon's mere denial that he made such remarks does not create a jury question on whether the conditional privilege was abused.

    **B.**    **Whether The Underlying Statements And/Or Conduct Referenced In Freebery's Report Of Inappropriate Comments Actually Constitute Sexual Illegal Harassment Is Irrelevant In The Context Of A Defamation Liability Analysis.**

As noted above, in his Answering Brief, Wilcoxon attempts a play on words to argue that referring to your female co-worker as your "wife and bitch" some how doesn't amount to sexual harassment. Aside from the utter absurdity of this contention, Plaintiff's argument shows a fundamental misunderstanding of the law of defamation. Wilcoxon argues that Freebery's report is not protected by the conditional privilege because the underlying conduct

    

does not constitute, in Wilcoxon's opinion, illegal sexual harassment.  Of course, Wilcoxon provides no citation whatsoever to any applicable legal authority to support this claim.

It is simply irrelevant in the defamation context whether the conduct described in Freebery's report to her superiors *actually* constitutes illegal sexual harassment.  Instead, as courts that have considered the issue have routinely noted, it is *complaints* of sexual harassment that are protected by the conditional privilege.  See e.g. Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 143 (D.N.H. 2005) (employee sexual harassment complaints protected by qualified privilege); Cruey v. Gannett Co., 76 Cal. Rptr. 2d 670, 678 (Cal. Ct. App. 1998) (complaints to employers about workplace harassment should be privileged).  In this regard, the Miller v. Servicemaster by Reese, 851 P.2d 143, 145 (Ariz. Ct. App. 1992), matter is particularly instructive.  The plaintiff in Miller advanced an argument similar to that put forth by Wilcoxon in his Answering Brief.  Specifically, Miller argued that "his act of touching [the sexual harassment complainant] cannot be sexual harassment because it did not substantially interfere with her work performance or create an abusive work environment." Id. at 145.  The court, however, found that whether the complained of acts actually constitute sexual harassment is irrelevant:

> In this case a conditional privilege exists because public policy dictates that employees must be protected from workplace sexual harassment. That interest can only be protected if employees can report perceived acts of sexual harassment regardless whether the acts were intended to harass. Accordingly, Ms. Powers' report and Servicemaster's transmittal of that report to appellant's employer were for the benefit of protecting her from unwanted harassment, real or perceived, and are conditionally protected.

Id. at 145.  The very public policy interest effectuated by protecting sexual harassment complaints with a conditional privilege would be vitiated if defendants had to demonstrate that the conduct complained of actually constituted illegal harassment in order to secure the protections of the privilege.  It is illogical to engage in an analysis of whether the underlying conduct complained of in fact constituted illegal sexual harassment prior to determining whether the conditional privilege applied.

4

C.     **Freebery's Comments Were Not Published To A Third Party.**

Wilcoxon's attempt to distinguish <u>Schuster v. Derocili</u>, 775 A.2d 1029 (Del. 2001), is

also unavailing.[1]  <u>Schuster</u> stands for the simple proposition that statements made by an

employee in the presence of supervisors relating to another employee's work performance are

not published to third parties. 775 A.2d at 1040.  Of course, publication to a third party is a

necessary element of any defamation claim.  Moreover, the logic of the <u>Schuster</u> decision

does not rest, as Plaintiff argues, on the qualified privilege.  An analysis of privilege only

occurs when the *prima facie* elements of a defamation claim have been made.  Instead,

Wilcoxon's claim suffers from a fundamental failure of proof-publication to a third party

under the applicable state law.  The Delaware Supreme Court established in <u>Schuster</u> that a

defamation claim in the employment context does not satisfy the publication element of the

*prima facie* case when the report is made to the employee's supervisor concerning workplace

issues. <u>Schuster's</u> analysis and finding is independent of the application of the qualified

privilege.

II.     **WILCOXON HAS NOT ESTABLISHED A VIABLE FIRST AMENDMENT
        CLAIM.**

A.     **The Court's Ruling On A Motion To Dismiss Is Not *Res
        Judicata*, Nor The "Law Of The Case."**

Defendants' Opening Brief pointed out that a decision on a motion to dismiss does

not prevent the Court from reviewing the same issue in the context of a summary judgment

motion with the fully developed record.  <u>Tse v. Ventana Med. Sys., Inc.</u>, 126 F. Supp. 2d

213, 222 (D. Del. 2000) ("the law of the case doctrine does not preclude a grant of summary

judgment in favor of a defendant whose motion to dismiss had previously been denied.");

<u>Vintilla v. U.S.</u>, 931 F.2d 1444, 1447 (11th Cir. 1991) (stating that because an "initial motion

to dismiss was not a final judgment," the court was "free to reconsider its ruling… at the

---

[1]In footnote 3 of his answering brief, Wilcoxon alleges that Defendants did not provide the
full citation to Schuster in the text of the brief.  Defendants direct the Court's attention to
footnote 5 of their Opening Brief, wherein the full citation to the <u>Schuster</u> decision is
provided.

summary judgment stage"). Wilcoxon's Answering Brief does not respond to these established authorities, but simply asserts that the Court is barred by the doctrine of *res judicata* from reviewing the issue of whether the log Wilcoxon kept constituted a matter of public concern. The facts as developed during discovery demonstrate that Wilcoxon's action in keeping the log did not relate to a matter of public concern.

###### B.    Wilcoxon's Private Log Does Not Address A Matter Of Public Concern.

Defendants pointed out in their Opening Brief the well-established principle of Connick v. Myers, 461 U.S. 138 (1983) and its progeny that only speech on a matter of public concern receives First Amendment protection. In his Answering Brief, Wilcoxon relies on McHugh v. Bd. of Educ. of the Milford Sch. Dist., 100 F. Supp. 2d 231 (D. Del. 2000) in support of his argument that his private log is a matter of public concern.

Wilcoxon's reliance on McHugh is misplaced. McHugh is easily distinguished from the instant matter. First, McHugh's statements related directly to student safety concerns in transportation. The Plaintiff in McHugh, in fact, in engaged in speech by contemporaneously making statements involving safety concerns to his supervisor. Specifically, McHugh wrote "several memoranda" regarding safety issues and investigated complaints. Id. at 233-234. In the instant case, however, none of the contemporaneous documentation even suggests that student safety was an issue. Indeed, the contemporaneous record is exactly the contrary. Wilcoxon himself has admitted his rationale behind keeping the journal. According to his own email and deposition testimony, his purpose was to "protect" himself from future disciplinary action, not to protect the young students entrusted to his care. A102; A206-07. Wilcoxon himself admitted that he kept the log expressly as a "cma" record in case Freebery got *him* in trouble by saying that he was difficult to work with. A102; A170-71; A206-07. Plaintiff does not, and cannot, cite to anything in the record establishing that a concern for student safety in fact motivated him to keep the log.

Of course, as pointed out in Defendants Opening Brief at page 23-24, Wilcoxon's "safety claim" does not make sense. If Wilcoxon were concerned about student safety, he would have gone to his superiors or someone else in the District rather than deliberately and intentionally keeping his notes secret. He even complains that his "privacy" was violated because Rumford found the notes on his desk. How could the public concern about student safety be advanced by Wilcoxon's secret record? It would hardly do an injured student any good for Wilcoxon to produce his log *after* an injury had occurred. Allowing a teacher or other government employee to claim "First Amendment" protection for keeping a secret "cma" record of alleged student safety issues in no way advances the public interest. If anything, affording such protection is contrary to public policy. Wilcoxon's Answering Brief makes no effort to respond to these points. They must be treated as conceded. Maxwell v. Snow, 409 F.3d 354, 357 (D.C. Cir. 2005) (considering issue conceded where Appellants failed to address it in brief).

It is apparent with the now fully developed record that the Court did not have at the Motion to Dismiss stage, that alleged concern for "public safety" is nothing more than a *post hoc* rationale Wilcoxon has advanced in an attempt to cloak his private log in the protections of the Constitution. Summary judgment should therefore be granted to Defendants because Wilcoxon's log is not "speech" on a matter of public concern but merely a private effort to avoid discipline.

  **C. In The Alternative, If Wilcoxon's Private Log Addresses A Matter of Public Concern, His Claim is Barred by Garcetti.**

Alternatively, assuming for the sake of argument that the Court accepts Wilcoxon's assertion in his Answering Brief that the statements contained in the journal pertain to student safety, then the journal must as a matter of law relate to his official duties as a teacher. Under the U. S. Supreme Court's recent holding in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), public employees' speech that is "pursuant to their official duties" is not protected by

                         

the First Amendment. Defendants pointed out in their Opening Brief that teachers in Delaware stand *in loco parens* to students. This obligation includes looking out for the welfare of students. A public school teacher's duties therefore include a responsibility for student safety. Patterson v. Chicago Ass'n for Retarded Children, 1997 U.S. Dist. LEXIS 8339, *3 (D. Ill. Jun. 5, 1997) (noting that teachers' job responsibilities include "ensuring the safety of the students" in their classes).

Wilcoxon's reliance on Day v. Borough of Carlisle, 2006 U.S. Dist. LEXIS 46434 (M.D. Pa. 2006), and Kodrea v. City of Kokomo, 2006 U.S. Dist. LEXIS 42327 (S.D. IN. 2006), is unavailing. Neither case dealt with a situation in which the employee's alleged reason for his "speech" dealt with the safety of individuals over whom he stood *in loco parens*. There is no dispute here that Wilcoxon did not have supervisory authority over Freebery, nor any obligation to report on her activities unless they endangered the health or welfare of students. As pointed out in Defendants' Opening Brief at page 25, if Wilcoxon's *post hoc* claim that he was concerned about student safety is accepted, as a public school teacher standing *in loco parens* to students, he had an obligation to take action to ensure their safety. In short, Wilcoxon cannot have it both ways. He cannot insist that his log was private and that his "privacy" was violated when it was discovered and simultaneously claim that his alleged secret concern for student safety was not part of his job. If the log is a matter of public concern it must be *because* it relates to student safety. If it relates to student safety, Garcetti bars his claim because his official duties as a public school teacher include the safety of students.

Notably, Plaintiff's Answering Brief makes no attempt to respond to this argument.

### D. The Disruption Caused By Wilcoxon's Log Outweighed Any Public Benefit.

As pointed out in Defendants Opening Brief at pages 25-27, assuming that Wilcoxon's log related to a matter of public concern and that it is not otherwise barred by Garcetti, under the "Pickering balancing test," any minimal value of his private "cma" record

is outweighed by the disruption it caused. Wilcoxon advances the argument that his "speech" contained in the log was not disruptive. In weighing the Pickering balance, the Court must be cognizant of the fact that even the potential for disruption weighs heavily in the public employer's favor. Kinney v. Weaver, 367 F.3d 337, 391 (5th Cir. 2004) (risk of disruption "weighs heavily under the Pickering balancing test"). Here, of course, there was not only the potential for disruption but also the undisputed damage Wilcoxon caused to his working relationship with Freebery. His actions destroyed their team teaching relationship. Wilcoxon's contemporaneous e-mail to Freebery shows that he was well-aware of that potential when he kept the log as well as the fact that his actions had damaged their relationship. A102.

Moreover, it is within the province of the Court to find that, as a matter of law, the balance of interest in this matter favors defendant. Day v. Borough of Carlisle, 2006 U.S. Dist. LEXIS 46434, *22-*24 (M.D. Pa. 2006) (granting summary judgment on plaintiff's First Amendment claim). As in the Day case, here, the record demonstrates that Wilcoxon's log destroyed his working relationship with Freebery to such an extent that they could not continue team teaching together.

Wilcoxon makes no attempt to answer this argument nor to cite contrary authority. Notably, Wilcoxon *does not* even contest Defendant's argument that the value of his "speech" (assuming *arguendo* that it did related to student safety) was minimal since he intended to keep his log secret. Instead, Wilcoxon attempts to point his finger at Red Clay and blame the District for the disruptive effects of his private log because of the manner of its discovery. He attempts to sway the Court with misleading characterizations and self-serving claims without record citations. As noted above, at the summary judgment stage, this won't due. Schoch v. First Fidelity Bancorporation, 912 F.2d 646, 657 (3d Cir. 1990) ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment"); Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991).

061778.1003

First, Rumford found the journal on top of Wilcoxon's desk. His conduct hardly constituted a "subversive action." A291. How could it? Rumford did not even know it was there. A291-92. Moreover, the undisputed record shows Rumford did not read the contents of the note pad Wilcoxon calls his log. A291-92. Instead, he gave it to the substitute to take attendance, because Wilcoxon neglected his duties by failing to have an attendance list, a bell schedule, or lesson plans available. A291-92. It was the substitute who, bewildered as a result of Wilcoxon's lack of preparation, gave the notes to Freebery. A306-07. Wilcoxon's claim is therefor not only ludicrous, but it is also unsupported by the record. He cannot rest on the allegations of his Complaint at the summary judgment stage and simply ignore the factual record.

Further, the undisputed testimony shows that the December 17, 2003 meeting was a "conflict resolution" session- an attempt to salvage the working relationship between Freebery and Wilcoxon and repair the damage caused by Wilcoxon. Given the purpose of the December 17 meeting, it is not surprising that Freebery was herself in attendance. Also, significantly, Wilcoxon does not dispute that the log effectively destroyed his professional relationship with Freebery and made it impossible for them to continue team teaching. His e-mail to Freebery shortly after the discovery of his notes concede this. A102. Ironically, he now blames the District for discovering his private notes while at the same time claiming that his notes should be afforded First Amendment protection. His argument is another illegal and self-serving attempt to have his cake and eat it too.

## III. NO GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO WILCOXON'S DISCRIMINATION AND RETALIATION CLAIMS.

### A. There is No Genuine Issue of Material Fact Precluding Summary Judgment on Wilcoxon's Gender Bias Claim in Count I of His Complaint.

In his Answering Brief, Wilcoxon makes the statement that he "was cited with absolutely no performance based issues *in his career* until Mr. Rumford discovered the journal." Ans. Br. at 24. This assertion flies in the face of the evidence located by Red Clay

during discovery from Wilcoxon's previous employer- the Lake Forest School District. That evidence shows that Wilcoxon was on an Individual Improvement Plan for, among other reason, poor instructional planning. A15-16. Thus, Wilcoxon's claim that his performance problems were never noted previous to the discovery of the journal is untrue. Instead, the record shows that the very same difficulties noted in his performance at Red Clay, such as, for example, serious problems developing lesson plans, were documented by his previous employer.

Moreover, a review of the various "evidence" Wilcoxon points to its support of his gender bias claim is simply insufficient to defeat Defendant's Motion. First, Wilcoxon argues that both he and Freebery utilized the same lesson plans- the very lesson plans for which he was disciplined. His citation to the record for this point, however, B36, does not establish this fact. Instead, Wilcoxon points to his own self-serving deposition testimony. Second, Wilcoxon argues that he was disciplined for his failure to sign up for bus duty, while a female teacher was not. Wilcoxon provides no citation whatsoever to establish this point. In fact, during his deposition, Wilcoxon could not even recall the female teacher's name. B204-05. At the Summary Judgment stage he cannot rely on inadmissible hearsay. Third, Wilcoxon points to the disciplinary letter he received for failing to secure funds the students collected for the American Heart Association and argues that two female teachers had money "stolen from their desks during this same school year, but neither received a reprimand." Ans. Br. at 25. Once again, however, Wilcoxon provides no citation to the record to establish this point. During his deposition, Wilcoxon admitted that he was responsible for collecting cash and checks for the students' Hearts for Hoops fundraiser. He stated that he collected the envelopes in the multi-purpose room and the money was stolen when he went to lunch and left the envelopes out in the open on the front table of the multi-purpose room. A227-28. The record shows that Ms. Root, the School Nurse, had secured the money in her possession in a locked cabinet where she kept medicine. B298-99. The cabinet had a large bar down the front of the cabinet with a lock. A student had jimmied open the door with the bar still

11

locked and damaged the cabinet and locked bar. B298-99. There has been no testimony or evidence regarding any alleged theft of funds in other teachers' possession. Finally, Wilcoxon argues that Basara "scrutinized Mr. Wilcoxon's performance at a much higher level than she did other female teachers." Ans. Br. at 25. Once again, no citation to establish this point is provided- Wilcoxon conclusory allegation is insufficient at this stage.

At the summary judgment stage, Wilcoxon has the burden of pointing to evidence sufficient to establish the essential elements of his case. Ebert v. Office of Info. Sys., 1998 U.S. Dist. LEXIS 9100, *9 (D. Del. Jun. 12, 1998). Further, Wilcoxon may not, as he attempts to do, "rest upon mere allegations, general denials, or … vague statements." Quiroga, 934 F.2d at 500; Schoch, 912 F.2d at 657 ("unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment"). Instead, he must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Summary judgment is appropriate on Wilcoxon's gender bias claim because, with discovery closed, his claims remain "mere conjecture" unsupported by evidence. Cf. Evans v. Pa. Power & Light Co., 98 Fed. Appx. 151, 155-156 (3d Cir. 2004). He has failed to produce the "'specific tangible evidence showing a disparity in the treatment of similarly situated employees'" necessary to defeat Defendants Motion. Johnson v. Diamond State Port Corp., 2001 U.S. Dist. LEXIS 11024, *9-10 (D. Del. Aug. 2, 2001) (quoting Lowry v. Powerscreen USB, Inc., 72 F. Supp. 2d 1061, 1071 (E.D. Mo. 1999)). His unsupported allegations do not meet the requirements of Fed. R. Civ. P. 56(e).

**B.    There is No Genuine Issue of Material Fact Precluding Summary Judgment on Plaintiff's Title VII Retaliation Claim advanced in Count II of his Complaint.**

Aware that he had been disciplined well before the District's receipt of his charge of gender bias on March 12, 2004, Wilcoxon relies on what he calls a "valid workplace complaint against Ms. Freebery for dereliction of duties long before he ever filed the Charge

12

of Discrimination" in support of his retaliation claim under Title VII.[2] Ans. Br. at 25. It is

fundamental, however, that only activity made illegal by Title VII is protected. Wilcoxon's

retaliation claim therefore fails as a matter of law.

Title VII's anti-retaliation provision is specific and limited. It requires that the

employee engage in "protected activity." Curay-Cramer v. Ursuline Acad. Of Wilmington,

Del., Inc., 450 F.3d 130, 134 (3d Cir. 2006); Lamb-Bowman v. Del. State Univ., 152 F.

Supp. 2d 553, 559-560 (D. Del. 2001); see also, Laughlin v. Metro. Wash. Airports Auth.,

149 F.3d 253, 259 n.4 (4th Cir. 1998). Retaliation is prohibited against an employee who

"participates in" Title VII's statutory processes and against a person who "opposes" an

employment practice made illegal by Title VII. See Laughlin, 149 F.3d at 259-60.

By shifting his position to rely on so-called "workplace complaints against Freebery

for dereliction of duty," Wilcoxon thus rests his claim on the "opposition" clause rather than

the "participation" clause. The scope of Title VII's "opposition" clause, however, is limited

to an employment practice made illegal by the statute. Lamb-Bowman, 152 F. Supp. 2d at

559-560. By its own terms, retaliation is prohibited only where the employee engages in

opposition to an *unlawful employment practice* under Title VII: "It shall be an unlawful

employment practice for an employer to discriminate against any of his employees . . .

because [he] has *opposed any practice made an unlawful employment practice by this*

*subchapter* . . . ." 42 U.S.C. § 2000e 3(a) (emphasis added).

Wilcoxon's reliance on his alleged work place complaints against Freebery for

"dereliction of duty" do not as a matter of law constitute protected activity under Title VII.

Alleged "dereliction of duty" is not a practice made unlawful by Title VII. As the Third

Circuit has recently noted, in Curey-Cramer, an employee is not protected by the opposition

---

[2]Ignoring the documents in the record showing that he was on an IIP at his prior employment with Lake Forest, Wilcoxon asserts not only that his performance had not been criticized by his prior employer, but also, incredibly he has submitted an affidavit claiming that he was not on an IIP. His self-serving claim in direct contravention of the IIP itself, A15-16, must be ignored. See e.g. Jackson v. Dillard's Dep't. Stores, Inc., 92 Fed. Appx. 583, 586 (10th Cir. 2003).

clause simply because she allegedly registers a work place complaint. 450 F.3d at 136-137. The complaint must involve conduct in opposition to a practice made "unlawful" by Title VII in order to gain the protections of Title VII's anti-retaliation provision. Slagle v. County of Clarion, 2006 U.S. App. LEXIS 678, *14-15 (3d Cir. Jan. 12, 2006); Lamb-Bowman, 152 F. Supp. 2d at 559-560.

This Court previously reached the same conclusion in Lamb-Bowman. In that case, the Court noted that the "Plaintiff has not demonstrated that she suffered retaliation because she complained of discrimination based on her sex. Because plaintiff did not oppose a discriminatory action that is proscribed by the statute, plaintiff has failed to state a claim of retaliation under Title VII." Lamb-Bowman, 152 F. Supp. 2d at 561.

Although Wilcoxon's effort to shift ground to rely on the opposition clause based on his alleged "complaint of dereliction of duty" constitutes abandonment of his "participation" clause claim, any such claim is meritless in any event. Wilcoxon makes no effort to respond to the established authorities cited in Defendants Opening Brief at pp. 29-30 requiring him at the summary judgment stage to do more than rely on the bare allegations of his complaint. Instead, the Title VII's burden-shifting approach applies with equal force to Wilcoxon's retaliation claim. Wilcoxon has not established a *prima facie* case of retaliation because he cannot show a causal connection between his act in filing a charge of discrimination and discipline he received.[3] As he recognizes, any "participation" clause claim can only rest on his Charge of Discrimination based on alleged gender bias. The receipt of the charge, however, post-dates the District's concerns about his conduct and resulting discipline.

Further, Wilcoxon fails to respond to Defendants' argument that summary judgment on his Title VII retaliation claim is appropriate because he has no evidence that the legitimate reasons for his discipline advanced by the District are mere pretexts. See Opening brief at

---

[3] It is for that reason that Wilcoxon has shifted his argument to an "opposition" clause claim.

14

page 30. His participation claim is therefore without merit, even if he is deemed not to have abandoned it. <u>Cuffee v. Dover Wipes Co.</u>, 334 F. Supp. 2d 565, 575-576 (D. Del. 2004).

## IV.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S WRONGFUL DISCHARGE CLAIM BASED ON AN ALLEGED FAILURE TO COMPLY WITH 14 <u>DEL</u>. <u>C</u>. §1410(b).

### A.    Plaintiff's "Retaliation" Claim is Without Merit.

Defendants' Opening Brief pointed out that the "retaliation prong" of Count IV of Plaintiff's complaint is without merit. Plaintiff's Answering Brief does not respond at all to this argument. AB at 27-33. Dismissal of the retaliation prong is therefore required because Plaintiff has conceded this point. <u>Maxwell v. Snow</u>, 409 F.3d 354, 357 (D.C. Cir. 2005) (considering issue conceded where Appellants failed to address it in brief).

### B.    Plaintiff's Claim that the Collective Bargaining Agreement was Violated Is Without Merit and, In Any Event, Cannot Be Pursued in this Court.

Defendants' Opening Brief pointed out that Wilcoxon bases his entire Count IV claim on his (inaccurate) assertion that the District violated the collective bargaining agreement. Plaintiff filed a cross motion for summary judgment on his Count IV argument. On August 2, 2006, Defendants filed their Answering Brief in Opposition to Plaintiff's motion. The arguments set forth in that brief are incorporated by reference and will not be repeated here.

Plaintiff's Answering Brief does not address the fact that he only sent one "written notification" to the District requesting the reasons for the waiver of the notice provided in Article 4:4.1. That request was in connection with the January 22, 2004 meeting. None of the other discipline or Basara's observation is in dispute because Wilcoxon did not make a request as required by the explicit terms of the contract. Further, the written reprimand for inappropriate comments was amended and re-issued as a result of the grievance process itself. It was therefore properly placed in Wilcoxon's personnel file. There is ample other

15

documentation of Wilcoxon's poor performance and disciplinary problems as required by 14 Del. C. § 1410(b).

Defendants also pointed out in their Opening Brief in Support of Their Motion for Summary Judgment and their Answering Brief in Opposition to Plaintiff's Motion, that absent the union's exhaustion of the contractual remedies in the CBA, Wilcoxon's exclusive remedy under settled Delaware law is to file an unfair labor practice charge against his union with the Public Employment Relations Board ("PERB"). It is a fundamental principle of labor law, that the union is the exclusive representative of the employees in the bargaining unit it represents.

Wilcoxon's Answering Brief reiterates his position that his claim is based on the alleged violation of the collective bargaining agreement. He relies on Article 4:4.1 of the CBA throughout his argument and explicitly states that it is the alleged violation of the agreement at the December 17, 2003, January 22, 2004, May 5, May 11, and May 14, 2004 meetings that make the discipline he received not "properly placed" in his file. His claims are therefore barred and fall within the exclusive jurisdiction of the Delaware PERB. The principle of exclusive representation and the union's obligation to enforce the collective bargaining agreement for the benefit of all members gives it the exclusive right to monitor and police the agreement, and to enforce its terms through the grievance process or through other action. Smith v. General Motors Corporation, 348 A.2d 691, 695 (Del. Ch. 1975) affirmed without opinion at 382 A.2d 251 (Del. Supr. 1977). The Delaware Courts and the PERB have held that PERB, and PERB alone, has exclusive jurisdiction over alleged unfair labor practice charges pursuant to the Delaware teacher bargaining law. 14 Del. C. §§ 4006, 4008; Morozowich v. Windsor, 2001 Del. Superior LEXIS 195 (Del. Super., March 30, 2001); Caesar Rodney Educ. Assoc., DSEA/NEA and Caesar Rodney School Dist., Bd. Of Educ., ULP No. 96-01-165, (Nov. 6, 1998).

If a public school teacher believes that his union has failed to exhaust the contractual remedies of a collective bargaining agreement to his detriment, his exclusive remedy is to file

an unfair labor practice with the Delaware PERB. 14 Del. C. § 4007(b)(1). Williams v. Norton, ULP No. 85-10-006, March 7, 1986; Newman v. DE Correctional Officers Assoc., ULP 02-12-374 (June 24, 2003); Flowers v. Herbert, ULP No. 08-02-468 (September 7, 2005).

Accordingly, since Wilcoxon's entire argument in Count IV of his complaint is predicated on his (inaccurate) claim that the collective bargaining agreement was violated, his exclusive remedy is to pursue an action for breach of the duty of fair representation before the Delaware PERB. Williams, Flowers, Caesar Rodney Educ. Assoc., DSEA/NEA and Caesar Rodney School Dist., Bd. of Educ.,ULP No. 96-01-165, Nov. 6, 1998; see also Vaca v. Sipes, 386 U.S. 171 (1967); Brazinski, et al. v. Amoco Petroleum Additives Co., 6 F.3d 1176 (7th Cir. 1993); Glozman v. Retail, Wholesale & Chain Store Food Emples. Union, Local 338, 204 F. Supp. 2d 615 (S.D.N.Y. 2002); Meehan v. U.S. Postal Serv., 792 F. Supp. 18 (E.D.N.Y. 1992).

It goes without saying that if the Delaware courts lack jurisdiction because of PERB's exclusive authority to hear unfair labor practices under the teacher bargaining law, this Court likewise is without authority. See Morozowich, supra.

### C. Plaintiff's New Argument That the District Was Required to Place Him on an IIP Is Without Merit.

Wilcoxon's Answering Brief at pages 32-33 alleges that the District was required to place him on an IIP before terminating his services. The teacher termination statute has no such requirement, however, it only requires that discipline or other performance documentation be "properly placed" in his personnel file. 14 Del. C. §1410(b).

Unfortunately, Wilcoxon does not advise the Court that the evaluation process is itself part of the collective bargaining agreement his union negotiated with Red Clay. Article 16 of the CBA explicitly addresses evaluations and incorporates use of the state guidelines. B347-48. Accordingly, like Wilcoxon's Article 4:4.1 claim, his exclusive remedy for an alleged violation is before PERB.

17

Further, Plaintiff's union and the District have stipulated that District officials are invested with discretion concerning whether an IIP should be implemented. In <u>Red Clay Education Ass'n v. Red Clay Consolidated School District</u>, ULP No. 05-10-496, (July 6, 2006) (copy attached) the teacher's association filed an unfair labor practice charge with the Delaware PERB arguing that the District *should not* have placed a teacher on IIP. The stipulations before PERB included:

> 11.    The District gives its Administration the discretion to develop improvement plans if the Lesson Analysis (classroom observation) of a teacher needs improvement or is unsatisfactory in one or more areas of observation even if the Lesson Analysis is not identified with the overall statement that performance is unsatisfactory.
>
> 12.    The Association asserts that the District may not require an improvement plan unless the overall lesson analysis is deemed to be unsatisfactory by the appraiser.

The argument that the CBA *required* the District to place Wilcoxon on an IIP is therefore without merit. Wilcoxon's union has stipulated that District officials have discretion. In fact, the Union opposed the use of an IIP because of the stigma associated with such action.

<u>Red Clay Education Ass'n v. Red Clay Consolidated School District</u>, ULP No. 05-10-496, (July 6, 2006) is an instructive case study. As noted above by many authorities including the Delaware Chancery Court in <u>Smith</u>, unions are duty bound to enforce collective bargaining agreements for the *collective* good of their memberships. Wilcoxon's union has stipulated that Red Clay officials have discretion with respect to placing a teacher on an IIP, because that is what the union believes is in the best interest of the membership. Unless the union has breached its duty of fair representation, its judgment and exclusive representation authority must be honored. Of course, as noted above, if Wilcoxon believes that the union failed in its duty of fair representation, his remedy is to file an unfair labor practice before Delaware PERB.

Wilcoxon cannot come to this Court and ask it to circumvent the PERB's statutory authority. Indeed, the <u>Red Clay Education Association</u> case shows that doing so could well

18

be detrimental to the membership as a whole. Wilcoxon asserts, incorrectly, that an IIP is uniformly required by the negotiated evaluation system. Both the employer and union disagree. In fact, the union is seeking to overturn the District's decision to place another teacher on an IIP. The ruling Wilcoxon seeks is directly contrary to the position the union believes in the best interests of the membership it represents. Based on settled authorities, Wilcoxon must follow the statutory procedures provided in the teacher bargaining law and present his collective bargaining claims to the Delaware PERB.

D.     **Plaintiff's Reliance on McCoy is Misplaced.**

Wilcoxon's Answering Brief first attempts to respond to Defendants' distinction of McCoy v. Sussex County Vo-Tech School District, 1998 Del. Ch. LEXIS 171 (Del.Ch 1998) by claiming that it doesn't matter that the collective bargaining agreements in issue there and in this case are different. He is simply wrong. The notice provision in Article 4:4.1 in issue here explicitly requires him to give a "written notification" to the District if he objected to a meeting. As noted above and elsewhere in the briefing of this matter, he only gave one written notification and that was in connection with the January 22, 2004 meeting. None of the other discipline, nor his observation are even arguably affected by his claim that the CBA was violated.

Next, Wilcoxon fails to point out that in McCoy the arbitrator in fact found that the grievant was prejudiced by the lack of notice because of her mental state at the time, including her father's serious illness. Wilcoxon, in this case, is attempting to rely on a mere technicality unaccompanied by any harm. He has offered no evidence of prejudice because there is none. By the time of the December 17, 2003 discussion he was secretly taping his meetings with the Principal. He also tape recorded the January 22, 2004 meeting, the only one for which he sent a "written notification" under Article 4:4.1. He is in no position to claim prejudice.

Wilcoxon next feigns ignorance as the importance of the distinction between <u>McCoy</u> and this case with respect to the Arbitrator's finding the only discipline the school district relied on there had to be removed from the personnel file. The distinction is critical. Unlike the present case, the union exhausted its administrative remedies in arbitration and obtained a finding the discipline had to be removed. Here, Wilcoxon is asking the Court to circumvent the collective bargaining process and make its own ruling on the interpretation of the contract. Contrary to Wilcoxon's assertion, exhaustion of contractual remedies by the union is required. <u>See e.g.</u>, <u>Smith</u>, <u>supra</u>. If the union fails to do so, Wilcoxon must pursue a claim against his union in the Delaware PERB. He cannot attempt an end run around the PERB's exclusive jurisdiction and his union's right to enforce the CBA for benefit of the membership at large.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Barry M. Willoughby
Barry M. Willoughby, Esquire (ID# 1016)
Michael P. Stafford, Esquire (ID# 4461)
The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 6553
Facsimile: (302) 576-3345
Email: bwilloughby@ycst.com; mstafford@ycst.com
Attorneys for Defendants

Dated: August 9, 2006

061778.1003

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2006, I electronically filed a true and correct copy of

the foregoing Defendants' Reply Brief in Support of Their Motion for Summary Judgment with

the Clerk of the Court using CM/ECF, which will send notification of such to the following

counsel of record, and further that I caused a copy of same to be delivered to the following

counsel of record:

> Jeffrey K. Martin, Esquire
> Timothy James Wilson, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE 19806

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ Barry M. Willoughby
> Barry M. Willoughby, Esquire (No. 1016)
> Michael P. Stafford, Esquire (No. 4461)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> Telephone: (302) 571-6666, 6553
> Facsimile: (302) 576-3345, 3470
> Email: bwilloughby@ycst.com; mstafford@ycst.com
> Attorneys for Defendants

Dated: August 9, 2006

061778.1003